EMILY JOHNSON HENN, SBN 269482
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94061
Telephone: 650-632-4700
Facsimile: 650-632-4800
Email: ehenn@cov.com

*Attorneys for Defendants*
The Walt Disney Company, Lucasfilm Ltd.,
LLC, Pixar, ImageMovers, LLC, and
ImageMovers Digital

STEPHEN V. BOMSE, SBN 40686
DAVID M. GOLDSTEIN, SBN 142334
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone: 415-773-4145
Facsimile: 415-773-5759
Email: sbomse@orrick.com

*Attorneys for Defendants*
Sony Pictures Animation Inc., and
Sony Pictures Imageworks Inc.

*Additional counsel listed on signature page*

DANIEL G. SWANSON, SBN 116556
ROD J. STONE, SBN 145405
SHANNON E. MADER, SBN 235271
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213-229-7256
Facsimile: 213-229-6256
Email: rstone@gibsondunn.com

*Attorneys for Defendant*
DreamWorks Animation SKG, Inc.

JOHN E. SCHMIDTLEIN, SBN 163520
JONATHAN B. PITT, *pro hac vice*
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: 202-434-5901
Facsimile: 202-434-5029
Email: jschmidtlein@wc.com

*Attorneys for Defendant*
Blue Sky Studios, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANIMATION WORKERS ANTITRUST LITIGATION | Master Docket No. 14-cv-4062-LHK |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       April 23, 2015<br>Time:       1:30 p.m.<br>Courtroom:   8<br>Judge:      Hon. Lucy H. Koh |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 23, 2015, at 1:30 p.m. in the courtroom of the Honorable Lucy H. Koh, United States District Court for the Northern District of California, 280 South 1st Street, Courtroom 8, San Jose, California, Defendants DreamWorks Animation SKG, Inc. ("DreamWorks Animation"), The Walt Disney Company, Lucasfilm Ltd., LLC, Pixar, ImageMovers, LLC and ImageMovers Digital, Sony Pictures Animation Inc. and Sony Pictures Imageworks Inc., and Blue Sky Studios, Inc. (collectively, "Defendants") will, and hereby do, move to compel arbitration of the claims of Plaintiff Robert A. Nitsch, Jr., pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and to stay his claims pending completion of arbitration, pursuant to 9 U.S.C. § 3.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Vinaleth Vinnie Bowling of DreamWorks Animation in Support of Defendants' Motion to Compel Arbitration and Stay Proceedings and exhibits thereto, the Declaration of Shannon Mader in Support of Defendants' Motion to Compel Arbitration and Stay Proceedings and exhibits thereto, the Declaration of Ellen Shin of Sony Pictures Imageworks in Support of Defendants' Motion to Compel Arbitration and Stay Proceedings and exhibits thereto, the documents on file with the Court, and such further evidence and argument as the Court may permit.

DATED:  January 9, 2015          COVINGTON & BURLING LLP

By:  */s/ Emily Johnson Henn*
     Emily Johnson Henn

     *Attorneys for Defendants*
     The Walt Disney Company
     Lucasfilm Ltd., LLC
     Pixar
     ImageMovers, LLC
     ImageMovers Digital

DATED:  January 9, 2015          GIBSON, DUNN & CRUTCHER LLP

                                 By:  */s/ Rod J. Stone*
                                      Rod J. Stone

                                      *Attorneys for Defendant*
                                      DreamWorks Animation SKG, Inc.

DATED:  January 9, 2015          ORRICK, HERRINGTON & SUTCLIFFE
                                 LLP

                                 By:  */s/ Stephen V. Bomse*
                                      Stephen V. Bomse

                                      *Attorneys for Defendants*
                                      Sony Pictures Animation Inc.
                                      Sony Pictures Imageworks Inc.

DATED:  January 9, 2015          WILLIAMS & CONNOLLY LLP

                                 By:  */s/ John E. Schmidtlein*
                                      John E. Schmidtlein

                                      *Attorneys for Defendant*
                                      Blue Sky Studios, Inc.

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   FACTUAL BACKGROUND ........................................................................................... 3

      A.    Nitsch's Arbitration Agreements with DreamWorks Animation ......................... 3

      B.    Nitsch's Allegations ............................................................................................ 4

III.  LEGAL STANDARD ...................................................................................................... 5

IV.   ARGUMENT ................................................................................................................... 7

      A.    Nitsch Must Arbitrate His Claims Against DreamWorks Animation ................. 7

      B.    Nitsch Also Is Equitably Estopped From Refusing To Arbitrate His Claims
            Against the Other Defendants .......................................................................... 9

      C.    The Court Should Stay This Action As To Nitsch ........................................... 12

V.    CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Exp. Co. v. Italian Colors Restaurant,*
   133 S. Ct. 2304 (2013) ................................................................................................. 6

*AT&T Mobility LLC v. Concepcion,*
   131 S. Ct. 1740 (2011) ............................................................................................. 5, 12

*Bischoff v. DirecTV,*
   180 F. Supp. 1097 (C.D. Cal. 2002) ....................................................................... 2, 8, 9

*Brown v. Gen. Steel Domestic Sales, LLC,*
   2008 WL 2128057 (C.D. Cal. May 19, 2008) ............................................................ 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
   207 F.3d 1126 (9th Cir. 2000) ...................................................................................... 6

*Crown Homes, Inc. v. Landes,*
   22 Cal. App. 4th 1273 (Cal. Ct. App. 1994) ................................................................ 8

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985) ..................................................................................................... 6

*Esaka v. Nanticoke Health Servs., Inc.,*
   752 F. Supp. 2d 476 (D. Del. 2010) ............................................................................. 9

*Farrow v. Fujitsu America, Inc.,*
   2014 WL 1396412 (N.D. Cal. Apr. 9, 2014) ............................................................... 7

*First Options of Chi. v. Kaplan, et al.,*
   514 U.S. 938 (1995) ..................................................................................................... 6

*Genesco, Inc. v. Kakiuchi & Co.,*
   815 F.2d 840 (2d Cir. 1987) .................................................................................. 2, 8, 9

*Goldman v. KPMG LLP,*
   173 Cal. App. 4th 209 (2009) ..................................................................................... 10

*Green Tree Fin. Corp. Ala. v. Randolph,*
   531 U.S. 79 (2000) ....................................................................................................... 7

*Guidewire Software, Inc. v. Cookaszian,*
   2012 WL 5379589 (N.D. Cal. Oct. 31, 2012) ................................................... 1, 6, 7, 8

*Hopkins v. Carley,*
   2011 WL 1327359 (N.D. Cal. Apr. 6, 2011) ............................................................... 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
   2011 WL 1753784 ................................................................................................... 5, 9

*JLM Indus., Inc. v. Stolt–Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004) .................................................................. 2, 8, 9

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ................................................................. 9, 10

*Laguna v. Coverall N. Am., Inc.*,
   2011 WL 3176469 (S.D. Cal. July 26, 2011) .................................................. 5

*McLeod v. Ford Motor Co.*,
   2005 WL 3763354 (C.D. Cal. Apr. 14, 2005) ................................................. 5

*Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ................................................................................. 8

*Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*,
   186 Cal. App. 4th 696 (2010) .................................................................. 10

*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011) .................................................................... 6

*Mora v. Harley Davidson Credit Corp.*,
   2012 WL 1189769 (E.D. Cal. Apr. 9, 2012) .................................................. 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1, 24-25 (1983) .......................................................................... 7

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2012) ................................................. 2, 9, 10, 11, 12

*Owner–Operator Independent Drivers Assoc., Inc. v. Swift Transp. Co.*,
   288 F. Supp. 2d 1033 (D. Ariz. 2003) ......................................................... 9

*Qualcomm Inc. v. Nokia Corp.*,
   466 F.3d 1366 (Fed. Cir. 2006) .............................................................. 1, 6

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .................................................................................. 6

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) .................................................................. 6, 9

*Tompkins v. 23andMe, Inc.*,
   2014 WL 2903752 (N.D. Cal. June 25, 2014) ............................................. 5, 6

*Valley Power Sys., Inc. v. Gen. Elec. Co.*,
   2012 WL 665977 (C.D. Cal. Feb. 27, 2012) .................................................. 6

**Statutes**

15 U.S.C. § 1 ............................................................................................ 5

9 U.S.C. § 1 ............................................................................................. 6

9 U.S.C. § 3 ......................................................................................... 2, 12

9 U.S.C. § 4 ............................................................................................................. 6

Cal. Bus. & Prof. Code § 16720 .......................................................................... 5

Cal. Bus. & Prof. Code § 17200 .......................................................................... 5

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Defendants seek an order requiring Plaintiff Robert A. Nitsch, Jr. to arbitrate his claims against Defendants and staying his claims pending the outcome of the arbitration.

From 2007 to 2011, Nitsch was employed by DreamWorks Animation pursuant to written employment agreements that governed the terms of his employment, including the amount of his compensation.  Those agreements contained arbitration provisions requiring Nitsch to arbitrate (1) "[a]ny dispute arising out of or relating to payment to Artist" or (2) "any other dispute arising in any way out of the Agreement."  Notwithstanding his obligations under those agreements, Nitsch has filed this putative class action, alleging that Defendants conspired to "suppress" and "limit" his "compensation"—a term mentioned 83 times in the Consolidated Amended Class Action Complaint ("CAC").  *See* CAC ¶¶ 1, 6-8, 10-11, 13, 16, 41, 85, 89, 91, 96-97, 101, 103, 108, 119, 134, 138, 143.  Nitsch alleges that he was underpaid and that the terms of his compensation—as set forth in his employment agreements—would have been different but for Defendants' alleged agreements not to solicit each other's employees and to fix the wages and salaries of their employees.  These claims fit squarely within the terms of the arbitration provisions in Nitsch's employment agreements.

Through this motion, Defendants seek three orders—all intended to uphold the strong federal policy favoring enforcement of arbitration agreements.  First, DreamWorks Animation seeks an order compelling Nitsch to arbitrate his claims against DreamWorks Animation.  There can be no dispute that Nitsch entered into valid arbitration agreements with DreamWorks Animation, and that those agreements provide for arbitration pursuant to American Arbitration Association ("AAA") rules, which—as this Court has recognized—is "'clear and unmistakable' evidence of the parties' intent to delegate the issue of arbitrability to the arbitrator."  *Guidewire Software, Inc. v. Cookaszian*, 2012 WL 5379589, at *3 (N.D. Cal. Oct. 31, 2012) (Koh, J.).  Accordingly, on this motion, "the Court's inquiry is 'limited . . . [to] whether the assertion of arbitrability is "wholly groundless."'"  *Id.* (quoting *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006)).  Plainly, DreamWorks Animation's assertion of arbitrability is not wholly groundless.  Nitsch's agreements require him to arbitrate "[a]ny dispute arising out of or relating to payment to Artist" or "any other dispute arising in any way out of the

[a]greement." This language encompasses Nitsch's antitrust and unfair competition claims.  *See, e.g.*, *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 172, 175 (2d Cir. 2004); *Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 843 (2d Cir. 1987); *Bischoff v. DirecTV*, 180 F. Supp. 1097, 1106 (C.D. Cal. 2002).  Accordingly, even if this Court were to decide the issue of arbitrability (it should not), the result would be the same—Nitsch's claims are arbitrable and arbitration should be compelled.

Second, the nonsignatory Defendants seek an order compelling Nitsch to arbitrate his claims against them.  Whether a nonsignatory defendant may compel arbitration is a question of state contract law.  *See, e.g.*, *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2012).  Under California law, a plaintiff is equitably estopped to oppose a motion to compel brought by a nonsignatory defendant where (1) the plaintiff's claims rely on a written agreement between the plaintiff and a signatory defendant or the plaintiff's claims are intimately founded in and intertwined with the underlying agreement, or (2) the plaintiff alleges interdependent and concerted misconduct by all defendants that is intimately connected with obligations under the underlying agreement.  *Id*.  Here, both circumstances are present.  Nitsch's claims necessarily rely on his agreements with DreamWorks Animation because he is seeking to recover, on his own behalf and the putative class members' behalf, "the difference between the compensation that class members were paid and what class members would have been paid absent Defendants' illegal conduct, and to enjoin Defendants from repeating or engaging in their unlawful conduct."  (CAC ¶ 17.)  There is no way to calculate that alleged difference without reference to Nitsch's employment agreements, which set his salary.  Further, Nitsch is alleging that Defendants conspired to reduce his compensation and that—as a result—the salary terms set forth in his employment agreements were artificially low.  Thus, Nitsch should be compelled to arbitrate his claims against the nonsignatory Defendants.

Finally, Defendants seek an order staying the prosecution of Nitsch's claims pending completion of the arbitration.  9 U.S.C. § 3.[1]

---

[1]  Nitsch does not allege that he was employed by any other defendant other than Sony Pictures Imageworks ("SPI"), where he was employed from March 15, 2004, to October 9, 2004.  *See* (continued…)

## II.  FACTUAL BACKGROUND

### A.  Nitsch's Arbitration Agreements with DreamWorks Animation

Nitsch entered into two written employment agreements at DreamWorks Animation, one dated July 12, 2007, and the other dated January 23, 2010.  Those agreements set forth the terms and conditions of Nitsch's employment, including his weekly salary, for the entire period of his employment with DreamWorks Animation.  *See* Declaration of Vinelath Vinnie Bowling in Support of Defendants' Motion to Compel Arbitration and Stay Proceedings ("Bowling Decl."), Ex. A, ¶ 4; *id.*, Ex. B, ¶ 4. Nitsch's purported damages are, of course, based on his allegations that these wages are below what he would have been paid but for the no-solicitation and wage-fixing conspiracies alleged in the CAC.

Nitsch's employment agreements contain identical arbitration provisions:

> **ARBITRATION.**  ***Any dispute arising out of or relating to payment to Artist*** of any amount hereunder or the amount or calculation thereof, ***or any other dispute arising in any way out of the Agreement***, including its existence, validity or breach will be arbitrated privately and confidentially in Los Angeles, California, by one arbitrator mutually agreed (or if none, appointed pursuant to the commercial arbitration rules of the American Arbitration Association), and the arbitrator may examine in DWA's offices, all documents which Artist is entitled to examine pursuant to the above, subject to the arbitrator's executing an appropriate confidentiality agreement. The result of any such arbitration shall be binding. . . .  Except as provided above to the contrary, ***any such***

---

Declaration of Ellen Shin in Support of Defendants' Motion to Compel Arbitration and Stay Proceedings ("Shin Decl."), ¶ 2.  On October 14, 2004, Nitsch executed, as part of his severance agreement, an Acknowledgment and Release of "any and all claims I now have or claim (or which I previously had or claimed) in connection with my employment with or termination from [SPI]." *Id.* ¶ 3 & Ex. A (Nitsch Acknowledgment and Release).  Accordingly, Nitsch has no claims based on his employment with SPI.

The original *Cano* complaint alleged that Ms. Cano was employed by SPI from February 2004 through September 2004.  (*Cano* Compl. ¶ 6.)  In fact, Ms. Cano also was employed by SPI from October 24, 2005 until May 2, 2007.  *See* Shin Decl. ¶ 5 & Ex. B.  The CAC, however, omits any reference to Ms. Cano's employment with SPI.  Presumably, that is because on April 30, 2007, Ms. Cano released SPI and its affiliates "from any and all claims I now have or claim (or which I previously had or claimed) in connection with my employment with or termination from [SPI]." *Id.* ¶ 7 & Ex. C (Cano Acknowledgment and Release).  Accordingly, Ms. Cano has no claims against SPI.  If, notwithstanding that release, Ms. Cano later attempts to assert claims related to her employment with SPI, that claim would be subject to JAMS arbitration pursuant to the employment agreement she entered into with the company.  *Id.*, Ex. B (Cano Agreement, Standard Terms ¶ 11(b)).  Defendants reserve the right to seek to dismiss or to compel arbitration of any claim that Ms. Cano may seek to assert at a later time based on her employment with SPI.

***arbitration will be conducted in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association***.  The provisions contained in this paragraph shall survive the termination of the Artist's employment with DWA.

*See* Bowling Decl., Ex. A, ¶ Q (emphases added); *id.*, Ex. B, ¶ R (emphases added).  Nitsch's employment agreements with DreamWorks Animation incorporated relevant provisions of the applicable collective bargaining agreements with the Animation Guild and Affiliated Optical Electronic and Graphic Arts, Local #839, I.A.T.S.E.  *See id.*, Ex. A, ¶ L; *id.*, Ex. B, ¶ L.[2]

**B.      Nitsch's Allegations**

Despite having agreed to binding arbitration, Nitsch filed the instant action pleading nothing but arbitrable claims.  In the CAC, Nitsch alleges that Defendants conspired to suppress the compensation paid to him and the putative class members.  Specifically, Nitsch alleges that Defendants agreed not to solicit each other's employees (CAC ¶¶ 42-73) and to fix their employees' wages and salaries (*id.* ¶¶ 74-91).  Nitsch claims that the conspiracy was "systematic and deeply ingrained" (*id.* ¶ 14), and that Defendants had "shared goals" to "suppress the amount of compensation that would have been paid to [Nitsch] and [his] fellow class members."  (*Id.* ¶ 7; *see also, e.g.*, *id.* ¶¶ 6, 8, 10, 41.)  Through the purported scheme to "limit soliciting each other's employees, to collusively discuss compensation information and to agree on compensation ranges for their workers," Nitsch alleges that Defendants suppressed compensation for him and putative class members and restricted competition for services provided by him and class members to Defendants, purportedly "depriv[ing] [the named plaintiffs] and other class members of millions of dollars in compensation."  (*Id.* ¶¶ 1, 96.)  Nitsch further claims that "all of Defendants' agreements" affected the compensation of all visual effects and animation workers, not only those individuals who received or would receive cold calls and not just those workers seeking a new job.  (*Id.* ¶¶ 100, 103, 104.)

---

[2]      The Animation Guild Master Collective Bargaining Agreement is publicly available at http://animationguild.org/contracts-wages/.  It sets forth minimum wages and benefits, including specifically for various categories of employees.  In addition, it sets forth detailed grievance procedures for disputes, including disputes about wages, hours or other conditions of employment.  DreamWorks Animation reserves its rights under the applicable grievance procedures in the applicable collective bargaining agreements.

Based on these allegations, Nitsch asserts claims for violations of the Sherman Act, 15 U.S.C. § 1, the Cartwright Act, Cal. Bus. & Prof. Code § 16720 *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (CAC ¶¶ 133-146.) Nitsch purports to assert the claims on behalf of the following putative class:

> All persons who worked at any time from 2004 to the present for Pixar, Lucasfilm, DreamWorks Animation, Walt Disney Animation Studios, Walt Disney Feature Animation, Blue Sky Studios, Digital Domain, ImageMovers Digital, Sony Pictures Animation or Sony Pictures Imageworks in the United States. Excluded from the Class are officers, directors, senior executives and personnel in the human resources and recruiting departments of the Defendants.

(*Id.* ¶ 113.) He seeks to recover, on behalf of himself and the putative class, "the difference between the compensation that class members were paid and what class members would have been paid absent Defendants' illegal conduct, and to enjoin Defendants from repeating or engaging in their unlawful conduct."[3] (*Id.* ¶ 17.)

## III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies here because Nitsch alleges that employment at visual effects and animation companies affects interstate commerce. *See* CAC ¶¶ 109-112; *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *4 (N.D. Cal. June 25, 2014) ("The [FAA] applies to arbitration agreements in any contract affecting interstate commerce.") (Koh, J.). The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 1748.

---

[3]   Defendants reserve their right to seek an order compelling similarly situated putative class members to arbitrate their claims. Defendants recognize that they cannot seek such an order at this time because "putative class members are not parties to an action prior to class certification." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *3 (N.D. Cal. May 9, 2011) (internal quotations omitted); *see also Mora v. Harley Davidson Credit Corp.*, 2012 WL 1189769, at *15 (E.D. Cal. Apr. 9, 2012) ("[U]ntil a class is certified and the opt-out period has expired, unnamed Class members are not parties to this action, and their claims are not at issue."); *Laguna v. Coverall N. Am., Inc.*, 2011 WL 3176469, at *8 (S.D. Cal. July 26, 2011); *McLeod v. Ford Motor Co.*, 2005 WL 3763354, at *3 (C.D. Cal. Apr. 14, 2005).

To accomplish this objective, the FAA provides that a party may seek an order compelling arbitration. *See* 9 U.S.C. §§ 1, 4. Section 4 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). If both questions are answered in the affirmative, the court *must* compel arbitration. *Id.* at 1130; *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999).

"Courts must rigorously enforce arbitration agreements according to their terms, including terms that specify *with whom* [the parties] choose to arbitrate their disputes, and the rules under which that arbitration will be conducted." *Am. Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013) (internal quotations omitted). The question of "who has the power to decide arbitrability" turns upon what the parties agreed about that matter. *First Options of Chi. v. Kaplan, et al.*, 514 U.S. 938, 943 (1995). Where "there is clear and unmistakable evidence that the parties intended that questions of arbitrability be decided by the arbitrator, the arbitrator should decide those issues." *Guidewire Software, Inc.*, 2012 WL 5379589, at *3 (citing *Kaplan*, 514 U.S. at 943-44). This can be shown by an express statement in the arbitration provision, or by the incorporation of an arbitration association's rules providing that disputes regarding arbitrability shall be decided by the arbitrator. *See, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71-72 (2010) (agreement providing that arbitrator determines "enforceability" expressly delegates arbitrability to arbitrator); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011); *Guidewire Software*, 2012 WL 5379589, at *4; *Valley Power Sys., Inc. v. Gen. Elec. Co.*, 2012 WL 665977, at *5 (C.D. Cal. Feb. 27, 2012). If arbitrability is delegated to the arbitrator, "the Court's inquiry is 'limited . . . [to] whether the assertion of arbitrability is "wholly groundless."'" *Tompkins*, 2014 WL 2903752, at *4 (quoting *Qualcomm,* 466 F.3d at 1371 ).

In determining whether to compel arbitration, courts "must be cognizant of the [FAA's] federal policy favoring arbitration agreements: 'The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Chiron*

6

*Corp.*, 207 F.3d at 1131 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  The "party resisting arbitration" "bears the burden of proving the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## IV.   ARGUMENT

### A.   Nitsch Must Arbitrate His Claims Against DreamWorks Animation

The Court should compel Nitsch to arbitrate his claims against DreamWorks Animation.  A court must compel arbitration where (1) a valid arbitration agreement exists and (2) the arbitration agreement encompasses the claims at issue.  *See Farrow v. Fujitsu America, Inc.*, 2014 WL 1396412, at *2 (N.D. Cal. Apr. 9, 2014) (Koh, J.).  Here, there can be no question that Nitsch entered into valid arbitration agreements with DreamWorks Animation.  The agreements expressly provide for arbitration under AAA Rules.  As such, they clearly manifest the parties' intent that questions of arbitrability be decided by the arbitrator.  *See Guidewire Software*, 2012 WL 5379589, at *4.  Furthermore, the assertion of arbitrability is not wholly groundless.  The broad language in Nitsch's agreements plainly encompasses his compensation-based claims for antitrust violations and unfair competition.

The arbitration provisions in Nitsch's employment agreements also unmistakably manifest the parties' intent to delegate the power to decide arbitrability to the arbitrator.  In *Guidewire Software*, this Court held that an arbitration agreement incorporating AAA Rules clearly and unmistakably manifested the parties' intent to have the arbitrator decide issues of arbitrability.  *Guidewire Software*, 2012 WL 5379589, at *4.  The Court inferred the parties' intent from the fact that AAA Rules "provide that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'"  *Id.* at *4.  Like the *Guidewire Software* agreement, Nitsch's agreements incorporate AAA Rules.  Those Rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  Declaration of Shannon Mader in Support of Defendants' Motion to Compel Arbitration and Stay Proceedings ("Mader Decl."), Ex. A [2009 AAA Employment Arbitration Rules and Mediation Procedures] at 17, Rule 6a; Ex. B [2006 Employment Arbitration Rules and Mediation Procedures], Rule 6a.  Thus, it is for the arbitrator—not the Court—to decide whether Nitsch's claims against DreamWorks Animation are

arbitrable, and the Court's inquiry is limited to whether DreamWorks Animation's assertion of arbitrability is wholly groundless.  *See Guidewire Software*, 2012 WL 5379589, at *5.

Plainly, DreamWorks Animation's assertion of arbitrability is not wholly groundless.  By their terms, the arbitration provisions encompass "[a]ny dispute ***arising out of or relating to payment to Artist*** of any amount hereunder or the amount or calculation thereof, or ***any other dispute arising in any way out of the Agreement***, including its existence, validity or breach."  *See* Bowling Decl., Ex. A, ¶ Q (emphases added); *id.*, Ex. B, ¶ R (emphases added).)  There can be no question that Nitsch's claims here relate to his "payment" or compensation and arise out of his employment agreements, which set forth the terms of his compensation.  Nitsch repeatedly alleges that DreamWorks Animation conspired with the other Defendants to limit or reduce his compensation.  (*See, e.g.*, CAC ¶¶ 1, 7, 10, 78, 96, 100, 103, 104.)  And Nitsch seeks to recover the difference between the compensation he was paid and the compensation he would have been paid but for Defendants' alleged conspiracy—a determination that can only be made by looking at Nitsch's agreements.  (*Id.* ¶ 17.)  Therefore, his claims are arbitrable.

It has long been established that both federal and California antitrust claims are arbitrable, just like any other dispute between private parties, and that the parties do not need to use any special language in an arbitration agreement to encompass antitrust claims.  *See Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628-29 (1985); *Crown Homes, Inc. v. Landes*, 22 Cal. App. 4th 1273, 1276-83 (Cal. Ct. App. 1994).  Courts interpreting agreements similar to Nitsch's agreements have required arbitration of antitrust and unfair competition claims.  *See, e.g., JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172, 175 (2d Cir. 2004); *Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 843 (2d Cir. 1987); *Bischoff v. DirecTV*, 180 F. Supp. 1097, 1106 (C.D. Cal. 2002).  In *JLM*, the Second Circuit held that plaintiffs' antitrust claims were arbitrable pursuant to an arbitration clause providing that "[a]ny and all differences and disputes of whatsoever nature ***arising out of*** this Charter shall be put to arbitration."  387 F.3d at 172, 175 (emphasis added).  The court reasoned that the dispute "arose out of" the charters because plaintiffs' alleged damages consisted of the "artificially high" prices set forth in the charters.  *Id.* at 175.  In *Genesco*, the Second Circuit held that plaintiffs' unfair competition claim— which alleged a conspiracy to artificially increase prices—was arbitrable pursuant to an arbitration clause requiring arbitration of "[a]ll claims and disputes of whatever nature ***arising under*** this contract."

815 F.2d at 855 (emphasis added).  In *Bischoff*, the court held that plaintiffs' antitrust claims against

DirecTV were arbitrable under a provision calling for the arbitration of any claims "***relating to this***

***Agreement . . . or your service***."  180 F. Supp. at 1106.  The court noted that plaintiffs were alleging that

they paid higher prices than they would have been "but for DirecTV's alleged anticompetitive acts."  *Id.*

Here, too, Nitsch is alleging that his compensation—as set forth in his employment agreements—was

affected by Defendants' purported conspiracy.  (*See, e.g.*, CAC ¶¶ 1, 7, 10, 78, 96, 100, 103, 104.)

Accordingly, under *JLM*, *Genesco*, and *Bischoff*, Nitsch's claims are arbitrable, and DreamWorks

Animation's assertion of arbitrability is far from wholly groundless.[4]

## B.  Nitsch Also Is Equitably Estopped From Refusing To Arbitrate His Claims Against the Other Defendants

Under the doctrine of equitable estoppel, all Defendants are entitled to enforce the arbitration

provisions in Nitsch's employment agreements, even though they are not signatories to it.  "[A] litigant

who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state

contract law allows the litigant to enforce the agreement."  *Kramer v. Toyota Motor Corp.*, 705 F.3d

1122, 1128 (9th Cir. 2013).  California allows nonsignatories to enforce an arbitration agreement if

equitable estoppel applies.  *See Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186

---

[4]   *See also Simula*, 175 F.3d at 720-23 (holding that an agreement requiring arbitration of "all disputes arising in connection with this [a]greement" covered the plaintiff's antitrust claim); *In re TFT-LCD (Flat Panel Antitrust Litig.*, 2011 WL 2650689, at *4-6 (N.D. Cal. July 6, 2011) (holding that an agreement requiring arbitration of "any dispute related to this [a]greement" covered the plaintiffs' antitrust claims); *Murphy v. DirecTV*, 2011 WL 3319574, at *3-4 (C.D. Cal. Aug. 2, 2011) (holding that an agreement requiring arbitration of "any legal or equitable claim relating to this [a]greement" covered plaintiffs' claims for unfair business practices, false advertising, violations of the Consumers Legal Remedies Act, and fraud); *Hopkins v. Carley*, 2011 WL 1327359, at *6 (N.D. Cal. Apr. 6, 2011) (Koh, J.) (holding that an agreement requiring arbitration of "any dispute *arising under* the [a]greement" covered tort claims for fraudulent inducement, negligent misrepresentation, and rescission) (emphasis added); *Esaka v. Nanticoke Health Servs., Inc.*, 752 F. Supp. 2d 476, 478-79, 482-83 (D. Del. 2010) (holding that a clause providing for arbitration of "all claims or controversies concerning this Agreement *or arising in any way out of the performance of this [a]greement . . . including any dispute regarding . . . compensation*," encompassed plaintiff's Title VII discrimination claims) (emphasis added); *Owner–Operator Independent Drivers Assoc., Inc. v. Swift Transp. Co.*, 288 F. Supp. 2d 1033, 1036-37 (D. Ariz. 2003) (finding that a clause requiring arbitration of "[a]ny disagreement or litigation *arising under this Contract*" encompassed federal statutory claims) (emphasis added).

Cal. App. 4th 696, 714 (2010).  Equitable estoppel applies in two circumstances:  (1) when the "plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant," or the plaintiff's "causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations," *id.* at 706, 716; *or* (2) when the complaint alleges "substantially interdependent and concerted misconduct" that is "founded in or intimately connected with the obligations of the underlying agreement," *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219 (2009). *See also Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2012) (holding that, under California law, equitable estoppel applies "'(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.'") (quoting *Kramer*, 705 F.3d at 1128-29).  Both circumstances are present here.

First, there can be no question that Nitsch is relying on the terms of his written agreements with DreamWorks Animation.  He is "seek[ing] to recover ***the difference between the compensation that [he] [was] paid and what [he] would have been paid absent Defendants' illegal conduct***."  (CAC ¶ 17 (emphasis added).)  That purported "difference," of course, cannot be determined without "'rely[ing] on the terms of [his] written agreement[s]'" with DreamWorks Animation, which in turn incorporate the hourly rates and benefits collectively bargained for by the union that are set forth in the applicable CBAs.  *Murphy*, 724 F.3d at 1229.  Since Nitsch's purported damages are based on the wages established in these agreements, he is equitably estopped to deny his obligations under those agreements—including that he arbitrate his claims.

Second, Nitsch is alleging "interdependent and concerted misconduct" by all Defendants, acting in a single conspiracy.  Specifically, Nitsch alleges a single "systematic and deeply ingrained" conspiracy (CAC ¶ 14), in which Defendants agreed not to solicit each other's employees (*id.* ¶¶ 42-73) and agreed to fix the wages and salaries of their employees (*id.* ¶¶ 74-91).  Nitsch also alleges "shared goals" among Defendants to "suppress the amount of compensation that would have been paid to Plaintiffs and their fellow class members."  (*Id.* ¶ 7; *see also, e.g., id.* ¶¶ 6, 8, 10, 41.)  Nitsch further

10

claims that Defendants' alleged conspiracy reduced compensation for Plaintiffs and putative class members and restricted competition in the labor market (*id.* ¶ 96), thereby depriving Nitsch and putative class members of "millions of dollars in compensation" (*id.* ¶ 1). Finally, Nitsch's allegations are "intimately connected with the obligations of the underlying agreement" because he is seeking to recover, on behalf of himself and the putative class members, "the difference between the compensation that class members were paid and what class members would have been paid absent Defendants' illegal conduct, and to enjoin Defendants from repeating or engaging in their unlawful conduct." (*Id.* ¶ 17.) As discussed above, there is no way to calculate this alleged difference without using the wage rates established in Nitsch's employment agreements and the applicable CBAs setting hourly rates and benefits. Accordingly, equitable estoppel bars Nitsch from denying his obligation to arbitrate. *See, e.g.*, *Boucher v. Alliance Title Co., Inc.*, 127 Cal. App. 4th 262, 272 (Cal. Ct. App. 2005) ("By relying on contract terms in a claim against a non-signatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement. . . . The fundamental point is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved.").

The Ninth Circuit's decision in *Murphy* does not require a different result. In that case, the plaintiffs had arbitration agreements with DirecTV. Best Buy sought to compel arbitration under those agreements as a nonsignatory but the court rejected its claim. However, the reason that it did so was that the claims against Best Buy (unlike those against DirecTV) were based upon alleged "misrepresentations to the customers at the point of sale," which had "nothing to do" with the customer agreements. *Murphy*, 724 F.3d at 1230. Thus, the Ninth Circuit held that the plaintiffs were not compelled to arbitrate their claims against Best Buy because the DirecTV customer agreements were "factually irrelevant" to the plaintiffs' claims against Best Buy. *Id.* In the present case, by contrast, Nitsch "alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Id.* at 1229 (internal quotations omitted). Nitsch alleges that his compensation and benefits, specified in his employment agreements with DreamWorks Animation, were reduced as *a result of* the alleged conspiracy. (*See, e.g.*, CAC ¶¶ 1, 7, 10, 14, 96, 104.)

11

Further, according to Nitsch, the terms of his compensation would have been different if Defendants had not engaged in the purported wage-fixing and non-solicitation conspiracy. (*See, e.g.*, CAC ¶¶ 1, 17.) Thus, unlike the plaintiffs in *Murphy*, Nitsch's claims turn directly on "interdependent and concerted" conduct by the defendants and he will have to rely on the terms of his agreements to prove his purported damages.

Finally, allowing Nitsch to both litigate *and* arbitrate the *same* claims, based on the *same* facts, would render the arbitration proceedings "meaningless and the federal policy in favor of arbitration [would be] effectively thwarted." *Brown v. Gen. Steel Domestic Sales, LLC*, 2008 WL 2128057, at *7 (C.D. Cal. May 19, 2008) (internal quotations omitted). Of course, it also would create inefficiencies and pose the risk of inconsistent judgments. *See id.* at *8 ("[W]here a lawsuit against non-signatories is inherently bound up with claims against a signatory, the court should compel arbitration in order to avoid denying the signatory the benefit of the arbitration clause, and in order to avoid duplicative litigation which undermines the efficiency of arbitration.") (internal quotations omitted).

**C.    The Court Should Stay This Action As To Nitsch**

Because all of Nitsch's claims against DreamWorks Animation are subject to arbitration, the Court should stay the prosecution of his claims against DreamWorks Animation pending the outcome of such arbitration. *See* 9 U.S.C. § 3; *see also Concepcion*, 131 S. Ct. at 1748 (Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'"). Further, because Nitsch is estopped to deny that his claims against the nonsignatory Defendants are arbitrable, the Court should stay prosecution of Nitsch's claims against all Defendants pending the outcome of arbitration.

/ / /

/ / /

/ / /

/ / /

## V.     CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion to compel Nitsch to arbitrate his claims against Defendants, and stay this case as to Nitsch pending the completion of those proceedings.

DATED:  January 9, 2015                    COVINGTON & BURLING LLP


                                           By:  */s/ Emily Johnson Henn*
                                                Emily Johnson Henn

                                                *Attorneys for Defendants*
                                                The Walt Disney Company
                                                Lucasfilm Ltd., LLC
                                                Pixar
                                                ImageMovers, LLC
                                                ImageMovers Digital

DATED:  January 9, 2015                    GIBSON, DUNN & CRUTCHER LLP


                                           By:  */s/ Rod J. Stone*
                                                Rod J. Stone

                                                *Attorneys for Defendant*
                                                DreamWorks Animation SKG, Inc.

DATED:  January 9, 2015                    ORRICK, HERRINGTON & SUTCLIFFE
                                           LLP

                                           By:  */s/ Stephen V. Bomse*
                                                Stephen V. Bomse

                                                *Attorneys for Defendants*
                                                Sony Pictures Animation Inc.
                                                Sony Pictures Imageworks Inc.

DATED:  January 9, 2015                    WILLIAMS & CONNOLLY LLP


                                           By:  */s/ John E. Schmidtlein*
                                                John E. Schmidtlein

                                                *Attorneys for Defendant*
                                                Blue Sky Studios, Inc.

1

**ATTESTATION**

2          I, Shannon E. Mader, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the

3 concurrence to the filing of this document has been obtained from each signatory hereto.

4

5 DATED:   January 9, 2015                    By:   _/s/ Shannon E. Mader_
                                                    Shannon E. Mader

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14