Daniel A. Small (pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
dsmall@cohenmilstein.com

Steve W. Berman (pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com

[Additional Counsel on Sig. Page]

*Interim Co-Lead Plaintiffs' Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANIMATION WORKERS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Master Docket No. 14-cv-4062-LHK<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date:      April 23, 2015<br>Time:     1:30 p.m.<br>Courtroom: 8<br>Judge:    Hon. Lucy H. Koh |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

STATEMENT OF THE ISSUES ............................................................................................. 2

FACTS ...................................................................................................................................... 2

LEGAL STANDARD .............................................................................................................. 3

ARGUMENT ............................................................................................................................ 5

    I.    NON-SIGNATORY DEFENDANTS CANNOT COMPEL NITSCH TO ARBITRATE ........................................................................................................... 5

    II.   DREAMWORKS IS ENTITLED TO HAVE AN ARBITRATOR DECIDE THE ARBITRABILITY OF DISPUTES ARISING FROM NITSCH'S EMPLOYMENT AT DREAMWORKS, BUT NOT THE ARBITRABILITY OF DISPUTES ARISING FROM HIS EMPLOYMENT AT SONY ................................................................................ 10

    III.  AT MOST, A LIMITED STAY IS APPROPRIATE ........................................... 12

    IV.  CONCLUSION ...................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                    **Page(s)**

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013) ............................................................................................................. 1, 9

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009) ...................................................................................................................... 4

*Avalonbay Cmtys., Inc. v. Davinci Constr. of Nassau, Inc.*,
   No. 07-cv-689, 2007 WL 6958836 (E.D.N.Y. Feb. 16, 2007) ..................................................... 11

*Britton v. Co-op Banking Grp.*,
   4 F.3d 742 (9th Cir. 1993) ............................................................................................................. 6

*Broughton v. CIGNA Healthplans*,
   988 P.2d 67 (Cal. 1999), *superseded on other grounds by statute as recognized by
   Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928 (9th Cir. 2013) .............................................. 11

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
   No. 12-md-2330, 2014 WL 1338474 (N.D. Cal. Mar. 28, 2014) ................................................... 4

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) ....................................................................................................... 4

*Danny's Constr. Co. v. Birdair, Inc.*,
   136 F. Supp. 2d 134 (W.D.N.Y. 2000) ........................................................................................ 11

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ............................................................................................................... 11, 12

*ev3 Inc. v. Collins*,
   No. A08-1816, 2009 WL 2432348 (Minn. Ct. App. Aug. 11, 2009) ........................................... 10

*In re Facebook PPC Advertising Litig.*,
   No. 09-cv-3043, 2010 WL 3341062 (N.D. Cal. Aug. 25, 2010) .................................................. 12

*Goldman v. KPMG LLP*,
   92 Cal. Rptr. 3d 534 (Cal. Ct. App. 2009) ............................................................................ *passim*

*Grigson v. Creative Artists Agency, L.L.C.*,
   210 F.3d 524 (5th Cir. 2000) ......................................................................................................... 9

*Guidewire Software, Inc. v. Chookaszian*,
   No. 12-cv-3224, 2012 WL 5379589 (N.D. Cal. Oct. 31, 2012) ............................................. 10, 11

*In re Humana Inc. Managed Care Litig.*,
   285 F.3d 971 (11th Cir. 2002) ....................................................................................................... 6

*Jones v. Jacobson*,
   195 Cal. App. 4th 1 (Cal. Ct. App. 2011) .......................................................................................4

*Klay v. All Defendants*,
   389 F.3d 1191 (11th Cir. 2004) ....................................................................................................12

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013), *cert. denied sub nom. Toyota Motor Corp. v. Choi*,
   134 S. Ct. 62 (2013) ............................................................................................................ passim

*Martinez v. Welk Grp., Inc.*,
   No. 09-cv-2883, 2012 WL 112535 (S.D. Cal. Jan. 12, 2012) .......................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ........................................................................................................................4, 11

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ..............................................................................................5, 6, 8, 9

*Pao v. Kleiner Perkins Caufield & Byers LLC*,
   No. CGC-12-520719, 2013 WL 3224589 (Cal. Ct. App. June 26, 2013) .......................................7

*Qualcomm Inc. v. Nokia Corp.*,
   466 F.3d 1366 (Fed. Cir. 2006) .....................................................................................................10

*Rajagopalan v. NoteWorld, LLC*,
   718 F.3d 844 (9th Cir. 2013) ..........................................................................................................5

*Rambus Inc. v. Hynix Semiconductor, Inc.*,
   569 F. Supp. 2d 946 (N.D. Cal. 2008) ..........................................................................................11

*Royal Printing Co. v. Kimberly-Clark Corp.*,
   621 F.2d 323 (9th Cir. 1980) .........................................................................................................2

*Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*,
   42 F.3d 1292 (9th Cir. 1994) .....................................................................................................4, 11

*Victoria v. Superior Court*,
   710 P.2d 833 (Cal. 1985) (en banc) ...............................................................................................4

*Wheeler v. St. Joseph Hosp.*,
   133 Cal. Rptr. 775 (1976) ..............................................................................................................4

# INTRODUCTION

Plaintiff Robert A. Nitsch, Jr. entered into an arbitration agreement with one Defendant, Dreamworks Animation SKG, Inc. ("DreamWorks"), encompassing a limited range of disputes arising out of Nitsch's employment agreement with DreamWorks or related to payment of the amount provided thereunder. Based on this limited provision with a single Defendant, all other Defendants (the "Non-Signatory Defendants") seek to compel Nitsch to arbitrate with parties with which he never contracted and even with an employer, Defendant Sony Pictures Imageworks Inc.,[1] which declined to seek an arbitration agreement with Nitsch. Defendants base this demand exclusively on the ground that the depressed wages produced by Defendants' conspiracy might be calculated "using the wage rates established in Nitsch's employment agreements."[2] But the Ninth Circuit has specifically held that reliance on a "price term" is "not enough" to allow non-signatories to free-ride on a co-conspirator's arbitration agreement.[3] Moreover, the agreements from which the Non-Signatory Defendants seek to benefit state that "nothing in the agreement shall be construed as creating a third party beneficiary agreement."[4] Allowing third parties to take advantage of the agreements would thus ignore and defeat the express objectives of the parties themselves. Nor do Defendants identify any equitable considerations that could possibly overcome the principle that "[c]ourts must rigorously enforce [arbitration] agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes."[5]

---

[1] For purposes of this brief, Sony Pictures Imageworks Inc. will be referred to as "Sony"; Sony Pictures Imageworks Inc. and Sony Pictures Animation Inc. will be collectively referred to as the "Sony Defendants"; and Sony Pictures Entertainment Inc. (the parent company of the Sony Defendants) will be referred to as "SPE."

[2] Defs.' Mem. of P. & A. in Supp. of Mot. to Compel Arbitration & Stay Proceedings ("Arb. Mot.") at 11, ECF No. 71.

[3] *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1132 (9th Cir. 2013), *cert. denied sub nom. Toyota Motor Corp. v. Choi*, 134 S. Ct. 62 (2013).

[4] Bowling Decl. Ex. A ¶ S, Ex. B ¶ T (emphasis omitted). All "Decl." references are to declarations filed by Defendants in support of their Arbitration Motion, using the last name of the declarant.

[5] *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (internal quotations, citations, and brackets omitted).

As to DreamWorks itself, the language of the arbitration clause, properly read, does not cover the claims in this case. But Plaintiffs recognize that—as to Nitsch's claim against DreamWorks for underpayment *by DreamWorks*—Defendants' interpretation is not groundless and must be decided by the arbitrator. But under no credible reading does the clause encompass Nitsch's claim against DreamWorks for the amount he was underpaid while employed *by a different Defendant, Sony*.[6] Nor is there any reasonable argument that Nitsch's release upon his departure from Sony applies to any Defendant other than the Sony Defendants. Accordingly, DreamWorks has no colorable argument that Nitsch must arbitrate the entirety of his claims against it. And, of course, Defendants do not request that any other named plaintiff be compelled to arbitrate with DreamWorks (or any other Defendant). Thus, regardless of the outcome of this motion, all Defendants will remain in front of this Court, eliminating any justification for a stay pending arbitration.

**STATEMENT OF THE ISSUES**

(1) Whether Non-Signatory Defendants are entitled to compel Plaintiff Nitsch to arbitrate, where they are not parties to the contracts containing arbitration clauses, the only connection between the claims and the contracts is that the contracts contain a wage term, and the contracts specify that they do not create any third-party beneficiaries.

(2) Whether an arbitration clause that covers disputes "arising out of or relating to payment . . . of any amount hereunder" or "arising in any way out of [this] Agreement" can be used to compel arbitration of a claim for underpayment by a different employer several years earlier and not pursuant to the Agreement.

**FACTS**

During the Class Period, Nitsch worked for two Defendants: Sony and DreamWorks. First, he worked for Sony in 2004. At the conclusion of this employment, he signed an "Acknowledgement and Release" (the "Acknowledgement") with the following language:

I hereby release the Company [SPE], its parents, subsidiaries, affiliates, successors,

---

[6] DreamWorks is jointly and severally liable for its co-conspirator's underpayment of Nitsch pursuant to the conspiracy. *See, e.g.*, *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980).

> assigns, and employee benefits plans, and its and their directors, officers, trustees, administrators, agents and employees (collectively, the 'Releasees') from any and all claims I now have or claim (or which I previously had or claimed) in connection with my employment with or termination from the Company and/or any of the Releasees.[7]

Nothing in the Acknowledgment released any entities unrelated to SPE. Likewise, the Acknowledgment released only "claims I *now* have or claim (or which I *previously* had or claimed)" and not any future claims, such as Nitsch's claim based on his subsequent employment with DreamWorks.[8] Similarly, Nitsch only agreed to release claims "in connection with [his] employment with or termination from *the Company and/or any of the Releasees*,"[9] but not in connection with his employment or termination by Sony or any other entity.

Second, Nitsch worked for DreamWorks, signing contracts in 2007 and 2010 (the "DreamWorks Agreements").[10] These agreements set out various employment terms, including the amount Nitsch would be paid. They included an arbitration clause that encompassed "[a]ny dispute arising out of or relating to payment to Artist of any amount hereunder or the amount or calculation thereof, or any dispute arising in any way out of the Agreement, including its existence, validity or breach."[11] The DreamWorks Agreements also provided in bold capital letters that "**NOTHING IN THE AGREEMENT SHALL BE CONSTRUED AS CREATING A THIRD PARTY BENEFICIARY AGREEMENT**."[12]

## LEGAL STANDARD

With one important exception, Plaintiffs do not contest many of the principles that Defendants cite in their background statement of the federal law of arbitration: that federal policy favors arbitration; that doubts about arbitrability are resolved in favor of arbitration; and that the

---

[7] Shin Decl. Ex. A at 1.

[8] Nitsch's employment agreement with Sony did not include an arbitration provision. Sometime after Nitsch's employment, Sony apparently began insisting on arbitration clauses in its standard employment agreements. *See, e.g.*, *id.* Ex. B Standard Terms ¶ 11(b).

[9] *Id.* Ex. A at 1.

[10] Although there are minor differences between the two DreamWorks Agreements, none have any relevance at this stage and the two contracts will be treated the same for present purposes.

[11] Bowling Decl. Ex. A ¶ Q, Ex. B ¶ R.

[12] *Id.* Ex. A ¶ S, Ex. B ¶ T.

party resisting arbitration bears the burden of showing that its claims are outside the arbitration clause.[13] However, Defendants fail to recognize that those principles apply only to whether *claims* belong in arbitration and not to whether *parties* agreed to arbitration in the first place. "[T]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement."[14] Similarly, California courts[15] reject "the proposition that the burden is on the party opposing arbitration (e.g., the [Plaintiffs]) to show a nonsignatory is not a party to an agreement to arbitrate."[16] Accordingly, the Non-Signatory Defendants bear the burden of establishing their purported right to arbitration via equitable estoppel, and federal policy does not put a thumb on the scale in favor of arbitration.

Furthermore, courts "cannot expand the parties' agreement to arbitrate in order to achieve greater efficiency."[17] Thus, if the terms of an arbitration agreement allow some parties to escape federal court but not others, or allow one party to escape part of a claim but not its entirety, courts and parties must respect those terms. "The Federal Arbitration Act '*requires* piecemeal resolution when necessary to give effect to an arbitration agreement.'"[18]

---

[13] Arb. Mot. at 5-7.

[14] *Kramer*, 705 F.3d at 1126 (internal citation omitted); *see also, e.g.*, *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) ("The question here is not whether a particular issue is arbitrable, but whether a particular party is bound by the arbitration agreement. Under these circumstances, the liberal federal policy regarding the scope of arbitrable issues is inapposite."); *Victoria v. Superior Court*, 710 P.2d 833, 834 (Cal. 1985) (en banc) ("[T]he policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate.") (quoting *Wheeler v. St. Joseph Hosp.*, 133 Cal. Rptr. 775, 783 (1976)).

[15] State law governs the equitable estoppel question. *In re Carrier IQ, Inc. Consumer Privacy Litig.*, No. 12-md-2330, 2014 WL 1338474, at *5 (N.D. Cal. Mar. 28, 2014) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)). In any event, "federal [law] is substantially similar to state law." *Id.* at *5 n.4.

[16] *Jones v. Jacobson*, 195 Cal. App. 4th 1, 16 n.8 (Cal. Ct. App. 2011); *accord, e.g.*, *In re Carrier IQ,*, 2014 WL 1338474, at *4 ("Defendants have the burden of establishing equitable estoppel . . . .").

[17] *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994).

[18] *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)); *see also, e.g.*, *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 553-54 (Cal. Ct. App. 2009). ("The proposition that a court should compel arbitration . . . merely to avoid duplicative litigation, is, to the extent it purports to be based on principles of equitable estoppel, simply wrong.").

# ARGUMENT

## I. NON-SIGNATORY DEFENDANTS CANNOT COMPEL NITSCH TO ARBITRATE

"Generally, the contractual right to compel arbitration 'may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'"[19] There are limited circumstances in which a litigant may invoke an arbitration clause to which they are not a party. The Non-Signatory Defendants rely on equitable estoppel, which "is narrowly confined" in the arbitration context.[20] Indeed, the Ninth Circuit has "*never* previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff" under any state's law.[21]

In California, equitable estoppel applies "only under two very specific conditions."[22] These two conditions are "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement."[23]

The doctrine's chief concern is "the policy that a plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'"[24] Thus, under California law, "equitable estoppel is inapplicable where a plaintiff's 'allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the . . . agreements.'"[25] "*The plaintiff's actual dependence on the underlying contract in*

---

[19] *Kramer*, 705 F.3d at 1126 (quoting *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993)).

[20] *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013).

[21] *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (emphasis added).

[22] *Murphy*, 724 F.3d at 1229.

[23] *Kramer*, 705 F.3d at 1128-29 (citing *Goldman*, 92 Cal. Rptr. 3d at 541) (internal quotations omitted).

[24] *Murphy*, 724 F.3d at 1229 (quoting *Goldman*, 92 Cal. Rptr. 3d at 543).

[25] *Id.* at 1230 (quoting *Goldman*, 92 Cal. Rptr. 3d at 551).

*making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel.*"[26] For this reason, cases applying equitable estoppel typically "involve contract-based causes of action, such as tortious interference or breach of contract."[27]

Defendants do not meet either of the narrow conditions for the application of equitable estoppel. First, Defendants cannot satisfy the "intertwined" condition, as Nitsch's claim does not rely on any terms of the DreamWorks Agreements. Those agreements are not cited, referenced, or even alluded to in the Consolidated Amended Complaint ("CAC"). Plaintiffs do not allege any breach of the DreamWorks Agreements or any other failure of DreamWorks to meet its obligations thereunder, and Defendants do not suggest that they do. Indeed, it is hard to understand how the CAC could even arguably rely on the DreamWorks Agreements when its allegations apply identically to two plaintiffs who never contracted with DreamWorks.

Defendants' sole ground for arguing that Plaintiffs' claims are "intimately founded in and intertwined with the [DreamWorks Agreements]"[28] is that "Nitsch's purported damages are based on the wages established in these agreements . . . ."[29] According to Defendants, "there is no way to calculate this alleged difference [between what wages were and what they would have been without the conspiracy] without using the wage rates established in Nitsch's employment agreements . . . ."[30]

The Ninth Circuit considered an identical argument in *Kramer* and rejected it. In that case, a non-signatory defendant argued that estoppel was appropriate where "Plaintiffs rely on the 'price term' of the Purchase Agreements because Plaintiffs request damages for diminution of value . . .

---

[26] *Goldman*, 92 Cal. Rptr. 3d at 550 (quoting *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (emphasis added by *Goldman*)).

[27] *Murphy*, 724 F.3d at 1231 n.7.

[28] *Kramer*, 705 F.3d at 1128-29.

[29] Arb. Mot. at 10.

[30] *Id.* at 11. Defendants repeatedly refer to the collective bargaining agreement incorporated by reference into the DreamWorks Agreements, but it is unclear what terms therein they believe are relevant. Where wages are concerned, the CBA sets only minimum compensation. Because Nitsch's wages exceeded that minimum, it is Nitsch's pay, not the CBA minimum, that is relevant to the calculation of damages.

."[31] The Ninth Circuit held that "[u]nder California law, mere reference to a term of the Purchase Agreements is not enough."[32] The fact that defendants' wrongdoing affected the value delivered under an agreement containing an arbitration clause does not provide the required "interrelatedness between Plaintiffs' claims and the obligations of" that contract.[33] It is irrelevant that the court may have to "look to the [agreement] to ascertain the requested relief."[34] If "Plaintiffs do not seek to enforce or challenge the terms, duties, or obligations of the" agreements, equitable estoppel is inappropriate.[35]

Defendants' arguments are indistinguishable from those rejected in *Kramer*.[36] The *Kramer* plaintiffs alleged that defendants' extra-contractual wrongdoing inflated the price plaintiffs paid; Plaintiffs here allege that Defendants' extra-contractual wrongdoing depressed the compensation Plaintiffs were paid. In both, the fact that a contract was involved is only incidental. As the Ninth Circuit pointed out, a class member who paid with cash (and thus did not sign a contract) in *Kramer* "would still state a claim for which relief could be granted";[37] here, too, a class member who worked without a contract for any of the Defendants would have a claim no different from Nitsch's. *Kramer* squarely controls this case.

Oddly, Defendants do not even attempt to distinguish *Kramer*, despite acknowledging that it represents controlling law.[38] Defendants focus instead on *Murphy*, which repeatedly reaffirms

---

[31] *Kramer*, 705 F.3d at 1132.

[32] *Id.*

[33] *Id.*

[34] *Id.*; *see also, e.g.*, *Pao v. Kleiner Perkins Caufield & Byers LLC*, No. CGC-12-520719, 2013 WL 3224589, at *8 (Cal. Ct. App. June 26, 2013) ("It may be the case that resolution of Pao's claim for damages . . . may require peripheral reference to the Operating Agreements, but it is simply not the case that Pao's . . . claims would not lie absent the Operating Agreements.").

[35] *Kramer*, 705 F.3d at 1132.

[36] Indeed, Defendants' argument for equitable estoppel here is even thinner than the basis offered in *Kramer*. The *Kramer* plaintiffs sought "revocation of acceptance" of the contracted sale, not just damages. 705 F.3d at 1131. Plaintiffs here do not seek to undo anything in the DreamWorks Agreement, but merely to recover the compensation they would have obtained had Defendants not conspired to suppress compensation.

[37] *Id.* at 1132.

[38] *See* Arb. Mot. at 9-10.

*Kramer*.[39] As *Murphy* explained, there can be no equitable estoppel without an alleged "violation of any duty, obligation, term or condition imposed by the . . . agreements."[40] *Murphy* thus squarely contradicts Defendants' argument here. *Murphy* further makes clear that suing under a statute like a consumer protection law makes equitable estoppel "particularly inappropriate."[41] Equitable estoppel is just as inappropriate here where Plaintiffs sue to enforce the antitrust laws.

Moreover, Defendants' assertion that damages will be determined by considering Nitsch's contract is wrong. Damages will not be calculated by reviewing class members' contracts; they will be calculated by reviewing Defendants' actual payments to class members. Plaintiffs have sought data on what Defendants actually paid their workers; Plaintiffs' experts will analyze that data, not the number stated in class members' contracts. Indeed, if Plaintiffs were to rely on stated contract prices rather than payment data, Defendants would certainly object that the contract terms do not show what was actually paid.[42] Defendants' argument that contract terms are at the heart of damage determinations is a result-oriented argument with no basis in law, practice, or the facts of this case.

Defendants cannot show the second, "concerted misconduct," condition for the same reason. Here again, "a nonsignatory may compel arbitration only when the claims against the nonsignatory are founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause*."[43] Indeed, "some more recent cases have expressly stated that substantially interdependent and concerted misconduct is not, by itself, sufficient for the application of equitable estoppel."[44]

*Goldman*, *Kramer*, and *Murphy* all make clear that the incidental use of a contract with an arbitration clause in a collusive scheme does not render a claim challenging the collusion "founded

---

[39] *Murphy*, 724 F.3d at 1229-32.

[40] *Id.* at 1230 (quoting *Goldman*, 92 Cal. Rptr. 3d at 551).

[41] *Id.* at 1231 n.7.

[42] Defendants have declined to produce unredacted versions of the expert reports in *In re High-Tech Employee Antitrust Litigation*, No. 11-cv-2509 (N.D. Cal.), due to third-party confidentiality concerns, but Plaintiffs' review of the redacted reports strongly suggests that data, not plaintiffs' individual contracts, drove the damages analysis.

[43] *Goldman*, 92 Cal. Rptr. 3d at 541.

[44] *Id.* at 542.

in and inextricably bound up with the obligations imposed by the agreement . . . ."[45] "[N]one of the terms in [the DreamWorks] [A]greements are alleged to have been violated or otherwise . . . form any part of [Plaintiffs'] complaints."[46] Plaintiffs' claims thus are not founded in the obligations of the DreamWorks Agreements—neither intimately nor inextricably nor otherwise.

Finally, Defendants ignore that equitable estoppel is *equitable*. "[T]he linchpin for equitable estoppel is equity—fairness."[47] Defendants barely attempt to argue why the equities weigh in favor of arbitration. They raise the specter of "inefficiencies and . . . inconsistent judgments,"[48] but do not mention that identical claims will proceed on behalf of Georgia Cano, David Wentworth, and the proposed class *whether or not* Nitsch is compelled into arbitration. It is Defendants' proposal that would create the real risk of inconsistent judgments: the Non-Signatory Defendants' conduct would be adjudged simultaneously in federal court and in arbitration, such that the arbitrator might find Non-Signatory Defendants liable and this Court find them innocent, or vice versa.

But the equities are even more starkly in Nitsch's favor. The DreamWorks Agreements emphatically disclaimed that "**NOTHING IN THE AGREEMENT SHALL BE CONSTRUED AS CREATING A THIRD PARTY BENEFICIARY AGREEMENT**."[49] The Non-Signatory Defendants' argument—that they can claim the benefits of the agreements on equitable grounds even though the parties to the agreements explicitly sought to prohibit reliance by non-signatories— cannot be squared with the principle that "[c]ourts must rigorously enforce . . . agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes."[50] This is especially so as to the Sony Defendants, which chose to enter agreements with Nitsch that lacked arbitration clauses but now seek to avail themselves of what they did not obtain

---

[45] *Id.* at 541 (emphasis omitted); *see also Kramer*, 705 F.3d at 1132-33; *Murphy*, 724 F.3d at 1231-32.

[46] *Goldman*, 92 Cal. Rptr. 3d at 553.

[47] *Id.* at 543 (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000)).

[48] Arb. Mot. at 12.

[49] Bowling Decl. Ex. A ¶ S, Ex. B ¶ T.

[50] *Italian Colors*, 133 S. Ct. at 2309 (internal quotations, citations and brackets omitted).

by contract. Thus, even if Nitsch's claims satisfied the prerequisites for equitable estoppel (which, as explained above, they do not), fairness would dictate that Nitsch not be compelled into arbitration that he specifically contracted to avoid.[51]

## II.   DREAMWORKS IS ENTITLED TO HAVE AN ARBITRATOR DECIDE THE ARBITRABILITY OF DISPUTES ARISING FROM NITSCH'S EMPLOYMENT AT DREAMWORKS, BUT NOT THE ARBITRABILITY OF DISPUTES ARISING FROM HIS EMPLOYMENT AT SONY

As to DreamWorks, Defendants are correct that the question before the Court is whether DreamWorks' "assertion of arbitrability is 'wholly groundless.'"[52] Defendants' interpretation of the DreamWorks Agreements is wrong—but Plaintiffs recognize that it is not *wholly* groundless. Accordingly, the arbitrator must decide the arbitrability of Nitsch's claim against DreamWorks to the extent it relates in at least some colorable way to his payment by DreamWorks.

But as Defendants acknowledge, Nitsch also worked at Sony, which did not include an arbitration clause in its employment agreement with Nitsch. In a footnote, Defendants assert that "Nitsch has no claims based on his employment with SPI,"[53] owing to the release in the Acknowledgment, but this argument is based on a mischievous elision of the Acknowledgment. Defendants quote the language specifying *what* Nitsch released, but not the language specifying *whom* he released. The Acknowledgment only releases SPE and related entities, explicitly limiting the "Releasees" to "the Company [SPE], its parents, subsidiaries, affiliates, successors, assigns, and employee benefits plans, and its and their directors, officers, trustees, administrators, agents and employees."[54] Any argument that Nitsch released the other Defendants is frivolous.[55]

---

[51] *Cf., e.g.*, *ev3 Inc. v. Collins*, No. A08-1816, 2009 WL 2432348, at *7 (Minn. Ct. App. Aug. 11, 2009) (even though claims satisfied equitable estoppel test, court properly declined to apply estoppel on fairness grounds).

[52] *Guidewire Software, Inc. v. Chookaszian*, No. 12-cv-3224, 2012 WL 5379589, at *4 (N.D. Cal. Oct. 31, 2012) (quoting *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006)).

[53] Arb. Mot. at 3 n.1.

[54] Shin Decl. Ex. A at 1.

[55] Defendants' footnote also discusses Plaintiff Cano, claiming that she "has no claims against SPI" because the FAC does not allege that she was employed by SPI. Arb. Mot. at 3 n.1. But Cano worked for two other Defendants during the pendency of the conspiracy, FAC ¶ 19, and SPI is jointly and severally liable for her damages as a result of the conspiracy. Defendants' footnote purports to reserve the right to compel Cano into arbitration at a later date, but they cannot

Nitsch thus may litigate in court against DreamWorks based on DreamWorks' participation in the conspiracy while Nitsch was employed at SPI. Where a case contains both disputes covered by an arbitration agreement and disputes outside the scope of any arbitration agreement, a party cannot be compelled to arbitrate the latter portions.[56] The question is then whether the DreamWorks Agreements can be read so broadly as to cover a claim for DreamWorks' participation in the conspiracy when it suppressed Nitsch's wages at SPI. Such a reading would be "wholly groundless" and thus can be decided by this Court without resort to an arbitrator.[57]

The arbitration clause in the DreamWorks Agreements covers two categories of disputes: (1) "Any dispute arising out of or relating to payment to Artist of any amount hereunder or the amount or calculation thereof"; and (2) "any other dispute arising in any way out of the Agreement."[58] Nitsch's claims regarding his time at Sony do not relate in any way to his payment by DreamWorks of any amount under the DreamWorks Agreements (not even in the tenuous sense advocated by the Non-Signatory Defendants), so they are plainly not the first type of dispute. Nor can it be said that the dispute arises out of the DreamWorks Agreements; the dispute would exist whether or not the DreamWorks Agreements existed, and those agreements will play absolutely no role in its

---

strategically reserve the option of compelling arbitration until they see whether they like how the case develops. *See, e.g.*, *Martinez v. Welk Grp., Inc.*, No. 09-cv-2883, 2012 WL 112535, at *3-4 (S.D. Cal. Jan. 12, 2012). In any event, the Court need not "countenance substantive arguments raised only in footnotes." *Rambus Inc. v. Hynix Semiconductor, Inc.*, 569 F. Supp. 2d 946, 985 (N.D. Cal. 2008).

[56] *See, e.g.*, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-19 (1985) ("[D]istrict courts *shall* direct the parties to proceed to arbitration on *issues* as to which an arbitration agreement has been signed" even if it results in "bifurcated proceedings") (second emphasis added); *Tracer Research*, 42 F.3d at 1294 ("The Federal Arbitration Act '*requires* piecemeal resolution when necessary to give effect to an arbitration agreement.'" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)); *Danny's Constr. Co. v. Birdair, Inc.*, 136 F. Supp. 2d 134, 146 (W.D.N.Y. 2000) (granting motion to compel arbitration as to "part of a claim," even though it would "likely result in [parties] contesting related issues of fact in two different forums"); *Broughton v. CIGNA Healthplans*, 988 P.2d 67, 82 (Cal. 1999), *superseded on other grounds by statute as recognized by Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928 (9th Cir. 2013) (severing a single claim; *Dean Witter* is not limited to "distinct arbitrable and inarbitrable claims"). Indeed, where parties wish to avoid this rule, they expressly contract to do so. *See, e.g.*, Compl. Ex. A, *Avalonbay Cmtys., Inc. v. Davinci Constr. of Nassau, Inc.*, No. 07-cv-689, 2007 WL 6958836, at ¶ 24.2 (E.D.N.Y. Feb. 16, 2007) ("Neither party shall be permitted to split a single claim or cause of action . . . .").

[57] *Guidewire*, 2012 WL 5379589, at *4.

[58] Bowling Decl. Ex. A ¶ Q, Ex. B ¶ R.

resolution. Moreover, the second provision is in a significant sense even narrower than the first provision. Whereas the first provision covers any "dispute *arising out of or relating to* payment to Artist of any amount hereunder," the second dispute covers only disputes "*arising in any way out of* the Agreement."[59] That is, disputes that relate to *but do not arise out of* the Agreement are not subject to arbitration. Any other reading would disregard the intent of the parties in choosing significantly different language for payment disputes and Agreement disputes.[60] Thus even if it could be said that the conspiracy has some tangential relationship to the Agreement, this would not suffice to compel arbitration.

Accordingly, there is no issue to put before the arbitrator regarding Nitsch's claim against DreamWorks arising out of his employment at SPI, and Defendants' motion should be denied to that extent.

### III. AT MOST, A LIMITED STAY IS APPROPRIATE

Because Nitsch may proceed in federal court against the Non-Signatory Defendants and (to a more limited extent) DreamWorks, there is no need for a stay.[61] However, if the Court were to hold that Nitsch could not proceed against DreamWorks and/or the Non-Signatory Defendants at all until an arbitrator has determined the scope of the arbitration clause, a stay of Nitsch's claim as to those Defendants (but only those Defendants) would be appropriate.

Defendants do not appear to argue that any proceedings should be stayed as to the Non-Signatory Defendants if the Court rejects their equitable estoppel argument.[62] If they make this argument on reply, it should be rejected. The Non-Signatory Defendants will be proceeding in

---

[59] *Id.*

[60] *See, e.g.*, *In re Facebook PPC Advertising Litig.*, No. 09-cv-3043, 2010 WL 3341062, at *5 (N.D. Cal. Aug. 25, 2010) ("To construe the two terms as equivalent would render the additional words superfluous, a result that generally is disfavored in contract interpretation.").

[61] *See Dean Witter*, 470 U.S. at 225 (White, J., concurring) ("[T]he heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course."); *accord, e.g.*, *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) ("[C]ourts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation.").

[62] *See* Arb. Mot. at 12 ("*[B]ecause Nitsch is estopped* to deny that his claims against the nonsignatory Defendants are arbitrable, the Court should stay prosecution of Nitsch's claims against all Defendants pending the outcome of arbitration.") (emphasis added).

federal court (on Cano's and Wentworth's claims), so deferring Nitsch's claims would needlessly multiply the proceedings with no corresponding benefit.

Finally, it should be emphasized that *discovery* by Nitsch should not be stayed unless he is compelled to arbitrate against all Defendants.[63] If, for example, Nitsch may proceed in federal court against the Non-Signatory Defendants but must obtain an arbitrator's ruling on arbitrability as to DreamWorks, he will be entitled to party discovery from the Non-Signatory Defendants and third-party discovery against DreamWorks. Moreover, discovery will proceed against all Defendants on Cano's and Wentworth's claims, assuming the motion to dismiss is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to compel Plaintiff Nitsch to arbitrate should be denied as to the Non-Signatory Defendants and denied in part as to DreamWorks. Defendants' motion to stay Nitsch's claims should be denied.

DATED: February 9, 2015

By  /s/ Steven G. Sklaver
STEVEN G. SKLAVER

Daniel A. Small (*Pro Hac Vice*)
Brent W. Johnson (*Pro Hac Vice*)
Jeffrey B. Dubner (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
dsmall@cohenmilstein.com
bjohnson@cohenmilstein.com
jdubner@cohenmilstein.com

Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710

---

[63] This issue is largely academic, because all discovery that would be sought for Nitsch's claims will still be sought for Cano's and Wentworth's claims. Plaintiffs do not expect a need for much, if any, further Nitsch-specific discovery going forward; the parties have already been working cooperatively to identify relevant records related to Nitsch, Cano, and Wentworth in Defendants' files.

Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
Ashley A. Bede (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
ashleyb@hbsslaw.com

Marc M. Seltzer
Steven G. Sklaver
SUSMAN GODFREY L.L.P
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Matthew R. Berry (*Pro Hac Vice*)
Jordan Talge (*Pro Hac Vice*)
John E. Schiltz (*Pro Hac Vice*)
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
mberry@susmangodfrey.com
jtalge@susmangodfrey.com
jschiltz@susmangodfrey.com


*Interim Co-Lead Plaintiffs' Counsel*