Daniel A. Small (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
dsmall@cohenmilstein.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com

[Additional Counsel on Sig. Page]

*Interim Co-Lead Plaintiffs' Counsel*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANIMATION WORKERS ANTITRUST LITIGATION | Master Docket No. 14-CV-4062-LHK |
| | PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT |
| | Date:          March 26, 2015<br>Time:          1:30 p.m.<br>Courtroom:   8<br>Judge:         Hon. Lucy H. Koh |
| | DATE ACTION FILED: Sept. 8, 2014 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ................................................................................................................3

    A. Plaintiffs' Claims Are Not Time-Barred ..................................................................3

        1. Legal Standard Governing the Fact-Intensive Statute of Limitations Affirmative Defense Raised on a Motion to Dismiss...................................3

        2. The Discovery Rule Applies to Antitrust Claims............................................4

        3. Plaintiffs Have Properly Alleged That Defendants Fraudulently Concealed the Conspiracy.............................................................................................11

            a. Plaintiffs Adequately Plead Affirmative Acts of Fraudulent Concealment ...........................................................................................11

                (1) Defendants Met in Secret and Limited the Conspiratorial Communications to High-Level Officers ..............................12

                (2) Defendants Worked to Minimize Written Record of the Conspiracy.......................................................................14

                (3) Defendants Affirmatively Misled Plaintiffs and the Public through the Croner Survey ...................................................16

            b. The Complaint Adequately Alleges That Plaintiffs Had No Actual or Constructive Knowledge of the Conspiracy......................................17

            c. The Ninth Circuit Does Not Require a Complaint to Allege "Diligence" for the Doctrine of Fraudulent Concealment to Apply..19

        4. Plaintiffs Have Adequately Alleged a Continuing Violation ........................19

    B. The Complaint Plausibly Alleges That Defendants Conspired to Restrain Competition ............................................................................................................23

        1. Legal Standard on a Motion to Dismiss ......................................................23

        2. The Complaint Plausibly Alleges That Defendants Conspired to Restrain Competition ..................................................................................................24

            a. The Complaint Alleges Defendants' Conspired to Suppress Compensation ..................................................................................25

            b. Taken as a Whole, Defendants' Participation in Industry Meetings, Compensation Surveys, and Collusive Discussions Concerning Compensation Support the Conspiracy's Plausibility .....................28

            c. The Complaint Alleges Facts Sufficient to Support a Claim that Defendants' Conspiracy Impacted Compensation ...........................30

3.  Plaintiffs Have Adequately Alleged Blue Sky and Sony's Participation in the Conspiracy ........................................................................................................31

a.  The Complaint Plausibly Suggests that Blue Sky Participated in the Conspiracy ........................................................................................................31

b.  The Complaint Plausibly Suggests that Sony Participated in the Conspiracy ........................................................................................................33

c.  Sony and Blue Sky's Reliance on Deposition Testimony and Documents Outside the Pleadings for the Truth of the Matter Is Improper and Should Be Stricken ........................................................34

d.  The Motion to Dismiss Regarding ImageMovers, L.L.C. Is Moot ...36

C.  Plaintiffs Seek Appropriate Remedies........................................................................36

1.  Defendants Erroneously Claim that Plaintiffs Seek Restitution Under California Business and Professions Code §§ 17200 ..............................36

2.  Plaintiffs Appropriately Seek Injunctive Relief ............................................36

D.  Plaintiffs Request Judicial Notice of Orders from the *High-Tech* Case and a July 2014 Media Report ........................................................................................37

III.  CONCLUSION ........................................................................................................................38

1

# TABLE OF AUTHORITIES

2

**Other Authorities**

3

*Acceptance Ins. Co. v. Am. Safety Risk Retention Grp., Inc.,*
  No. 08CV1057-L(WMC), 2010 WL 744291 (S.D. Cal. Mar. 3, 2010) ........................ 35

4

*al-Kidd v. Ashcroft,*
  131 S.Ct. 2074 (2011) ................................................................................ 23

5

6

*al-Kidd v. Ashcroft,*
  580 F.3d 949 (9th Cir. 2009) ...................................................................... 23

7

*Allen v. City of Beverly Hills,*
  911 F.2d 367 (9th Cir. 1990) ...................................................................... 38

8

*Aloe Vera of Am., Inc. v. United States,*
  699 F.3d 1153 (9th Cir. 2012) ...................................................................... 6

9

*Anderson News, L.L.C. v. Am. Media, Inc.,*
  680 F.3d 162 (2d Cir. 2012) ............................................................ 23, 24, 33

10

11

*Aryeh v. Canon Business Solutions, Inc.,*
  55 Cal. 4th 1185 (2013) .......................................................................... 9, 10

12

*Ashcroft v. Iqbal,*
  556 U.S. 668 (2009) .................................................................................. 23

13

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................ 23, 24, 28

14

*Beltz Travel Serv. Inc. v. Int'l Air Transp. Ass'n,*
  620 F.2d 1360 (9th Cir. 1980) ...................................................................... 25

15

16

*Bibeau v. Pac. Nw. Research Found. Inc.,*
  188 F.3d 1105 (9th Cir. 1999) .................................................................. 6, 10

17

*Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.,*
  518 F. Supp. 2d 1182 (C.D. Cal. 2007) .......................................................... 5

18

*Clemens v. DaimlerChrysler Corp.,*
  534 F.3d 1017 (9th Cir. 2008) ...................................................................... 10

19

*Columbia Steel Casting Co., Inc. v. Portland Gen. Elec. Co.,*
  111 F.3d 1427 (9th Cir. 1996) ...................................................................... 20

20

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.,*
  858 F.2d 499 (9th Cir. 1988) .......................................................... 2, 4, 18, 19

21

22

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.,*
  370 U.S. 690 (1962) ........................................................................ 24, 28, 31

23

*Dow Chem. Co. v. Seegott Holdings, Inc. (In re Urethane Antitrust Litig.),,*
  768 F.3d 1245 (10th Cir. 2014) .................................................................... 30

24

*Drew v. Equifax Info. Servs., LLC,*
  690 F.3d 1100 (9th Cir. 2012) ...................................................................... 6

25

*E.W. French & Sons, Inc. v. Gen. Portland Inc.,*
  885 F.2d 1392 (9th Cir. 1989) ................................................................ 2, 18

26

*Englerius v. Veterans Admin.,*
  837 F.2d 895 (9th Cir. 1988) ...................................................................... 6

27

28

*Fenerjian v. Nongshim Co., Ltd.*,
   --- F. Supp. 3d ---, 2014 WL 5685562 (N. D. Cal. Nov. 4, 2014) ............................. 3, 5, 9

*Figy v. Frito-Lay N. Am., Inc.*,
   --- F. Supp. 2d ---, *No.*, 13-3988 SC, 2014 WL 3953755 (N.D. Cal. Aug. 12, 2014) .................. 35

*Free FreeHand Corp. v. Adobe Sys. Inc.*,
   852 F. Supp. 2d 1171 (N.D. Cal. 2012) .......................................................... 4, 5, 20

*Grimmett v. Brown*,
   75 F.3d 506 (9th Cir. 1996) ...................................................................... 6, 9

*Guerrero v. Gates*,
   442 F.3d 697 (9th Cir. 2003) ...................................................................... 12

*Hennegan v. Pacifico Creative Serv., Inc.*,
   787 F.2d 1299 (9th Cir. 1986) .................................................................... 20

*In re Baby Food Antitrust Litig.*,
   166 F.3d 112 (3d Cir. 1999) ...................................................................... 30

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993) ........................................................... 12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   738 F. Supp. 2d 1011 (N.D. Cal. 2010) ..................................................... passim

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999) .................................................................... 25

*In re Comm. Explosives Litig.*,
   945 F. Supp. 1489 (D. Utah 1996) .............................................................. 14

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
   782 F. Supp. 487 (C.D. Cal. 1991) ...................................................... 2, 15, 18, 19

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
   906 F.2d 432 (9th Cir. 1990) ...................................................................... 25

*In re Copper Antitrust Litig.*,
   436 F.3d 782 (7th Cir. 2006) ............................................................... 5, 7, 8, 9

*In re Cotton Yarn Antitrust Litig.*,
   505 F.3d 274 (4th Cir. 2007) ...................................................................... 20

*In Re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................................... 29, 30

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........................................................ 29

*In re Graphics Processing Units Antitrust Litig.*,
   540 F. Supp. 2d 1085 (N.D. Cal. 2007) ................................................... 29, 31

*In re High-Tech Employee. Antitrust Litig.*,
   856 F. Supp. 2d 1103 (N.D. Cal. 2012) .................................................. passim

*In Re Lithium Ion Batteries Antitrust Litig.*,
   2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ............................................. passim

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ........................ 24

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
   940 F. Supp. 2d 367 (E.D. La. 2013) ........................................................... 14

*In re Rubber Chemicals Antitrust Litig.*,
   504 F. Supp. 2d 777 (N.D. Cal. 2007)....................................................... 4, 14, 17, 19

*In re Scrap Metal Antitrust Litig.*,
   527 F.3d 517 (6th Cir. 2008) ..................................................................................... 5

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ................................................................ 29, 31

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. 07-MD-01819 CW, 2010 WL 5138859 (N.D. Cal. Dec. 10, 2010) ..................... 30

*In re Sulfuric Acid Antitrust Litig.*,
   743 F. Supp. 2d 827, (N.D. Ill. 2010) ........................................................................ 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................. 4, 14

*Irving v. Lennar Corp.*,
   2013 WL 4900402 (E.D. Cal. Sept. 11, 2013) ............................................................ 5

*James Julian, Inc. v. Raytheon Co.*,
   557 F. Supp. 1058 (D. Del. 1983) ............................................................................ 25

*Kemp v. Regents of Univ. of Cal.*,
   2010 WL 2889224 (N.D. Cal. July 22, 2010) ............................................................. 5

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997) ............................................................................................ 9, 20

*Koch v. Christie's Int'l, PLC*,
   699 F.3d 141 (2d Cir. 2012) ..................................................................................... 19

*Korea Kumho Petrochem. v. Flexsys Am. LP*,
   2008 WL 686834 (N.D. Cal. Mar. 11, 2008) ............................................................ 21

*Love v. United States*,
   915 F.2d 1242 (9th Cir. 1989) .................................................................................. 34

*Mangum v. Action Collection Serv., Inc.*,
   575 F.3d 935 (9th Cir. 2009) ............................................................................... 5, 6, 7

*Masuda v. Citibank, N.A.*,
   --- F. Supp. 2d ---, No. C-14-00159-PH, 2014 WL 1759580 (N.D. Cal. Apr. 29, 2014).............. 35

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) .................................................................... 21

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .................................................................................. 35

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984) ................................................................................................. 24

*Monzon v. S. Wine & Spirits of Cal.*,
   834 F. Supp. 2d 934 (N.D. Cal. 2011)....................................................................... 34

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999) .............................................................................. 4, 22

*Norman-Bloodsaw v. Lawrence Berkeley*, Lab.,
   135 F.3d 1260 (9th Cir. 1998) ................................................................................... 6

*Oliver v. SD-3C LLC*,
   751 F.3d 1081 (9th Cir. 2014) ............................................................................ 20, 21

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
   939 F. Supp. 2d 1002 (N.D. Cal. 2013)......................................................25

*Pace Indus., Inc. v. Three Phoenix Co.*,
   813 F.2d 234 (9th Cir. 1987) .......................................................................20

*Philips v. Bank of America, N.A.*,
   2011 WL 2160583 (D. Haw. June 1, 2011) ...............................................21

*Pinterest Inc. v. Pintrips Inc.*,
   15 F. Supp. 3d 992, (N.D. Cal. 2014)........................................................35

*Plumlee v. Pfizer, Inc.*,
   2014 WL 695024 (N.D. Cal. Feb. 21, 2014) .................................................9

*Richards v. Neilsen Freight Lines*,
   810 F.2d 898 (9th Cir. 1987) .......................................................................26

*Rick-Mik Ents., Inc. v. Equilon Ents. LLC*,
   532 F.3d 963 (9th Cir. 2008) .......................................................................27

*Rivers v. Cnty. of Marin*,
   No. C-05-4251, 2006 WL 581096 (N.D. Cal. Mar. 7, 2006) ......................28

*Samsung Elecs. Co., Ltd. v. Panasonic Corp.*,
   747 F.3d 1199 (9th Cir. 2014) ...............................................................19, 20

*Santa Maria v. Pacific Bell*,
   202 F.3d 1170 (9th Cir. 2000)......................................................................11

*Sinclair Oil Corp. v. Atlantic Richfield Co.*,
   720 F. Supp. 894 (D. Utah 1989) ................................................................16

*Socop-Gonzalez v. I.N.S.*,
   272 F.3d 1176 (9th Cir. 2001) .....................................................................12

*Stutz Motor Car of America, Inc. v. Reebok Int'l, Ltd.*,
   909 F. Supp. 1353 (C.D. Cal. 1995).............................................................14

*Sweeney v. Texaco, Inc.*,
   637 F.2d 105 (3d Cir. 1980) ........................................................................25

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) ........................................................................29

*Trotter v. Int'l Longshoremen's & Warehousemen's Union, Local 13*,
   704 F.2d 1141 (9th Cir. 1983) ...............................................................5, 6, 7

*TRW, Inc. v. Andrews*,
   534 U.S. 19 (2001) .....................................................................................7, 8

*United States v. Consol Packaging Corp.*,
   575 F.2d 117 (7th Cir. 1978) ................................................................25, 27

*United States v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) ................................................................22, 35

*United States v. Kamins*,
   479 F. Supp. 1374 (W.D. Pa. 1979) ...........................................................28

*United States v. Moussaoui*,
   382 F.3d 453 (4th Cir. 2004) .......................................................................27

*United States v. Sharpe*,
   193 F.3d 852 (5th Cir. 1999) .......................................................................27

*United States v. Snow*,
   462 F.3d 55 (2d Cir. 2006) ................................................................................ 23

*United States v. Wilson*,
   631 F.2d 118 (9th Cir. 1980) ............................................................................. 37

*Vandervelde v. Put & Call Brokers & Dealers Ass'n*,
   344 F. Supp. 118 (S.D.N.Y. 1972) ..................................................................... 34

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2009) ......................................................................... 4, 37

*Waldrup v. Countrywide Fin. Corp.*,
   No.08833-CAS, 2014 WL 4978437 (C.D. Cal. 2014) ....................................... 31

*Ward v. Caulk*,
   650 F.2d 1144 (9th Cir. 1981) ........................................................................... 21

*Zenith Radio Corp. v. Hazeltine Research Inc.*,
   401 U.S. 321 (1971) ............................................................................................. 7

**Statutes**

15 U.S.C. § 15b ................................................................................................. 6, 7, 19

15 U.S.C. § 1681s-2(b) .............................................................................................. 6

15 U.S.C. § 1692k(d) ................................................................................................. 6

26 U.S.C. § 7431 ........................................................................................................ 6

California Business and Professions Code §§ 17200 ...................................... ii, 36

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 24, 35

Fed. R. Civ. P. 12(f) ................................................................................................. 28

Fed. R. Civ. P. 15(a) ................................................................................................. 38

Fed. R. Civ. P. 9(b) .................................................................................................... 3

Fed. R. Evid. 201(b) ................................................................................................ 35

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether Plaintiffs' claims are time-barred where Plaintiffs could not have discovered Defendants' conspiracy to eliminate competition and suppress compensation for visual effects and animation workers earlier than 2013 when this Court first unsealed documents in the *High-Tech* litigation.

2.     Whether Plaintiffs have pled sufficient facts to state a claim where the Complaint contains detailed allegations demonstrating that the object of the conspiracy was to eliminate competition and suppress compensation and confirming that every Defendant participated in industry meetings, compensation surveys, and collusive discussions to achieve that end.

3.     Whether Plaintiffs appropriately seek injunctive relief where it is plausible that the named Plaintiffs will continue to seek employment in the animation and visual effects industry.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Defendants' Motion to Dismiss ("Motion" or "Mot.") begins—and ends—with a fundamentally flawed premise: trying to establish as a matter of law a statute of limitations affirmative defense based on the Department of Justice's ("DOJ") investigation into "Silicon Valley and other technology companies" that Defendants contend the media reported about in 2009. From this generalized public statement, Defendants claim Plaintiffs had constructive notice as a matter of law that each of the Defendants named in this litigation had already injured them. Mot. at 1. Defendants, however, get both the facts and the law wrong, and at a minimum, disputed facts exist that cannot possibly be resolved on the pleadings.

As a factual matter, the generalized phrase "Silicon Valley and other technology companies" lacks sufficient detail required under the law to trigger the statute of limitations. No Defendants in this action were ever mentioned in any of the media stories from 2009 attached to Defendants' Request for Judicial Notice.[1] Google, Yahoo, Apple, Genentech, Microsoft, Intel, IBM, Dell, and IAC/InterActiveCorp are certainly powerful technology companies, but media reports from 2009 about an "unclear" investigation into their alleged misconduct in their industry involving their employees do not place Plaintiffs on constructive notice as a matter of law that Defendants here— Pixar, LucasFilm, DreamWorks, Disney, Sony, ImageMovers, and Blue Sky—were engaged in their own conspiracy involving their visual effects and animation workers. Courts—including the Ninth

---

[1] *See* Defendants' Request for Judicial Notice, Dkt. # 76, Ex. H (reporting that Google, Yahoo, Apple, Genetech, Microsoft, and Intel received requests for documents from the DOJ, but acknowledging that "[t]he exact focus of the inquiry is unclear" and that "[a]ntitrust lawyers said companies that receive such requests are not necessarily targets of an investigation"); Ex. I (reporting "preliminary" investigation into "technology companies," including Google, Yahoo, Apple, and Genetech, but acknowledging that "Justice Department officials declined to comment about an investigation"); Ex. J (reporting "probe into hiring practices among high-tech firms," naming Apple, Yahoo, Google, Genetech, Microsoft, Intel, IBM, and Dell); Ex. K (reporting investigation "in the technology and biotech industries," naming Google, Apple, Yahoo, Genetech, Microsoft, and Intel, but acknowledging that "[t]he exact focus of the investigation is unclear."); Ex. L (reporting "Probe of Hiring in Tech," naming Google, Intel, IBM, Apple, IAC/InterActiveCorp, Intel, Genetech, but stating on April 10, 2010, that "[t]he Justice Department hasn't confirmed the existence of the investigation").

1   Circuit—have rejected the notion that a small handful of articles puts a plaintiff on notice of an

2   antitrust claim, <u>even when the articles specifically reference the defendants by name</u>.[2]

3   This leaves Defendants with their alternative argument that the "discovery rule" is

4   inapplicable to antitrust claims, and, as a result, that Plaintiffs' claims are time-barred because

5   Defendants injured Plaintiffs more than four years before the filing of the Complaint. This argument

6   is also wrong for several reasons, any of which requires denial of the Motion. First, the proper

7   accrual date for an antitrust claim is determined by the "discovery rule." The discovery rule

8   postpones the beginning of the limitations period from the date when plaintiffs are injured to the date

9   when plaintiffs *discover* they have been injured and who caused the injury. Determining when and

10  what Plaintiffs discovered about each Defendant's misconduct is a fact question that cannot be

11  resolved on the pleadings. Second, Plaintiffs adequately allege that Defendants fraudulently

12  concealed their conspiracy, thereby tolling the statute of limitations even if the accrual date begins on

13  the date of injury (as Defendants contend) rather than upon discovery of injury and who caused it (as

14  the law requires). Compl. ¶¶ 15, 126-132. Plaintiffs also continued to suffer injuries from

15  Defendants' misconduct well into the limitations period, as Plaintiffs' compensation continued to lag

16  under pre-limitations period employment agreements. For any and each of these reasons,

17  Defendants' motion to dismiss on statute of limitations grounds should be denied.

18  Defendants also raise generic *Twombly* challenges to Plaintiffs' well-pled claims of a

19  conspiracy to suppress compensation. Contrary to Defendants' boilerplate arguments, the

20  Complaint—which recites myriad documents and testimony with exacting specificity—easily

21  surpasses the *Twombly* standard.

22

23

24  ───────────────
    [2] *See Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 503–04 (9th Cir. 1988)
25  (holding that San Francisco Chronicle and Wall Street Journal articles naming the defendants were
    insufficient to constitute constructive knowledge as a matter of law); *In re Coordinated Pretrial*
26  *Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 487, 497 (C.D. Cal. 1991) (holding
    that articles describing attorney general investigation into similar illegal conduct did not constitute
27  constructive notice); *see also E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1400
    (9th Cir. 1989) (holding that plaintiff's knowledge of a similar price-fixing lawsuit naming some of
28  the same defendants did not constitute constructive knowledge).

1    Finally, Defendants misread Plaintiffs' requested relief under California's Unfair

2    Competition Law ("UCL"). Plaintiffs properly seek injunctive relief, not restitution, and they have

3    standing to do so.

4                                    **II.    ARGUMENT**

5    **A.    Plaintiffs' Claims Are Not Time-Barred**

6         Each of Plaintiffs' federal and state causes of action is timely. Although Defendants raise

7    boilerplate assertions regarding the statute of limitations, these arguments fail for at least three

8    reasons. *First*, under the applicable discovery rule, the limitations period began to run no earlier than

9    2013, because Plaintiffs did not discover their injuries nor who caused them before that time.[3]

10   *Second*, even without the discovery rule, Defendants' fraudulent concealment of their conspiracy

11   tolls the statute of limitations. *Third*, Plaintiffs have alleged that Defendants' unlawful conduct—

12   including paying suppressed compensation to Plaintiffs and class members—continued well into the

13   four-year limitations period. Plaintiffs have alleged facts supporting these points with the specificity

14   required under *Twombly*, and, where applicable, Federal Rule of Civil Procedure 9(b). The Court

15   should thus deny Defendants' motion to dismiss.

16        **1.    Legal Standard Governing the Fact-Intensive Statute of Limitations Affirmative
             Defense Raised on a Motion to Dismiss**

17
         Plaintiffs' Sherman Act claims are subject to a four-year statute of limitations.[4] As another
18
     court in this district recently held, an antitrust cause of action accrues when "a plaintiff 'knows or has
19
     reason to know of the injury which is the basis for the action.'"[5] Regardless of when a cause of
20
     action accrues, a defendant's fraudulent concealment of its unlawful conduct can toll the running of
21

22   _____
          [3] Plaintiffs recognize that the DOJ filed a competitive impact statement against Lucasfilm on
23   December 21, 2010, alleging that it and Pixar had entered into a facially anticompetitive agreement
     to restrict certain recruiting practices for digital animators. That statement named no other Defendant
24   named in the Complaint and failed to disclose the full scope of Defendants' conspiracy to eliminate
     competition and suppress compensation for visual effects and animation workers. Regardless, it does
25   not matter whether Plaintiffs should have discovered their claims in December 2010, as opposed to
     when they actually discovered them in 2013, because the former is still well-within the four-year
26   limitations period.

27        [4] 15 U.S.C. § 15b.

28        [5] *Fenerjian v. Nongshim Co., Ltd.*, --- F. Supp. 3d ---, 2014 WL 5685562, at *13 (N.D. Cal. Nov.
     4, 2014).

the statute of limitations.[6] Additionally, "[u]nder the 'continuing violation doctrine,' 'each overt act that is part of the [antitrust] violation and that injures the plaintiff . . . starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.'"[7] Each of these doctrines applies here, and Plaintiffs' claims are timely.

Finally, "[a]s many courts have noted in the antitrust conspiracy context, it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage."[8] Likewise, as this Court has recognized, it is inappropriate to dismiss Plaintiffs' continuing violation allegations unless it "appear[s] 'beyond doubt that [Plaintiffs] can prove no set of facts that would establish the timeliness of their claim.'"[9] Plaintiffs' Complaint easily surpasses this standard, and the Court should allow Plaintiffs' claims to proceed through discovery.

## 2. The Discovery Rule Applies to Antitrust Claims

Defendants argue that § 15b's four-year statute of limitations began to run immediately once Defendants injured Plaintiffs through their unlawful conspiracy, even if Plaintiffs never knew or had reason to know of the conspiracy or its resulting harm or who caused it. Not so. Instead, under the well-known discovery rule, "a limitations period begins to run when the plaintiff knows or has

---

[6] *See Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 505 (9th Cir. 1988).

[7] *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1187 (N.D. Cal. 2012) (Koh, J.) (brackets and ellipses in original).

[8] *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007); *see also In Re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *16 (N.D. Cal. Jan. 21, 2014) ("The fact-intensive nature of fraudulent concealment makes disposition of that issue 'generally inappropriate' on the pleadings alone . . . ."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1132 (N.D. Cal. 2008) ("Defendants may renew their arguments regarding notice and due diligence in a motion for summary judgment upon a fuller factual record, as these are fact-intensive inquiries inappropriate for resolution at this preliminary stage of the litigation."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010) (allowing fraudulent concealment allegations to proceed because "discovery is in its early stages, and motions for summary judgment have not been filed").

[9] *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1188 (N.D. Cal. 2012) (Koh, J.) (second bracket in original) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2009)); *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 829 (11th Cir. 1999) (ruling that whether conspiracy constituted continuing violation "is a genuine question for trial").

1   reason to know of the injury which is the basis of the action."[10] As another court in this district

2   recently held, the discovery rule applies to antitrust claims like those present here.

3        In *Fenerjian v. Nongshim Co., Ltd.*,[11] the plaintiffs brought a Sherman Act claim alleging a

4   price-fixing conspiracy amongst Korean noodle producers. The defendants argued that their

5   conspiracy had ended in 2008—more than four years before the plaintiffs filed suit—such that the

6   statute of limitations had run. *Id.* The plaintiffs countered that their claims were timely because they

7   did not <u>discover</u> the conspiracy—or their injuries—until much later. *Id.*

8        Judge Orrick agreed with the plaintiffs. Recognizing that the discovery rule "applies broadly

9   to federal litigation, <u>including Sherman Act claims</u>," Judge Orrick compared the date of the

10  plaintiffs' <u>discovery</u> of their injuries to the four-year statute of limitations. *Id.* at *13 (emphasis

11  added).[12] Concluding that the plaintiffs did not discover their injuries until a publicly announced

12  investigation in 2012, Judge Orrick allowed the claims to proceed. *Id.*

13       Defendants attempt to downplay the *Fenerjian* decision, relegating their discussion of the

14  case to a conclusory footnote. *See* Mot. at 18, n.19. Defendants also ignore decisions from other

15  district courts within the Ninth Circuit—including this Court—recognizing that the discovery rule

16  could apply to antitrust claims.[13]

17       Rather than acknowledge the application of the discovery rule to antitrust claims in this

18  district, Defendants incorrectly imply that the Ninth Circuit has rejected such application. The Ninth

19

20       [10] *Trotter v. Int'l Longshoremen's & Warehousemen's Union, Local 13*, 704 F.2d 1141, 1143

21  (9th Cir. 1983); *Kemp v. Regents of Univ. of Cal.*, 2010 WL 2889224, at *3 (N.D. Cal. July 22, 2010)
    (quoting *Trotter*).

22       [11] --- F. Supp. 3d ---, 2014 WL 5685562, at *12.

23       [12] (citing *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940–41 (9th Cir. 2009); *In re
    Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006)).

24       [13] *See Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1189 (N.D. Cal. 2012)

25  (Koh, J.) (discussing but not deciding whether discovery rule applies); *Irving v. Lennar Corp.*, 2013
    WL 4900402, at *11 (E.D. Cal. Sept. 11, 2013) (stating that an antitrust claim "does not necessarily

26  'accrue' when the defendant commits the act causing plaintiff's injury but may be tolled until the
    plaintiff discovers or should have discovered the injury" (quoting *In re Scrap Metal Antitrust Litig.*,

27  527 F.3d 517, 536 (6th Cir. 2008))); *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 518 F.
    Supp. 2d 1182, 1185 (C.D. Cal. 2007) (interpreting Supreme Court guidance that RICO and antitrust

28  statutes of limitation should be analyzed "in a similar fashion" in applying discovery rule to RICO
    claims).

Circuit has done no such thing. In fact, Defendants cannot (and do not) cite <u>a single Ninth Circuit case</u> rejecting the discovery rule in the antitrust context.

Conversely, the Ninth Circuit has repeatedly "made it clear that, in general, the discovery rule applies to statutes of limitations in federal litigation."[14] Even when the statutory language requires a plaintiff to file suit "within one year from the date <u>on which the violation occurs</u>"—language far stronger than § 15b's limit of "four years after the cause of action <u>accrues</u>"—the Ninth Circuit <u>still</u> applies the discovery rule.[15] Judge Kozinski has properly summarized the fundamental policy behind the court's presumption in favor of the rule: "Because it is inequitable to bar someone who has no idea he has been harmed from seeking redress, the statute of limitations has generally been tolled by the 'discovery rule.'"[16] With this general presumption in mind, the Ninth Circuit has applied the discovery rule to a variety of federal statutes,[17] including RICO claims governed by the same limitations statute at issue here: 15 U.S.C. § 15b.[18]

The best Defendants can do is cherry-pick language from Ninth Circuit cases—including *Hexcel Corp. v. Ineos Polymers, Inc.*[19] and *Volk v. D.A. Davidson & Co.*[20]—that did not even address whether the discovery rule applies to antitrust claims. Mot. at 17. Defendants' misleading quotations from these cases refer to actual versus constructive knowledge in the context of fraudulent concealment—which tolls application of the statute of limitations to a claim that has already accrued—<u>not</u> the discovery rule, which determines when a cause of action accrues. The Court in *Hexcel* was clear: "[T]he accrual doctrine for a discovery rule is conceptually distinct from the

---

[14] *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009).

[15] *Id.* (quoting 15 U.S.C. § 1692k(d), Fair Debt Collection Practices Act).

[16] *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999).

[17] *See Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1110 (9th Cir. 2012) (Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)); *Aloe Vera of Am., Inc. v. United States*, 699 F.3d 1153, 1159 (9th Cir. 2012) (wrongful disclosure of a tax return under the Internal Revenue Code, 26 U.S.C. § 7431); *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998) (Americans with Disabilities Act); *Englerius v. Veterans Admin.*, 837 F.2d 895, 897 (9th Cir. 1988) (Privacy Act of 1974); *Trotter v. Int'l Longshoremen's & Warehousemen's Union, Local 13*, 704 F.2d 1141, 1142 (9th Cir. 1983) (Labor Management Reporting and Disclosure Act).

[18] *See Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir. 1996).

[19] 681 F.3d 1055, 1060 (9th Cir. 2012).

[20] 816 F.2d 1406, 1416 (9th Cir. 1987).

equitable tolling doctrine in fraudulent concealment cases."[21] The only relevant discovery rule discussion in either case is from *Volk*, where the Ninth Circuit <u>applied the rule</u> to the plaintiffs' claims under § 10b of the Securities and Exchange Act.[22]

Because Defendants can point to no Ninth Circuit authority for their position, they look to non-binding case law from other circuits. But this out-of-circuit authority is not helpful because: (a) it ignores Judge Orrick's *Fenerjian* decision, which is directly on point; (b) Defendants' cited cases are not subject to the Ninth Circuit's strong policy favoring application of the discovery rule; and (c) Defendants ignore the Seventh Circuit, which likewise applies the discovery rule to antitrust claims.

In *In re Copper Antitrust Litigation*, the Seventh Circuit reviewed the statutory language of § 15b as well as relevant Supreme Court precedent regarding the accrual of antitrust claims.[23] Writing for a unanimous panel on this point, Judge Wood acknowledged the Supreme Court's statement in *Zenith Radio Corp. v. Hazeltine Research Inc.*[24] that, "'[g]enerally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business.'"[25] Despite this language, Judge Wood—like the Ninth Circuit—adopted a presumption in favor of the discovery rule: "As in other areas of the law . . . in the absence of a contrary directive from Congress this rule [from *Zenith*] is qualified by the discovery rule . . . ." *Id.* at 789.[26] As is the

---

[21] *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1062 (9th Cir. 2012).

[22] *See Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1412 (9th Cir. 1987) ("[T]he statute of limitations is not triggered until the defrauded individual has actual or inquiry notice . . . ."). The fact that *Hexcel* and *Volk* did not require <u>actual</u> knowledge of an antitrust injury is consistent with the Ninth Circuit's discovery rule jurisprudence, where inquiry notice is enough to start the clock on a plaintiff's claims. *See Trotter v. Int'l Longshoremen's & Warehousemen's Union, Local 13*, 704 F.2d 1141, 1143 (9th Cir. 1983). Defendants' cited Ninth Circuit cases merely demonstrate that constructive knowledge of an antitrust claim triggers the statute of limitations, which is true even if the discovery rule applies here.

[23] 436 F.3d 782, 788 (7th Cir. 2006).

[24] 401 U.S. 321, 338 (1971).

[25] 436 F.3d at 788 (quoting *Zenith*, 401 U.S. at 338).

[26] Defendants argue that the Supreme Court has cautioned against a general presumption in favor of the discovery rule. Mot. at 18 (citing *TRW, Inc. v. Andrews*, 534 U.S. 19, 27 (2001)). Importantly, Judge Wood's opinion in *In re Copper* issued five years <u>after</u> the *TRW* decision. Moreover, the Ninth Circuit considered the *TRW* case in its decision in *Mangum* but still applied the discovery rule to the statute in question. *See Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 941 (9th Cir. 2009)

case here, the plaintiffs in *In re Copper* did not discover the involvement of certain defendants in the alleged conspiracy until documents in a prior litigation were unsealed. *Id.* at 792. Under the discovery rule, the court held that the unsealing of the documents triggered the statute of limitations. *Id.* Courts within the Seventh Circuit now uniformly apply the discovery rule in antitrust cases, including cases with facts similar to those here.[27]

Defendants argue that the discovery rule cannot apply because it would "nullify" the well-known doctrine of fraudulent concealment. The Ninth Circuit squarely rejected this argument in *Hexcel*.[28] The discovery rule determines when a cause of action <u>accrues</u>, whereas the fraudulent concealment doctrine <u>tolls</u> the statute of limitations on a cause of action <u>regardless</u> of when it accrues.[29] The doctrines are thus separate, as Defendants appear to concede. Mot. at 16 ("The two doctrines are different and analytically distinct.").

Because the two doctrines are "distinct," courts—including the Ninth Circuit—review them independently even where the discovery rule indisputably applies. For instance, in *Volk*—a case Defendants rely on—the Ninth Circuit separately analyzed the discovery rule and the doctrine of fraudulent concealment as to the plaintiffs' securities fraud claims.[30] Even though the court applied the discovery rule, the court did not hold, as Defendants now argue, that the rule "nullified" the doctrine of fraudulent concealment. Far from it: the court still devoted a multi-paragraph section of the opinion to the plaintiffs' fraudulent concealment allegations, analyzing the claims under the same test covered in section A.3, *infra*. *Id.*

Likewise, in *Grimmett v. Brown*, the Ninth Circuit reiterated that it has always "faithfully followed" the discovery rule in relation to the civil RICO statute, and the court thus applied the

---

(stating that language in *TRW* "is surely food for thought and is worth musing on, but it does not overrule or seriously undermine our general approach to the point that we can now ignore preexisting Ninth Circuit law").

[27] *See, e.g.*, *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 854 (N.D. Ill. 2010) (applying discovery rule to antitrust conspiracy claims).

[28] *Hexcel Corp. v. Ineos Polymers, Inc*, 681 F.3d 1055, 1060 (9th Cir. 2012) ("[T]he accrual doctrine for a discovery rule is conceptually distinct from the equitable tolling doctrine in fraudulent concealment cases.").

[29] *In re Copper Antitrust Litig.*, 436 F.3d 782, 791 (7th Cir. 2006).

[30] *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1412 (9th Cir. 1987).

discovery rule to the plaintiff's claims.[31] Yet, rather than hold that its application of the discovery rule "nullified" the fraudulent concealment doctrine, the court expressly stated that "[e]quitable tolling doctrines, <u>including fraudulent concealment</u>, apply in civil RICO cases." *Id.* at 514 (emphasis added). The court then analyzed the plaintiff's fraudulent concealment allegations, ultimately rejecting them because they failed to demonstrate active concealment. *Id.* at 515.

If it were true that the discovery rule "nullifies" the doctrine of fraudulent concealment, these cases—as well as <u>all</u> other Ninth Circuit cases interpreting the statute of limitations under the Securities and Exchange Act or the civil RICO statute—would be nonsensical. In other words, to accept Defendants' argument would be to reject decades of reasoned Ninth Circuit precedent. Instead, the Court should hold, as did the Seventh Circuit in *In re Copper*, that Plaintiffs' Sherman Act claims are timely "[w]hether viewed as a question of the time when plaintiffs reasonably could have discovered that [Defendants] had anything to do with their injuries or viewed as a question of equitable estoppel and fraudulent concealment."[32]

In addition to Plaintiffs' Sherman Act claims, the discovery rule also applies to California's Unfair Competition Law ("UCL"), as the Supreme Court of California recently held.

In *Aryeh v. Canon Business Solutions, Inc.*,[33] that court explained that, "just like common law claims challenging fraudulent conduct, a UCL deceptive practices claim should accrue <u>only when a reasonable person would have discovered the factual basis for a claim</u>." (emphasis added) (quotation omitted). This Court previously held in *Plumlee v. Pfizer* that the discovery rule applies to UCL claims under *Aryeh*.[34] To satisfy the discovery rule in California, a plaintiff must allege "that he was

---

[31] 75 F.3d 506, 511 (9th Cir. 1996); *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997) (citing *Grimmett*) (acknowledging application of some form of discovery rule to RICO statute).

[32] *In re Copper Antitrust Litig.*, 436 F.3d 782, 790 (7th Cir. 2006) (holding that plaintiffs' claims were timely under the discovery rule and that the facts pled "also support a finding that equitable estoppel should be invoked to toll the statute of limitations"); *see also Fenerjian v. Nongshim Co., Ltd.*, --- F. Supp. 3d ---, 2014 WL 5685562, at *8 (N. D. Cal. Nov. 4, 2014) ("I find that both the 'discovery rule' and fraudulent concealment tolled the otherwise applicable statutes of limitation . . . .").

[33] 55 Cal. 4th 1185, 1196 (2013).

[34] *See Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) (citing "*Aryeh*, 55 Cal. 4th at 1196 (<u>delayed discovery rule applies to UCL claims</u>)." (emphasis added)).

not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Id.*[35]

Defendants do not address this Court's recognition in *Plumlee* that the discovery rule applies to UCL claims. Indeed, Defendants' entire discussion of the discovery rule under the Cartwright Act and UCL is relegated to a footnote. Their argument unfairly nitpicks the California Supreme Court's *Aryeh* opinion in an attempt to skirt the decision's plain outcome: the discovery rule applies to UCL claims. This Court has already properly interpreted *Aryeh* on this point; it should reject Defendants' attempt to relitigate it.[36]

As explained in more detail in section A.3., *infra*, Plaintiffs did not know or have reason to know of their injuries or Defendants' conspiracy until 2013. Compl. ¶¶ 95, 125. No reasonably diligent employee in the visual effects and animation field would have begun investigating antitrust claims based only on news reports of a DOJ investigation into misconduct affecting "skilled computer engineers" working for entirely different companies "in the technology sector."[37]

To the extent Defendants argue that a plaintiff "must be diligent in discovering the critical facts" to invoke the discovery rule,[38] Plaintiffs diligently investigated their injuries once this Court unsealed documents in the *High-Tech* litigation in 2013 and 2014, which gave the first indication of Defendants' involvement in the conspiracy. Compl. ¶ 95. Plaintiffs promptly filed their Complaint thereafter. Moreover, the Ninth Circuit has explained that deciding "what [a plaintiff] knew and when [he] knew it are questions of fact" that are rarely appropriate for summary judgment much less a motion to dismiss.[39] Because Plaintiffs were far from negligent in discovering the conspiracy or their injuries, they satisfy the discovery rule and their claims are timely.

---

[35] (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008)).

[36] To the extent either the Cartwright Act or UCL "borrow" the limitations accrual rule from the Sherman Act, Plaintiffs have already explained that the discovery rule applies to such claims.

[37] *See* Defendants' Request for Judicial Notice, Dkt. # 76, Ex. L.

[38] *See Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999).

[39] *See id.* (brackets in original) (recognizing the "fact-intensive" nature of a plaintiff's discovery and diligent investigation and reversing summary judgment against plaintiff).

### 3.  Plaintiffs Have Properly Alleged That Defendants Fraudulently Concealed the Conspiracy

Plaintiffs' claims are timely for a second, independent reason: Defendants' fraudulent concealment of the conspiracy tolls the statute of limitations. As myriad cases in this circuit and this district have stated, "a statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence."[40] The Complaint adequately alleges that Defendants fraudulently concealed their conspiracy, and Plaintiffs had no actual or constructive knowledge of its existence until 2013, and at a minimum, a dispute of material fact exists that cannot possibly be resolved on the pleadings regarding when a diligent inquiry on the part of Plaintiffs would have revealed each of Defendants' involvement in the conspiracy.

#### a.  Plaintiffs Adequately Plead Affirmative Acts of Fraudulent Concealment

Plaintiffs' Complaint easily meets the pleading standard for fraudulent concealment. Plaintiffs have alleged at least three categories of conduct—citing the specific who, what, when, where, and how for each—showing affirmative efforts to conceal.

*First*, the Complaint provides detailed allegations that Defendants met and communicated in secret regarding the conspiracy, and that such secret communications were limited to Defendants' senior executives and human resources personnel. *Second*, the Complaint highlights Defendants' special efforts to minimize any written record of the conspiracy. *Third*, the Complaint alleges how Defendants misled Plaintiffs and the public about the conspiracy through the Croner survey. Courts in this and other districts recognize that such affirmative acts toll the limitations period.

Defendants' brief misstates the standard for "affirmative allegations" of fraudulent concealment. Defendants rely on an Americans with Disabilities Act case, *Santa Maria v. Pacific Bell*,[41] for the proposition that Plaintiffs need to allege conduct "above and beyond" the underlying conspiracy alleged in the claims. First of all, the Ninth Circuit overruled *Santa Maria* more than a

---

[40] *Hexcel Corp. v. Ineos Polymers, Inc*, 681 F.3d 1055, 1059 (9th Cir. 2012).

[41] 202 F.3d 1170, 1177 (9th Cir. 2000).

decade ago, and its "above and beyond" dicta is not good law.[42] Second, although the Ninth Circuit requires affirmative allegations of fraudulent concealment, as opposed to jurisdictions that find conspiracies like Defendants' to be inherently "self-concealing,"[43] the Ninth Circuit does not require that the acts of concealment constitute an entirely new conspiracy nor that the acts of concealment take place during the limitations period.[44]

### (1)    Defendants Met in Secret and Limited the Conspiratorial Communications to High-Level Officers

Plaintiffs allege throughout their Complaint that Defendants kept their collusive meetings and communications secret and limited to senior management. Summarizing Plaintiffs' numerous, detailed allegations on this point, the Complaint specifically alleges:

> Compl. ¶ 126. Defendants engaged in a secret conspiracy that did not give rise to facts that would put Plaintiffs or the Class on inquiry notice that there was a conspiracy among visual effects and animation companies to restrict competition for class members' services through anti-solicitation agreements, and to fix the compensation ranges of class members. As discussed above, Defendants' discussions often occurred at small meetings just among the human resources directors, to which class members were not privy. Defendants intentionally kept meetings "to principals" only, keeping the most sensitive details of the conspiracy from spreading beyond senior management. (emphasis added).

The Complaint also contains several paragraphs describing the close personal involvement of the presidents, chief executives, and founders of the various Defendant companies—discussions and meetings from which Plaintiffs were obviously excluded. *See* Compl. ¶ 3 (explaining inception of conspiracy as forged "through Pixar's Chief Executive Officer Steve Jobs and President Edwin Catmull and Lucasfilm's founder George Lucas"); ¶ 4 (explaining that Jobs and "DreamWorks Animation Chief Executive Officer Jeffrey Katzenberg personally agreed" to the conspiracy

---

[42] *See Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1196 (9th Cir. 2001) (en banc) ("[W]e reject the approach to tolling adopted in *Santa Maria* . . . ."). Defendants also quote *Guerrero v. Gates*, 442 F.3d 697, 707 n.38 (9th Cir. 2003), a § 1983 case that itself quotes the "above and beyond" language from the overruled *Santa Maria* decision.

[43] *See, e.g.*, *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1030 (N.D. Miss. 1993).

[44] *See, e.g.*, *In Re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *16 (N.D. Cal. Jan. 21, 2014) (holding that maintaining the secrecy of the underlying conspiracy during the pre-limitations period constituted fraudulent concealment).

(emphasis added)); ¶ 6 (describing Catmull's personal intervention with "ImageMovers head Robert Zemeckis" to protect the conspiracy).

This involvement of the highest-level executives often took place at in-person meetings, further concealing the conspiracy from employees like Plaintiffs. *See* Compl. ¶ 60 (describing Catmull's decision to fly to Los Angeles to "go down and meet [Sony Pictures Animation executives] to reach some agreement . . . to nip this in the bud"); ¶ 67 (summarizing Catmull's in-person meeting with ImageMovers founder Steve Starkey, "who told Catmull that he had 'told George [Lucas] that he would not raid ILM'").

Beyond the company leadership, Plaintiffs' Complaint contains detailed factual allegations of the secret meetings of Defendants' human resource ("HR") officials. Defendants described these exclusive, secret gatherings as the "Directors meeting" or "salary council":

> Compl. ¶ 9.   Since the mid-1990s, the most senior personnel from the human resources and recruiting departments of the studios have met yearly to discuss an industry compensation survey. From the beginning, Defendants understood that the survey was used by each to "confirm or adjust our salary ranges." By the early 2000s, Defendants used those meetings and communications connected to them to help fix the compensation of their workers within ranges for the ensuing year. Senior human resources personnel met annually after the survey for "an opportunity for an intimate group of us to get together," which they termed the "Directors meeting." At least at one studio, the meetings were called the annual "salary council."

The "salary council" meetings were not the only secret in-person or over-the-phone meetings that senior HR officers held that kept Plaintiffs from discovering the conspiracy. *See* Compl. ¶ 13 (describing May 10, 2006, lunch between executives from Disney and DreamWorks, after which the companies exchanged proprietary compensation information); ¶ 61 (detailing how Pixar Vice President of Human Resources Lori McAdams spoke to Sony human resources officers "in person and over the phone to 'make sure they're still honoring it as they may have had turnover in their Recruiting team'"); ¶ 64 (detailing direct phone conversations between Pixar's McAdams and Blue Sky's HR Director regarding "our sensitive issue of employee retention").

Courts in this district have allowed similar allegations to toll the statute of limitations on antitrust claims.[45] Decisions from other district courts are in accord.[46]

Plaintiffs' precise allegations—from specific names to exact dates and locations of in-person secret meetings—also plainly distinguish Plaintiffs' Complaint from the inapposite cases in Defendants' brief. These facts are far more than "[b]ald allegations of conspiracy and concealment,"[47] and Plaintiffs repeatedly answer the who, what, when, where, and how of Defendants' acts of concealment.[48]

### (2)   Defendants Worked to Minimize Written Record of the Conspiracy

In addition to holding secret meetings limited to the most senior executives and HR officers, Plaintiffs allege that Defendants deliberately kept discussions and instructions regarding the conspiracy unwritten. Defendants also kept documents describing the conspiracy out of public view until this Court's 2013 and 2014 orders unsealing them in the *High-Tech* litigation.

In addition to the allegations above summarizing secret in-person meetings or conspiratorial phone calls, Plaintiffs' Complaint contains even further details of Defendants' efforts to avoid documentary evidence of the conspiracy. *See* Compl. ¶ 15 (explaining how principals to the conspiracy "communicated about the agreements orally or in emails among themselves, often insisting on discussing the agreements by phone"); ¶ 127 (summarizing how Defendants "avoided discussing the agreements in written documents that might be disseminated beyond the individuals

---

[45] *See id.* (denying motion to dismiss where the defendants "kept secret their allegedly collusive meetings and other contacts"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010) (adopting special master's recommendation to deny motion to dismiss where the defendants "took steps to keep their meetings secret" including "limiting meeting attendees"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1132 (N.D. Cal. 2008)  (denying motion to dismiss where the defendants engaged in "secret discussions"); *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 787–89 (N.D. Cal. 2007) (denying motion to dismiss where the defendants conducted "secret meetings to set prices").

[46] *See, e.g.*, *In re Comm. Explosives Litig.*, 945 F. Supp. 1489, 1493 (D. Utah 1996) (defendants "me[t] and secretly discuss[ed]" the conspiracy).

[47] *Stutz Motor Car of America, Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1363 (C.D. Cal. 1995).

[48] *Cf. In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 940 F. Supp. 2d 367 (E.D. La. 2013) (rejecting complaint that lacked any such "specific allegations" of secret meetings and communications).

involved in the conspiracy, to avoid unnecessarily creating evidence that might alert Plaintiffs or other class members to the conspiracy's existence"); ¶ 128 (alleging that Defendants "often tried to limit the details of their illicit communications to phone calls"); ¶ 129 (describing how DreamWorks officers explained the scheme orally to a new HR employee, that he never saw written documentation, and that "head recruiters told him it was unsaid and certainly not in writing").

Defendants also prevented public access to documents filed in the *High-Tech* litigation. In particular, Defendants requested that this Court seal all documents related to:[49]

- Defendants' compensation data;

- Defendants' internal decision-making regarding their business strategies related to compensation;

- Internal assessments of their and other employers' competitive position in the labor market;

- Compensation practices, strategies and policies; and

- Recruiting and hiring data, practices, strategies and policies.

This is the exact type of information that Plaintiffs required in order to potentially discover that they had been injured, but Defendants worked to ensure such documents would not be made public. Indeed, it was not until after this Court's Orders in 2013 and 2014 that Plaintiffs were able to see redacted versions of many of these previously withheld documents.[50]

As many courts have recognized, active efforts to conceal a conspiracy like those described above toll the statute of limitations.[51] This includes efforts to ensure that "any cost, price, and

---

[49] *See* Exhibit A, *In re High-Tech Employee Antitrust Litig.*, Order Granting in Part and Denying in Part Motions to Seal, Dkt. # 730, at 5 (Mar. 14, 2014).

[50] *See, e.g.*, Exhibit A, *In re High-Tech Employee Antitrust Litig.*, Order Granting in Part and Denying in Part Motions to Seal, Dkt. # 730, at 5 (Mar. 14, 2014); Exhibit B, *In re High-Tech Employee Antitrust Litig.*, Order Granting in Part and Denying in Part Motions to Seal, Dkt. # 953 (July 7, 2014); Exhibit C, *In re High-Tech Employee Antitrust Litig.*, Order Granting in Part and Denying in Part Motions to Seal, Dkt. # 273 (Jan. 15, 2013).

[51] *See In Re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *16 (N.D. Cal. Jan. 21, 2014) (personnel directed not to memorialize agreement in writing); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010) (conspirators avoided note-taking during secret meetings); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 487, 491 (C.D. Cal. 1991) (conspirators omitted names of co-conspirators in written documents).

compliance information produced in connection with litigation be placed under seal."[52] By minimizing the written record of the conspiracy, and preventing Plaintiffs from accessing any existing documents, the Complaint adequately alleges that Defendants fraudulently concealed their conspiracy.

Defendants argue that the sections of the Complaint referencing conspiracy-related email correspondence somehow undercut Plaintiffs' well-pled allegations. They do not. The fact that Defendants failed to stamp out all written record of their conspiracy does not mean Defendants did not drastically curtail it and confine it to a small group of senior managers, which is all that has to be alleged.[53]

> **(3)      Defendants Affirmatively Misled Plaintiffs and the Public through the Croner Survey**

Finally, the Complaint alleges that Defendants deliberately misrepresented their anticompetitive compensation through the Croner survey:

> Compl. ¶ 131. Defendants have attempted to create the false impression that their decisions are independent and that they were acting in accordance with the antitrust laws. For example, they and the Croner Company describe the Croner Survey as an "independent third party" survey purportedly falling within the DOJ's safe harbor, but Defendants used the occasion of Croner meetings to discuss and set compensation ranges for their employees in secret and in violation of the federal antitrust laws. . . .

Defendants organized numerous secret meetings around this survey, during which Defendants' senior human resources executives colluded to set compensation. The executives "set the parameters of [the Croner] survey," in order to "confirm or adjust [Defendants'] salary ranges." Compl. ¶ 75. As Plaintiffs' Complaint further alleges:

> Compl. ¶ 77.   Defendants used the opportunity presented by the Croner meeting to go further than their matching of job positions across companies; they discussed, agreed upon and set wage and salary ranges during meals, drinks and other social gatherings that they held outside of the official Croner meetings.

---

[52] *Sinclair Oil Corp. v. Atlantic Richfield Co.*, 720 F. Supp. 894, 907 (D. Utah 1989).

[53] *See, e.g.*, *In Re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *16 (N.D. Cal. Jan. 21, 2014) (defendants minimized written communication but also emailed regarding conspiracy).

After colluding on compensation in behind-the-scenes meetings, Defendants facilitated the misleading publication of this agreed-upon compensation in the Croner survey itself. Compl. ¶ 131. Defendants argue that the survey is "readily available," and, according to Croner's website, "provide[s] up-to-date <u>competitive compensation information</u>." Mot. at 12 n.11 (emphasis added). Defendants fail to mention that they did not make the survey available to anyone outside the survey participants, and withheld the wage information from Plaintiffs and class members.

In any event, the Croner survey <u>did not</u> provide "competitive compensation information" for employees like Plaintiffs. It provided the opposite. The survey reported the <u>anticompetitive</u> compensation that Defendants had unlawfully conspired to set. By deliberately misrepresenting their suppressed compensation data as "competitive," Defendants engaged in the exact conduct that courts have repeatedly recognized as fraudulent concealment.[54]

### b. The Complaint Adequately Alleges That Plaintiffs Had No Actual or Constructive Knowledge of the Conspiracy

In addition to pleading numerous affirmative acts of concealment, Plaintiffs have adequately pled "that [they] had neither actual nor constructive knowledge of the facts constituting [their] claim for relief . . . ."[55] Plaintiffs began to discover their injuries no earlier than 2013, when this Court began unsealing documents in the *High-Tech* litigation. Compl. ¶ 95. Many such documents were not unsealed until July 2014, mere weeks before Plaintiffs filed their Complaint.[56]

Defendants do not appear to dispute these allegations. In particular, Defendants do not argue that Plaintiffs had actual knowledge of the conspiracy, and they point to no evidence of actual knowledge. Instead, Defendants illogically argue that Plaintiffs should have learned of the

---

[54] *See In Re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *16 (N.D. Cal. Jan. 21, 2014) (recognizing that false public statements implying that prices were competitive constituted fraudulent concealment); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010) (publicizing misinformation about market prices constituted fraudulent concealment); *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 787–89 (N.D. Cal. 2007) (providing pretextual justifications for prices constituted fraudulent concealment).

[55] *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 777–78 (N.D. Cal. 2007) (brackets in original).

[56] *See* Exhibit B, *In re High-Tech Employee Antitrust Litig.*, Order Granting in Part and Denying in Part Motions to Seal, Dkt. # 953) (July 7, 2014).

conspiracy from publications <u>that did not name a single one of Defendants</u> and that characterized the purpose of the DOJ investigation as "unclear."[57] At best, Defendants' cited articles point to an investigation of "technology companies," which is far too broad a description to put those in the visual effects and animation field on constructive notice of their claims.

Defendants cite no persuasive case law to support their argument because no such authority exists. To the contrary, courts—including the Ninth Circuit—have rejected the notion that a small handful of articles puts a plaintiff on notice of an antitrust claim, <u>even when the articles reference the defendants by name</u>.[58] Based on these cases—and Defendants' sparse allegations—the Court should reject Defendants' argument that they have established constructive knowledge as a matter of law.[59]

---

[57] *See* Defendants' Request for Judicial Notice, Dkt. # 76, Ex. H (reporting that Google, Yahoo, Apple, Genetech, Microsoft, and Intel received requests for documents from the DOJ, but acknowledging that "[t]he exact focus of the inquiry is unclear" and that "[a]ntitrust lawyers said companies that receive such requests are not necessarily targets of an investigation"); Ex. I (reporting "preliminary" investigation into "technology companies," including Google, Yahoo, Apple, and Genetech, but acknowledging that "Justice Department officials declined to comment about an investigation"); Ex. J (reporting "probe into hiring practices among high-tech firms," naming Apple, Yahoo, Google, Genetech, Microsoft, Intel, IBM, and Dell); Ex. K (reporting investigation "in the technology and biotech industries," naming Google, Apple, Yahoo, Genetech, Microsoft, and Intel, but acknowledging that "[t]he exact focus of the investigation is unclear"); Ex. L (reporting "Probe of Hiring in Tech," naming Google, Intel, IBM, Apple, IAC/InterActiveCorp, Intel, Genetech, but stating on April 10, 2010, that "[t]he Justice Department hasn't confirmed the existence of the investigation").

[58] *See Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 503–04 (9th Cir. 1988) (holding that San Francisco Chronicle and Wall Street Journal articles naming the defendants were insufficient to constitute constructive knowledge as a matter of law); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 487, 497 (C.D. Cal. 1991) (holding that articles describing attorney general investigation into similar illegal conduct did not constitute constructive notice; *see also E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1400 (9th Cir. 1989) (holding that plaintiff's knowledge of a similar price-fixing lawsuit naming some of the same defendants did not constitute constructive knowledge).

[59] Unlike Defendants' ambiguous media reports that failed to name any of the Defendants or provide any description of the potential conspiracy, the first substantive media report giving Plaintiffs constructive notice of the Defendants' role in the conspiracy was from the website PandoDaily, which drew attention to unsealed documents in the *High-Tech* record on July 7, 2014. *See* Exhibit D, Mark Ames, *REVEALED: Court Docs Show Role of Pixar and Dreamworks Animation in Silicon Valley Wage-Fixing Cartel*, PandoDaily (July 7, 2014), http://pando.com/2014/07/07/revealed-court-docs-show-role-of-pixar-and-dreamworks-animation-in-silicon-valley-wage-fixing-cartel/; *see also* Transcript of Proceedings, Case Management Hearing, Dkt. # 45, at 34 (Nov. 5, 2014) (referencing PandoDaily story).

### c.   The Ninth Circuit Does Not Require a Complaint to Allege "Diligence" for the Doctrine of Fraudulent Concealment to Apply

Perhaps because Defendants have no colorable argument that Plaintiffs had knowledge of the conspiracy, Defendants devote an entire subsection of their brief to their argument that "Plaintiffs have not alleged diligence in investigating their claims." Mot. at 14. Every case Defendants cite in this subsection is from outside the Ninth Circuit. This is because the Ninth Circuit does not require a Complaint to allege "diligence" for the doctrine of fraudulent concealment to toll the statute of limitations in cases like this one.

As the Ninth Circuit explained in rejecting the defendants' fraudulent concealment arguments in *Conmar*, "[t]he requirement of diligence is only meaningful . . . when facts exist that would excite the inquiry of a reasonable person."[60] Other courts in this district have rejected the application of a diligence requirement to invoke fraudulent concealment under allegations of notice similar to those here.[61] Moreover, "[p]laintiffs are not under a duty continually to scout around to uncover claims which they have no reason to suspect they might have."[62] Against this backdrop, Defendants' unpersuasive contention that "diligence is a prerequisite to the application of equitable tolling"[63] is inapplicable to this case.

### 4.   Plaintiffs Have Adequately Alleged a Continuing Violation

Of the many reasons Defendants' statute of limitations argument fails, perhaps the simplest is this: Defendants' unlawful conduct continued beyond September 8, 2010.

Although, absent tolling, 15 U.S.C. § 15b subjects federal antitrust claims to a four-year statute of limitations—"an exception to this time limit exists for continuing violations."[64] As this

---

[60] *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 504 (9th Cir. 1988) (emphasis added).

[61] *See In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 788 (N.D. Cal. 2007) (holding that articles "would not give rise to any information that would 'excite the inquiry of a reasonable person' and thereby require Plaintiffs to engage in affirmative steps to attempt to discover the conspiracy").

[62] *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 487, 498 (C.D. Cal. 1991) (citing *Conmar*, 858 F.2d at 504).

[63] *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 157 (2d Cir. 2012).

[64] *Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014).

Court has explained, "[u]nder the 'continuing violation doctrine,' 'each overt act that is part of the [antitrust] violation and that injures the plaintiff . . . starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.'"[65] An "overt act" restarts the limitations period if it: "(1) is a 'new and independent act that is not merely a reaffirmation of a previous act'; and (2) 'inflict[s] new and accumulating injury on the plaintiff.'" *Id.*[66] "This standard is meant to differentiate those cases where a continuing violation is ongoing— and an antitrust suit can therefore be maintained—from those where all the harm occurred at the time of the initial violation."[67] Conspiracies limited to the time of the initial violation are "the exception, not the rule." *Id.* at 1203.

The most common continuing violations occur when accumulating harm from a "pre-limitations period contract . . . lead[s] a new cause of action to accrue." *Id.*[68] Pre-limitations period price-fixing agreements are classic continuing violations. Courts, including the Supreme Court and the Ninth Circuit, have repeatedly held that "each time a defendant sells its price-fixed product, the sale constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from the date of the act."[69]

Defendants' overt acts are analogous to those explained above. As the Complaint alleges, Plaintiffs entered into employment agreements governing compensation with Defendants <u>during the conspiracy</u>—a conspiracy the DOJ has already characterized as a *per se* antitrust violation. These agreements continued to govern Plaintiffs' employment—including their artificially depressed

---

[65] *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1187 (N.D. Cal. 2012) (Koh, J.) (brackets and ellipses in original).

[66] (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987)); *see also Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014) (same).

[67] *Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014).

[68] *See also Columbia Steel Casting Co., Inc. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1444–45 (9th Cir. 1996) (accruing new antitrust cause of action each time defendant refused to wheel electricity pursuant to pre-limitations period agreement); *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1301 (9th Cir. 1986) (accruing new antitrust cause of action every time defendant steered customers away from plaintiff's shop pursuant to pre-limitations period agreement).

[69] *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997); *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 290–91 (4th Cir. 2007) ("[E]ach sale to the plaintiff, starts the statutory period running again.")).

compensation—<u>after</u> the limitations period began. *See, e.g.*, Compl. ¶ 18 (explaining that Plaintiff Nitsch worked for Defendant DreamWorks Animation from 2007 to 2011). During this entire time period, "Defendants repeatedly invaded Plaintiffs' and class members' interests by adhering to, enforcing and reaffirming the anticompetitive agreements" developed during the conspiracy. *Id.,* ¶ 123. Just as the plaintiffs in *Oliver* suffered harm with each purchase of a price-fixed product, Plaintiffs suffered antitrust injury <u>each time</u> they received price-fixed compensation—including payments made within the four-year window before the filing of the Complaint—because that compensation was paid pursuant to employment agreements entered into during Defendants' unlawful conspiracy. Each of these payments was an overt act causing new harm, and, as Plaintiffs plainly allege, these payments continued well into the post-September 8, 2010, limitations period. *See* Compl. ¶ 18.

Defendants' motion simply ignores the binding case law summarized above. Instead, Defendants either: (1) cut-and-paste inapplicable passages from non-antitrust cases,[70] or (2) cite cases where the plaintiff failed to make any allegations of a continuing violation. For instance, in *Philips v. Bank of America, N.A.*, the plaintiff—proceeding pro se—failed to allege any post-limitations conduct whatsoever, and the court necessarily dismissed the complaint (without prejudice to refile).[71] Likewise, in *Korea Kumho Petrochem. v. Flexsys Am. LP*, the defendant <u>did not even</u> raise a statute of limitations challenge.[72] Nevertheless, the court dismissed the complaint on *Twombly* grounds because it "lack[ed] <u>any</u> allegations that [plaintiff] suffered a cognizable injury." *Id.* (emphasis added). Plaintiffs' Complaint here, on the other hand, recites the exact type of allegations that constitute a continuing violation in the Ninth Circuit.[73]

---

[70] *See Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) (civil rights discrimination).

[71] 2011 WL 2160583, at *7 (D. Haw. June 1, 2011).

[72] 2008 WL 686834, at *6 (N.D. Cal. Mar. 11, 2008).

[73] *See Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086–87 (9th Cir. 2014) (recognizing as sufficient the allegation that plaintiffs "purchased SD cards on or after March 15, 2007"). The only case Defendants cite regarding a continuing violation from a pre-limitations contract is *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1105–06 (N.D. Cal. 2012). In that case, the court relied in part on the now-overruled district court opinion in *Samsung* to support its ruling rejecting the plaintiff's continuing violation allegations. *Id.* at *1105. Moreover, the complaint's confusing allegations failed to describe any unlawful post-limitations conduct and made it "unclear" whether

Rather than attempt to distinguish the binding Ninth Circuit case law supporting Plaintiffs' continuing violation allegations, Defendants devote an entire subsection of their brief to the dubious notion that this Court must conclude, on the pleadings and as a matter of law, that their conspiracy ended in 2009 or 2010. Mot. at 7–9. As a preliminary matter, Defendants' argument on this point is nothing more than a bare contradiction of well-pled allegations in Plaintiffs' Complaint, which must be taken as true.[74] Among other things, Plaintiffs specifically allege that at least one Defendant made no changes to its practices after the Pixar and Lucasfilm consent decrees in 2010 and 2011. Compl. ¶ 129.

Defendants offer sparse support for their argument that the conspiracy ended in 2009 or 2010. Tellingly, and despite requesting judicial notice of several documents outside the pleadings, Defendants do not point to a single document demonstrating that any Defendant abandoned the conspiracy upon the start of the DOJ investigation. The best Defendants can do is point to an expert report from the *High-Tech* litigation that "assumes" for the purposes of a mathematical model that the conspiracy ended upon the DOJ investigation. Defendants provide no documentary basis for this "assumption" besides a vague reference to a 2010 salary increase at Google (not a Defendant here and not alleged to be part of the visual effects and animation conspiracy). Mot. at 8 n.6. This is plainly insufficient to justify rejecting the truth of Plaintiffs' allegations, especially at the motion to dismiss stage.

Indeed, absent any further irrefutable evidence that Defendants abandoned their conspiracy, the Court must presume that the conspiracy continued. As the Eleventh Circuit stated in *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, "[w]here there is evidence of the continuing nature of an agreement to eliminate competition, absent an affirmative showing of the termination of that agreement, the conspiracy must be presumed to have continued."[75] Moreover, to the extent Plaintiffs' Complaint provides fewer post-investigation details of the conspiracy, "the relative paucity of

---

the plaintiff was alleging injury from an unlawful pre-limitations agreement. Conversely, Plaintiffs' Complaint alleges both.

[74] *See, e.g., United States v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011).

[75] 198 F.3d 823, 828–29 (11th Cir. 1999).

allegations is plausibly explained by increased care and efficiency in the operation of the conspiracy."[76] Defendants' repeated observation that some Defendants were never previously sued until after the incriminating documents in *High-Tech* were unsealed and that some Defendants did not enter into consent decrees with the DOJ only reinforces this point, plausibly suggesting that those Defendants believed their misconduct could continue with greater care and efficiency in the operation of the conspiracy.

**B.      The Complaint Plausibly Alleges That Defendants Conspired to Restrain Competition**

**1.      Legal Standard on a Motion to Dismiss**

Rule 8(a)(2) requires only a short and plain statement of a claim for relief "that is plausible on its face."[77] "*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden" to avoid dismissal at the pleading stage.[78] Defendants recast the law in an attempt to elevate the pleading standards to approach summary judgment. But nowhere does the law require Plaintiffs—at any stage of the litigation, let alone at the pleading stage—to answer each and every factual question concerning the conspiracy at the outset of the case (such as "did Defendants agree to each set the same wage for a given job title or function? What job titles and functions were covered? What elements of compensation were fixed? How rigid or flexible were these purportedly agreed compensation levels? Which Defendants agreed to what?"). Mot. at 33. Indeed, appellate courts repeatedly recognize that a "conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with . . . precision."[79]

Rather, at the motion to dismiss stage, the court accepts all facts alleged in the complaint as true, and draws all reasonable inferences in favor of the plaintiff.[80] Plaintiffs need only provide

---

[76] *In Re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *12 (N.D. Cal. Jan. 21, 2014).

[77] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[78] *al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) (citing *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 668 (2009)), *rev'd & remanded on other grounds*, 131 S.Ct. 2074 (2011).

[79] *United States v. Snow*, 462 F.3d 55, 68 (2d Cir. 2006) (quotation omitted); a*ccord Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012).

[80] *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009), *rev'd & remanded on other grounds*, 131 S.Ct. 2074 (2011).

"enough factual matter (taken as true) to suggest that an agreement was made."[81] The Supreme Court has emphasized that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."[82]

*Twombly* and its progeny likewise reject invitations to weigh the potential competing inferences from facts in (or outside) the Complaint. Courts recognize that "[b]ecause plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible."[83] But the choice between two plausible inferences or scenarios is one for the factfinder, and "not a choice to be made by the court on a Rule 12(b)(6) motion."[84] Defendants inappropriately invite this Court to weigh competing inferences and credit their own over Plaintiffs'. At the motion to dismiss stage, however, the Court must credit Plaintiffs' factual allegations and draw inferences in Plaintiffs' favor.

### 2. The Complaint Plausibly Alleges That Defendants Conspired to Restrain Competition

Defendants' argument seeks to recast the Complaint's allegations, deconstructing it into piecemeal parts, and failing to consider the conspiracy as a whole as this Court is required to do.[85] To prove an antitrust conspiracy at trial, a civil antitrust plaintiff must show by a preponderance of the evidence there was "a conscious commitment to a common scheme designed to achieve an unlawful objective."[86] As this Court has held, "[a] co-conspirator need not know of the existence or identity of

---

[81] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[82] *Id.*

[83] *Anderson News, L.L.C. v. Am. Media, Inc*., 680 F.3d 162, 184 (2d Cir. 2012); *see also Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 766 & n.11 (1984) (where documents were "subject to" divergent interpretations, their interpretation "properly was left to the jury"); *In re Lithium Ion Batteries Antitrust Litig*., No. 13-MD-2420 YGR, 2014 WL 4955377, at *34 (N.D. Cal. Oct. 2, 2014) (denying motions to dismiss in section 1 conspiracy, as resolution of "'potentially differing inferences'" is for "'resolution at a later date'").

[84] *Anderson News, L.L.C. v. Am. Media, Inc*., 680 F.3d 162, 184 (2d Cir. 2012).

[85] *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).

[86] *Monsanto Co. v. Spray-Rite Serv. Corp*., 465 U.S. 752, 764 (1984) (emphasis added) (quotation omitted).

the other members of the conspiracy or the full extent of the conspiracy."[87] Direct proof of an agreement is not required and, indeed, is rarely found.[88] In fact, "[t]he picture of conspiracy as a meeting by twilight of a trio of sinister persons with pointed hats close together belongs to a darker age."[89] Rather, the scheme and its object may be inferred from the circumstances, including the nature, context, and continuing course of Defendants' conduct.[90]

### a. The Complaint Alleges Defendants' Conspired to Suppress Compensation

Application of *Twombly* at the motion to dismiss stage does not change substantive antitrust law, nor require a standard of proof equal to what Plaintiffs would be required to prove to a jury. Here, Plaintiffs allege sufficient facts to plausibly suggest Defendants' "conscious commitment to a common scheme." Defendants engaged in concerted action to achieve an unlawful objective: suppression of compensation for animators, digital artists, software engineers and other animation and special effects workers. Compl., ¶ 1. Defendants achieved their goal to suppress compensation (or as Pixar's President described the conspiracy, "keeping a lid on rising labor costs" (*id.*, ¶ 7)), by a continuous course of conduct, including: (1) refraining from "cold-calling", recruiting, or "poaching" from each other; (2) notifying co-conspirators when making offers of employment to employees of a co-conspirator; (3) agreeing, if the original employer/conspirator made a counter offer, not to increase the offered compensation; and (4) engaging in collusive discussions regarding compensation levels and hiring techniques. *Id.*, ¶¶ 2, 8-14.

---

[87] *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1118 (N.D. Cal. 2012); *see also Beltz Travel Serv. Inc. v. Int'l Air Transp. Ass'n,* 620 F.2d 1360, 1366–67 (9th Cir. 1980) ("Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result.").

[88] *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 441 (9th Cir. 1990) (explaining a plaintiff can show agreement by circumstantial or direct evidence); *In re Citric Acid Litig.*, 191 F.3d 1090, 1093 (9th Cir. 1999) (same); *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1009 (N.D. Cal. 2013) ("Circumstantial evidence can establish an antitrust conspiracy at trial or at summary judgment. Certainly more is not required at the pleading stage." (citation omitted)).

[89] *Sweeney v. Texaco, Inc.*, 637 F.2d 105, 111 (3d Cir. 1980) (quotation omitted); *see also James Julian, Inc. v. Raytheon Co.*, 557 F. Supp. 1058, 1065 (D. Del. 1983) ("[C]onspiracies seldom are established by more than circumstantial evidence.").

[90] *United States v. Consol Packaging Corp.*, 575 F.2d 117, 126 (7th Cir. 1978) (holding that direct evidence is not needed to prove a conspiracy, rather "a common purpose and plan may be inferred from a 'development and collocation of circumstances'").

Plaintiffs do not rely on "conclusory assertions" as Defendants claim; indeed, the Complaint alleges numerous, specific factual examples of overt acts by all Defendants in furtherance of the conspiracy. Plaintiffs detail how the conspiracy took root in the mid-1980s, when Defendants Pixar, through its CEO Steve Jobs and President Edwin Catmull, and Lucasfilm, through founder George Lucas, developed the anti-solicitation scheme before enlisting other visual effects and animation studios to join. Compl., ¶¶ 3, 46-48. By 2005, Defendants Pixar, "Sony, Blue Sky, etc." had firmly established "a gentleman's agreement not to directly solicit/poach from their employee pool." *Id.*, ¶¶ 5, 49-68, 72-73.[91] In 2007, Pixar again acknowledged its "agreement with DreamWorks not to actively pursue each other[']s employees." Compl., ¶ 4.

Plaintiffs also allege that as the conspiracy developed, Defendants engaged in a continuous stream of collusive discussions regarding confidential information, including compensation details and hiring techniques, internal to each company. For example, the Complaint details annual meetings, beginning in the mid-1990s, of Defendants' human resources and recruiting personnel to discuss an industry compensation survey, and a more "intimate" "Directors meeting" of senior human resources personnel. These meetings served to "confirm or adjust [the conspirators'] salary ranges." *Id.*, ¶ 9. The head of Pixar's human resources confirmed the regularity of communications (versus the "sporadic" characterization of it Defendants gave in their motion to dismiss (Mot. at 19)) when she wrote to her co-conspirators at Sony Pictures, Imageworks, ILM, DreamWorks, Disney and Blue Sky in 2007 that "[c]hatting with all of you each day is really becoming a fun habit." *Id.*, ¶ 12. Similarly, Walt Disney's Vice President of Human Resources confirmed that she "hear[s] from you all on a daily basis." *Id.*, ¶ 12. Defendants' brief does not even acknowledge these emails, which strongly suggest that Defendants' communications were regular and pervasive rather than

---

[91] Defendants cite the Ninth Circuit's opinion in *Richards v. Nielsen Freight Lines*, 810 F.2d 898 (9th Cir. 1987) to suggest that allegations of a "gentleman's agreement" are insufficient to state a claim under *Twombly*. Mot. at 30, n.32. Defendants misread *Richards*, a summary judgment opinion where the court applied two labor union-related exemptions from the federal antitrust laws that do not apply in this case and where the defendants justified their conduct by proving it was consistent with proper business practices. Regardless, Plaintiffs' detailed allegations here of the agreements reached between the Defendants go far beyond the scant evidence—testimony of one witness—presented in *Richards*.

"sporadic," "isolated," and "intermittent." Mot. at 19, 21. Without tapping Defendants' phones, Plaintiffs could hardly do more to allege regular communications between conspirators.

Nor do Defendants acknowledge that the emails discovered to date show more than "mere exchange of information." Mot. at 21. For example, Defendants exchanged <u>future</u> salary budget plans. Compl. ¶ 14. But even these omissions miss the point: the question is whether it is plausible to infer that Defendants used these communications as part of an effort to suppress wages. It may be *possible* that Defendants discussed whether DreamWorks was too "generous" with overtime compensation (*id.*, ¶ 88) or exchanged pay ranges for positions (*id.*, ¶ 81) without actually agreeing to suppress wages—but the anticompetitive inference is unquestionably plausible, particularly in light of the copious evidence that Defendants worked together to "keep[] a lid on rising labor costs," *id.*, ¶ 7. This is evidence of an industry working in concert to restrain compensation competition instead of vigorously competing.

Defendants ask the Court to decide the scope of Defendants' conspiracy now as made clear by footnote 21. Defendants request that if the Court does not grant the motion to dismiss in its entirety the Court should instead strike paragraphs of the Complaint discussing Defendants' collusive discussions regarding compensation (to preclude discovery on these types of behavior). Mot. at 18 n.21. But the scope of a conspiracy is a quintessential question of fact within the jury's purview to decide.[92] Plaintiffs' specific allegations regarding Defendants' actions, including the nature, context and continuing course of conduct are sufficient at this stage from which to infer the existence of a conspiracy.[93] This is more than what is required under Rule 8(a) and *Twombly*.[94]

---

[92] *See United States v. Moussaoui*, 382 F.3d 453, 473 (4th Cir. 2004) (recognizing the "principle that the scope of an alleged conspiracy is a jury question"); *United States v. Sharpe*, 193 F.3d 852, 867 (5th Cir. 1999) ("[T]he scope of the conspiracy and membership in it are questions of fact for the jury.").

[93] *See United States v. Consol Packaging Corp.*, 575 F.2d 117, 126 (7th Cir. 1978).

[94] Defendants' reliance on *Rick-Mik Ents., Inc. v. Equilon Ents. LLC*, 532 F.3d 963 (9th Cir. 2008) is misplaced. The *Rick-Mik* plaintiffs claimed that the defendant conspired with numerous unnamed banks and related institutions to fix the price of credit and debit card fees. *Id.* at 975. While the court was concerned with plaintiffs' failure to identify the co-conspirators and the nature and type of agreements, the death knell for the *Rick-Mik* plaintiffs was their failure to allege a horizontal price fixing theory – the defendant was not in competition with the alleged co-conspirators (the banks). Unlike *Rick-Mik*, Defendants in this case are direct competitors for the same animation workers in the same industry.

1    Additionally, Defendants' request to strike paragraphs 74-91 of the Complaint has no proper

2    legal basis. Mot. at 18, n21. To strike from a pleading, Defendants must show the contents are

3    "redundant, immaterial, impertinent, or scandalous[.]"[95] Motions to strike "are generally regarded

4    with disfavor because of the limited importance of pleading in federal practice, and because they are

5    often used as a delaying tactic."[96] Accordingly, such motions should be denied unless the matter has

6    "no logical connection" to the litigation "and may prejudice one or more of the parties to the suit."[97]

7    Defendants do not even contend that the allegations in paragraphs 74-91 are redundant, immaterial,

8    impertinent, or scandalous. Their request to strike should be denied.

### b. Taken as a Whole, Defendants' Participation in Industry Meetings, Compensation Surveys, and Collusive Discussions Concerning Compensation Support the Conspiracy's Plausibility

11    Defendants' remaining arguments regarding high-level conspirator meetings, participation in

12    wage surveys, and collusive discussions regarding the level of compensation are little more than an

13    attempt to deconstruct and cabin facts from the totality of the allegations, in violation of substantive

14    antitrust law. The Supreme Court remarked nearly fifty years ago in *Continental Ore*, and it remains

15    a fundamental tenet of conspiracy law: "[t]he character and effect of a conspiracy are not to be

16    judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."[98] In a

17    highly fact-intensive case like this one, it is even more important that the ultimate fact-finder "look at

18    the whole picture and not merely at the individual figures in it."[99] *Twombly* of course did not change

19    this fundamental law.[100] As pled in the Complaint, the object of Defendants' conspiracy was to

20    suppress compensation. The means by which they achieved that objective included, *inter alia*, the

---

[95] Fed. R. Civ. P. 12(f).

[96] *Rivers v. Cnty. of Marin*, No. C-05-4251, 2006 WL 581096, at *2 (N.D. Cal. Mar. 7, 2006) (quotation omitted).

[97] *Id.*

[98] *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).

[99] *Id*; *see also United States v. Kamins*, 479 F. Supp. 1374, 1380 (W.D. Pa. 1979) ("Because one conspiracy may have many illegal objectives, it will necessarily involve a number of sub-agreements to commit each of these specified objectives. Some members may concur in only some of the many objectives, yet they are liable for all because there is but one scheme, one enterprise, one conspiratorial web.").

[100] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

1    various overt acts. *See, e.g.,* Compl., ¶¶ 74-91. Under substantive antitrust law and the Supreme

2    Court's instructions in *Continental Ore*, this information must be considered in its totality.

3            Defendants' arguments also fail for the additional reason that they miscast the allegations of

4    the Complaint. Plaintiffs do not merely rely on these allegations as general "opportunities" to

5    conspire or innocuous "isolated exchanges of information." Mot. at 20-21. Rather, Plaintiffs allege

6    these facts within the broader context of direct evidence of Defendants' conspiracy. For example,

7    Lori McAdams of Pixar specifically stated that the compensation surveys and associated meetings

8    were "so we can each confirm or adjust our salary ranges." Compl., ¶ 75. The compensation

9    meetings also served as a mechanism to enforce the conspiracy and detect cheating. When learning

10   about "a substantial salary increase" at one compensation meeting in January 2007, high level

11   executives stepped in to confirm with their co-conspirators "how important it is that we not have a

12   hiring war." *Id.*, ¶ 78. Although participation in trade meetings <u>standing alone</u> may be insufficient to

13   sustain a complaint, it is relevant to showing the opportunity and means to further a conspiracy.[101]

14   Defendants cite no case holding the contrary.[102] Similarly, although Defendants argue that the

15   exchange of information is not a *per se* violation of the Sherman Act (Mot. at 21), Plaintiffs'

16   allegations here do not rest on information exchanges alone. Plaintiffs allege both direct and indirect

17

18

19

20   [101] *See, e.g., Todd v. Exxon Corp.*, 275 F.3d 191, 213 (2d Cir. 2001) ("[T]he frequency of the
     meetings is itself problematic for the same reason that the exchange of current price data is suspect:

21   It tends to facilitate the policing of price conspiracies."); *In Re Flash Memory Antitrust Litig.*, 643 F.
     Supp. 2d 1133, 1148 (N.D. Cal. 2009) ("[T]rade association affiliations and attendance at industry

22   events may be alleged to show that putative conspirators had the opportunity and means to develop
     and/or further their alleged collusive scheme."); *In re Static Random Access Memory (SRAM)*

23   *Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) (holding that while trade association
     allegations "cannot alone support Plaintiffs' claims, . . . such participation demonstrates how and
     when Defendants had opportunities to exchange information or make agreements").

24   [102] For example, in *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1021-

25   24 (N.D. Cal. 2007), Judge Alsup dismissed a complaint that rested <u>solely</u> on the defendants
     attending the same trade association meetings with subsequent parallel action. The Court then upheld

26   an amended complaint that added allegations regarding historically unprecedented changes in
     behavior and market structure but not more allegations of conspiratorial meetings or

27   communications. *See In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085 (N.D.
     Cal. 2007). In upholding the complaint, Judge Alsup explicitly noted that "direct allegations of

28   conspiracy" are not necessary at the pleading stage. *Id.* at 1096.

1    evidence of an agreement, combined with collusive discussions. When considered in combination,

2    these are certainly sufficient to withstand a motion to dismiss.[103]

              c.    **The Complaint Alleges Facts Sufficient to Support a Claim that
                     Defendants' Conspiracy Impacted Compensation**

4            Defendants attack the Complaint for failing to allege how compensation was affected by the

5    conspiracy. Mot. at 22. Essentially, Defendants suggest that Plaintiffs have not proven antitrust

6    injury at the outset of their case. Plaintiffs clearly allege that Defendants' conspiracy suppressed

7    animation workers' compensation. The purpose of the conspiracy was to reduce competition in order

8    to affect compensation, and it was successful. And, as the Tenth Circuit recently noted in the *In re*

9    *Urethane Antitrust Litigation*, "[u]nder the prevailing view, price-fixing affects all market

10   participants, creating an inference of class-wide impact even when prices are individually

11   negotiated."[104] Moreover, Plaintiffs extensively alleged how the conspiracy impacted compensation.

12   Compl., ¶¶ 96-108. Plaintiffs allege that the conspiracy impacted the compensation of all visual

13   effects and animation workers and explain why Defendants' conduct would be expected to have that

14   effect. *Id.* And Plaintiffs have suggested the measurement of the class's injury: "the extent to which

15   Defendant's conduct suppressed compensation below competitive levels." *Id.*, ¶ 119(f). As this Court

16   held in *High-Tech*, at the pleading stage, Plaintiffs do not need to go further to calculate the impact

17   of a conspiracy.[105] And, as this Court is aware, the extent and measurement of a plaintiff's, or a

---

[103] *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 5138859, at *7 (N.D. Cal. Dec. 10, 2010) (distinguishing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 124-126 (3d Cir. 1999) where evidence showed employees relayed regular reports about competitors' pricing to pricing authorities); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1143 (N.D. Cal. 2009) (rejecting the defendants' contention that "sporadic" exchanges of information were insufficient to state a claim where allegations were that the defendants "routinely exchanged highly sensitive competitive information, including pricing and production data, to facilitate and monitor their price fixing conspiracy").

[104] *Dow Chem. Co. v. Seegott Holdings, Inc. (In re Urethane Antitrust Litig.)*, 768 F.3d 1245, 1254 (10th Cir. 2014).

[105] *See In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1123 (N.D. Cal. 2012).

class's, damages in an antitrust action is the subject of extensive and complicated economic analysis.[106] This type of analysis is not required at the pleading stage.[107]

### 3. Plaintiffs Have Adequately Alleged Blue Sky and Sony's Participation in the Conspiracy

Plaintiffs need only "make allegations that plausibly suggest that each [d]efendant participated in the alleged conspiracy."[108] Despite Defendants' suggestions otherwise, Plaintiffs' burden is not heightened somehow if the Department of Justice chose not to pursue a subset of Defendants named in this suit. The Complaint follows this established law and sufficiently alleges claims against all Defendants, including the only two Defendants to challenge the sufficiency of the allegations against a particular entity, Blue Sky and Sony.

### a. The Complaint Plausibly Suggests that Blue Sky Participated in the Conspiracy

Blue Sky's arguments rest on an inappropriate methodology: attempting to tightly compartmentalize each of the allegations and "wiping the slate clean after scrutiny of each" to argue that none of them is sufficient in isolation.[109] Plaintiffs' allegations do not have to each be sufficient individually, just <u>as a whole</u> the allegations must plausibly suggest a conspiracy in which each defendant participated.

---

[106] *In re High-Tech Employee Antitrust Litig.*, Case No. 11-CV-02509-LHK, 2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) (denying motions for summary judgment and discussing report of Dr. Leamer regarding suppression of compensation to the technical employee class).

[107] *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1098 (N.D.Cal. 2007) (acknowledging that "some courts have declined to find damages to be too speculative at the pleading stage because determining damages is an intensely factual process"); *Waldrup v. Countrywide Fin. Corp.*, No. 08833-CAS, 2014 WL 4978437, at *4 (C.D. Cal. 2014) (finding plaintiff adequately pled damages generally "in the form of appraisal payments" to survive motion to dismiss).

[108] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1019 (N.D. Cal. 2010) (quotation omitted); *see also In In re High-Tech Employee Antitrust Litig. Re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *9 (N.D. Cal. Jan. 21, 2014) ("'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*)); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp.2d 896, 903 (N.D. Cal. 2008) (finding plaintiffs "plead sufficient facts plausibly to suggest a § 1 price-fixing conspiracy" when the complaint alleged "Defendants had an ongoing agreement to exchange price information and intended that this exchange would lead to price stabilization or increases").

[109] *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).

PLS.' OPP'N TO MOT. TO DISMISS
Case No: 14-cv-4062-LHK

Reviewing the allegations of the Complaint as a whole, Plaintiffs' allegations more than plausibly suggest that Blue Sky committed multiple overt acts in furtherance of the conspiracy. Internal Pixar documents specifically state that "With regard to Blue Sky . . . [Pixar] ha[d] a gentleman's agreement not to directly solicit/poach from their employee pool." Compl., ¶¶ 5, 50.[110] Engaging in a counter-narrative, Blue Sky argues this email demonstrates only Pixar's side of its understanding of the agreement, and not Blue Sky's. But Pixar's view that it had an agreement with Blue Sky is relevant (and probative) evidence that an agreement in fact existed. Combined with the other allegations in the Complaint, Plaintiffs have presented sufficient information that Blue Sky entered into a conspiracy to suppress wages and not just that each competitor had their own individual "understanding."

Additionally, Plaintiffs allege that Blue Sky regularly participated in collusive discussions to suppress compensation. For example, Plaintiffs allege that in September 2009, Blue Sky's Director of Human Resources actively solicited compensation information regarding the range of compensation for specific titles from Pixar in September 2009. Compl., ¶ 83. And Plaintiffs outline Blue Sky's participation in the Croner and Dunlap wage surveys (*id.*, ¶ 76), the participation of Blue Sky's human resources executives in regular meetings regarding compensation levels (*id.*, ¶¶ 12, 77, 79, 90), and the regular collusive discussions regarding compensation levels between human resources executives, including those at Blue Sky (*id.*, ¶ 14).

The Complaint also references particularized incidents of Blue Sky as a co-conspirator in action. "Blue Sky declined to pursue a DreamWorks candidate who would 'be an amazing addition' because they didn't 'want to be starting anything with [Katzenberg] over one story guy.'" *Id.* (brackets in original). Blue Sky attempts to explain away this incriminating evidence, suggesting at most it is an example of "Blue Sky's unilateral desire to avoid starting a wage war with DreamWorks." Mot. at 25. But again, this Court should not take up Defendants' invitation to resolve

---

[110] Blue Sky confusingly dismisses this allegation as "unsupported by <u>any</u> document or well-pled allegation." Mot. at 26. And yet it provides the actual email quoted in the Complaint to the Court. *See* Pitt Decl., Ex. 3.

competing inferences from allegations and documents at the pleading stage.[111] On its face, this document evidences a clear intent to honor the terms of the Defendants' agreement not to solicit each other's employees.

Other documents demonstrate that Blue Sky and Pixar corresponded regarding "employee retention" and that Pixar affirmed that it would not recruit or "poach" Blue Sky employees. Compl., ¶ 64. Blue Sky discounts this allegation by suggesting the email as a whole demonstrates that Pixar frequently hired Blue Sky employees. Mot. at 26. Blue Sky misses the point—and its antitrust implications. This email demonstrates that Blue Sky and Pixar did not raid employees during the pendency of an ongoing contract or picture—this evidences a restraint on competition. If Pixar did pursue hiring these employees during the making of Ice Age 2, Blue Sky would be forced to act with a competitive response, such as potentially increasing compensation to retain these employees. And finally, Blue Sky's attempts to have this Court consider and rely on the deposition testimony of Lori McAdams of Pixar, not relied upon in the Complaint, are entirely inappropriate and should be stricken from the record.[112] Even if the Court were to consider it, the self-serving statements of a conspirator minimizing the scope of a conspiracy and trying to explain away her inculpatory statements cannot defeat an inference that contemporaneous documents meant what they said.

### b. The Complaint Plausibly Suggests that Sony Participated in the Conspiracy

Plaintiffs' allegations also show that Sony participated directly in the conspiracy by committing overt acts in furtherance thereof. Sony seeks dismissal by re-casting Plaintiffs allegations. Plaintiffs allege that Defendants were displeased by Sony's initial competition on compensation and recruitment in the early 2000s. Compl., ¶¶ 58-59. This led to Defendants enlisting Sony in the conspiracy no later than 2004 or 2005. *Id.*, ¶ 60. Plaintiffs allege that Sony committed several overt acts in furtherance of the conspiracy.

- Sony's human resources personnel participated in the regular discussions regarding compensation levels, including budget for future salary increases, with the other Defendants, as described above. Compl., ¶¶ 12, 14, 86 (Pixar emailed Sony and others,

---

[111] *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

[112] *See* section I.A.3.c, *infra.*

asking for the "salary increase budget for FY '07"), ¶ 90 (2007 email between Defendants' human resources and recruiting executives and personnel, including Sony's).

- In 2005, Pixar internally distributed the rules for recruiting under the existing non-solicitation agreements as applied to each of the Defendants—and specifically with regard to Sony, the "gentleman's agreement not to directly solicit/poach." Compl., ¶ 50.

- Human resources personnel from Sony, along with counterparts from Defendants Disney, Pixar, and Blue Sky, participated in the direct collusive discussions regarding compensation ranges, including at the Croner survey meeting and informal gatherings after that meeting, and the SIGGRAPH conference. Compl., ¶¶ 77, 79.

- In 2007, DreamWorks noted its collusive discussions with Sony, stating: "We do sometimes share general comp information (ranges, practices) in order to maintain the relationships with other studios and to be able to ask for that kind of information ourselves when we need it." Compl., ¶ 84.

- Plaintiffs allege that in January 2009, Sony also engaged in collusive discussions regarding levels of overtime compensation with Defendants' DreamWorks, Pixar, and Disney and that "[a] Sony executive called [DreamWorks' Head of Production Technology] after emailing the subject was not 'taboo' for her." Compl., ¶ 88.

Notwithstanding the factual allegations that Sony committed multiple overt acts in furtherance of the conspiracy, Plaintiffs only need "to make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy."[113] Plaintiffs have done so here. Plaintiffs have sufficiently alleged more than enough of the "'slight evidence' [that] is necessary to connect [Sony] with [the larger conspiracy]."[114]

### c. Sony and Blue Sky's Reliance on Deposition Testimony and Documents Outside the Pleadings for the Truth of the Matter Is Improper and Should Be Stricken

In the motion, Defendants improperly rely on and submit a number of documents from outside the Complaint. Defendants lose sight of the fact that in deciding a motion to dismiss, "review is based on the contents of the complaint."[115] "[T]he court generally may not consider material

---

[113] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1019 (N.D. Cal. 2010) (quotation omitted).

[114] *Vandervelde v. Put & Call Brokers & Dealers Ass'n*, 344 F. Supp. 118, 154–55 (S.D.N.Y. 1972).

[115] *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir. 1989); *see also Monzon v. S. Wine & Spirits of Cal.*, 834 F. Supp. 2d 934, 940–41 (N.D. Cal. 2011) (citing *Love* in refusing to consider new facts and documents not incorporated into the complaint).

1    outside of the pleadings" except for those "matters that are properly the subject of judicial notice."[116]

2    And although the Court may consider the existence of these transcripts, it cannot "draw inferences or

3    take notice of facts that might reasonably be disputed."[117] Defendants' motion is rife with requests

4    for this Court to accept as true all facts asserted in these depositions—testimony by Defendants'

5    executives who have a clear interest in limiting the scope of their participation in the conspiracy. The

6    deposition transcripts are not subject to judicial notice and should not be considered by this Court on

7    the motion to dismiss.[118]

8           The Court should not consider Exhibits E, F and G to the Goldstein Declaration in Support of

9    Defendants' Motion to Dismiss the Consolidated Amended Complaint, Dkt. 78 ("Goldstein

10   Declaration"), and Exhibits 4 and 5 to the Pitt Declaration in Support of Defendants' Motion to

11   Dismiss the Consolidated Amended Complaint, Dkt. 77 ("Pitt Declaration"). Defendants cite and

12   quote factual assertions in Catmull's and Lucas's depositions (Exhibits E and G of the Goldstein

13   Declaration) as the basis for their argument that Defendant Sony failed to comply with the

14   conspiracy to fix compensation for animation and visual effects workers and thus was not a co-

15   conspirator. Mot. at 29:13–30:2, 32 n.33. Similarly, Defendants ask this Court to take as true the

16   deposition transcripts of Catmull and McAdams (Exhibits 4 and 5 to the Pitt Declaration) and find on

17   that basis that Blue Sky was not a party to the conspiracy. *Id.* at 26 n. 28. The Court also should not

18   consider Exhibit F to the Goldstein Declaration, which Defendants claim is an internal Lucasfilm

19   email setting forth the "gentlemen's agreements." Defendants cite this document as absolute truth

---

20   [116] *Masuda v. Citibank, N.A.*, --- F. Supp. 2d ---, No. C-14-00159-PH, 2014 WL 1759580, at *2

21   (N.D. Cal. Apr. 29, 2014) (denying motion to dismiss); *see also Figy v. Frito-Lay N. Am., Inc.*, --- F.
     Supp. 2d ---, No. 13-3988 SC, 2014 WL 3953755, at *2 (N.D. Cal. Aug. 12, 2014) (citing *Metzler*

22   *Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008)).

     [117] *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

23
     [118] *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 997 (N.D. Cal. 2014) (citing Fed. R. Evid.

24   201(b)) ("A court only may take judicial notice of facts that are 'not subject to reasonable dispute.");
     *Perkins v. LinkedIn Corp.*, --- F. Supp. 2d ---, No. 13-CV-04303-LHK, 2014 WL 2751053, at *7

25   (N.D. Cal. June 12, 2014) (a court "may take judicial notice of matters that are either (1) generally
     known within the trial court's territorial jurisdiction or (2) capable of accurate and ready

26   determination by resort to sources whose accuracy cannot reasonably questioned"); *Acceptance Ins.
     Co. v. Am. Safety Risk Retention Grp., Inc.*, No. 08CV1057-L(WMC), 2010 WL 744291, at *3 n. 2

27   (S.D. Cal. Mar. 3, 2010) ("Matters which are not subject to judicial notice, such as, for example,
     correspondence, declarations and deposition transcripts are not considered on a Rule 12(b)(6)

28   motion.").

PLS.' OPP'N TO MOT. TO DISMISS
Case No: 14-cv-4062-LHK

that Lucasfilm and Sony did not maintain a no-poaching agreement with each other, because Sony was not included in the document outlining the agreements, despite that the document is undated. *Id.* at 32 n.33.

### d.       The Motion to Dismiss Regarding ImageMovers, L.L.C. Is Moot

On January 14, 2015, after entering into a tolling agreement with ImageMovers, LLC, Plaintiffs dismissed without prejudice all claims asserted against this entity.[119] This portion of Defendants' motion to dismiss (Mot. at 33-34) is moot.

### C.       Plaintiffs Seek Appropriate Remedies

#### 1.       Defendants Erroneously Claim that Plaintiffs Seek Restitution Under California Business and Professions Code §§ 17200

Contrary to Defendants' motion, Plaintiffs do not seek restitution or disgorgement under the California Business and Professions Code §§ 17200. *See* Mot. at 34–35. Plaintiffs specifically state in the Complaint that "<u>injunctive</u> relief is appropriate to enjoin Defendants from engaging in their unfair acts and practices." Compl., ¶ 146 (emphasis added). Because Plaintiffs do not seek restitution, Defendants' arguments that Plaintiffs are not entitled to such relief are misplaced.

#### 2.       Plaintiffs Appropriately Seek Injunctive Relief

Defendants challenge Plaintiffs' standing to seek an injunction in this case, as they state that each Plaintiff is a former employee and none has made a showing that he or she intends to work for a Defendant again. Mot. at 35-36.

Plaintiff Georgia Cano has standing to seek injunctive relief. Cano "has worked in similar positions for several other visual effects or animation studios from 1992 <u>through the present</u>." Compl. ¶ 19 (emphasis added). As explained in the Complaint, positions in the industry "frequently last between three to nine months, but can be as short as a few weeks," leading class members to regularly "have to find new employment with another studio or again with the current studio." *Id.*, ¶¶ 39-40. Moreover, only a limited number of studios are able to support the visual effects and animation work required by modern motion pictures. *Id.*, ¶ 37. It is thus reasonable to infer that Cano, like many class members, will again seek employment with one or more of Defendants.

---

[119] Notice of Dismissal of ImageMovers LLC Without Prejudice, ECF No. 83.

Second, Defendants erroneously claim that Pixar and Lucasfilm need not be included in any injunctive relief because they entered into stipulated judgments with the DOJ. Mot. at 36. However, the fact that two Defendants negotiated stipulated judgments does not prevent Plaintiffs from seeking injunctive relief. Only two Defendants are affected by these stipulations—two, not all. Further, not only do the stipulations represent a negotiated outcome to which Plaintiffs were not privy, but the negotiated stipulation does not address the full scope of the conspiracy alleged in this case. Plaintiffs plead additional facts beyond those outlined in the final stipulated judgments. Moreover, the stipulated judgments will be moot by the time this lawsuit goes to trial. Both stipulated judgments will expire five years after entry, or in March 2016 for Pixar and May 2016 for Lucasfilm—well before even the earliest trial could be held in this case, and further before likely post-trial appeals would be concluded.[120] Plaintiffs properly seek injunctive relief.

### D. Plaintiffs Request Judicial Notice of Orders from the *High-Tech* Case and a July 2014 Media Report

Pursuant to LR 7.3, Plaintiffs request judicial notice of this Court's January 2013, March 2014, and July 2014 Orders from the *High-Tech* litigation denying motions to seal.[121] A court may generally "take judicial notice of its own records in other cases."[122] Plaintiffs also request judicial notice of a media report appearing on the website PandoDaily on July 7, 2014, summarizing unsealed documents from the *High-Tech* litigation.[123] Judicial notice of such media reports is generally appropriate.[124]

---

[120] *See* Case Mgmt. Or., Dkt. 39 (setting December 21, 2016 for summary judgment and *Daubert* motions deadlines).

[121] Exhibit A, Order Granting in Part and Denying in Part Motions to Seal, Doc. No. 730, at 5 (Mar. 14, 2014); Exhibit B, Order Granting in Part and Denying in Part Motions to Seal, Doc. No. 953) (July 7, 2014); Exhibit C, *In re High-Tech Employee Antitrust Litig.*, Order Granting in Part and Denying in Part Motions to Seal, Dkt. # 273 (Jan. 15, 2013).

[122] *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

[123] Exhibit D, Mark Ames, *REVEALED: Court Docs Show Role of Pixar and Dreamworks Animation in Silicon Valley Wage-Fixing Cartel*, PandoDaily (July 7, 2014), http://pando.com/2014/07/07/revealed-court-docs-show-role-of-pixar-and-dreamworks-animation-in-silicon-valley-wage-fixing-cartel/.

[124] *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009).

1

### III.    CONCLUSION

2      Plaintiffs have presented a detailed Complaint which, taken as a whole, demonstrates not

3   only the existence of a conspiracy to suppress compensation to employees in the animation and

4   visual effects industry, but also many overt acts by Defendants to implement this conspiracy.

5   Plaintiffs further allege the steps that Defendants have taken to ensure this conspiracy was

6   discovered no earlier than 2013, meaning that this suit was filed well within the appropriate statute of

7   limitations period. Plaintiffs have pled anticompetitive acts sufficient to state a claim. Should the

8   Court nevertheless conclude that the Complaint is deficient, Plaintiffs respectfully request the

9   opportunity to amend.[125]

10

11   DATED: February 9, 2015                    By  /s/ Steven G. Sklaver
                                                     STEVEN G. SKLAVER
12
                                                  Daniel A. Small (*Pro Hac Vice*)
13                                                Brent W. Johnson (*Pro Hac Vice*)
                                                  Jeffrey B. Dubner (*Pro Hac Vice*)
14                                                COHEN MILSTEIN SELLERS & TOLL PLLC
                                                  1100 New York Ave. NW, Suite 500
15                                                Washington, DC 20005
                                                  Telephone: (202) 408-4600
16                                                Facsimile: (202) 408-4699
                                                  dsmall@cohenmilstein.com
17                                                bjohnson@cohenmilstein.com
                                                  jdubner@cohenmilstein.com
18

19
                                                  Jeff D. Friedman (173886)
20                                                Shana E. Scarlett (217895)
                                                  HAGENS BERMAN SOBOL SHAPIRO LLP
21                                                715 Hearst Avenue, Suite 202
                                                  Berkeley, CA 94710
22                                                Telephone: (510) 725-3000
                                                  Facsimile: (510) 725-3001
23                                                jefff@hbsslaw.com
                                                  shanas@hbsslaw.com
24

25

26

27
───────────────────
[125] See Fed. R. Civ. P. 15(a); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)
28   (holding that leave to amend should be "freely given").

1    Steve W. Berman (*Pro Hac Vice*)
     Ashley A. Bede (*Pro Hac Vice*)
2    HAGENS BERMAN SOBOL SHAPIRO LLP
     1918 Eighth Avenue, Suite 3300
3    Seattle, WA 98101
     Telephone: (206) 623-7292
4    Facsimile: (206) 623-0594
     steve@hbsslaw.com
5    ashleyb@hbsslaw.com
6
     Marc M. Seltzer
7    Steven G. Sklaver
     SUSMAN GODFREY L.L.P
8    1901 Avenue of the Stars, Suite 950
     Los Angeles, CA 90067-6029
9    Telephone: (310) 789-3100
     Facsimile: (310) 789-3150
10   mseltzer@susmangodfrey.com
     ssklaver@susmangodfrey.com
11
12   Matthew R. Berry (*Pro Hac Vice*)
     Jordan Talge (*Pro Hac Vice*)
13   John E. Schiltz (*Pro Hac Vice*)
     1201 Third Avenue, Suite 3800
14   Seattle, WA 98101
     Telephone: (206) 516-3880
15   Facsimile: (206) 516-3883
     mberry@susmangodfrey.com
16   jtalge@susmangodfrey.com
     jschiltz@susmangodfrey.com
17
18   *Interim Co-Lead Plaintiffs' Counsel*
19
20
21
22
23
24
25
26
27
28

PLS.' OPP'N TO MOT. TO DISMISS
Case No: 14-cv-4062-LHK