United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT A. NITSCH, et al., | Case No. 14-CV-04062-LHK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION** |
| v. | |
| DREAMWORKS ANIMATION SKG INC., et al., | Re: Dkt. No. 71 |
| Defendants. | |

Defendants DreamWorks Animation SKG, Inc.; The Walt Disney Company; Lucasfilm Ltd., LLC; Pixar; ImageMovers, LLC.; Two Pic MC LLC (f/k/a ImageMovers Digital); Sony Pictures Animation Inc.; Sony Pictures Imageworks Inc.; and Blue Sky Studios have filed a joint motion to compel arbitration and stay proceedings. ("Mot."), ECF No. 71. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Defendants' motion.

## I.   BACKGROUND

This is a consolidated class action brought by former employees alleging antitrust claims against their former employers, various animation studios with principal places of business in

California.[1] Plaintiffs contend that Defendants engaged in a conspiracy to fix and suppress employee compensation and to restrict employee mobility.

### A. Factual Background

The Court draws the following factual background from the uncontroverted allegations in the Consolidated Amended Complaint ("CAC"), and from judicially noticed documents. Unless otherwise noted, Plaintiffs' allegations are presumed to be true for purposes of ruling on Defendants' motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1. The Parties

Defendants include the following animation and visual effects studios: Blue Sky Studios, Inc. ("Blue Sky"), a Delaware corporation with its principal place of business in Greenwich, CT; DreamWorks Animation SKG, Inc. ("DreamWorks"), a Delaware corporation with its principal place of business in Glendale, CA; ImageMovers LLC, a California corporation with its principal place of business in Los Angeles, CA; ImageMovers Digital LLC, a Delaware corporation with its principal place of business in Burbank, CA; Lucasfilm Ltd., LLC ("Lucasfilm"), a California corporation with its principal place of business in San Francisco, CA;[2] Pixar, a California corporation with its principal place of business in Emeryville, CA;[3] Sony Pictures Animation, Inc. and Sony Pictures Imageworks, Inc. (collectively, "the Sony Defendants"), California corporations with their principal places of business in Culver City, CA; and The Walt Disney Company ("Disney"), a Delaware corporation with its principal place of business in Burbank, CA.[4] CAC ¶¶ 21–29.

Plaintiffs Robert A. Nitsch, Jr., Georgia Cano, and David Wentworth (collectively, "Plaintiffs"), are artists and engineers that were previously employed by four of the named

---

[1] Defendant Blue Sky Studios, Inc. has its principal place of business in Greenwich, CT, but Plaintiffs allege that it is owned by Twentieth Century Fox Film Corporation, which has its principal place of business in Los Angeles, California. Consol. Am. Compl. ("CAC"), ¶ 21.

[2] Plaintiffs aver that Industrial Light & Magic ("ILM") is a division of Lucasfilm.

[3] According to Plaintiffs, ILM, Lucasfilm, and Pixar have been owned by Defendant The Walt Disney Company since 2012. CAC ¶¶ 25–26.

[4] Disney also "oversees the operations of" Walt Disney Animation Studios, formerly known as Walt Disney Feature Animation. CAC ¶ 29.

Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

United States District Court
Northern District of California

1 Defendants. *Id.* ¶¶ 18–20. Nitsch worked for Sony Picture Imageworks in 2004 and DreamWorks

2 from 2007 to 2011. *Id.* ¶ 18. Cano worked for Walt Disney Feature Animation from 2004 to 2005,

3 ImageMovers Digital in 2010, and at various other visual effects and animation studios. *Id.* ¶ 19.

4 Wentworth worked at ImageMovers Digital from 2007 to 2010. *Id.* ¶ 20. Nitsch is a resident of

5 Massachusetts, and Cano and Wentworth are residents of California. *Id.* ¶¶ 18–20.

6       Plaintiffs seek to represent the following class:

7 
8     All persons who worked at any time from 2004 to the present for Pixar, Lucasfilm, DreamWorks Animation, Walt Disney Animation Studios, Walt Disney Feature Animation, Blue Sky Studios, Digital Domain, ImageMovers Digital, Sony Pictures Animation or Sony Pictures Imageworks in the United States. Excluded from the Class are officers, directors, senior executives and personnel in the human resources and recruiting departments of the Defendants.

9 
10 

11 *Id.* ¶ 113.[5]

12     **2.  *In re High-Tech Employees Litigation* and the Department of Justice Investigation**

13     There is significant factual overlap between Plaintiffs' allegations and the related action *In*

14 *re High-Tech Employees Litigation*, No. 11-CV-02509-LHK, as well as the civil complaints filed

15 by the Department of Justice ("DOJ") against several Silicon Valley technology companies, Pixar,

16 and Lucasfilm. As both the factual and procedural history of the related action, *In re High-Tech*,

17 and the DOJ investigations and complaints are relevant to the substance of Defendants' motion to

18 dismiss, the Court briefly summarizes the background of that litigation below.

19     From 2009 to 2010, the Antitrust Division of the DOJ investigated the employment and

20 recruitment practices of various Silicon Valley technology companies, including Adobe Systems,

21 Inc., Apple, Inc., Google, Inc., Intel Corp., and Intuit, Inc. *See In re High-Tech Employees Litig.*,

22 856 F. Supp. 2d 1103, 1109 (N.D. Cal. 2012). In September of 2010, the DOJ then filed civil

23 complaints against the above-mentioned technology companies, in addition to Pixar and

24 Lucasfilm. *Id.* The DOJ filed its complaint against Adobe, Apple, Google, Intel, Intuit, and Pixar

25 

26 [5] Plaintiffs also allege that "[t]he members of the Settlement Class under the September 20, 2013 Settlement Agreement with Pixar and Lucasfilm [in *High-Tech*] . . . do not bring in this complaint

27 any claims against Pixar, Lucasfilm, and Disney that were released pursuant to the Settlement Agreement." *Id.* ¶ 114.

28

Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

on September 24, 2010. *Id.* On December 21, 2010, the DOJ filed another complaint against Lucasfilm and Pixar. CAC ¶ 94. The defendants, including Pixar and Lucasfilm, stipulated to proposed final judgments in which they agreed that the DOJ's complaints had stated claims under federal antitrust law and agreed to be "enjoined from attempting to enter into, maintaining or enforcing any agreement with any other person or in any way refrain from . . . soliciting, cold calling, recruiting, or otherwise competing for employees of the other person. 856 F. Supp. 2d at 1109–10. (quoting Adobe Proposed Final Judgment at 5). The D.C. District Court entered the stipulated proposed final judgments in March and June of 2011. *Id.*

The *High-Tech* plaintiffs filed five separate state court actions between May and July of 2011. Following removal, transfer to San Jose to the undersigned judge, and consolidation, the *High-Tech* plaintiffs filed a consolidated amended complaint on September 13, 2011. *Id.* at 1113. In their complaint, the *High-Tech* plaintiffs alleged antitrust claims against their employers, claiming that the defendants had conspired "to fix and suppress employee compensation and to restrict employee mobility." *Id.* at 1108. More specifically, the *High-Tech* plaintiffs alleged a conspiracy comprised of "an interconnected web of express bilateral agreements." *Id.* at 1110. One agreement, the "Do Not Cold Call" agreement involved one company placing the names of the other company's employees on a "Do Not Cold Call" list and instructing its recruiters not to cold call the employees of the other company. *Id.* In addition to the "Do Not Cold Call" agreements, the *High-Tech* plaintiffs also alleged that Pixar and Lucasfilm, defendants in both *High-Tech* and the instant action, entered into express, written agreements to (1) not cold call each other's employees, (2) to notify the other company whenever making an offer to an employee of the other company, and (3) not to engage in "bidding wars." *Id.* at 1111.

### 3.  Alleged Conspiracy in the Instant Action

Here, Plaintiffs allege that Defendants conspired to suppress compensation in two ways. First, Defendants allegedly entered into a scheme not to actively solicit each other's employees. CAC ¶ 41. Second, Defendants allegedly engaged in "collusive discussions concerning competitively sensitive compensation information and agreed upon compensation ranges," which

would artificially limit compensation offered to Defendants' current and prospective employees. *Id.*

### a. Anti-Solicitation Scheme

According to Plaintiffs, "Defendants agreed not to contact their coconspirators' employees to inform them of available positions unless that individual employee had applied for a job opening on his or her own initiative." *Id.* ¶ 42. This solicitation, also known as "cold calling," is "a key competitive tool in a properly functioning labor market, especially for skilled labor." *Id.* ¶ 42. Plaintiffs aver that employees of competitor studios represent "one of the main pools of potential hires," and that employees of competitor studios that are not actively searching for new employment are "more likely to be among the most sought after employees." *Id.* ¶ 43. Hiring an employee from a competitor studio "can save costs and avoid risks." *Id.* Absent active solicitation, these employees are also difficult to reach. *Id.* Defendants' anti-solicitation scheme also allegedly included "notifying each other when an employee of one Defendant applied for a position with another Defendant, and agreeing to limit counteroffers in such situations." *Id.* ¶ 44. Moreover, Defendants allegedly "often refrained from hiring other Defendants' employees at all without the permission of the current employer," and would sometimes decline to make offers of employment to an unemployed prospective hire if that individual had an outstanding offer from another Defendant. *Id.* ¶ 45.

*Pixar and Lucasfilm*: According to Plaintiffs, "the roots of the conspiracy reach back to the mid-1980s," when George Lucas, the former Lucasfilm Chairman of the Board and CEO, sold Lucasfilm's "computer division" to Steve Jobs, who had recently left Apple. *Id.* ¶ 46. Jobs named his new company Pixar. *Id.* Pixar's President, Ed Catmull, Lucas, and "other senior executives, subsequently reached an agreement to restrain their competition for the skilled labor that worked for the two companies." *Id.* Pixar drafted the terms of the agreement, which both Defendants communicated to their senior executives and "select human resources and recruiting employees." *Id.* Lucas stated in an email that Pixar and Lucasfilm "have agreed that we want to avoid bidding wars," and that the agreement prevented the two companies from "raid[ing] each other's

Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

companies." *Id.* Pixar and Lucasfilm allegedly agreed to the following terms: (1) not to cold call each other's employees; (2) to notify each other when making an offer to the other company's employee; and (3) that any offer by the other company would be "final," i.e., neither Pixar nor Lucasfilm would engage in counteroffers. *Id.* ¶¶ 46–48 (citing internal Pixar email sent on January 16, 2006).

Plaintiffs further allege that while the conspiracy originated with Pixar and Lucasfilm, Catmull brought additional studios into the fold. *Id.* ¶ 49. In a 2005 email, then Vice President of Human Resources at Pixar, Lori McAdams, wrote "With regard to ILM, Sony, Blue Sky, etc., we have no contractual obligations, but we have a gentleman's agreement not to directly solicit/poach from their employee pool." *Id.* ¶ 50. Pixar also drafted an internal "competitors list" that "listed anti-solicitation rules for each of the Defendants . . . ." *Id.* According to Plaintiffs, Blue Sky, DreamWorks, ImageMovers Digital, Sony Pictures Imageworks, and Walt Disney Animation Studios were "all listed with directions not to 'recruit directly' or 'solicit or poach employees.'" *Id.* Plaintiffs' allegations as to each Defendants' alleged role and participation in the anti-solicitation scheme is detailed below.

*DreamWorks*: Jobs and DreamWorks CEO, Jeffrey Katzenberg, "personally discussed DreamWorks joining into the conspiracy." *Id.* ¶ 52. In a February 18, 2004 email from Catmull to Jobs, Catmull stated that the mutual agreement "worked quite well." *Id.* A January 14, 2007 email from Catmull to Disney's Chairman Dick Cook, also provided that "we have an agreement with DreamWorks not to actively pursue each other's employees." *Id.* In further emails between Catmull, McAdams, and DreamWorks' head of human resources, Kathy Mandato, Pixar and DreamWorks reiterated their "non-poaching practices." *Id.* ¶ 53. When a Pixar recruiting email was sent to a DreamWorks employee, Mandato reached out to McAdams, and McAdams responded that she'd "put a stop to it!" *Id.* ¶ 54.

*Disney*: A 2005 Pixar email "confirmed that Pixar would not recruit workers out of Disney or other studios." *Id.* ¶ 56. In 2006, Disney purchased Pixar, and Catmull assumed responsibility for Walt Disney Animation Studios. *Id.* In communications between Disney Chairman Cook and

6

Catmull, Cook agreed that "avoid[ing] raiding each other" was necessary to avoid "seriously mess[ing] up the pay structure." *Id.* Cook allegedly promised to "reaffirm our position again" with ImageMovers Digital, which Plaintiffs contend is a joint venture Disney launched with ImageMovers.[6] *Id.* In 2006, Disney's Director of Animation Resources apparently asked ILM, a division of Lucasfilm, to "observe 'the Gentlewomen's agreement'" that ILM not recruit Disney digital artists. *Id.* ¶ 57.

*Sony Defendants*: Beginning in 2002, Sony Pictures Imageworks expanded significantly by offering higher salaries to lure workers away from other studios. *Id.* ¶ 58. In response, Catmull allegedly met with Sony executives in person in 2004 or 2005 to "ask[] them to quit calling our employees." *Id.* ¶ 59. Plaintiffs allege that Catmull reached an agreement with Sony at that time that the companies would not directly solicit or poach from each other. *Id.* Moreover, Sony allegedly then began to "restrain its relatively higher-wage practices to levels below what would otherwise have existed in a competitive market." *Id.* ¶ 62.

*Blue Sky Studios*: Plaintiffs aver that Blue Sky "similarly entered the conspiracy," did not recruit from other studios, and requested that other studios not recruit from Blue Sky. *Id.* ¶ 63. In 2005, Blue Sky allegedly declined to pursue a DreamWorks employee that would have been "an amazing addition," because Blue Sky did not "want to be starting anything with [Katzenberg, the DreamWorks CEO] over one story guy." *Id.* Blue Sky's Director of Human Resources, Linda Zazza, also allegedly spoke with Pixar's McAdams to discuss "our sensitive issue of employee retention," and McAdams assured Blue Sky that Pixar was not attempting to poach Blue Sky employees. *Id.* ¶ 64.

*ImageMovers Defendants*:[7] The ImageMovers Defendants allegedly also joined the

---

[6] Defendants submit that Exhibit F in their request for judicial notice, consisting of Certificates of Corporate Formation and Amendment filed with the Secretary of State of the State of Delaware, Division of Corporations, disproves Plaintiffs' allegation that ImageMovers LLC was a party to the joint venture that created ImageMovers Digital. *See* ECF No. 76. Plaintiffs voluntarily dismissed ImageMovers LLC from this action after Defendants filed their motion to dismiss and request for judicial notice. Consequently, the Court concludes that ImageMovers' involvement in the purported joint venture is not relevant.
[7] Plaintiffs dismissed ImageMovers LLC without prejudice pursuant to a tolling agreement on

Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

1   conspiracy. Catmull wrote in a January 2007 email to Disney Chairman Cook that Catmull knew

2   ImageMovers would "not target Pixar." *Id.* ¶ 65. Plaintiffs allege, however, that ImageMovers

3   continued to recruit from other conspiring studios, including DreamWorks, by "offering higher

4   salaries." *Id.* ¶ 66. Catmull then met with one of the founders of ImageMovers, Steve Starkey.

5   Starkey allegedly told Catmull that ImageMovers had informed Lucas that ImageMovers would

6   "not raid ILM." *Id.* ¶ 67. Catmull then contacted Disney Studio's President, Alan Bergman, and

7   Senior Vice President of Human Resources, Marjorie Randolph, requesting that they require the

8   ImageMovers Defendants to comply with the anti-solicitation scheme. *Id.* ¶ 68. According to

9   Plaintiffs, Randolph "responded that Disney had in fact gotten the ImageMovers Defendants to

10  agree to the 'rules' of the anti-solicitation scheme." *Id.*

11          *Digital Domain*[8]: Digital Doman allegedly joined the conspiracy and had anti-solicitation

12  agreements with "at least" DreamWorks, Lucasfilm/ILM and the Sony Defendants. *Id.* ¶ 69.

13  According to Plaintiffs, starting in 2007, Digital Domain's Head of Human Resources was Lala

14  Gavgavian, who had previously worked at Lucasfilm's ILM division "in senior roles in talent

15  acquisition . . . during which time Pixar President Jim Morris explicitly informed her that Pixar

16  and Lucasfilm" had an anti-solicitation/no-poaching agreement. *Id.* ¶ 70. Gavgavian and other

17  senior personnel at Digital Domain allegedly "specifically instructed employees not to cold call or

18  otherwise solicit other Defendants' employees." *Id.* ¶ 71.

19          As to all Defendants, Plaintiffs contend that Defendants "repeatedly sought to recruit" new

20  studios into the scheme, including a small studio in 2008. *Id.* ¶ 72.

21              **b.   Compensation Ranges**

22          In addition to the anti-solicitation scheme, Plaintiffs further allege that Defendants

23  "directly communicated and met regularly to discuss and agree upon compensation ranges." *Id.*

24  ¶ 74. According to Plaintiffs, Defendants met at least once a year in California at meetings

25

26  _____

    January 14, 2015. ECF No. 83.
27  [8] Plaintiffs also dismissed Digital Domain 3.0 without prejudice pursuant to a tolling agreement.
    *See* CAC at 16 n.3.
28                                              8

    Case No.14-CV-04062-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

organized by the Croner Company, a third-party that apparently collects industry-specific salary information. At the official meetings, the Defendants "set the parameters of a compensation survey" that "provides wage and salary ranges for the studios' technical or artistic positions, broken down by position and experience level." *Id.* ¶ 75. Senior human resources and recruiting personnel from DreamWorks, Pixar, Lucasfilm/ILM, Disney, ImageMovers Digital, the Sony Defendants, Blue Sky, and Digital Domain attended these survey meetings, in addition to other studios. *Id.* ¶ 76. Plaintiffs aver that Defendants used the Croner meetings to "go further than their matching of job positions across companies; they discussed, agreed upon and set wage and salary ranges during meals, drinks and other social gatherings that they held outside of the official Croner meetings." *Id.* ¶ 77. Defendants' human resources and recruiting personnel also allegedly held "side" meetings at the Siggraph conference, a major visual effects industry conference, which senior personnel from Blue Sky, Pixar, DreamWorks, Lucasfilm, and Sony Picture ImageWorks attended. *Id.* ¶ 79.

Defendants' Directors of Human Resources also allegedly "frequently sought to create new relationships when one of their counterparts was replaced at a co-conspirator to ensure the efficacy of communications about the conspiracy," and met with each other one-on-one "on many occasions." *Id.* ¶¶ 79–80. Plaintiffs further allege that Defendants regularly emailed each other with specific salary ranges. On May 13, 2005, DreamWorks requested that Disney provide salary information on three positions, and Disney promptly responded. *Id.* ¶ 81. The following spring, DreamWorks also requested similar information from Pixar and Disney, and "made clear it was surveying multiple studios." *Id.* ¶ 82. On September 2, 2009, Blue Sky's Director of Human Resources requested salary range information from Pixar. *Id.* ¶ 83. In a 2007 email, DreamWorks' Head of Compensation explained that "we do sometimes share general comp information (ranges, practices) in order to maintain the relationships with other studios and to be able to ask for that kind of information ourselves when we need it." *Id.* ¶ 84.

According to Plaintiffs, Defendants' communications regarding salary ranges were not limited to bilateral "one off" exchanges, but rather Defendants would "openly email[] each other

Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

in large groups with competitively sensitive confidential current and future compensation information." *Id.* ¶ 85. On November 17, 2006, Pixar's McAdams emailed senior human resources personnel at DreamWorks, Sony Pictures Imageworks, Lucas Film, Walt Disney Animation Studios, and others:

> Quick question from me, for those of you who can share the info.
>
> What is your salary increase budget for FY '07? Ours is [REDACTED] but we may manage it to closer to [REDACTED] on average. Are you doing anything close, more, or less?

*Id.* ¶ 86. In January 2009, DreamWorks' Head of Production Technology emailed the heads of human resources at Pixar, ILM, Sony Pictures Animation, and Disney to "learn how they handled overtime." More specifically, DreamWorks wanted to "see if the other companies were 'as generous.'" *Id.* ¶ 88.

Defendants' human resources and recruiting personnel also allegedly regularly communicated via telephone. *Id.* ¶ 89. Plaintiffs quote emails from Pixar's McAdams to Sony Pictures Imageworks, ILM, DreamWorks, Disney, and Blue Sky "in early 2007" stating "[c]hatting with all of you each day is really becoming a fun habit," and an email response from Walt Disney Animation Studios Vice President of Human Resources also commenting that "[i]t is fun to hear from you all on a daily basis." *Id.* ¶ 90.

As Plaintiffs describe it, the Croner survey meetings, side meetings, emails, and telephone calls "provided the means and opportunities for Defendants to collude and to implement and enforce the conspiracy to suppress workers' compensation." *Id.* ¶ 91. Plaintiffs further allege that while press reports in 2009 noted that the DOJ was investigating anti-solicitation agreements among high-tech companies, including Google and Apple, there was no indication that the DOJ was also investigating Pixar, Lucasfilm, or any other animation company. *Id.* ¶ 95. Plaintiffs aver that September 17, 2010 marked the first news story naming Pixar as a company under investigation, but that there was no public disclosure that any other Defendant in the instant action was part of the conspiracy. *Id.* According to Plaintiffs, Lucasfilm was implicated in the Pixar investigation in December 2010, but until the Court unsealed certain filings in the *High-Tech* case,

10

United States District Court
Northern District of California

1    there was no public information that the other Defendants in this action had engaged in similar

2    conduct. *Id.*

3        **4. Claims**

4        Plaintiffs' CAC contains three claims for relief under the following statutes: (1) Section 1

5    of the Sherman Act, 15 U.S.C. § 1; (2) California's Cartwright Act, Cal. Bus. & Prof. Code

6    § 16720; and (3) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200

7    *et seq*. Plaintiffs seek damages, pre- and post-judgment interest, attorney's fees and expenses, and

8    a permanent injunction. *Id.* ¶ 147.

9        **B. Procedural Background**

10       In light of the relationship between the instant case and the *High-Tech* case, the Court

11   briefly summarizes the relevant procedural history in *High-Tech* in addition to the instant case.

12       **1. *High-Tech* Procedural Background**

13       The *High-Tech* defendants removed the first state-court action on May 23, 2011. No. 11-

14   2509, ECF No. 1. On April 18, 2012, the Court granted in part and denied in part the *High-Tech*

15   defendants' joint motion to dismiss and denied Lucasfilm's motion to dismiss. No. 11-2509, ECF

16   No. 119. On April 5, 2013, the Court granted in part and denied in part the *High-Tech* plaintiffs'

17   motion for class certification with leave to amend. No. 11-2509, ECF No. 382. The Court granted

18   the *High-Tech* plaintiffs' supplemental motion for class certification on October 24, 2013. No. 11-

19   2509, ECF No. 531. On November 13, 2013, the *High-Tech* defendants filed a Rule 23(f) petition

20   before the Ninth Circuit, requesting permission to appeal this Court's October 24, 2013 class

21   certification order. No. 13-80223, ECF No. 1. The Ninth Circuit denied the defendants' petition on

22   January 14, 2014. No. 13-80223, ECF No. 18.

23       In the interim, three of the *High-Tech* defendants, Intuit, Lucasfilm, and Pixar, reached an

24   early settlement with the plaintiffs. On September 21, 2013, the *High-Tech* plaintiffs filed a

25   motion for preliminary approval of a proposed class action settlement as to defendants Intuit,

26   Lucasfilm, and Pixar. No. 11-2509, ECF No. 501. On October 30, 2013, the Court preliminarily

27   approved the proposed settlement with Intuit, Lucasfilm, and Pixar. No. 11-2509, ECF No. 540.

28

United States District Court
Northern District of California

Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

1    The Court granted final approval as to that settlement on May 16, 2014. No. 11-2509, ECF No.

2    915. The Court entered a final judgment with regards to Lucasfilm, Pixar, and Intuit on June 9,

3    2014. No. 11-2509, ECF No. 936. At the request of Intuit, the Court entered an amended final

4    judgment on June 20, 2014. No. 11-2509, ECF No. 947.

5         The remaining *High-Tech* defendants, Adobe, Apple, Google, and Intel, filed individual

6    motions for summary judgment, and joint motions for summary judgment and to strike certain

7    expert testimony on January 9, 2014. No. 11-2509, ECF Nos. 554 (Intel), 556–57 (joint motions),

8    560 (Adobe), 561 (Apple), 564 (Google). The Court denied the *High-Tech* defendants' individual

9    motions for summary judgment on March 28, 2014. No. 11-2509, ECF No. 771. On April 4, 2014,

10   the Court granted in part and denied in part the *High-Tech* defendants' motion to strike, and

11   denied the defendants' joint motion for summary judgment. No. 11-2509, ECF No. 778.

12        On May 22, 2014, the *High-Tech* plaintiffs filed a motion for preliminary approval of class

13   action settlement as to the remaining defendants. No. 11-2509, ECF No. 920. On August 8, 2014,

14   the Court denied the *High-Tech* plaintiffs' motion for preliminary approval, concluding that the

15   proposed settlement did not fall "within the range of reasonableness." No. 11-2509, ECF No. 974,

16   at 30. On September 4, 2014, the *High-Tech* defendants filed a petition for a writ of mandamus

17   with the Ninth Circuit. No. 14-72745, ECF No. 1. On January 13, 2015, the *High-Tech* defendants

18   filed correspondence with the Ninth Circuit referring to a new proposed settlement agreement. No.

19   14-72745, ECF No. 21. On January 30, 2015, the defendants filed an unopposed motion to dismiss

20   the petition, which the Ninth Circuit granted on February 2, 2015. No. 14-72745, ECF Nos. 23,

21   24.

22        On January 15, 2015, the *High-Tech* plaintiffs filed a motion for preliminary approval of

23   class action settlement as to the remaining defendants. No. 11-2509, ECF No. 1032. In this second

24   proposed class action settlement, the parties had reached a settlement amount exceeding the

25   previously rejected settlement by approximately $90.5 million dollars. *Id.* at 1. Following a

26   fairness hearing on March 2, 2015, the Court granted preliminary approval to the January 2015

27   settlement agreement on March 3, 2015. No. 11-1509, ECF Nos. 1051, 1054. A final approval

28

12

1    hearing is scheduled for July 9, 2015.

2        **2.  Procedural Background in the Instant Action**

3        Plaintiff Nitsch filed the first complaint against all Defendants but Blue Sky on September

4    8, 2014. ECF No. 1. The Court related Nitsch's action to *In re High-Tech Employee Antitrust*

5    *Litigation*, No. 11-2509, on September 23, 2014. Plaintiff Cano filed the second complaint against

6    all Defendants on September 17, 2014, which the Court related to *High-Tech* on October 7, 2014.

7    *See* Case No. 14- 4203, ECF Nos. 1, 9. Plaintiff Wentworth filed the third complaint against all

8    Defendants but Blue Sky on October 2, 2014, which the Court related to *High-Tech* on October

9    28, 2014. *See* Case No. 14-4422, ECF Nos. 1, 26. On November 5, 2014, the Court granted

10   Plaintiffs' motion to consolidate the above-mentioned three cases into a single action, *In re*

11   *Animation Workers Antitrust Litigation*. *See* Case No. 14-4062, ECF No. 38.

12       Pursuant to the Court's case management order, Plaintiffs filed their CAC on December 2,

13   2014. ECF No. 63. On January 9, 2015, Defendants filed a joint motion to dismiss, and a request

14   for judicial notice. ECF Nos. 75, 76. Defendants also filed an administrative motion to seal

15   exhibits in support of their motion to dismiss. ECF No. 79. Plaintiffs filed a timely opposition,

16   ECF No. 97, and Defendants replied, ECF No. 100. On April 3, 2015, the Court granted

17   Defendants' motion to dismiss, finding that Plaintiffs' claims were time barred. ECF No. 105. The

18   Court granted Plaintiffs leave to amend their CAC within thirty days of the Court's order.

19       On January 9, 2015, Defendants also filed the instant motion to compel arbitration. ECF

20   No. 71. Plaintiffs filed a timely opposition, ECF No. 96, and Defendants replied, ECF No. 99.

21   **II.  LEGAL STANDARD**

22       The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract

23   affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9

24   U.S.C. § 2. Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial

25   of an action 'upon any issue referable to arbitration under an agreement in writing for such

26   arbitration.'" *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010) (quoting 9

27   U.S.C. § 3). If all claims in litigation are subject to a valid arbitration agreement, the court may

28
13

United States District Court
Northern District of California

1    dismiss or stay the case. *See Hopkins & Carley, ALC v. Thomson Elite*, No. 10-CV-05806, 2011

2    U.S. Dist. LEXIS 38396, at *28–29 (N.D. Cal. Apr. 6, 2011).

3          The FAA states that written arbitration agreements "shall be valid, irrevocable, and

4    enforceable, save upon such grounds as exist at law or in equity for the revocation of any

5    contract." 9 U.S.C. § 2. In deciding whether a dispute is arbitrable, a court must answer two

6    questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that

7    agreement to arbitrate encompasses the claims at issue. *See Chiron Corp. v. Ortho Diagnostic*

8    *Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If a party seeking arbitration establishes these two

9    factors, the court must compel arbitration. *Id.*; 9 U.S.C. § 4. "The standard for demonstrating

10   arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration

11   motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937

12   F.2d 469, 475 (9th Cir. 1991). In cases where the parties "clearly and unmistakably intend to

13   delegate the power to decide arbitrability to an arbitrator," the court's inquiry is "limited . . . [to]

14   whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc. v. Nokia Corp.*, 466

15   F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law). Nonetheless, "arbitration is a

16   matter of contract and a party cannot be required to submit to arbitration any dispute which [s]he

17   has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648

18   (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

19         The FAA creates a body of federal substantive law of arbitrability that requires a healthy

20   regard for the federal policy favoring arbitration and preempts state law to the contrary. *Volt Info.*

21   *Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–79 (1989); *Ticknor v.*

22   *Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir. 2001). State law is not entirely displaced

23   from the federal arbitration analysis, however. *See Ticknor*, 265 F.3d at 936–37. When deciding

24   whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law

25   principles of contract interpretation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944

26   (1995). Parties may also contract to arbitrate according to state rules, so long as those rules do not

27   offend the federal policy favoring arbitration. *Volt*, 489 U.S. at 478–79. Thus, in determining

28

United States District Court
Northern District of California

14

Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

whether parties have agreed to arbitrate a dispute, the court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If a contract contains an arbitration clause, there is a presumption of arbitrability, *AT&T*, 475 U.S. at 650, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## III. DISCUSSION

In the instant case, Defendants contend that Plaintiff Nitsch is bound by an arbitration agreement with Defendant DreamWorks. As such, Defendants request that the Court issue three separate orders: (1) an order compelling Plaintiff Nitsch to arbitrate his claims against DreamWorks; (2) an order compelling Plaintiff Nitsch to arbitrate his claims against the other Defendants pursuant to the doctrine of equitable estoppel; and (3) and an order staying the prosecution of Plaintiff Nitsch's claims pending completion of the arbitration. The Court addresses each issue below.

### A.  Plaintiff Nitsch's claims against DreamWorks

The Court begins by addressing whether Plaintiff Nitsch is obligated to arbitrate any of his claims against Defendant DreamWorks. As discussed below, the Court concludes that the threshold question of arbitrability as to some of Plaintiff Nitsch's claims against DreamWorks must be decided by an arbitrator under the terms of Plaintiff Nitsch's arbitration agreements with Defendant DreamWorks. For the reasons stated below, the Court grants Defendants' motion for the purpose of allowing an arbitrator to decide, in the first instance, whether the arbitrator should exercise jurisdiction over Plaintiff Nitsch's claims against Defendant DreamWorks arising out of Plaintiff's employment at DreamWorks.

Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

**1. Plaintiff Nitsch's Claims against DreamWorks Arising out of Plaintiff's Employment at DreamWorks**

Here, the parties do not dispute that Plaintiff Nitsch entered into written employment agreements with Defendant DreamWorks on July 12, 2007 and January 23, 2010. *See* Declaration of Vinelath Bowling in support of Defendants' motion to compel arbitration ("Bowing Decl."), ECF No. 74, Exhs. A, B. Both employment agreements contain identical arbitration provisions:

> ARBITRATION. Any dispute arising out of or relating to payment to Artist of any amount hereunder or the amount or calculation thereof, or any other dispute arising in any way out of the Agreement, including its existence, validity or breach will be arbitrated privately and confidentially in Los Angeles, California, by one arbitrator mutually agreed (or if none, appointed pursuant to the commercial arbitration rules of the American Arbitration Association), and the arbitrator may examine in DWA's offices, all documents which Artist is entitled to examine pursuant to the above, subject to the arbitrator's executing an appropriate confidentiality agreement. The result of any such arbitration shall be binding. . . . Except as provided above to the contrary, any such arbitration will be conducted in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association. The provisions contained in this paragraph shall survive the termination of the Artist's employment with DWA.

*See id.*, Exh. A ¶ P; Exh. B ¶ R. Here, the arbitration provisions explicitly incorporate the American Arbitration Association ("AAA") rules. Under AAA rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *See* Declaration of Shannon Mader ("Mader Decl."), ECF No. 72, Exh. A, AAA Employment Arbitration Rules and Mediation Procedures Rule 6.

Plaintiff Nitsch does not contest that the employment agreements' explicit incorporation of AAA rules serves as "clear[] and unmistakabl[e]" evidence of the parties intent "to delegate the power to decide arbitrability to an arbitrator." *Qualcomm*, 466 F.3d at 1371; *see also Guidewire Software, Inc. v. Chookaszian*, No. 12-CV-3224-LHK, 2012 WL 5379589, at *4 (N.D. Cal. Oct. 31, 2012) (collecting cases holding that incorporation of AAA rules satisfies "clear and unmistakable evidence" standard). Where, as here, the parties "clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator," the court's inquiry is "limited . . . [to]

16

United States District Court
Northern District of California

1    whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm*, 466 F.3d at 1371.

2    Defendants contend that Plaintiff Nitsch's claims relate to his "payment" or compensation and

3    arise out of his employment agreements. According to Defendants, at bottom Plaintiff Nitsch's

4    claim against DreamWorks is that DreamWorks conspired with the other Defendants to limit or

5    reduce Plaintiff Nitsch's compensation.

6        Here, Plaintiff Nitsch concedes that DreamWorks' assertion of arbitrability is not wholly

7    groundless. *See* Opp. at 10. The Court agrees. The arbitration provisions encompass "[a]ny dispute

8    arising out of or relating to payment to Artist of any amount . . . or any other dispute arising in any

9    way out of the Agreement." Defendants have raised at least a colorable argument that Plaintiff

10   Nitsch's claim against DreamWorks is related to DreamWorks' "payment" under the employment

11   agreements. As such, the Court concludes that DreamWorks' argument that Plaintiff Nitsch's

12   claims against DreamWorks arising out of Plaintiff's employment at DreamWorks should be

13   referred to arbitration is not wholly groundless.

14       The Court therefore grants Defendants' motion to compel arbitration as to Plaintiff

15   Nitsch's claims against Defendant DreamWorks arising out of Plaintiff's employment at

16   DreamWorks.

17       **2.  Plaintiff Nitsch's Claims against DreamWorks Arising out of Plaintiff's
          Employment at Sony Pictures Imageworks**

18
     In addition to Plaintiff Nitsch's claims arising out of Plaintiff's employment at Defendant

19   DreamWorks, Plaintiff Nitsch also asserts claims against all Defendants arising out of Plaintiff's

20   employment at Defendant Sony Picture Imageworks. According to Plaintiff Nitsch, some of

21   Plaintiff's claims against DreamWorks would not arise out of Plaintiff's employment or

22   compensation by DreamWorks, but rather by DreamWorks' alleged participation in an

23   anticompetitive conspiracy that depressed Plaintiff's compensation from Sony Picture

24   Imageworks. *See* Opp. at 10–11. Defendants concede that Plaintiff Nitsch may state claims against

25   Defendant DreamWorks separate and apart from Plaintiff's claims related to Plaintiff's

26   employment at DreamWorks, and that those claims are not subject to arbitration. Reply at 1 n.1.

27

28
Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

("Defendants . . . do not seek an order compelling Nitsch to arbitrate claims relating to his employment at Sony Pictures Imageworks.").The parties appear to agree that Plaintiff Nitsch's claims against DreamWorks related to his employment at Sony Pictures do not fall within the scope of the arbitration clauses. The Court agrees that the plain language of Plaintiff Nitsch's two arbitration clauses do not encompass any claims that arise out of Plaintiff's employment with Defendant Sony Pictures Imageworks, and that any argument to the contrary would be wholly groundless. *See AT&T Techs*, 475 U.S. at 648.

In sum, under the terms of the arbitration clauses, an arbitrator must determine his or her own jurisdiction with respect to the arbitrability of Plaintiff Nitsch's claims against DreamWorks arising out of Plaintiff's employment at DreamWorks. However, Plaintiff Nitsch's claims against DreamWorks arising out of Plaintiff's employment at Sony Pictures Imageworks do not fall within the scope of the arbitration clauses. The Court therefore denies Defendants' motion to compel arbitration as to Plaintiff Nitsch's claims against Defendant DreamWorks arising out of Plaintiff's employment at Sony Pictures Imageworks.

**B.  Equitable estoppel and the remaining Defendants**

In addition to arguing that Plaintiff Nitsch is obligated to arbitrate certain claims against Defendant DreamWorks, Defendants further contend that Plaintiff is equitably estopped from refusing to arbitrate his claims against the remaining Defendants.

As the Ninth Circuit explained in *Kramer*, "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." 705 F.3d at 1128. Under California law, a nonsignatory may enforce an arbitration agreement if equitable estoppel applies. *See Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 714 (Ct. App. 2010). More specifically, where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two limited circumstances:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying

18

contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

*Id.* at 1128–29 (quoting *Goldman v. KPMG LLP*, 173 Cal.App.4th 209, 219–221 (Ct. App. 2009)) (internal citations omitted). Moreover, "equitable estoppel in this context is narrowly confined." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Defendants contend that both circumstances are present in the instant litigation. For the reasons stated below, the Court concludes that Plaintiff Nitsch's claims do not fall within either circumstance.

As to the first circumstance, Defendants assert that "there can be no question that Nitsch is relying on the terms of his written agreements with DreamWorks Animation." Mot. at 10. More specifically, Defendants argue that Plaintiff Nitsch's claims against all Defendants rely on the theory that Defendants conspired to "limit the compensation offered to" their employees. CAC ¶¶ 39, 88, 99; Reply at 3. According to Defendants, Plaintiff Nitsch's reference to the allegedly artificially depressed compensation DreamWorks actually offered him requires the Court to refer to Plaintiff Nitsch's employment agreement. In opposition, Plaintiff Nitsch contends that Defendants have failed to show that Plaintiff's claims actually "rely on" any provision of the employment agreements.

Here, the Court concludes that Defendants have failed to show that Plaintiff Nitsch's claims "rely on" any term of the employment agreements. As the Ninth Circuit held in *Kramer*, whether a plaintiff's claims "must rely on" a written agreement involves "look[ing] to whether the claims that the nonsignatories [seek] to arbitrate [are] 'intimately founded in and intertwined with the underlying contract obligations.'" 705 F.3d at 1129 (quoting *Goldman*, 173 Cal. App. 4th at 221). Put another way, the inquiry is "whether Plaintiffs would have a *claim* independent of the existence of the [agreement containing the arbitration clause]." *Id.* at 1131.

In *Kramer*, the nonsignatory-defendant Toyota sought to enforce arbitration clauses to which third-party dealers and the plaintiffs, who were purchasers of Toyota vehicles, agreed. *Id.* at 1124. The arbitration clauses were contained in purchase agreements, that included terms

Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

concerning purchase price, financing, and rescission rights. *Id.* The *Kramer* plaintiffs alleged claims under various California consumer protection laws based on alleged misrepresentations regarding the braking system. *Id.* Toyota argued that the plaintiffs' claims were intertwined with the purchase agreements because the plaintiffs requested revocation of acceptance and relied on the "price term" in the damages request. *Id.* at 1130. In rejecting Toyota's arguments, the Ninth Circuit concluded that the plaintiffs' claims "merely reference[d]" the agreements and did not "intimately rely on the existence" of the agreements. *Id.* at 1132. More specifically, because a plaintiff who had purchased a vehicle in cash without a purchase agreement would still be able to state a claim for relief under the consumer protection statutes, the Ninth Circuit held that the plaintiffs' claims "arose independently of the terms of the agreements containing arbitration provisions." *Id.* at 1132.

Similarly, here the Court concludes that while Plaintiff Nitsch's claims might refer to the employment agreements, Plaintiff Nitsch "would have a *claim* independent of the existence of the" employment agreements. *See id.* at 1131. Plaintiff Nitsch alleges that Defendants engaged in a conspiracy to artificially depress employee compensation and mobility. While these allegations are related to Plaintiff's compensation, Plaintiff's claims for relief under the Sherman Act, Cartwright Act, and UCL would be cognizable even if Plaintiff Nitsch had worked for DreamWorks *without* a written employment agreement. Simply put, Plaintiff Nitsch does "not seek to enforce or challenge the terms, duties, or obligations" of the employment agreements, but instead takes issue with alleged wrongful conduct that occurred outside the scope of the employment agreements. *See id.* at 1132; *see also Rajagopalan v. Noteworld, LLC*, 718 F.3d 844, 847–48 (9th Cir. 2013) (holding that plaintiff did not allege breach of contract but instead had independent statutory claims, making equitable estoppel inappropriate). Defendants' assertion is even less persuasive in light of Defendants' concession that Plaintiff Nitsch can state claims against DreamWorks that arise out of Plaintiff's employment at Sony Pictures Imageworks. As Plaintiff can state claims against all Defendants, including DreamWorks, that are separate from Plaintiff's employment at DreamWorks, the Court concludes that Plaintiff's claims against the nonsignatory Defendants

United States District Court
Northern District of California

1    "arose independently of the terms of the agreements containing arbitration provisions." *See*

2    *Kramer*, 705 F.3d at 1132.

3          Moreover, the Court agrees with Plaintiffs that Defendants fail to distinguish *Kramer* or

4    offer contrary authority. Defendants attempt to distinguish *Kramer* by focusing on the Ninth

5    Circuit's analysis as to the *second* circumstance, where the Ninth Circuit noted that the plaintiffs

6    had not actually alleged "substantially interdependent and concerted misconduct." *See id.* at 1132–

7    33; Reply at 4. However, Defendants fail to address the *Kramer* court's analysis with respect to

8    the first circumstance. Defendants are correct that the Ninth Circuit concluded that the *Kramer*

9    plaintiffs had not alleged concerted misconduct, in contrast to the alleged anticompetitive

10   conspiracy at issue in the instant litigation. That observation, however, does not bear on whether

11   equitable estoppel applies under the first circumstance, i.e., where a signatory's claims "must rely

12   on" an agreement containing an arbitration clause, such that the signatory's claims are "intimately

13   founded in and intertwined with" the agreements. *See Kramer*, 705 F.3d at 1128–29 (internal

14   quotation marks omitted). As discussed above, the Court finds that Plaintiff's claims do not rely

15   on the employment agreements.

16         Defendants further argue that Plaintiff Nitsch's claims are distinguishable from those in

17   *Kramer* because Plaintiff Nitsch alleges that but-for Defendants' anticompetitive conspiracy,

18   Plaintiff would have been paid more under his employment agreements. However, the Court finds

19   *Kramer* to be instructive. The *Kramer* plaintiffs alleged that the defect in their vehicles resulted in

20   a "diminution of value," which was the basis for the plaintiffs' request for damages. *Id.* at 1132. In

21   other words, the plaintiffs in *Kramer* alleged that but-for the defendant's alleged

22   misrepresentations regarding the safety of the braking systems, the plaintiffs would have *paid less*

23   for their vehicles than they otherwise did. Despite this apparent relationship between the plaintiffs'

24   injury, requested relief, and the purchase agreements, the Ninth Circuit held that the plaintiffs'

25   *claims* arose independently of the purchase agreements, and the mere fact that the court would

26   have to "look to" the purchase agreements "to ascertain the requested relief," was insufficient to

27   trigger equitable estoppel. *Id.* at 1131–32.

28
     21

1      Here, the Court also concludes that Plaintiff Nitsch's claims arose independently of his

2  employment agreements. Plaintiff Nitsch is not suing for breach of contract and his claims do not

3  rely on the existence of any particular contractual term. *See, e.g.*, *Murphy*, 724 F.3d at 1231 n.7

4  (noting that many California cases applying equitable estoppel to compel arbitration against

5  nonsignatories involved "contract-based causes of action, such as tortious interference or breach of

6  contract"); *see also Rajagopalan*, 718 F.3d at 847–48. That Plaintiff Nitsch's claims against

7  Defendants may require reference to his employment agreements to establish the fact of his

8  employment and the amount of compensation "to ascertain the requested relief" does not satisfy

9  the requirements for equitable estoppel. *See Kramer*, 705 F.3d at 1132.

10      Defendants' arguments as to why the second circumstance for equitable estoppel should

11  apply are unpersuasive for the same reasons. The second circumstance applies "when the signatory

12  alleges substantially interdependent and concerted misconduct by the nonsignatory and another

13  signatory and the allegations of interdependent misconduct [are] founded in or intimately

14  connected with the obligations of the underlying agreement." *Id.* (internal quotation marks

15  omitted). Setting aside whether Plaintiff Nitsch has alleged "substantially interdependent and

16  concerted misconduct" between Defendants, the Court concludes that Plaintiff's allegations are

17  not "founded in or intimately connected with the obligations of the underlying agreement." *See id*.

18  As a California Court of Appeal explained:

19          In *any* case applying equitable estoppel to compel arbitration despite
            the lack of an agreement to arbitrate, a nonsignatory may compel
20          arbitration only when the claims against the nonsignatory are
            founded in and inextricably bound up with *the obligations imposed*
21          *by the agreement containing the arbitration clause*. **In other words,**
            **allegations of substantially interdependent and concerted**
22          **misconduct by signatories and nonsignatories, standing alone,**
            **are not enough: the allegations of interdependent misconduct**
23          **must be founded in or intimately connected with the obligations**
            **of the underlying agreement.**
24
    *Goldman*, 173 Cal. App. 4th at 219 (bold emphasis added). Thus, the second circumstance, like

25  the first circumstance, requires that Plaintiff Nitsch's claims "be founded in or intimately

26  connected with the obligations of the underlying agreement." *Id.*

27

28
                                                    22
    Case No.14-CV-04062-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

1    As discussed above, Plaintiff Nitsch does "not seek to enforce or challenge the terms,

2    duties, or obligations" of the employment agreements. *Kramer*, 705 F.3d at 1132. As such, the

3    Court concludes that Plaintiff's claims that Defendants engaged in an illegal conspiracy under

4    federal and state antitrust laws are independent of the terms of Plaintiff's employment agreements

5    with Defendant DreamWorks. Defendants argue that Plaintiff Nitsch has alleged "substantially

6    interdependent and concerted" misconduct between the Defendants, and the bulk of Defendants'

7    briefing focuses solely on the element of collusive misconduct. Even assuming Defendants are

8    correct that Plaintiff Nitsch has alleged "substantially interdependent and concerted" misconduct

9    between DreamWorks and the remaining Defendants, those allegations alone are insufficient to

10   trigger equitable estoppel. As the Ninth Circuit explained in *Murphy*, "[e]ven where a plaintiff

11   alleges collusion, '[t]he *sine qua non* for allowing a nonsignatory to enforce an arbitration clause

12   based on equitable estoppel is that the claims the plaintiff asserts against the nonsignatory are

13   dependent on or inextricably bound up with the contractual obligations of the agreement

14   containing the arbitration clause.'" 724 F.3d at 1232 (quoting *Goldman*, 173 Cal. App. 4th at

15   537)). As the Court concludes that Plaintiff Nitsch's claims are not "dependent on or inextricably

16   bound up with the" obligations of Plaintiff's employment agreements, the second circumstance

17   triggering equitable estoppel does not apply.

18   Defendants cite *Brown v. Pacific Life Insurance*, 462 F.3d 384, 389 (5th Cir. 2006), in

19   support of their argument that the second circumstance is satisfied here. More specifically,

20   Defendants contend that Plaintiff Nitsch has failed to allege claims against the remaining

21   Defendants that are "separate and apart" from Plaintiff's claims against DreamWorks. *See* Reply

22   at 6. However, *Brown* did not apply California law and is not controlling authority. *See id.*

23   Moreover, *Brown* is unhelpful here, as the Fifth Circuit's limited analysis with regards to whether

24   the district court had abused its discretion focused only on whether the plaintiffs had alleged

25   concerted misconduct. While Defendants focus on the "separate and apart" language, the full

26   statement by the *Brown* court states: "As the Browns fail to allege tortious acts by [the

27   nonsignatory defendants] that are separate and apart from [the signatory defendant's], we can only

28

23

1   conclude that the complaint asserts concerted misconduct by all parties." *Id.* at 399. Contrary to

2   Defendants' characterization, this statement in *Brown* does not eliminate the requirement that a

3   plaintiff's claims allege concerted misconduct *and* that the claims rely on obligations in the

4   underlying agreements. *See, e.g.*, *Murphy*, 724 F.3d at 1232.

5    Additionally, the Court notes that Defendants' equitable estoppel arguments fail to

6   recognize the underlying purpose of the doctrine in this context: to prevent signatories to a

7   contract with an arbitration clause from "simultaneously invok[ing] the duties and obligations . . .

8   under the [agreement] . . . while seeking to avoid arbitration." *Kramer*, 705 F.3d at 1134; *see also*

9   *Metalclad Corp. v. Ventana Env. Org. P'ship*, 109 Cal. App. 4th 1705, 1713–19 (Ct. App. 2003)

10  ("[Plaintiff] agreed to arbitration in the underlying written contract but now, in effect, seeks the

11  benefit of that contract in the form of damages from [defendant] while avoiding its arbitration

12  provision. Estoppel prevents this."). Defendants argue that it would be inefficient to compel

13  Plaintiff Nitsch to arbitrate his claims against Defendant DreamWorks but not compel arbitration

14  against the nonsignatory Defendants. However, the Court "cannot expand the parties' agreement

15  to arbitrate in order to achieve greater efficiency. The Federal Arbitration Act *requires* piecemeal

16  resolution when necessary to give effect to an arbitration agreement." *Tracer Research Corp. v.*

17  *Nat'l Env. Servs. Co.*, 42 F.3d 1292, 1294–95 (9th Cir. 1994) (internal quotation marks omitted).

18  Here, only one Defendant, DreamWorks, is a signatory to the arbitration clauses. The doctrine of

19  equitable estoppel is "narrowly confined" when applied to compel arbitration as to nonsignatories,

20  and Defendants' focus on efficiency misunderstands the limited applicability of equitable estoppel

21  in this context. *Murphy*, 724 F.3d at 1229.

22   Here, Defendants argue that it would be "unfair" for an arbitrator to resolve the factual and

23  legal questions concerning DreamWorks' alleged participation in an anticompetitive conspiracy

24  that depressed Plaintiff Nitsch's compensation, and for this Court to also resolve these issues with

25  respect to the nonsignatory Defendants. While the "linchpin for equitable estoppel is fairness,"

26  Defendants confuse efficiency for fairness. *See Kramer*, 705 F.3d at 1133 (internal quotation

27  marks omitted). It is also not evident to the Court that Defendants' claimed inefficiencies are

28

United States District Court
Northern District of California

24

1    likely to occur. Defendants' argument presumes, potentially incorrectly, that an arbitrator will

2    conclude that some of Plaintiff Nitsch's claims against DreamWorks fall within the scope of the

3    arbitration clauses. That this Court is bound to review DreamWorks' claims of arbitrability under

4    a "wholly groundless" standard in deciding whether an arbitrator must decide his or her own

5    jurisdiction does not establish that any of Plaintiff Nitsch's claims against DreamWorks actually

6    fall within the scope of the arbitration clauses.

7          Furthermore, Defendants concede that Plaintiff Nitsch cannot be compelled to arbitrate his

8    claims against DreamWorks that arise out of Plaintiff's employment at Sony Pictures Imageworks,

9    as those claims do not arise out of Plaintiff's employment agreements with DreamWorks.

10   Defendants offer no explanation for why "efficiency" would justify compelling Plaintiff Nitsch to

11   arbitrate claims that plainly, concededly fall *outside* the scope of the arbitration clauses. The Court

12   further notes that neither Plaintiff Cano nor Plaintiff Wentworth is subject to any arbitration

13   agreement with Defendants, and that this action will proceed regardless of whether Plaintiff Nitsch

14   is compelled to arbitrate certain claims against any or all Defendants. To the extent Defendants

15   rely on the fact that both an arbitrator and this Court may have to address the factual and legal

16   basis for Plaintiff Nitsch's claims regarding Defendants' alleged anticompetitive conspiracy, this

17   overlap is inevitable as Plaintiffs Cano and Wentworth allege the same conspiracy, and as Plaintiff

18   Nitsch cannot be compelled to arbitrate his claims against DreamWorks that arise out of Plaintiff's

19   employment with Sony Pictures Imageworks. The Court therefore finds Defendants' argument

20   both untenable and unpersuasive.

21         Moreover, even assuming that there would be potentially duplicative proceedings, neither

22   the California courts nor the Ninth Circuit have concluded that such a risk is a factor to be

23   weighed in the equitable estoppel analysis. The Ninth Circuit, on at least two separate occasions,

24   has held that a plaintiff was obligated to arbitrate her claims against a signatory defendant, but that

25   equitable estoppel did not compel arbitration against nonsignatory defendants. *See Kramer*, 705

26   F.3d at 1132–34; *Murphy*, 724 F.3d at 1230–32. Defendants cite no authority holding that the risk

27   of duplicative proceedings is an inequity that the Court must consider in determining whether

28

Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

1   Plaintiff Nitsch should be compelled to arbitrate his claims against the nonsignatory Defendants

2   under the doctrine of equitable estoppel. "California courts have explicitly noted that parties

3   should only be estopped if their 'own conduct renders assertion of those rights contrary to

4   equity.'" *Kramer*, 705 F.3d at 1133 (quoting *Goldman*, 173 Cal. App. 4th at 221)). In the instant

5   case, Defendants have identified no conduct by Plaintiff Nitsch that requires that Plaintiff be

6   estopped from asserting his claims against the nonsignatory Defendants before this Court.

7       The Court therefore denies Defendants' motion to compel arbitration with respect to the

8   nonsignatory Defendants.

9       **C. The Appropriate Scope of a Stay**

10      Defendants' third request is an order staying Plaintiff Nitsch's prosecution of his claims

11  against DreamWorks pending the outcome of the arbitration. Defendants also request that the

12  Court stay Plaintiff Nitsch's prosecution of all of his claims against all Defendants, in the event

13  that the Court compels Plaintiff Nitsch to arbitrate his claims against all Defendants.

14      Under § 3 of the FAA, courts must "stay litigation of arbitral claims pending arbitration of

15  those claims 'in accordance with the terms of the agreement.'" *AT&T Mobility LLC v.*

16  *Concepcion*, 131 S. Ct. 1740, 1748 (2011). When a court "determines that *all of the claims* raised

17  in the action are subject to arbitration," the court "may either stay the action or dismiss it

18  outright." *Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). Where

19  plaintiffs assert both arbitrable and nonarbitrable claims, district courts have "discretion whether

20  to proceed with the nonarbitrable claims before or after the arbitration and [have] . . . authority to

21  stay proceedings in the interest of saving time and effort for itself and litigants." *Wilcox v. Ho-*

22  *Wing Sit*, 586 F. Supp. 561, 567 (N.D. Cal. 1984); *see also Levya v. Certified Grocers of*

23  *California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979).

24      Here, the Court concludes that a stay as to Plaintiff Nitsch's claims against Defendant

25  DreamWorks based on Plaintiff Nitsch's employment at DreamWorks is appropriate. *See*

26  *Concepcion*, 131 S. Ct. at 1748. Plaintiff Nitsch does not contest that a limited stay as to Plaintiff's

27  claims against DreamWorks based on Plaintiff's employment at DreamWorks is appropriate under

28

United States District Court
Northern District of California

26

Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

1  the FAA. The Court therefore grants Defendants' request to stay the prosecution of Plaintiff

2  Nitsch's claims against Defendant DreamWorks arising out of Plaintiff's employment at

3  DreamWorks. This stay does not, however, prevent Plaintiff Nitsch from prosecuting his claims

4  against DreamWorks that arise out of Plaintiff's employment at Sony Pictures Imageworks.

5        As the Court finds that equitable estoppel does not compel Plaintiff Nitsch to arbitrate any

6  of Plaintiff's claims against the nonsignatory Defendants, the Court denies Defendants' request to

7  stay the prosecution of Plaintiff's claims against the remaining Defendants. Defendants do not

8  argue that a stay of all of Plaintiff Nitsch's claims would be appropriate for any other reason. *See*

9  Reply at 8–9.[9]

10       In sum, the Court grants a limited stay only as to Plaintiff Nitsch's claims against

11  DreamWorks arising out of Plaintiff's employment at DreamWorks. Plaintiff Nitsch may

12  prosecute his claims arising out of his employment with DreamWorks against the nonsignatory

13  Defendants, and may prosecute his claims arising out of his employment with Sony Pictures

14  Imageworks against DreamWorks.

15  **IV. CONCLUSION**

16       For the reasons stated above, the Court GRANTS in part and DENIES in part Defendants'

17  motion to compel arbitration and stay proceedings.

18       The Court grants Defendants' motion to compel arbitration with respect to Plaintiff

19  Nitsch's claims against Defendant DreamWorks arising out of Plaintiff's employment at

20  DreamWorks and grants a stay only as to these claims.

21       The Court denies Defendants' motion to compel arbitration with respect to, and motion to

22  stay, Plaintiff Nitsch's claims against Defendant DreamWorks arising out of Plaintiff's

23  employment at Defendant Sony Pictures Imageworks.

24       The Court denies Defendants' motion to compel arbitration with respect to Plaintiff

25  Nitsch's claims against the nonsignatory Defendants and denies Defendants' request to stay these

26

27  ───────────────
[9] The Court notes that Defendants do not argue that a stay of this entire action would be
appropriate.

28                                        27

claims.

**IT IS SO ORDERED.**

Dated: April 24, 2015

_____
LUCY H. KOH
United States District Judge

Case No.14-CV-04062-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION