EMILY JOHNSON HENN (SBN 269482)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94061
Telephone: 650-632-4700
Facsimile: 650-632-4800
Email: ehenn@cov.com

*Attorneys for Defendants*
The Walt Disney Company, Lucasfilm Ltd.,
LLC, Pixar, and Two Pic MC LLC

STEPHEN V. BOMSE (SBN 40686)
DAVID M. GOLDSTEIN (SBN 142334)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone: 415-773-4145
Facsimile: 415-773-5759
Email: sbomse@orrick.com

*Attorneys for Defendants*
Sony Pictures Animation Inc.
Sony Pictures Imageworks Inc.

*Other counsel on signature page*

DANIEL G. SWANSON (SBN 116556)
ROD J. STONE (SBN 145405)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213-229-7256
Facsimile: 213-229-6256
Email: rstone@gibsondunn.com

*Attorneys for Defendant*
DreamWorks Animation SKG, Inc.

JOHN E. SCHMIDTLEIN (SBN 163520)
JONATHAN B. PITT (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: 202-434-5901
Facsimile: 202-434-5029
Email: jschmidtlein@wc.com

*Attorneys for Defendant*
Blue Sky Studios, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANIMATION WORKERS ANTITRUST LITIGATION | Master Docket No. 14-cv-4062-LHK |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: September 17, 2015<br>Time: 1:30 p.m.<br>Courtroom: 8<br>Judge: Hon. Lucy H. Koh |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 17, 2015, at 1:30 p.m. in the courtroom of the Honorable Lucy H. Koh, United States District Court for the Northern District of California, 280 South 1st Street, Courtroom 8, San Jose, California, Defendants DreamWorks Animation SKG, Inc., The Walt Disney Company, Lucasfilm Ltd., LLC, Pixar, Two Pic MC LLC (f/k/a ImageMovers Digital ("IMD")), Sony Pictures Animation Inc. and Sony Pictures Imageworks Inc. ("Sony Pictures"), and Blue Sky Studios (collectively, "Defendants") each will, and hereby does, move to dismiss plaintiffs' Second Consolidated Amended Class Action Complaint ("SAC") in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) and/or 9(b).  In the alternative, each Defendant moves to dismiss and/or strike the claim based on wage-fixing set forth in paragraphs 86-115 of the SAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f).  In addition, Blue Sky and Sony Pictures each moves to dismiss and/or strike the claim based on non-solicitation agreements set forth in paragraphs 43-85 of the SAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f).[1]

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the documents on file with this Court, Defendants' Joint Request for Judicial Notice, the Declaration of Jonathan B. Pitt, the Declaration of David M. Goldstein, and such further evidence and argument as this Court may permit.

---

[1]    The remaining defendants are not moving to dismiss the allegations of a "no-poaching" conspiracy against them, but vigorously deny that they participated in the agreement not to solicit employees as alleged by plaintiffs.  Sony Pictures is not moving to compel arbitration with respect to plaintiff Georgia Cano's employment by Sony Pictures because her claims are not based on her employment with Sony Pictures.  *See* SAC ¶ 20; Dkt. 71 at 3, n.1; *see also* Dkt. 99 at 1, n.1.  Sony Pictures reserves the right to move to compel arbitration of any claims Cano asserts based on her Sony Pictures employment.

DATED:  May 21, 2015                    COVINGTON & BURLING LLP

                                        By:  /s/ Emily Johnson Henn
                                             Emily Johnson Henn
                                             333 Twin Dolphin Drive, Suite 700
                                             Redwood Shores, CA 94061
                                             Telephone: 650-632-4700
                                             Facsimile: 650-632-4800
                                             Email: ehenn@cov.com

                                             Deborah A. Garza
                                             Thomas A. Isaacson
                                             One CityCenter
                                             850 10th Street, NW
                                             Washington, DC 20001-4956
                                             Telephone: 202-662-6000
                                             Facsimile: 202-662-6291
                                             Email: dgarza@cov.com
                                             Email: tisaacson@cov.com

                                             Cortlin H. Lannin
                                             One Front Street, 35th Floor
                                             San Francisco, CA 94111
                                             Telephone: 415-591-7078
                                             Facsimile: 415-955-6578
                                             Email: clannin@cov.com

                                             Attorneys for Defendants
                                             The Walt Disney Company
                                             Lucasfilm Ltd., LLC
                                             Pixar
                                             Two Pic MC LLC

DATED:  May 21, 2015                    GIBSON, DUNN & CRUTCHER LLP

                                        By:  /s/ Rod J. Stone
                                             Rod J. Stone
                                             333 South Grand Avenue
                                             Los Angeles, CA 90071-3197
                                             Telephone: 213-229-7256
                                             Facsimile: 213-229-6256
                                             Email: rstone@gibsondunn.com

                                             Attorneys for Defendant
                                             DreamWorks Animation SKG, Inc.

1

DATED:   May 21, 2015

ORRICK, HERRINGTON & SUTCLIFFE
LLP

2

3

By: */s/ Stephen V. Bomse*
Stephen V. Bomse
David M. Goldstein
405 Howard Street
San Francisco, CA 94105-2669
Telephone: 415-773-4145
Facsimile: 415-773-5759
Email: sbomse@orrick.com
Email: dgoldstein@orrick.com

4

5

6

7

*Attorneys for Defendants*
Sony Pictures Animation Inc.
Sony Pictures Imageworks Inc.

8

9

10

DATED:   May 21, 2015

WILLIAMS & CONNOLLY LLP

11

12

By: */s/ John E. Schmidtlein*
John E. Schmidtlein
Jonathan B. Pitt
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: 202-434-5901
Facsimile: 202-434-5029
Email: jschmidtlein@wc.com
Email: jpitt@wc.com

13

14

15

16

17

William Faulkner (SBN 83385)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: 408-279-8700
Facsimile: 408-279-3244
Email: wfaulkner@mcmanislaw.com

18

19

20

*Attorneys for Defendant*
Blue Sky Studios, Inc.

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF ISSUES TO BE DECIDED ........................... 1

II.  PROCEDURAL BACKGROUND ..................................................... 2

III.  THE SECOND AMENDED COMPLAINT ........................................... 2

IV.  ARGUMENT ................................................................. 3

    A.  Legal Standard ....................................................... 3

    B.  Plaintiffs Have Still Failed To Allege the Requisite Elements of Fraudulent Concealment. ............................................... 4

        1.  Plaintiffs Have Not Alleged Affirmative Acts of Concealment. ............... 4

            a)  Plaintiffs' Allegations That the Alleged Conspiracy Was "Secret" Do Not Establish Affirmatively Misleading Conduct. ...................................................... 5

            b)  Plaintiffs Fail To Identify Any Instance Where Defendants Made Specific and Affirmatively False or Misleading Statements To Conceal the Alleged Conspiracy ........................... 8

            c)  Pixar's and Lucasfilm's Conduct in Defense of the *High-Tech* Litigation Does Not Constitute Affirmative Acts of Concealment. ................................................ 14

        2.  Plaintiffs Have Failed To Allege That They Diligently Investigated Their Claims After They Were on Notice of Them. ............................... 17

    C.  Plaintiffs' Untimely Claim Based on Alleged Wage-Fixing Agreements Is Also Deficient for Failure To State a *Per Se* Antitrust Claim. ................... 18

    D.  Plaintiffs Fail To State Timely or Plausible Claims Against Blue Sky or Sony Pictures. ....................................................... 22

        1.  Plaintiffs Fail To Allege That Blue Sky or Sony Pictures Engaged in Fraudulent Concealment. ............................................. 22

        2.  Plaintiffs' Allegations Against Blue Sky and Sony Pictures Regarding the Alleged Non-Solicitation Conspiracy Do Not Satisfy *Twombly*. ........................................................ 24

            a)  Blue Sky ......................................................... 24

            b)  Sony Pictures .................................................... 27

V.  CONCLUSION ............................................................... 30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aryeh v. Canon Bus. Solutions, Inc.*,
    55 Cal. 4th 1185 (2013) ...................................................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................2, 3

*AT&T Corp. v. JMC Telecom, LLC*,
    470 F.3d 525 (3d Cir. 2006) ...........................................................................................19

*Barker v. American Mobil Power Corp.*,
    64 F.3d 1397 (9th Cir. 1995) (per curiam) ...............................................................22, 23

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ *passim*

*Benak v. Alliance Capital Mgmt. L.P.*,
    435 F.3d 396 (3d Cir. 2006) ...........................................................................................17

*Block v. Toyota Motor Corp.*,
    5 F. Supp. 3d 1047 (D. Minn 2014) ...............................................................................10

*Conmar Corp. v. Mitsui & Co.*,
    858 F.2d 499 (9th Cir. 1988) ......................................................................................4, 23

*DeBenedictis v. Merrill Lynch & Co., Inc.*,
    492 F.3d 209 (3d Cir. 2007) ...........................................................................................17

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
    595 F. Supp. 2d 1253 (M.D. Fla. 2009) .........................................................................17

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) ..........................................................................................3

*Glenbrook Capital P'ship Ltd. v. Kuo*,
    2008 WL 929429 (N.D. Cal. Apr. 3, 2008) ..............................................................25, 28

*Guerrero v. Gates*,
    442 F.3d 697 (9th Cir. 2006) ............................................................................................4

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012) ..................................................................................4, 8, 17

*Huynh v. Chase Manhattan Bank*,
    465 F.3d 992 (9th Cir. 2006) ............................................................................................3

*Ilaw v. Daughters of Charity Health Sys.*,
2012 WL 381240 (N.D. Cal. Feb. 6, 2012) ...................................................................3

*In re Animation Workers Antitrust Litig.*,
-- F. Supp. 3d --, 2015 WL 1522368 (N.D. Cal. Apr. 3, 2015) .................................. *passim*

*In re Aspartame Antitrust Litig.*,
2007 WL 5215231 (E.D. Pa. Jan. 18, 2007) .................................................................13

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (3d Cir. 1999)...........................................................................................20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
738 F. Supp. 2d 1011 (N.D. Cal. 2010) .............................................................9, 10, 23

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999) .......................................................................................20

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .........................................................................................3

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........................................................................20

*In re Graphics Processing Units Antitrust Litig.*,
540 F. Supp. 2d 1085 (N.D. Cal. 2007) ........................................................................21

*In re High-Tech Employee Antitrust Litig.*,
2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) ................................................................18

*In re High-Tech Employee Antitrust Litig.*,
856 F. Supp. 2d 1103 (N.D. Cal. 2012) ........................................................................19

*In re Lithium Ion Batteries Antitrust Litig.*,
2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ...............................................................6, 7

*In re Magnesium Oxide Antitrust Litig.*,
2011 WL 5008090 (D.N.J. Oct. 20, 2011)...............................................................10, 14

*In re Merrill Lynch Ltd. P'ships Litig.*,
154 F.3d 56 (2d Cir. 1998)............................................................................................17

*In re Petroleum Products Antitrust Litig.*,
906 F.2d 432 (9th Cir. 1990) .........................................................................................18

*In re Processed Egg Prods. Antitrust Litig.*,
2011 WL 5980001 (E.D. Pa. Nov. 30, 2011) ..........................................................14, 17

*In re Rubber Chems. Antitrust Litig.*,
504 F. Supp. 2d 777 (N.D. Cal. 2007) ..........................................................................23

iii

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................9

*In re Urethane Antitrust Litig.*,
   235 F.R.D. 507 (D. Kan. 2006)........................................................................9, 10

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ..............................................................19, 20, 27

*Koch v. Christie's Int'l, PLC*,
   699 F.3d 141 (2d Cir. 2012)................................................................................17

*Lane v. Page*,
   649 F. Supp. 2d 1256 (D.N.M. 2009) ................................................................17

*Lopez v. Regents of Univ. of Cal.*,
   5 F. Supp. 3d 1106 (N.D. Cal. 2013) .............................................................25, 28

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ................................................................................6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)............................................................................................25

*McMunigal v. Bloch*,
   2010 WL 5399219 (N.D. Cal. Dec. 23, 2010)....................................................25

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) ..............................................................................20

*O'Brien v. Nat'l Prop. Analysts Partners*,
   719 F. Supp. 222 (S.D.N.Y. 1989)......................................................................23

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
   967 F. Supp. 2d 1347 (N.D. Cal. 2013) ..............................................................25

*Pace v. DiGuglielmo*,
   544 U.S. 408 (2005)............................................................................................17

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
   52 F. Supp. 3d 961 (N.D. Cal. 2014) ..................................................................12

*Reynolds v. Roberts*,
   202 F.3d 1303 (11th Cir. 2000) ..........................................................................16

*Rutledge v. Boston Woven Hose & Rubber Co.*,
   576 F.2d 248 (9th Cir. 1978) ..............................................................................15

*Shaw v. Hahn*,
   56 F.3d 1128 (9th Cir. 1995) ................................................................................6

iv

*Steshenko v. Gayrard*,
2014 WL 4904424 (N.D. Cal. Sept. 29, 2014) .................................................................18

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .........................................................23, 25, 27, 28

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
633 F. Supp. 2d 763 (D. Ariz. 2009) ...........................................................25, 28

*Texaco Inc. v. Dagher*,
547 U.S. 1 (2006)...............................................................................................19

*Thorman v. American Seafoods Co.*,
421 F.3d 1090 (9th Cir. 2005) .............................................................................9

*Todd v. Exxon Corp.*,
275 F.3d 191 (2d Cir. 2001).......................................................................19, 21

*United States v. Kenny*,
645 F. 2d 1323 (9th Cir. 1981) .........................................................................30

*United States v. United States Gypsum Co.*,
438 U.S. 422 (1978)...........................................................18, 19, 20, 21

*Van Buskirk v. CNN*,
284 F.3d 977 (9th Cir. 2002) ............................................................................25

*Vernon v. City of Dallas*,
2009 WL 2486033 (N.D. Tex. Aug. 13, 2009) ................................................18

*Volk v. D.A. Davidson & Co.*,
816 F.2d 1406 (9th Cir. 1987) .............................................................................4

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)...............................................................................14

**Statutes**

Cal. Bus. & Prof. Code § 16720 ....................................................................................21

**Other Authorities**

6 Areeda & Hovenkamp, Antitrust Law, ¶ 1425 (3d ed. 2010)...........................................25

BLACK'S LAW DICTIONARY 410-11 (6th ed. 1990)..............................................................16

Fed. R. Civ. P. 9(b) ..................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................3, 6, 22, 25

DEFS.' MOTION TO DISMISS THE SAC
Master Docket No. 14-cv-4062-LHK

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ISSUES TO BE DECIDED

In its April 3 Order ("April 3 Order"), this Court was clear about what plaintiffs needed to allege in order to cure deficiencies in their original Consolidated Amended Class Action Complaint ("CAC"):  either (1) new and independent unlawful conduct after September 8, 2010, or (2) that defendants took specific, affirmative steps prior to that date to mislead plaintiffs as to facts giving rise to their claims (*i.e.*, fraudulent concealment).  That decision reveals how abjectly Plaintiffs' current pleading has failed the test, despite having obtained substantial additional discovery beyond the reams of documents they already had when they filed the CAC.  More specifically, plaintiffs have abandoned the allegation that defendants "repeatedly invaded Plaintiffs' interests," which this Court held was inadequate to plead a continuing violation, and have not alleged any unlawful conduct after September 8, 2010.  And plaintiffs' attempt to plead fraudulent concealment boils down, at most, to allegations that defendants failed to affirmatively disclose the alleged conspiracy – which this Court, in line with a large body of precedent, has already ruled is insufficient as a matter of law.

As this Court explained, fraudulent concealment requires affirmatively misleading conduct to hide the alleged conspiracy.  Mere failure to disclose the details of an alleged unlawful conspiracy is "neither surprising nor sufficient to constitute 'affirmative steps to mislead.'"  *See In re Animation Workers Antitrust Litig.*, -- F. Supp. 3d --, 2015 WL 1522368, at *15 (N.D. Cal. Apr. 3, 2015) ("*AWAL*").  If the law were otherwise, there would be little point in imposing a statute of limitations.  Yet there is no other way to read plaintiffs' Second Consolidated Amended Class Action Complaint ("SAC").  Their new allegations are essentially (i) that certain defendants had general corporate policies and codes of conduct requiring compliance with the law and ethical standards, (ii) that several defendants made statements in SEC filings or recruiting and other materials that, by failing to also disclose details of the alleged conspiracy, falsely "implied" salaries were not affected by any alleged conspiracy, and (iii) that Pixar and Lucasfilm denied allegations in defense of the *High-Tech* litigation and sought a court order to seal certain information.

None of these alleged facts, either individually or considered as a whole, meets plaintiffs' heightened burden for pleading fraudulent concealment under Rule (9)(b).  Corporate policies and codes

of conduct, SEC filings, and defending oneself in litigation are not acts of fraudulent concealment. Plaintiffs do not allege any facts, much less with specificity, showing that any statement by any defendant was the product of a separate agreement between or among defendants to conceal the alleged conspiracy. The SAC also fails to allege that any of the named plaintiffs relied on or even saw any statement or "implied" representation by a defendant, or that they diligently sought to uncover the facts giving rise to their claims. For these reasons, plaintiffs' claims should be dismissed as untimely.

In addition, the SAC's allegations do not satisfy *Twombly* or *Iqbal* in regard to defendants' alleged entry into *per se* unlawful wage-fixing agreements. And as to Blue Sky and Sony Pictures, in addition to failing to allege any act of fraudulent concealment by either of them, the SAC's allegations against them do not satisfy the *Twombly* and *Iqbal* standards as to *any* theory of liability.

## II. PROCEDURAL BACKGROUND

On April 3, 2015, this Court dismissed the CAC in its entirety. *AWAL*, 2015 WL 1522368, at *17. This Court held that plaintiffs' claims were time-barred because those claims accrued upon injury (not discovery), because plaintiffs did not allege facts constituting a continuing violation, and because plaintiffs could not invoke the tolling doctrine of fraudulent concealment, as the CAC failed to allege that defendants "took affirmative steps to mislead Plaintiffs as to the factual basis for Plaintiffs' claims." *Id.* at *13-16.[2] This Court instructed plaintiffs that failure to plead timely claims in their SAC would result in a dismissal with prejudice. *Id.* at *17.

## III. THE SECOND AMENDED COMPLAINT

In the SAC, the three named plaintiffs again claim that defendants entered into two allegedly unlawful agreements: (1) not to solicit each other's employees, SAC ¶¶ 42-85; and (2) to fix the compensation of their employees, *id.* ¶¶ 86-115. While the SAC adds bulk to the allegations of its predecessor pleading, the substance of the additional allegations remains the same, and they do not cure

---

[2]    Having determined that plaintiffs' claims were time-barred, the Court did not reach defendants' other grounds for dismissal of the CAC, including those asserted pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

the defects that required dismissal of the CAC.  Accordingly, the SAC should be dismissed with prejudice.

## IV.   ARGUMENT

### A.   Legal Standard

A complaint must be dismissed under Rule 12(b)(6) if it lacks sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  This "facial plausibility" standard requires factual allegations that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545, 555.  The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  Nor is the Court required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted).

Claims also should be dismissed when "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (citation and internal quotation marks omitted).  If the statute of limitations has run, as this Court has already ruled, "a plaintiff must allege facts to support a plausible claim that [an] equitable tolling doctrine applies in order to survive a motion to dismiss." *Ilaw v. Daughters of Charity Health Sys.*, 2012 WL 381240, at *4 n.4 (N.D. Cal. Feb. 6, 2012).

As this Court's April 3 Order confirmed, the four-year limitations period under the Sherman Act, Cartwright Act, and the UCL began to accrue when plaintiffs were injured by defendants' allegedly unlawful conduct, not when plaintiffs claim they later discovered their injuries.  *See AWAL*, 2015 WL 1522368, at *9-11.  Accordingly, plaintiffs' claims "are time barred absent sufficient allegations that Defendants engaged in 'continuing violations' after September 8, 2010, i.e., four years prior to the first-filed complaint in this consolidated action, or that Defendants' fraudulent concealment should toll the statute of limitations." *AWAL*, 2015 WL 1522368 at *12.  As noted above, plaintiffs have dropped from the SAC any attempt to plead a continuing violation following this Court's holding that

3

the "bald assertion" that the alleged conspiracy "'repeatedly invaded Plaintiffs' . . . interests,'" was insufficient. *Id.* (quoting CAC ¶ 123).[3] Thus, plaintiffs' final opportunity to plead timely claims rests entirely on whether they have sufficiently alleged fraudulent concealment under the heightened pleading standard of Rule 9(b). As set forth below, they have not.

**B.      Plaintiffs Have Still Failed To Allege the Requisite Elements of Fraudulent Concealment.**

As this Court held, plaintiffs bear the burden to allege, with the specificity required by Rule 9(b), facts supporting all three elements of fraudulent concealment: "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim' as a result of defendant's affirmative acts; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *AWAL*, 2015 WL 1522368, at *14 (citing *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012)); *see also Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir. 2006) (plaintiff must plead a fraudulent concealment allegation with particularity). A failure to satisfy any of the three required elements precludes tolling. *See AWAL*, 2015 WL 1522368, at *14. Plaintiffs do not satisfy their burden for any of the three.

**1.      Plaintiffs Have Not Alleged Affirmative Acts of Concealment.**

To satisfy the first element, plaintiffs must plead misleading conduct "'above and beyond' the alleged conspiracy itself." *AWAL*, 2015 WL 1522368, at *15 (citing *Gates*, 442 F.3d at 706-07); *see also Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 505 (9th Cir. 1988) ("A plaintiff alleging fraudulent concealment must establish that its failure to have notice of its claim was the result of affirmative conduct by the defendant."). Mere "silence or passive conduct does not constitute fraudulent concealment." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987); *see also Conmar*, 858 F.2d at 505 ("passive concealment of information is not enough to toll the statute of limitations").

---

[3]      Indeed, and as with the CAC, the latest restriction on competition for labor alleged with any specificity in the SAC is from November 2009, *see* SAC ¶ 108, and most of the alleged conduct is from 2004 to 2007. *See, e.g.*, *id.* ¶¶ 4-8, 13-15, 49-50, 52-53, 55-57, 60, 65-67, 69-70, 75, 81, 85-86, 90, 92, 94, 98, 100-101, 103, 105-107, 113, 126, 150, 152, 161, 165, 167, 169.

4

Plaintiffs fail this threshold test. Indeed, as to some defendants (Sony Pictures, Blue Sky, and Two Pic MC LLC), plaintiffs fail to allege a single purportedly "concealing" act, which is fatal to their claims against those defendants. *See infra* Section IV.D.1. And plaintiffs fail to allege that any of the supposedly "concealing" conduct they do assert was conspiratorial "above and beyond" the alleged underlying conspiracy – instead, plaintiffs allege various acts, dating back to 2004, that are quintessentially *individual* in nature and entirely consistent with ordinary business operations. Plaintiffs' allegations of purportedly misleading acts fall into three categories: (i) the allegedly "secret" nature of certain meetings and communications, (ii) supposedly false or pretextual statements by certain defendants, and (iii) certain defendants' defense of the *High-Tech* litigation. None satisfies plaintiffs' burden "to allege that Defendants took affirmative steps to mislead Plaintiffs as to the factual basis for Plaintiffs' claims." *AWAL*, 2015 WL 1522368, at *16.

> **a)** **Plaintiffs' Allegations That the Alleged Conspiracy Was "Secret" Do Not Establish Affirmatively Misleading Conduct.**

The SAC repeats nearly *verbatim* the CAC's allegations that defendants participated "in a secret conspiracy" that "was concealed and carried out in a manner specifically designed to avoid detection." SAC ¶¶ 135-136.[4] But this Court has already held, consistent with prevailing case law, that those allegations are insufficient because they do not evidence affirmatively misleading conduct. *See AWAL*, 2015 WL 1522368, at *16. Such allegations "show only that Defendants engaged in a conspiracy, that by nature [is] self-concealing," and "do not support the conclusion that Defendants took active, affirmative steps to mislead Plaintiffs about the existence of Plaintiffs' claims." *Id.* at *15 (internal quotation marks omitted).

---

[4] Demonstrating extraordinary selectivity, plaintiffs' allegations fail to account for evidence from the *High-Tech* case that was produced to them more than five months before the filing of the SAC and shows Pixar's then General Manager, Jim Morris, openly discussing Pixar's "gentleman's agreement" with Lucasfilm – which they allege was the foundation of the alleged conspiracy – in a 2008 presentation to an auditorium of Pixar interns that was videotaped and thereafter "ma[d]e available to employees for training purposes." Mr. Morris openly discussed the agreement: "We have an anti-poach clause between the Lucas companies and -- and this company. We don't -- we don't recruit from one another, we don't call -- if the people want to go from one company to the other, we, you know, find a way to let that happen. But we have a -- sort of a gentleman's agreement that we've honored pretty well here for the last many years." *See* Motion Ex. A (excerpts of transcript of Morris deposition from *High-Tech*, in which videotape content was transcribed).

In the SAC, plaintiffs have merely added more of the same – that certain defendants talked on the phone or used personal email accounts to avoid leaving "a paper trail." *See* SAC ¶¶ 137-138. First, plaintiffs claim one email from a Blue Sky employee discussing a recruiting question stated "the issue 'needs to be a phone conversation' due to the 'sensitivity' of the subject." *Id.* ¶ 137. But this allegation is contradicted by the email itself, which shows two employees having a substantive dialogue *via email* about the recruiting question. *See* RJN Ex. A (emphasis added).[5] Furthermore, plaintiffs omit the critical word from the sentence excerpted in the SAC: the employee sought a phone conversation because she had a "*time* sensitive recruiting question." *See id.* (emphasis added). And it is clear on the face of the email that the reason the inquiry was "time sensitive" was because the employee in question was about to sign a contract with a competitor. *Id.* There is no way to read this document, which has nothing to do with concealing anything, as an effort to avoid leaving a "paper trail." Indeed, the document itself evidences extensive written communication regarding recruitment of competitors' employees. Similarly, plaintiffs identify a 2009 document that purportedly instructs Lucasfilm employees with "DNR questions" to call "Steve." *Id.* ¶ 138.[6] But the document, which itself creates a paper trail, does not suggest that Lucasfilm sought to "eliminate a paper trail" or was instructing employees to call Steve *instead* of writing him. To the contrary: by instructing employees to "forward" any emails mentioning "DNR" to "Steve" and company lawyers, *id.*, Lucasfilm would *expand* any paper trail.

---

[5]     On a motion to dismiss, the Court need not accept as true allegations contradicted by judicially noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). The Court also may consider the actual contents of any documents or other material referenced in the SAC, and need not accept the complaint's characterization of that material. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

[6]     Plaintiffs strain credulity by characterizing "DNR" ("Do Not Recruit") as a "code-name[]" for the alleged agreements. *See* SAC ¶ 138. An acronym is hardly a "code name." *Cf. In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *16 (N.D. Cal. Jan. 21, 2014) (defendants allegedly "used code to refer to particular entities or topics," such as referring to Samsung as "D Company"). Nor is there any allegation that defendants agreed on any "code words" to avoid detection; rather, the SAC simply pulls basic acronyms out of intracompany communications.

1    Plaintiffs also allege that one Lucasfilm employee used personal email to

2    "communicate[] about the conspiracy" and "avoid detection," *see* SAC ¶ 140, contradicting their theory

3    that email was to be avoided.[7]  Plaintiffs' allegation rests entirely on the testimony of Sharon Coker,

4    who actually offered an innocuous explanation for the "possible" use of her personal account: "It is

5    possible that I would have used a personal [email account] if, for example, I was logged into my

6    personal account and just sent a quick note to somebody."  RJN Ex. B.  The fact is, even *after* receiving

7    Pixar's and Lucasfilm's DOJ and *High-Tech* productions, nowhere do plaintiffs allege that the content

8    of any personal email is even relevant to plaintiffs' allegations here, or that Ms. Coker – or anyone else

9    for that matter – actually sent or received an email from or to a private account in an effort to conceal

10   the alleged conspiracy.  Such an empty allegation cannot possibly suffice to carry plaintiffs' burden.

11   If plaintiffs' scant allegations that certain defendants' employees allegedly used phones,

12   work email, personal email, and various in-person meetings were sufficient to show affirmatively

13   deceptive conduct, then every conspiracy would be fraudulently concealed and the statute of limitations

14   meaningless – which is clearly not the law.  As shown by the Court's April 3 Order, plaintiffs'

15   allegations stand in stark contrast to other cases in which courts have found tolling appropriate because

16   defendants took unambiguous, affirmative steps to conceal allegedly unlawful conduct.  *See AWAL*,

17   2015 WL 1522368, at *16.  For example, in one of the cases favorably cited by this Court, plaintiffs

18   alleged that defendants took "affirmative steps to *destroy evidence* of the conspirators' secret meetings."

19   *Id.* (emphasis added) (describing *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *16).

20   Indeed, all of the cases cited by this Court involved detailed allegations of agreements to conceal and to

21   deceive customers through "misleading, pretextual statements," in addition to "affirmative efforts taken

22   to destroy evidence of the conspiracy or otherwise keep the conspiracies secret."  *AWAL*, 2015 WL

23   1522368, at *16.  Plaintiffs do not and cannot allege anything of the sort here.

---

[7]    As this Court already recognized, using email is not affirmatively deceptive conduct.  To the extent plaintiffs are suggesting this employee used personal email *in lieu of* work email to "avoid detection," there is one critical fact left unalleged: by whom, exactly?  It cannot be plaintiffs, who do not and could not plausibly allege that they were privy to other employees' work email, but not personal email.

### b) Plaintiffs Fail To Identify Any Instance Where Defendants Made Specific and Affirmatively False or Misleading Statements To Conceal the Alleged Conspiracy.

Plaintiffs claim the alleged conspiracy was concealed because defendants "routinely provided pretextual, incomplete or materially false and misleading explanations for compensation decisions" that were actually tainted by the alleged conspiracy.  SAC ¶ 145.  Significantly, plaintiffs do not allege that any of these alleged statements was made for the purpose of misleading plaintiffs, or were coordinated between or among defendants.  Instead, the essence of the plaintiffs' allegations is that individual defendants did not disclose details of the alleged conspiracy.  But an alleged failure to disclose does not constitute affirmative conduct.  Plaintiffs have failed to allege what *is* required: "affirmative, public misrepresentations by the defendants that they were not engaging in anticompetitive conduct," on which "plaintiffs could have reasonably relied."  *See AWAL*, 2015 WL 1522368, at *16.  Nor are their allegations paired with any "efforts taken to destroy evidence of the conspiracy or otherwise keep the conspiracies secret."  *See id.*  No such conduct is alleged here.

The SAC adds assorted allegations regarding some (but not all) defendants' codes of conduct and policies, general statements in SEC filings, and sundry materials that refer to "competition."  These allegations share several common deficiencies, which are underscored by Rule 9(b)'s requirement that plaintiffs allege "specific facts showing the 'who, what, where, when' of the[] alleged incomplete or materially false statements."  *See AWAL*, 2015 WL 1522368, at *16 (citation omitted).

*First*, beyond bare conclusions, plaintiffs do not allege any facts showing that any statement was made for the purpose of misleading plaintiffs or "to keep the plaintiff unaware."  *Hexcel*, 681 F.3d at 1060.  Indeed, the nature of the statements demonstrates that plaintiffs could not in good faith make such an allegation.  For example, plaintiffs do not – and could not rationally – allege that defendants adopted overall codes of corporate conduct, or made statements in regulatory filings about the competitive industry in which they operated, in order "to keep the plaintiff[s] unaware" about the conduct challenged here.  *See id.*

*Second*, because plaintiffs have not alleged facts showing that defendants "used fraudulent [statements] to keep the[m] unaware," *Hexcel*, 681 F.3d at 1060, they are left with the theory that defendants should have told plaintiffs *more*.  But that theory flunks the settled principle that

"[m]erely keeping someone in the dark is not the same as affirmatively misleading him." *Thorman v. American Seafoods Co.*, 421 F.3d 1090, 1095 (9th Cir. 2005). As this Court put it, "[t]hat Defendants did not affirmatively disclose the details of their allegedly unlawful conspiracy to Plaintiffs is neither surprising nor sufficient to constitute 'affirmative steps to mislead.'" *AWAL*, 2015 WL 1522368, at *15. It cannot be the case that any statement about a company's good corporate intentions or policies becomes fraudulent if it is not accompanied by disclosures about an alleged conspiracy. That is precisely the legal principle that the Ninth Circuit rejects by requiring affirmative acts of concealment to establish fraudulent concealment, not a mere failure to disclose. *See American Seafoods Co.*, 421 F.3d at 1095.

*Third*, there is no allegation that any statements were the product of any concerted activity between or among defendants for the purpose of concealing the alleged conspiracy. *Cf. In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024-25 (N.D. Cal. 2010) (defendants allegedly "coordinated their misleading announcements" and agreed "on what to tell customers about price changes" and "upon the content of public statements regarding capacity and supply").

In addition to the forgoing legal deficiencies common to all of the alleged misrepresentations, the specific various types of alleged misrepresentations on which plaintiffs seek to rely suffer from numerous other deficiencies, as set forth below.

**Recruiting materials and talking points.** Plaintiffs allege that several defendants' recruiting materials and talking points represented that the salaries they offered were "competitive." *See, e.g.*, SAC ¶¶ 146-148. But this sort of general statement regarding competitiveness cannot constitute fraudulent concealment of unlawful conduct. To plead affirmatively deceptive conduct – the linchpin for fraudulent concealment – plaintiffs must allege *specific* and detailed pretextual statements designed to conceal the challenged conduct. *See AWAL*, 2015 WL 1522368, at *16; *In re Urethane Antitrust Litig.*, 235 F.R.D. 507, 517 (D. Kan. 2006) (a complaint must "set forth the who, what, where, and when of the defendants' allegedly false and pretextual" statements in order to establish affirmative conduct). In the cases this Court cited in its April 3 Order, for example, those defendants offered numerous specific explanations as to *why* prices they allegedly fixed were increasing. *See, e.g.*, *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1119 (N.D. Cal. 2008) ("defendants

9

providing numerous specific pretextual reasons for the inflated prices of LCDs," including "reasons such as undercapitalization leading to insufficient capacity, undersupply due to demand for larger panels, shortages due to late expansion of production lines, and rapid demand growth").[8]  In such cases, the allegedly misleading representations supported an inference that defendants had attempted to conceal the alleged conspiracy.  But here, a generic statement that salaries are "competitive" conveys nothing of the sort.  *See, e.g.*, *Block v. Toyota Motor Corp.*, 5 F. Supp. 3d 1047, 1061 (D. Minn. 2014) (Toyota's making of "general statements" that "Toyota cars were safe" did not establish a specific and affirmative attempt to conceal cause of action premised on specific unintentional acceleration defect).  Moreover, in the context of an alleged conspiracy, courts look for allegations that defendants coordinated the content or timing of these supposedly misleading statements.  *See, e.g.*, *AWAL*, 2015 WL 1522368, at *16 (plaintiff's allegation that Croner survey was misleading failed where, *inter alia*, there was no allegation defendants agreed on how to misrepresent survey to public); *cf. Cathode Ray*, 738 F. Supp. 2d at 1024-25 (finding allegations sufficient where defendants allegedly coordinated the misleading statements as part of the conspiracy).  There is no such allegation here.

   **General statements regarding compensation**.  Plaintiffs allege several defendants made statements relating to salaries and benefits that purportedly "*implied* that salaries were set in a normal competitive marketplace."  SAC ¶ 150 (emphasis added).  As before, plaintiffs' allegations as to what plaintiffs would supposedly infer from these generic statements are implausible, and the "implication" they allege does not come close to meeting Rule 9(b)'s pleading standard for fraud.  For example, plaintiffs identify Pixar talking points that allegedly show "one of the main reasons" the company limited salary increases in 2007 was to fund a child care center.  *Id.* ¶ 149.  The statement (which is *not*

---

[8] *See also Urethane*, 235 F.R.D. at 517 (plaintiffs' allegations as to misleading statements sufficient where "[t]hey allege that specific defendants attributed price increases to specific factors," "when defendants made those representations," and submitted "the letters from defendants and one press release from Bayer in which defendants gave the allegedly false and pretextual reasons for the price increase announcements"); *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *22 (D.N.J. Oct. 20, 2011) (finding plaintiffs failed to plead affirmative conduct, even where they alleged defendants justified price increases "by references to tight supply, thinning margins, and increased energy and freight costs," because plaintiffs "fail[ed] to explain the particular circumstances surrounding Defendants' price increases and pretextual justifications for those increases").

alleged to be false) conveys exactly what it says: that in 2007 Pixar determined to allocate a portion of its compensation budget to benefits, including a day care center for employees' children.  The statement implies nothing about whether or how salaries were influenced by an external "competitive marketplace," as plaintiffs assert.  *Id.* ¶ 150.

Similarly, an ILM recruiter purportedly told one candidate that her offer was "based upon a comparable rate to … ILM individuals," and another that ILM "consider[s] employee equity and the skillset and experience" of other employees in that workgroup when determining salaries.  *Id.*; *see also id.* ¶ 148 (alleging Pixar based salary increases on evaluation of employees' personal performance and skill set).  Again, plaintiffs do not allege that any of these statements is false,[9] but merely that they were unaccompanied by details of the alleged agreements or a description of the Croner survey.  *See, e.g.*, SAC ¶ 150 (recruiter's statement about offer failed to "disclos[e] that it was based in large part on comparisons exchanged with competing studios").  Similarly, plaintiffs claim Pixar told job applicant Philip Metschan they were extending their "best offer" to recognize his talent when "the real reason Pixar opened with its best offer was because it had agreed with its coconspirators to avoid bidding wars."  *Id.* ¶ 165.  But, plaintiffs are trying to make Pixar's representation appear false by mischaracterizing their own conspiratorial allegations.  The only allegations regarding an agreement between Pixar and Lucasfilm not to make counteroffers concerns employees transferring between those two defendants.  *See id.* ¶ 45.  But, there is no allegation that Mr. Metschan was transferring between Pixar and Lucasfilm at that time.

**Codes of conduct**.  Plaintiffs allege that Pixar's and Disney's codes of conduct are misleading.  SAC ¶¶ 151-157.  The Pixar code advised employees to abide by the law, protect proprietary information, and avoid unfair dealings, *see id.* ¶¶ 152-154, while the Disney code described the company's values, noted that decisions related to employee hiring, evaluations, promotion, discipline, and termination would be made "fairly," and advised employees to "play by the rules" and

---

[9]     The theory of SAC ¶ 150 is that defendants misled employees into thinking that internal "company-specific factors" were important to compensation.  But, in paragraphs 128-132 of the SAC plaintiffs explicitly, and inconsistently, allege that "Defendants valued internal equity" and repeatedly allege the importance of maintaining internal equity among company employees.

comply with applicable laws.  *Id.*  ¶¶ 155-158.  These allegations are flawed for the reasons described above: both on their face and by implication, these codes do not say anything – and much less could they mislead anyone – about the process by which plaintiffs' salaries were determined, and accordingly would not mislead plaintiffs about the alleged conspiracy.  Indeed, courts have recognized that such codes are "aspirational statement[s] of intention" and do not imply a legally actionable warranty or guarantee.  *See Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v. Hewlett-Packard Co.*, 52 F. Supp. 3d 961, 970 (N.D. Cal. 2014) (collecting cases).  Nor do plaintiffs allege that these codes were designed to conceal the alleged conspiracy or that they were amended after the conspiracy started in order to disguise assertedly unlawful conduct.

**SEC filings**.  Plaintiffs also allege that some (but not all) defendants made SEC filings with misleading language.  These allegations are baseless.  Plaintiffs allege that Pixar stated in one filing that the "primary competitive factors in the market *for animated feature films*" include "creative content and talent" and that Pixar believed it competed favorably on those factors.  SAC ¶ 161 (emphasis added).  But, as the italicized language confirms, this statement speaks to competition in the market for animated features, *not* employees.[10]  Plaintiffs also allege that Pixar stated in the same filing that competition for some employees would "intensify" as more studios entered the animation business, *id.* ¶ 162, and that DreamWorks stated in SEC filings that it competes with other studios to hire talent.  *See id.* ¶ 163.[11]  But plaintiffs do not and cannot allege that anything about these statements was false either

---

[10]     This allegation reflects plaintiffs' practice of selectively quoting snippets of documents out of context.  The entire text of the relevant sentence confirms Pixar was discussing competition in the animated films market:  "We believe that the primary competitive factors in the market for animated feature films include creative content and talent, product quality, technology, access to distribution channels and marketing resources.  Due in part to our creative, financial and technical resources and to the Co-Production Agreement with Disney, pursuant to which Disney markets the feature films and provides access to significant distribution channels, we believe that we presently compete favorably with respect to each of these factors."  RJN Ex. C at 16.

[11]     The language cited in paragraph 163 of the SAC comes from SEC filings by DreamWorks intended for investors and prospective investors for their evaluation in connection with investment decisions.  *See* RJN Ex. D at 22.  Further, the statement that DreamWorks Animation "attract[ed] and retain[ed] our animators with competitive compensation packages and an artist friendly environment" comes from SEC filings that DreamWorks and a predecessor entity made in October 2004 and March 2005 – over a decade ago – in connection with DreamWorks' initial public offering on October 27, 2004.  *See id.* Ex. E at 65.

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in what was said or what was implied, except the wholly inadequate claim that failing to disclose the alleged conspiracy constituted fraudulent concealment.

**Representations regarding recruiting processes**.  Finally, plaintiffs' claim that several defendants misrepresented their recruitment process is unavailing.  *See* SAC ¶¶ 166-170.  Certain defendants' representations that they were on the "lookout for talent" or had "stepped up recruiting," for example, are not alleged to be false – indeed, as discussed above, there are no allegations defendants were *not* on the "lookout" for many types of talent not covered by the alleged conspiracy – and would not plausibly mislead plaintiffs.  *See id.* ¶¶ 166, 169.[12]  Similarly, plaintiffs allege that some defendants regarded their corporate culture as a positive factor in retaining employees, which is hardly fraudulent, and claim defendants were obligated to disclose that the alleged conspiracy was an additional factor in retaining employees.  *See id.* ¶¶ 167, 170; *see, e.g.*, *id.* ¶ 168.  Once again, failing to disclose an alleged conspiracy is not an affirmative act of concealment.  *See AWAL*, 2015 WL 1522368, at *16.  A long line of authority, much of which is cited in this Court's order dismissing the CAC, *see id.* at *15-16, underscores the inadequacy of plaintiffs' pleading.

In short, the statements and conduct alleged in the SAC fall far short of showing the requisite affirmative acts of concealment.  There cannot be fraudulent concealment without fraud.  But, even beyond that, plaintiffs also fail to allege that they were misled by anything defendants are alleged to have done.  Not *once* are named plaintiffs Nitsch, Wentworth, or Cano alleged to have seen, much less relied on, any of these alleged statements, which is another fatal pleading defect.  *See, e.g.*, *In re*

---

[12]     Paragraph 169 quotes snippets from a February 2, 2006 article in the San Francisco Business Times about Disney's acquisition of Pixar and the increased demand for animators and other talent in light of the surge in animated movies and video games, in which Kathy Mandato, DreamWorks' then-head of human resources, stated, "With all the animated movies coming out, it's stiff competition" to hire animators.  RJN Ex. F.  Plaintiffs also allege that in the article Mandato said that DreamWorks had "stepped up recruiting," although that statement does not appear in quotes in the article.  The full statement in the article reads, "Not surprisingly, industry salaries have started to head skyward.  Pay for principal animators, for example, increased 22 percent between 2004 and 2005 to roughly $175,000, according to consultant Wayne Dunlap's annual salary survey. DreamWorks Animation generally avoids bidding battles, Mandato said.  But to keep the newbies coming, the company has stepped up recruiting, student outreach and internal training."  Plaintiffs' allegation that this article somehow constitutes fraudulent concealment is baseless.  The inadequate allegations in paragraphs 163 and 169 are the only new allegations of fraudulent concealment in the SAC relating to DreamWorks.

DEFS.' MOTION TO DISMISS THE SAC
Master Docket No. 14-cv-4062-LHK

*Aspartame Antitrust Litig.*, 2007 WL 5215231, at * 5 (E.D. Pa. Jan. 18, 2007) (allegation that defendants offered "false and pretextual reasons" for their conduct did not establish affirmative conduct where the complaint did not state "who made these statements, to whom they were made, when they were made, or what was said"); *cf. In re Processed Egg Prods. Antitrust Litig.*, 2011 WL 5980001, at *12 n.17 (E.D. Pa. Nov. 30, 2011) (concluding "[p]laintiffs can hardly be said to have met the substantiation and precision needed to survive Rule 9(b) scrutiny" where they failed to allege misrepresentations were directed to plaintiffs). Many of the statements were not even made by defendants for whom the named plaintiffs were working.[13] A plaintiff cannot meet fraudulent concealment's reliance requirement without first alleging that he or she received the communication in question. *See AWAL*, 2015 WL 1522368, at *16 (rejecting allegations related to Croner survey where, "[a]t bottom, Plaintiffs simply offer no factual allegations with regards to the … Plaintiffs' reliance on such information"); *Magnesium Oxide*, 2011 WL 5008090, at *23 (rejecting fraudulent concealment where plaintiffs failed to allege they relied on the alleged acts of concealment); *see also W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 n.5 (2d Cir. 2008) ("*named* plaintiffs in a class action must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent" (internal quotation marks omitted)).

   c) **Pixar's and Lucasfilm's Conduct in Defense of the *High-Tech* Litigation Does Not Constitute Affirmative Acts of Concealment.**

  Finally, plaintiffs allege that Pixar's and Lucasfilm's defense of the *High-Tech* litigation constituted fraudulent concealment. To start, since all of these activities occurred in late 2011 or thereafter, if the Court determines the first two categories of supposedly affirmative acts identified by plaintiffs (secrecy and allegedly misleading statements) did not toll the statute of limitations, any conduct in *High-Tech* would be irrelevant because the statute of limitations would have expired anyhow.

---

[13] None of the three named plaintiffs is alleged to have worked for Pixar and Lucasfilm, but the vast majority of the allegedly misleading statements plaintiffs cite are tied directly to those two entities. *See, e.g.*, SAC ¶¶ 138-140, 142-143, 146-154, 160-162, 165, 166-168, 170. Two of the named plaintiffs worked for ImageMovers Digital (now Two Pic MC LLC) and two also worked for Sony Pictures, but plaintiffs do not allege any misleading statements by those entities. *See also infra* pp. 22-23.

14

*See AWAL*, 2015 WL 1522368, at *12.  Furthermore, and as with the representations addressed in the prior section, plaintiffs do not even allege that they reviewed any of the allegedly wrongful pleadings or discovery materials, much less that they relied upon them.

**Answers**.  Plaintiffs begin by alleging that Pixar and Lucasfilm filed answers in *High-Tech* that denied the companies sought to eliminate bidding wars between them, and denied that the bilateral agreements between them were unlimited in scope.  *See* SAC ¶ 172-73.  These allegations fall flat.  In those answers, Pixar and Lucasfilm explicitly admitted the existence of a bilateral agreement between them.  *See, e.g.*, Pixar Answer (*High-Tech* Dkt. No. 129) at ¶¶ 59-61 ("Pixar admits that it had an understanding with Lucasfilm that the companies' recruiters would not coldcall employees of the other company[,] . . . [that they would] notify each other after making an offer to an employee of the other company[,] . . . [and] that if Pixar extended an offer of employment to a current employee of Lucasfilm, Pixar would not counter-offer if that candidate received a different offer from Lucasfilm . . . .").  Thus, Pixar and Lucasfilm admitted the existence and key elements of the agreement between them.  That is the opposite of concealment.  Any subsequent conduct in *High-Tech*, such as sealing certain documents, could not unring that bell.  Denying that the Pixar-Lucasfilm agreement was as broad as the *High-Tech* plaintiffs alleged hardly concealed the Pixar-Lucasfilm agreement.

**Depositions and Declarations**.  Plaintiffs' allegations regarding certain Pixar and Lucasfilm employees' testimony during *High-Tech* depositions are irrelevant because they fail to allege that the testimony they cited was even available to them.  (In fact, it was not.)  Accordingly, the testimony could not possibly have concealed anything from them.  Plaintiffs also fail to allege that these statements were connected to any conspiracy, or were relied upon by plaintiffs.  For example, Ed Catmull purportedly testified that he believed the *High-Tech* litigation was non-meritorious.  *See* SAC ¶ 176.  Plaintiffs cannot seriously allege they were misled about the claims asserted here by the opinion of one witness, which was never filed on the public docket, about the viability of the claims in *High-Tech*.  *See Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (rejecting fraudulent concealment where plaintiff was sufficiently sophisticated to "forbid any inference that he would be thrown off the trail by a simple denial of wrongdoing").  Plaintiffs' allegation referring to a declaration filed in *High-Tech* indicates nothing more than failing to disclose the alleged conspiracy.

*See, e.g.*, SAC ¶ 177 (alleging a Lucasfilm employee did not mention communications among defendants in describing process for setting salaries).

**Sealing requests**.  Plaintiffs' theory of concealment based on sealing requests in *High-Tech*, SAC ¶¶ 179-182, hinges entirely on the conclusory allegation that documents designated as confidential or highly confidential in *High-Tech* were not, in fact, deserving of such protection, and that those designations were intended to conceal the conspiracy alleged here.  But plaintiffs do not identify any such mis-designated documents with specificity; nor do they allege any other specific *facts* to show Pixar and Lucasfilm, the only defendants in this case that were also in *High-Tech*, did anything but make good-faith efforts to comply with the *High-Tech* protective order.[14]  Far from being a sham, these designations warranted this Court's statement that "I have really appreciated – I felt that, of all the defendants, Lucasfilm and Pixar have been the best at narrowly tailoring their sealing requests."  Dkt. No. 100-4 at 12.

**Consent Decrees**.  Plaintiffs' theory that Pixar and Lucasfilm concealed the alleged conspiracy by entering into consent decrees with the DOJ that "failed to concede any wrongdoing," SAC ¶ 182, is bizarre for the obvious reason that, in our adversary system of justice, parties are hardly required, on pain of being charged with fraudulently concealing alleged wrongdoing, to make concessions broader than those agreed to by the DOJ.  *See Reynolds v. Roberts*, 202 F.3d 1303, 1315 (11th Cir. 2000) (recognizing that "common practice is that defendants who consent to the entry of [a form of judgment] do so without admitting liability").[15]  Were it otherwise, "defendants would have little incentive to settle cases."  *Id.*

---

[14]     Plaintiffs' allegations are also contradicted by the public record.  Plaintiffs allege that Pixar's "public filings with the Court" sought to maintain under seal deposition testimony of Ed Catmull "describing inter-company communications." SAC ¶ 181.  Yet when portions of the deposition transcript were filed by plaintiffs in *High-Tech*, Pixar did not seek to maintain any such testimony under seal.  *See High-Tech* Dkt. No. 431-9 (exhibit reflecting Pixar's proposed redactions to Catmull deposition transcript).  Similarly, plaintiffs falsely allege that George Lucas's testimony that "[i]t was generally expressed not to raid other companies" was "sealed," *see* SAC ¶ 182, when the record confirms that Lucasfilm never sought to seal that testimony.  *See High-Tech* Dkt. No. 426-27 (exhibit reflecting Lucasfilm's proposed redactions to Lucas deposition transcript).

[15]     *See also* BLACK'S LAW DICTIONARY 410-11 (6th ed. 1990) (defining "consent decree" as a judgment "whereby the defendant agrees to stop alleged illegal activity without admitting guilt or wrongdoing").

16

2.  **Plaintiffs Have Failed To Allege That They Diligently Investigated Their Claims After They Were on Notice of Them.**

In addition to failing to allege affirmative acts of concealment or their reliance on such acts, plaintiffs also offer no explanation whatsoever, as they must, as to how they diligently investigated their claims after learning of them.  *See Hexcel*, 681 F.3d at 1060.  Reasonable "diligence is a prerequisite to the applicability of equitable tolling" for fraudulent concealment.  *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 157 (2d Cir. 2012); *Egg Prods.*, 2011 WL 5980001, at \*13 ("[A] plaintiff who fails to allege any due diligence is virtually foreclosed from invoking the fraudulent concealment doctrine."); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) ("Under long-established principles, [a] lack of diligence precludes equity's operation").

Plaintiffs allege they "had no reason to know" about the conspiracy until 2013, when certain (unidentified) documents were unsealed in the *High-Tech* litigation, but concede that public details emerged about the DOJ's investigation of Pixar on September 17, 2010.  SAC ¶¶ 184-185.[16] Regardless of *when* plaintiffs had notice of their claims, they offer no allegations whatsoever as to what they did to investigate them.  While plaintiffs make the bare allegation that they "acted diligently to investigate and prosecute their claims" after they were on notice, *id.* ¶ 189, they fail to allege any details at all about this supposed investigation.  There are no allegations, for example, that plaintiffs were researching facts, interviewing employees, or otherwise "diligently" investigating their potential claims. This lack of specifics is fatal to their attempt to plead diligence.  *See, e.g.*, *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) (dismissing complaint when plaintiff failed to make an

---

[16]     In fact, they were on notice by *early* 2010, if not sooner.  Starting in mid-2009, many widely read publications reported on the DOJ's investigation, which began in 2009, into employment practices at high tech companies – specifically including firms in Northern California, where Pixar and Lucasfilm are located and where DreamWorks has a production facility.  *See AWAL*, 2015 WL 1522368, at \*1 n.2 (taking judicial notice of *AWAL* Dkt. Nos. 76-8 to 76-12 (various articles reporting on DOJ investigation)).  These articles put plaintiffs on inquiry notice of their claims.  *See DeBenedictis v. Merrill Lynch & Co., Inc.*, 492 F.3d 209, 217-18 (3d Cir. 2007) (affirming dismissal of action as time-barred because a *Wall Street Journal* article and other publications placed plaintiff on inquiry notice); *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 403 (3d Cir. 2006) (same); *Lane v. Page*, 649 F. Supp. 2d 1256, 1302-03 (D.N.M. 2009) (*Wall Street Journal* article triggered inquiry notice); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1280-81 (M.D. Fla. 2009) (claim dismissed as untimely because *Wall Street Journal* article placed plaintiffs on inquiry notice).

17

"allegation of any specific inquiries … let alone detail when such inquiries were made, to whom, regarding what, and with what response"); *Vernon v. City of Dallas*, 2009 WL 2486033, at *5-6 (N.D. Tex. Aug. 13, 2009) (dismissing claim as untimely where there was no allegation of "when she became aware of her cause of action and the diligent steps she took toward discovering her claims").

One event that *did* transpire during the intervening years was the *High-Tech* litigation, in which this Court rejected a $324.5 million settlement as too low. *See In re High-Tech Employee Antitrust Litig.*, 2014 WL 3917126, at *3-4, *17 (N.D. Cal. Aug. 8, 2014). Counsel, not the plaintiffs, then sprang into action. Within a week of this Court's order, an advertisement by the Cohen Milstein firm (counsel to Mr. Nitsch, who filed the first complaint) appeared in an online visual effects publication seeking a plaintiff "interested in participating in a lawsuit against DreamWorks and other studios."[17] This shows the speed with which counsel could have moved. As for the named plaintiffs, there is no allegation that any of them ever did anything to investigate his or her claim.

### C. Plaintiffs' Untimely Claim Based on Alleged Wage-Fixing Agreements Is Also Deficient for Failure To State a *Per Se* Antitrust Claim.

Plaintiffs again have chosen to assert only a *per se* wage-fixing claim. *See* SAC ¶¶ 42-85, 208, 213. While a determination that plaintiffs have failed to plead fraudulent concealment would require this Court to go no further in analyzing this claim, *see AWAL*, 2015 WL 1522368, at *17, plaintiffs' allegations in any event fail because they do not allege evidentiary facts indicating an actual wage-fixing *agreement*. *United States v. United States Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978); *see also In re Petroleum Products Antitrust Litig.*, 906 F.2d 432, 447 n.13 (9th Cir. 1990).[18]

---

[17]     *See AWAL*, 2015 WL 1522368, at *1 n.2 (taking judicial notice of *AWAL* Dkt. No. 76-13 (Copy of "Anti-poaching Inquiry," posted August 15, 2014, and available at http://vfxsoldier.wordpress.com /2014/08/15/anti-poaching-inquiry)).

[18]     In the event the Court does not dismiss the SAC in its entirety, the Court should nonetheless dismiss the claim for wage-fixing set forth in paragraphs 86-115 of the SAC. Although plaintiffs attempt to join their wage-fixing claim with their claim that defendants entered into no-poaching agreements, the claim regarding wage-fixing is entirely deficient and at odds with the no-poaching claim. Indeed, there would be no reason to worry that poaching would upset the pay structure if there also were an agreement among defendants to fix employees' compensation. Plaintiffs should not be permitted to assert a single Sherman Act claim based on a conflation of the two distinct alleged conspiracies without having met the *Twombly* standard for each. *See, e.g.*, *Steshenko v. Gayrard*, 2014 WL 4904424, at *12 (N.D. Cal. Sept. 29, 2014) (dismissing plaintiff's single civil conspiracy claim that was "[i]n effect, . . . three separate conspiracies," after testing whether plaintiff had alleged sufficient

(continued…)

The mere exchange of information is not a *per se* violation. *Gypsum Co.*, 438 U.S. at 441 n.16; *Todd v. Exxon Corp.*, 275 F.3d 191, 198-99 (2d Cir. 2001). Nevertheless, as in the CAC, plaintiffs expressly limit the SAC to a *per se* claim and do not try to satisfy the requirements for pleading a rule of reason claim. While limiting their claim to a *per se* theory is plaintiffs' prerogative, it dooms their claim. *See Texaco Inc. v. Dagher*, 547 U.S. 1, 7 n.2 (2006) (refusing to analyze claim under rule of reason because plaintiffs put forth solely a *per se* claim); *AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 531 (3d Cir. 2006) ("JMC could have argued that the restraint at issue ought to be analyzed under the traditional rule of reason rather than attempt to squeeze the restraint into the *per se* realm. JMC, however, did not. Accordingly, JMC failed to state a claim.").[19]

To assert such a claim plaintiffs must allege facts either sufficient to show an express agreement or which support the reasonable existence of such an agreement. Yet they do neither. The SAC's failure to allege how the alleged wage-fixing conspiracy worked, which defendants allegedly participated in it, and what wages were fixed renders implausible plaintiffs' effort to convert allegations regarding a routine and unremarkable wage survey and isolated exchanges of information regarding individual companies' practices or intentions into a *per se* illegal agreement to fix wages. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

To start, the SAC does not answer the most "basic question" of all: what these alleged agreements specifically entailed. *See Kendall*, 518 F.3d at 1048. Notably, and despite their access to discovery and being afforded an opportunity to amend their complaint a second time, plaintiffs *still* do

---

specific facts as to each individual conspiracy). Thus, if the Court does not grant the motion to dismiss the SAC in its entirety, the Court should nonetheless dismiss plaintiffs' *per se* wage-fixing claim because it is deficient as a matter of law.

[19] In *High-Tech,* the Court concluded that it was unnecessary to determine at the pleading stage whether the claims in that case involved a *per se* as opposed to a rule of reason offense. *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1115 n.9 (N.D. Cal. 2012). However, the legal situation there was decisively different than the one here. Proof that defendants in *High-Tech* agreed not to solicit each other's employees arguably could have been sufficient to establish an antitrust violation under either a *per se* or a rule of reason theory. Here, by contrast, proof that defendants exchanged wage or benefit information at most could support a rule of reason claim, which plaintiffs do not allege. *Todd*, 275 F.3d at 198-99. This Court already granted plaintiffs the opportunity to re-plead, and they have again chosen not to state a rule of reason claim, which would require allegations of the relevant market and market power in that market, among the other required elements plaintiffs have chosen not to allege.

not allege a single term of any wage-fixing *agreement*.[20]  Nor do plaintiffs allege the answer to other

"basic questions," such as "who, did what, to whom (or with whom) where and when."  *See id.*  For

example, they fail to allege the communications through which any such agreement was reached.

Alleging a mere "opportunity" to conspire – such as in conferences and trade association meetings –

does not support an inference of an unlawful conspiracy.  *See In re Citric Acid Litig.*, 191 F.3d 1090,

1103 (9th Cir. 1999).  Every industry has conferences, and attendance at such conferences is perfectly

consistent with competitive behavior.  *See, e.g.*, *id.* at 1097 (noting that semi-annual trade association

meetings, though attended in part by conspirators, were legitimate); *see also In re Graphics Processing

Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) ("[P]laintiffs have pleaded no facts

indicating that defendants' attendance at trade shows and conferences was part of a conspiracy.").

Plaintiffs allege that defendants participated in annual industry salary surveys conducted

by the Croner Company and requested "'custom cuts' of Croner Survey data," SAC ¶¶ 87-90, 93, but

there is nothing unlawful about participation in a wage survey.  Participation in a wage survey is a

commonplace mechanism to increase transparency about the market and enable employers to compete in

labor markets.  It does not, without more, arouse suspicion or trigger the antitrust laws.  *See Gypsum

Co.*, 438 U.S. at 441 n.16.

Plaintiffs claim that defendants used the "opportunity" presented by the annual Croner

survey meetings to "agree[] upon and set wage and salary ranges" during "meals, drinks and other social

gatherings" that they held outside of the official survey meetings.  SAC ¶ 89; *see also id.* ¶¶ 90-91.  But

mere discussions among competitors "do not permit an inference of an agreement to fix prices unless

those communications rise to the level of an agreement, tacit or otherwise."  *In re Baby Food Antitrust

Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) (citation and internal quotation marks omitted).  And that is

---

[20]     In light of plaintiffs' failure to plead the basic terms of any agreement, their failure to allege any plausible injury from the agreements is unsurprising.  For example, plaintiffs have no basis to allege, and they do not allege, how even one defendant paid wages that were below competitive levels for even one job title, much less all job titles.  This failure to plead an injury is also fatal to their wage-fixing claim.  *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 452 (6th Cir. 2007) ("an antitrust claimant must put forth factual 'allegations plausibly suggesting (not merely consistent with)' antitrust injury") (citing *Twombly*, 550 U.S. at 557).

where plaintiffs fall short:  There are no facts indicating that anything untoward actually occurred during these various "meals, drinks and other social gatherings" that would turn innocuous occasions into "collusive" ones.

The same is true of allegations that defendants intermittently communicated with one another via telephone and email regarding certain compensation information.  SAC ¶¶ 94-111.  Once again, the mere exchange of information is not a *per se* violation.  *Gypsum Co.*, 438 U.S. at 441 n.16.  Plaintiffs make no allegations of coordinated, or even similar, wages or compensation based on the alleged information exchanges.  Unlike cases in which opportunities to conspire were allegedly followed by lockstep or simultaneous compensation decisions as a result of the alleged conspiracy, the SAC is completely lacking in any allegations to support a reasonable inference that defendants reached any agreement.  *Cf. In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1094-95 (N.D. Cal. 2007) (finding allegations that the defendants attended many of the same meetings and made unprecedented changes in lockstep pricing behavior after the alleged conspiracy had formed sufficient to establish a plausible conspiracy).[21]  Indeed, some of plaintiffs' allegations actually suggest that defendants made compensation decisions at vastly different times.  *See, e.g.*, SAC ¶ 98 (alleging that, in 2007, DreamWorks sent an email regarding plans to increase its 401K match; whereas Pixar allegedly had no plans to do so "before 2009").

Because plaintiffs have failed to allege a *per se* wage-fixing claim, the claim should be dismissed (for reasons wholly apart from the statute of limitations bar).[22]

---

[21]      Similarly, in *Todd v. Exxon*, which plaintiffs relied on previously, the alleged exchanges of information were vastly more extensive and specific than anything plaintiffs can allege here.  275 F.3d at 195-97, 211-13.  Moreover, they were accompanied "by assurances that the participants would primarily use the exchanged data in setting their . . . salaries." *Id.* at 213.  It was this alleged "assurance" that potentially converted the conduct from mere information exchanges to a possible agreement to fix compensation.  But even so, the alleged information exchange only "arouse[d] suspicion of anticompetitive activity under the rule of reason," not a *per se* claim.  *Id.*

[22]      Plaintiffs also assert a claim under California's Cartwright Act, Cal. Bus. & Prof. Code § 16720.  Interpretations of the Sherman Act are instructive when construing the Cartwright Act, *see Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1195 (2013), and plaintiffs' federal and state antitrust claims therefore rise and fall together.  Because plaintiffs have not pled a valid Sherman Act claim, their Cartwright Act claim fails as well.

21

**D.  Plaintiffs Fail To State Timely or Plausible Claims Against Blue Sky or Sony Pictures.**

The SAC demonstrates that plaintiffs have been unsuccessful in their efforts to manufacture claims against either Blue Sky or Sony Pictures – claims that, for good reason, both the DOJ and class counsel in *High-Tech* chose not to pursue.  The SAC fails to allege a single act of fraudulent concealment by either company, and in any event the substantive allegations it asserts do not satisfy *Twombly*'s and *Iqbal*'s pleading standards to survive a Rule 12(b)(6) motion.  Accordingly, plaintiffs' claims against Blue Sky and Sony Pictures should be dismissed.

**1.  Plaintiffs Fail To Allege That Blue Sky or Sony Pictures Engaged in Fraudulent Concealment.**

Blue Sky and Sony Pictures join fully in Section IV.B above regarding the infirmities in plaintiffs' allegations of fraudulent concealment.  However, even beyond the fatal insufficiency of plaintiffs' allegations of concealment generally, there is no conceivable argument that plaintiffs have alleged fraudulent concealment as to Blue Sky and Sony Pictures.  That is because plaintiffs' "Statute of Limitations" section – despite running 67 paragraphs – contains not a single allegation against Sony Pictures, and only a lone, deceptive allegation against Blue Sky based on an email that has nothing to do with concealment.[23]  Plaintiffs' failure to allege with specificity that these defendants engaged in fraudulent concealment is a second separate basis for dismissal of the claims against them.[24]

As the Ninth Circuit made clear in *Barker v. American Mobil Power Corp.*, 64 F.3d 1397 (9th Cir. 1995) (per curiam), "[p]laintiffs may not generally use the fraudulent concealment by one defendant as a means to toll the statute of limitations against other defendants."  64 F.3d at 1402 (citation and internal quotation marks omitted).  Thus, fraudulent concealment tolls the statute of

---

[23]    As discussed *supra*, at 6, plaintiffs' claim that a Blue Sky employee sent an email stating "the issue 'needs to be a phone conversation' due to the 'sensitivity' of the subject," SAC ¶ 137, is misleading.  The email plainly shows a phone conversation was sought because the matter was "time sensitive" because the employee in question was about to sign a contract with a competitor; and that the author's use of "sensitivity" came later in the email chain, after the parties to the communication decided to, and did, discuss the matter *in writing*.

[24]    The same is true of Two Pic MC LLC, which is not mentioned in any of the SAC's allegations regarding fraudulent concealment and should be dismissed for the same reasons discussed in this section.

22

limitations "only when the defendant himself has taken steps to hide his" misconduct. *Id*.;[25] *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 232 (S.D.N.Y. 1989) ("[A] plaintiff may not use fraudulent concealment by one defendant as a basis for tolling the statute of limitations against another defendant who did not engage in affirmative fraudulent acts to conceal."); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together . . . .").

Furthermore, as this Court explained in its April 3 Order, fraudulent concealment claims require allegations of "affirmative attempts to mislead 'above and beyond' the existence of the [underlying] conspiracy." *AWAL*, 2015 WL 1522368, at *15 (citing *Conmar*, 858 F.2d at 505). Accordingly, the fact that plaintiffs purport to plead an underlying antitrust conspiracy not to solicit each other's employees or to fix wages does not permit them to avoid Rule 9(b)'s requirement with respect to pleading actual acts by Blue Sky and Sony Pictures that constitute fraudulent concealment. That is especially true here, where the SAC does not anywhere allege that the scope of the conspiracy included an agreement to conceal it.

Despite receiving a host of documents from the DOJ's investigation and the *High-Tech* litigation, plaintiffs have no factual allegations that Sony Pictures or Blue Sky engaged in any act of fraudulent concealment. Accordingly, plaintiffs' claims against them are time barred.[26]

---

[25]    While *Barker* construed ERISA tolling provisions, the court invoked and relied upon decisions involving "fraudulent concealment." 64 F.3d at 1402 ("[T]he 'fraud or concealment' exception in the [ERISA] statute incorporates the common law doctrine of 'fraudulent concealment.'").

[26]    To the extent there are cases in this District finding plaintiffs' conspiracy and fraudulent concealment allegations sufficient to charge all defendants with concealment, those plaintiffs, unlike plaintiffs here, set forth detailed allegations demonstrating defendants' agreement on methods of avoiding detection, such as coordinated public misstatements regarding pricing. *See, e.g.*, *In re CRT*, 738 F. Supp. 2d at 1024-25 (allegations that defendants "gave pretextual reasons for price increases, and coordinated their misleading announcements," in addition to agreeing on "what to tell customers about price changes . . . the content of public statements regarding capacity and supply . . . and . . . eliminat[ion of] references in expense reports that might reveal the existence of their unlawful meetings" (internal quotation marks omitted)); *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 788 (N.D. Cal. 2007) ("Plaintiffs have alleged, with specificity, numerous affirmative acts of concealment in furtherance of the conspiracy, both by Chemtura and by the individual Defendants, including secret meetings to set prices, agreement not to publicly discuss the nature of the scheme, destruction of documents that might evidence their actions, and pretextual justifications for the inflated prices of rubber chemicals. . . . [T]he individual Defendants . . . [also] offer[ed] . . . false and pretextual reasons for the price-fixing meetings that . . . [they] allegedly attended.").

2.    **Plaintiffs' Allegations Against Blue Sky and Sony Pictures Regarding the Alleged Non-Solicitation Conspiracy Do Not Satisfy *Twombly*.**

Plaintiffs not only fail to allege fraudulent concealment against Blue Sky and Sony Pictures, they fail to state viable claims against them at all. Defendants' prior motion to dismiss explained why plaintiffs' CAC failed to state claims against either Blue Sky or Sony Pictures. Despite having been advised of these deficiencies and having an opportunity to address them, the SAC does nothing to remedy those fatal defects. The claims against Blue Sky and Sony Pictures, therefore, should be dismissed.

a)    **Blue Sky**

Plaintiffs still fail to provide even the most basic facts of Blue Sky's supposed participation in a non-solicitation conspiracy, and the few examples of purportedly conspiratorial conduct they identify do not evince anything other than unilateral conduct that is consistent with non-conspiratorial behavior. Indeed, the very emails plaintiffs now cite in their SAC demonstrate Blue Sky's repeated efforts to recruit employees from its competitors, while saying absolutely nothing of any supposed agreement not to solicit. The allegations plaintiffs now make to remedy their failure to demonstrate that "Blue Sky Studios [j]oin[ed] the [c]onspiracy," SAC ¶¶ 69-74, are at best premised on extremely creative parsing, and selective quotation, of the documents they cite. At worst, they rely upon outright mischaracterization.

Plaintiffs begin by stating that "Blue Sky similarly entered the conspiracy, as George Lucas himself testified at his deposition in the *High-Tech* litigation." SAC ¶ 69. But precisely the opposite is true: In the *only* part of George Lucas's *High-Tech* deposition that addressed Blue Sky, *Lucas testified Blue Sky was not part of any conspiracy*:

Q.    Did -- are you familiar with a company called Blue Sky?

A.    Yes.

Q.    Did Lucasfilm have an understanding or agreement with -- with Blue Sky  -- with Blue Sky Fox with respect to recruiting?

A.    No.

Pitt Decl. Ex. 1.[27]  This allegation – that "no" means "yes" – sets the tone for the allegations that follow

in the SAC, none of which comes close to alleging Blue Sky's participation in a conspiracy.

Also new to the SAC is the allegation that in 2008, Blue Sky's then HR Director, Linda

Zazza, "probed to find out if" employees who had recently departed the company had "been approached

by Pixar, etc."  SAC ¶ 72.  Plaintiffs' assertion that Zazza posed that question "to see if a violation of the

no-poach agreement caused the employees to leave Blue Sky" lacks any basis in the document they

quote, *see* Pitt Decl. Ex. 2, and constitutes improper bootstrapping:  Having failed properly to allege

Blue Sky was part of any such agreement, plaintiffs cannot meet their burden by asserting that a routine

effort to ascertain why Blue Sky lost employees to its competitors – something any HR director

obviously would inquire about – constitutes a smoking gun.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 588 (1986) ("[C]onduct as consistent with permissible competition as with illegal

conspiracy does not, standing alone, support an inference of antitrust conspiracy."); *Orchard Supply*

*Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1355 (N.D. Cal. 2013) ("A conspiracy

is not inferable from an 'obviously reasonable [response]' to a common external stimulus or business

problem.'" (quoting 6 Areeda & Hovenkamp, Antitrust Law, ¶ 1425 at 182 (3d ed. 2010)).  Most telling

is what Ms. Zazza's email does not say:  That there is any such agreement between Blue Sky and other

studios not to solicit each other's employees, and that other studios' efforts to contact Blue Sky

employees would violate it.  If, as plaintiffs posit, there were such an agreement, an email discussing the

---

[27]     Exhibits 1-4 to the Pitt Declaration all are referenced and quoted in the SAC; accordingly, the Court may consider them on a motion to dismiss.  *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *McMunigal v. Bloch*, 2010 WL 5399219, at *7 (N.D. Cal. Dec. 23, 2010); *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1111 n.2 (N.D. Cal. 2013).  Moreover, it is appropriate for the Court to consider a deposition transcript that is cited in a complaint – especially where, as here, plaintiffs have patently misrepresented to the Court the contents of that transcript.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (appropriate to consider letter "proffered in support of" motion to dismiss, because it was "referenced in [plaintiff's] complaint [even if] not explicitly incorporated therein" and in order to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based" (alterations and quotation marks omitted)); *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 633 F. Supp. 2d 763, 775-76 (D. Ariz. 2009); *Glenbrook Capital P'ship Ltd. v. Kuo*, 2008 WL 929429, at *6 (N.D. Cal. Apr. 3, 2008).  Although Mr. Lucas went on to testify that Lucasfilm itself did not recruit from Blue Sky, he could not have been more clear that this practice was not the result of some supposed "understanding or agreement."  Pitt Decl. Ex. 1.

reasons certain employees were leaving Blue Sky in favor of other studios, and whether other studios were contacting Blue Sky's employees, is precisely where one would expect to see mention of it.

Plaintiffs also now cite to an email between two employees of Twentieth Century Fox Animation, one of whom stated, "[w]e have to be careful not to poach people."  SAC ¶ 73.  But notwithstanding plaintiffs' assertions, the email plainly does not evidence some supposed "agreement . . . with . . . Sony."  *Id.*  Indeed, the entire email is about efforts to hire away individuals working for Sony, is wholly consistent with the author's desire to avoid liability for tortious interference with contract to the extent the employees were still under contract at Sony, mentions nothing about any supposed agreement not to "poach," and does not suggest that Sony had a similar policy or practice.  Pitt Decl. Ex. 3.  An allegation of such conduct, which is fully consistent with the author's unilateral self-interest, cannot satisfy *Twombly*'s requirement that, to avoid dismissal, plaintiffs must plausibly allege facts "tending to exclude the possibility of independent action."  550 U.S. at 554.

The same is true regarding plaintiffs' citation to an email in which another Twentieth Century Fox Animation employee states that "because [a potential candidate] is currently at Disney we need to be sensitive and not reach out in a way that could get back to Disney."  SAC ¶¶ 62, 74.  This email, which demonstrates assiduous efforts to recruit the artist in question, says nothing of some supposed agreement with Disney, nor does it imply any such agreement exists.  Pitt Decl. Ex. 4.  To the contrary, any recruiter seeking to interview a competitor's employee would seek to do so without exposing the individual to the taint associated with having one's employer know one is looking for other work; nothing in the antitrust laws somehow requires those seeking to hire away their competitors' employees to do so in the manner most calculated to inform their competitors of exactly what they are doing.  Plaintiffs' allegations do not "tend[] to exclude the possibility of independent action," *Twombly*, 550 U.S. at 554 – there is simply no reason at all, aside from plaintiffs' unsupported conjecture, to conclude this email refers to some unmentioned agreement between Blue Sky and Disney.

The other allegations regarding Blue Sky were addressed in the motion to dismiss plaintiffs' prior complaint, and those arguments will not be repeated here.  It should be noted, however, that in their SAC plaintiffs now cite directly to the deposition testimony of Lori McAdams in the *High-Tech* case, *see* SAC ¶ 142, resolving any question regarding the propriety of the Court's reliance on that

transcript in resolving the motion to dismiss, *Swartz*, 476 F.3d at 763.  It bears emphasis that McAdams testified, in that deposition, that she was simply mistaken when she wrote (in an email plaintiffs now cite *three times* in their complaint, SAC ¶¶ 5, 53, 70) that Blue Sky was one of the participants in a "gentleman's agreement."  Dkt. No. 77-4 at 200-01 ("I think we had a gentleman's agreement with ILM, and I think we didn't directly solicit employees from Sony or Blue Sky or any other company, and I think as I wrote this, I merged the two.  I – I don't believe we had a gentleman's agreement with the other animation companies.").[28]

Thus, not only do plaintiffs' allegations not demonstrate Blue Sky's participation in some conspiracy not to solicit, they in fact show active efforts to hire other studios' employees.  And as in their prior complaint, plaintiffs fail here to allege any of the facts they need to allege to demonstrate Blue Sky was part of a supposed anti-solicitation conspiracy: "who, did what, to whom (or with whom), where, and when."  *Kendall*, 518 F.3d at 1048.  In the absence of such allegations, the anti-solicitation conspiracy claim must be dismissed as to Blue Sky.

### b)     Sony Pictures

The SAC's allegations against Sony Pictures repeat the CAC's threadbare assertion that Ed Catmull reached a "gentlemen's agreement" with two Sony Pictures executives sometime in 2004 or 2005.  SAC ¶¶ 63-68.  Specifically, plaintiffs claim that, having observed Sony Pictures' aggressive recruiting efforts, Mr. Catmull decided that he was going to "nip [that behavior] in the bud" by meeting with Sony Pictures representatives in an effort to reach an agreement "where neither of us let recruiters approach the other."  SAC ¶¶ 65-66.  But those allegations not only are insufficient to support a claim that Sony Pictures ever agreed to participate in the broad non-solicitation conspiracy alleged in the SAC, they are insufficient to demonstrate that Sony Pictures ever entered into any non-solicitation agreement at all.  *See* MTD at 28-32.

Critically, and with one misdirected exception discussed in footnote 30 below, plaintiffs'

---

[28]     Similarly, Ed Catmull, whose *High-Tech* deposition is also referenced in the SAC, denied that Pixar had any sort of agreement with Blue Sky: "Did Pixar have an understanding with Blue Sky that you wouldn't proactively recruit out of each other's companies?" and responded: "No. That's what I'm saying.  It did not have."  Dkt. No. 77-5 at 53.

1

2

3

4

5

6

7

8

9

10

11

allegations about Sony Pictures' supposed non-solicitation agreement do not come from Sony Pictures at all, but are drawn entirely from a smattering of Pixar emails plus Mr. Catmull's deposition testimony in the *High-Tech* case.  To be sure, the SAC asserts that Mr. Catmull met with two senior executives from Sony Pictures and, at that meeting, reached a "gentlemen's agreement" regarding solicitation of each other's employees.  However, while the SAC – like its predecessor – relies repeatedly on Mr. Catmull's deposition testimony in the *High-Tech* case, plaintiffs fail to mention the extensive discussion in that deposition about his meeting with the Sony Pictures executives, the only conversation he ever had on the subject with anyone at the company.  Mr. Catmull stated that although he left the meeting expecting that Sony Pictures' behavior was going to change, he was simply "wrong" in that expectation.  Goldstein Decl. Ex. A at 104:5-8.  In fact, he testified, "their behavior didn't change."  To the contrary, "they still went down the list [i.e., cold-called Pixar employees]…  And there was no recourse."  *Id.* at 57:10-18.[29]

12

13

14

15

16

17

18

19

       Meanwhile, the internal Pixar emails cited in the SAC demonstrate not the existence of any agreement with Sony Pictures, but, instead, reflect internal discussions at Pixar regarding what to do in light of the fact that Sony Pictures was *continuing its aggressive recruitment efforts.  See* SAC ¶ 67.  Plaintiffs claim that Pixar tried to get Sony Pictures to "knock it off," *id.*, but there is nothing suggesting that Sony Pictures acquiesced.  In fact – in yet another example of plaintiffs' proclivity for selective quotation – the October 2006 email quoted in the SAC actually says "tell them to knock it off (**again**!)."  *Id.*; Goldstein Decl. Ex. B (bold added).  What better evidence could there be that Sony Pictures continued to recruit Pixar employees *after* Mr. Catmull's meeting with the Sony Pictures executives?

20

21

22

       Put simply, plaintiffs offer nothing to suggest that, contrary to what Mr. Catmull testified under oath, Sony Pictures ever changed its recruiting behavior.  To the contrary – in an exasperated email consistent with his later deposition testimony – Mr. Catmull eventually got so fed up that in

23

24

25

26

27

[29]     The Court may consider Exhibits A-D to the Goldstein Declaration because they are incorporated by reference into the SAC.  *Swartz,* 476 F.3d at 763.  In addition, applying this rule, courts take judicial notice of emails quoted or referred to in the complaint.  *See, e.g.*, *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1111 n.2 (N.D. Cal. 2013).  The same rule applies to depositions.  *See, e.g.*, *Teamsters Local 617 v. Apollo Grp., Inc.*, 633 F. Supp. 2d 763, 775-76 (D. Ariz. 2009); *Glenbrook Capital Ltd. P'ship v. Kuo,* 2008 WL 929429, at *6 (N.D. Cal. 2008).

28

December 2007 he authorized a counterattack:  "given Sony's extremely poor behavior in its recruiting practices, I would feel very good about aggressively going after Sony people."  Goldstein Decl. Ex. C.

What is more, despite having had access to defendants' entire document productions to the DOJ – including Sony Pictures' DOJ production – and much of the *High-Tech* record, plaintiffs have been unable to come up with a single document (internal to Sony Pictures or shared with other defendants) in which anyone at Sony Pictures acknowledges participation in, or even refers to, any agreement not to solicit employees of other studios.  It is utterly implausible that if Sony Pictures had agreed to fundamentally change its recruiting practices, no documents in its files would reflect communications about that fact – including to its recruiting staff who would have needed to implement that dramatic change.  *See* MTD at 30.[30]

Plaintiffs' Opposition to Sony Pictures' prior motion effectively conceded the substance of Sony Pictures' arguments regarding its non-involvement in any non-solicitation agreement, claiming only – and incorrectly (*see supra* n.29) – that the Court could not consider the facts Sony Pictures cited because they were "outside the Complaint" and are not subject to "judicial notice."  *See* MTD Opp. at 34-36.  Instead, plaintiffs attempted to avoid the lack of support for their allegation that Sony Pictures participated in any non-solicitation agreement by pointing to documents reflecting its supposed involvement in the "wage setting" portion of the alleged conspiracy.  *Id.* at 33-34.  However, that effort is unavailing as a matter of law for two separate reasons.

---

[30]     Plaintiffs struggle to cite a document – *any* document – from Sony Pictures' files supposedly reflecting its involvement in a non-solicitation agreement.  The sole result of that effort is an email from a senior Sony Pictures executive to a non-defendant, ReelFX, complaining about its efforts to hire Sony Pictures employees.  SAC ¶ 68; Goldstein Decl. Ex. D.  But in relying on that email, the SAC – yet again – quotes selectively, omitting its first and most critical sentence explaining that a former Sony Pictures employee "who now works for you is trying to poach our employees *using his prior email account info etc from his time at [Sony] Imageworks.*"  *Id.* (emphasis added).  What is more, this was while ReelFX was working with Sony Pictures as a vendor on a joint project.  *Id.*  In sum, the result of plaintiffs' effort to extract *something* from Sony Pictures' files showing a non-solicitation agreement resulted in nothing more than citation of an entirely appropriate email to a joint production partner seeking to stop the misuse of internal Sony Pictures information by a former Sony Pictures employee now employed by that partner.

First, as explained in Section IV.C above, plaintiffs fail to adequately allege a *per se* wage-fixing claim. That failure dooms their effort to bootstrap themselves into an adequate claim that there was a single *per se* conspiracy here involving both "non-solicitation" and "wage fixing." *Id.*

Second, there are no factual allegations supporting an inference that Sony Pictures either "knew or had reason to know of the [multi-faceted] scope of the conspiracy alleged in the SAC." *United States v. Kenny*, 645 F. 2d 1323, 1335 (9th Cir. 1981).  Nor did Sony Pictures have "reason to believe that [its] own benefits were dependent upon the success of the entire venture." *Id.* (internal quotation marks omitted).  To the contrary, an agreement not to solicit its competitors' employees would have made no economic sense for a company in Sony Pictures' position.  According to plaintiffs' own allegations, Sony Pictures was seeking to expand its workforce.  It, therefore, would have been economically perverse for the company to enter into a non-solicitation conspiracy, because doing would have reduced the available pool of potential recruits and impeded its effort to hire employees.

## V.   CONCLUSION

For the foregoing reasons, this Court should dismiss the SAC with prejudice.

1   DATED:   May 21, 2015                    COVINGTON & BURLING LLP

2

3                                           By:  */s/ Emily Johnson Henn*
                                                 Emily Johnson Henn
4                                                333 Twin Dolphin Drive, Suite 700
                                                 Redwood Shores, CA 94061
5                                                Telephone: 650-632-4700
                                                 Facsimile: 650-632-4800
6                                                Email: ehenn@cov.com

7                                                Deborah A. Garza
                                                 Thomas A. Isaacson
8                                                One CityCenter
                                                 850 10th Street, NW
9                                                Washington, DC 20001-4956
                                                 Telephone: 202-662-6000
10                                               Facsimile: 202-662-6291
                                                 Email: dgarza@cov.com
11                                               Email: tisaacson@cov.com

12                                               Cortlin H. Lannin
                                                 One Front Street, 35th Floor
13                                               San Francisco, CA 94111
                                                 Telephone: 415-591-7078
14                                               Facsimile: 415-955-6578
                                                 Email: clannin@cov.com

15                                               *Attorneys for Defendants*
                                                 The Walt Disney Company
16                                               Lucasfilm Ltd., LLC
                                                 Pixar
17                                               Two Pic MC LLC

18   DATED:  May 21, 2015                     GIBSON, DUNN & CRUTCHER LLP

19

20                                           By:  */s/ Rod J. Stone*
                                                 Rod J. Stone
21                                               333 South Grand Avenue
                                                 Los Angeles, CA 90071-3197
22                                               Telephone: 213-229-7256
                                                 Facsimile: 213-229-6256
23                                               Email: rstone@gibsondunn.com

24                                               *Attorneys for Defendant*
                                                 DreamWorks Animation SKG, Inc.
25

26

27

28

                                          31

DATED:   May 21, 2015

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Stephen V. Bomse*
    Stephen V. Bomse
    David M. Goldstein
    405 Howard Street
    San Francisco, CA 94105-2669
    Telephone: 415-773-4145
    Facsimile: 415-773-5759
    Email: sbomse@orrick.com
    Email: dgoldstein@orrick.com

    *Attorneys for Defendants*
    Sony Pictures Animation Inc.
    Sony Pictures Imageworks Inc.

DATED:   May 21, 2015

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
    John E. Schmidtlein
    Jonathan B. Pitt
    725 Twelfth Street, N.W.
    Washington, D.C. 20005
    Telephone: 202-434-5901
    Facsimile: 202-434-5029
    Email: jschmidtlein@wc.com
    Email: jpitt@wc.com

    William Faulkner (SBN 83385)
    McMANIS FAULKNER
    50 West San Fernando Street, 10th Floor
    San Jose, CA 95113
    Telephone: 408-279-8700
    Facsimile: 408-279-3244
    Email: wfaulkner@mcmanislaw.com

    *Attorneys for Defendant*
    Blue Sky Studios, Inc.

1

## **ATTESTATION**

2          I, Emily Johnson Henn, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the

3   concurrence to the filing of this document has been obtained from each signatory hereto.

4

5   DATED:  May 21, 2015                    By:   */s/ Emily Johnson Henn*
                                                  Emily Johnson Henn

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' MOTION TO DISMISS THE SAC
Master Docket No. 14-cv-4062-LHK