Daniel A. Small (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
dsmall@cohenmilstein.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com

[Additional Counsel on Sig. Page]

Interim Co-Lead Plaintiffs' Counsel

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANIMATION WORKERS ANTITRUST LITIGATION | Master Docket No. 14-CV-4062-LHK |
| | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL NON-PRIVILEGED DOCUMENTS FROM PIXAR AND LUCASFILM** |
| THIS DOCUMENT RELATES TO: | Date:    March 22, 2016 |
| All Actions | Time: 10:00 a.m. |
| | Courtroom: Courtroom 5 |
| | Judge: Paul Singh Grewal |
| | **DISCOVERY MATTER** |

# CONTENTS

I.   **Lucasfilm Has Not Proved the Disputed Documents Were Made for the Purpose of Obtaining or Providing Legal Advice**.................................1

    A.  Lucasfilm's recruiting policies and guidelines are not privileged ................................1

    B.  The Roffman documents are not privileged....................................2

    C.  The Anderman documents warrant *in camera* review ................................3

    D.  The Palmer Advantage documents are not privileged ................................5

II.  **Pixar Has Failed to Prove its Privilege Claims Over the Scali Documents** ................5

III. **The Crime-Fraud Exception Vitiates Any Privilege Attached to the Scali Documents**....................................7

    A.  Pixar's attempts to heighten Plaintiffs' burden must be rejected................................7

    B.  Pixar's conduct is not beyond crime-fraud scrutiny ................................8

    C.  Plaintiffs have more than carried their crime-fraud burden ................................10

    D.  The question is not whether Plaintiffs win on the merits, but whether the privilege exists ................................13

IV.  **Conclusion**....................................15

**Federal Cases**

*Astiana v. Ben & Jerry's Homemade*,
   2014 WL 694745 (N.D. Cal. Feb. 21, 2014) ............................................................... 1

*Barba v. Shire US*,
   2015 WL 7015324 (S.D. Fla. Nov. 12, 2015) .............................................................. 15

*Bourjaily v. United States*,
   483 U.S. 171 (1987) ................................................................................................... 14

*Children's Earth Found. v. National Marine Fisheries Service*,
   85 F. Supp. 3d 1074 (N.D. Cal. 2015) ......................................................................... 2

*Coleman v. Am. Broad. Companies*,
   106 F.R.D. 201 (D.D.C. 1985) ..................................................................................... 9

*Duplan Corp. v. Deering Milliken*,
   397 F. Supp. 1146 (D.S.C. 1974) ............................................................................... 10

*Elan Microelectronics v. Apple*,
   2011 WL 3443923 (N.D. Cal. Aug. 8, 2011) ................................................................ 3

*Feldman v. PokerTek*,
   2011 WL 4543990 (D. Nev. Sept. 29, 2011) ................................................................ 6

*Genentech v. Trustees of University of Pennsylvania*,
   2011 WL 7074211 (N.D. Cal. Oct. 18, 2011) ............................................................ 4, 7

*In re Animation Workers Antitrust Litig.*,
   2015 WL 4974343 (N.D. Cal. Aug. 20, 2015) ............................................................ 12

*In re Burlington Northern, Inc.*,
   822 F.2d 518 (5th Cir. 1987) ....................................................................................... 9

*In re Citric Acid Litig.*,
   996 F. Supp. 951, 955 (N.D. Cal. 1998) ..................................................................... 10

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*,
   1971 WL 601 (D. Minn. Oct. 1, 1971) ....................................................................... 14

*In re CV Therapeutics*,
   2006 WL 1699536 (N.D. Cal. June 16, 2006) .............................................................. 2

*In re Grand Jury Investigation*,
   974 F.2d 1068 (9th Cir. 1992) ..................................................................................... 7

*In re Grand Jury Proceedings (Gregory P. Violette)*,
   183 F.3d 71 (1st Cir. 1999) ........................................................................................ 15

*In re Napster Copyright Litig.*,
   479 F.3d 1078 (9th Cir. 2007) ........................................................................... 8, 13, 15

*In re Richard Roe*,
   168 F.3d 69 (2d Cir. 1999) ................................................................................9

*In re Santa Fe Int'l Corp.*,
   272 F.3d 705 (5th Cir. 2001) ..............................................................................9

*In re Sulfuric Acid Antitrust Litig.*,
   235 F.R.D. 407 (N.D. Ill. 2006) ........................................................................15

*In re Terazosin Hydrochloride*,
   2001 WL 34050474 (S.D. Fla. Dec. 19, 2001) ..................................................13

*Laser Indus. v. Reliant Techs.*,
   167 F.R.D. 417 (N.D. Cal. 1996) .........................................................................8

*Lewis v. Delta Air Lines*,
   2015 WL 94560124 (D. Nev. Dec 23, 2015) ......................................................9

*Leybold-Heraeus Techs. v. Midwest Instrument Co.*,
   118 F.R.D. 609 (E.D. Wis. 1987) ......................................................................10

*Oasis Research v. Carbonite*,
   2015 WL 5317600 (E.D. Tex. Sept. 11, 2015) ..................................................14

*Parkway Gallery Furniture v. Kittinger/Pennsylvania House Grp.*,
   116 F.R.D. 46 (M.D.N.C. 1987) ..........................................................................9

*Pfizer v. Lord*,
   456 F.2d (8th Cir. 1972) .......................................................................................9

*Portland Wire & Iron Works v. Barrier Corp.*,
   Civ. No. 75–1083 (D. Or. May 20, 1980) ..........................................................10

*Roe v. White*,
   2014 WL 842790 (N.D. Cal. Feb. 28, 2014) .......................................................7

*S.E.C. v. Yorkville Advisors, LLC*,
   300 F.R.D. 152 (S.D.N.Y. 2014) .........................................................................3

*U.S. v. Zolin*,
   491 U.S. 554 (1989) ........................................................................................7, 8

*United States v. A. Lanoy Alston*,
   974 F.2d 1206 (9th Cir. 1992) ...........................................................................10

*United States v. Hsuan Bin Chen*,
   2011 WL 332713 (N.D. Cal. Jan. 29, 2011) ......................................................10

*United States v. Lucasfilm*,
   2011 WL 2636850 (D.D.C. June 3, 2011) .........................................................12

*United States v. Ruehle*,
   583 F.3d 600 (9th Cir. 2009) ...............................................................................6

iii

*United States v. Schussel*,
  291 F. App'x 336 (1st Cir. 2008)...........................................................................13

*Visa U.S.A v. First Data Corporation*,
  2004 WL 1878209 (N.D. Cal. Aug 23, 2004)..........................................................1

*Ward v. Pickett*,
  2013 WL 5496549 (N.D. Cal. Oct. 3, 2013)...........................................................13

*Yue v. Storage Tech. Corp.*,
  2008 WL 4185835 (N.D. Cal. Sept. 5, 2008) ...........................................................6

**Rules**

Federal Rule of Evidence 104(a) ...................................................................................8

iv

Although Defendants submitted lengthy ***argument*** in their opposition, they chose not to submit any ***facts*** through sworn declarations to carry their burdens of proving that their assertions of privilege are proper. By making this strategic choice, Defendants rely solely on the information contained in their privilege logs, even for those documents where their in-house counsel are serving in a dual role. Because those logs are deficient, this Court should order the production of the improperly-withheld documents.[1]

## I. Lucasfilm Has Not Proved the Disputed Documents Were Made for the Purpose of Obtaining or Providing Legal Advice

### A. Lucasfilm's recruiting policies and guidelines are not privileged

Lucasfilm has not carried its burden to prove that its recruiting policies and guidelines are privileged. *See* Mot. at 4-6. Notably, Lucasfilm's opposition does not even mention, let alone attempt to distinguish, either *Astiana v. Ben & Jerry's Homemade* or *Visa U.S.A v. First Data Corporation*—both of which are directly on-point. *See* Mot. at 5-6. As those cases make clear, because business documents like recruiting policies and guidelines would have been created "[e]ven if no lawyers were to be involved," they do not become privileged merely because they were later sent to, or even reviewed or edited by, in-house counsel. *E.g., Visa*, No. C-02-1786JSW(EMC), 2004 WL 1878209, at *7 & n.4 (N.D. Cal. Aug 23, 2004) ("[T]here are substantial policy reasons for holding that business documents submitted for attorney review are not by that virtue automatically exempt as privileged or work product protected communications."). And Lucasfilm never disputes that the policies and guidelines are "prototypical business documents," or that they "are not even communications, and thus, cannot be subject to the attorney-client privilege no matter what their content." Mot. at 5.[2]

Lucasfilm instead chooses to double-down on its unsupported and erroneous claim that

---

[1] Defendants' lead argument that the motion should be denied because the disputed documents were also withheld from the government and the *High-Tech* plaintiffs is meritless. They are not entitled to withhold documents now simply because their previous privilege claims were never challenged and escaped judicial review.

[2] Lucasfilm's assertion that "a privileged document does not lose its privileged character merely because corporate employees have forwarded it to others," is a strawman: Plaintiffs never contended "that the documents' distribution to employees outside the legal department destroys the privilege," Opp. at 7. Rather, these documents were never privileged in the first instance.

these attachments are nonetheless privileged because "they were the substance of the requests for legal advice," Opp. at 6-7, in other words, because they were sent to lawyers. But that characterization of its bootstrapping theory proves Plaintiffs' point: it is the requests for legal advice that are privileged, not the preexisting materials that are transmitted with those requests. If a landlord sends a lease to her attorney and asks, "does this provision violate California civil code?," the lease does not become privileged merely because it is sent to the lawyer with a request for legal advice. Otherwise, any relevant document could be shielded from production by forwarding it to an attorney with a request for legal advice. That is not the law. Mot. at 5.

Lucasfilm's attempts to distinguish Plaintiffs' caselaw are unpersuasive. Lucasfilm takes issue with *In re CV Therapeutics* because it "concerned so-called dual-purpose documents," Opp. at 7-8, but labeling the recruiting policies and guidelines "dual-purpose" would be generous because they are classic business documents. And even then, the principle that "[t]he mere fact that a document was sent to an attorney does not make it a privileged communication" still stands. No. C-03-3709 SI(EMC), 2006 WL 1699536, at *4 (N.D. Cal. June 16, 2006). Nor is *Our Children's Earth Found. v. National Marine Fisheries Service* somehow "inapposite" because of the subject matter of the underlying case or the type of attachment at issue. *See* Opp. at 8. When plaintiffs there, like here, argued that defendant had improperly withheld an attachment, the court agreed that attachments "'are not automatically privileged,'" cited three cases holding the same, and held, "As it stands now, the Fisheries Services has not shown by its description of the record that this attachment is likely to be protected by the attorney-client privilege." 85 F. Supp. 3d 1074, 1088 (N.D. Cal. 2015). These documents must be produced.

### B. The Roffman documents are not privileged

Lucasfilm's opposition is likewise inadequate to prove its privilege claims over the two documents involving purported legal advice from unlicensed attorney, and Executive Vice President, Howard Roffman. *See* Mot. at 6-9. Lucasfilm's primary argument is that "[b]ecause Plaintiffs cannot and do not contest the supplemental log's adequacy with respect to these two entries, their motion should be denied." Opp. at 9, 11. But Plaintiffs can and did contest Lucasfilm's supplemental log on three independent grounds: "Cordoza did not write, send, or

2

receive either of the emails," Mot. at 8; "Lucasfilm has refused to identify the litigation that the emails were allegedly prepared in anticipation of," *id.*; and "'stating only that the document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged,'" *id.* at n. 4 (citation omitted). Lucasfilm does not respond to ***any*** of these arguments. *Cf. Elan Microelectronics v. Apple,* No. C 09-01531 RS (PSG), 2011 WL 3443923, at *5 (N.D. Cal. Aug. 8, 2011) (ordering production where "[o]ther than providing a new log on the eve of the hearing, Elan does not explain the alleged deficiencies in the privilege log that Apple raises in its papers."). Nor does Lucasfilm take the opportunity to prove its claims by submitting sworn declarations from Cordoza or any of the recipients who received the allegedly privileged advice.

Lucasfilm's other responses are equally unpersuasive. Lucasfilm attempts to distinguish *S.E.C. v. Yorkville Advisors* by characterizing that case as disapproving of only new privilege claims, when its "supplemental log merely added additional information." Opp. at 10. But, *Yorkville Advisors* found untimely "'new details pertaining to the subject matter, authors and recipients of certain documents.'" Mot. at 8. And Lucasfilm's substitution of the attorney who purportedly provided the legal advice also gave rise to "'claims of privilege that were never previously asserted.'" Opp. at 10. This Court's holding in *Elan* is on-point for the same reason: while Lucasfilm makes much of the fact that, unlike there, its revised log names the newfound counsel said to be involved, that does not eliminate the fact that, like there, Lucasfilm's revision was not timely and, thus, is insufficient to preserve its privilege claims. 2011 WL 3443923 at *6.

### C. The Anderman documents warrant *in camera* review

Lucasfilm's arguments concerning the erroneously-withheld Anderman documents get both the facts and the law wrong. According to Lucasfilm, "Plaintiffs' argument is premised on a fundamental mischaracterization" of Anderman's roles during the time of the disputed communications. Opp. at 11. But Plaintiffs do not characterize, let alone mischaracterize, those roles at all. We instead quote directly from Lucasfilm's own contemporaneous press release and job description, and from Anderman's own portrayal of what he actually did at Lucasfilm. *See* Mot. at 10. Lucasfilm's opposition concedes, as it must, that Anderman's roles "involved a broad array of business affairs" including the "ability to provide 'sound business advice' and the

3

like." *Id.* Even if those roles manifested themselves "***primarily*** through a legal perspective," as Lucasfilm claims (emphasis added), there remains no dispute that Anderman dispensed non-legal directives at the time of the disputed communications. *See* Mot. at 10-11.

Under *Genentech v. Trustees of University of Pennsylvania*, Plaintiffs are therefore correct that "the combination of Anderman's dual role and Lucasfilm's admission that he 'offered non-legal advice on 'business affairs' during the time of the disputed communications is sufficient to trigger *in camera* review." Mot. at 10-11. That case is not distinguishable because of the ***title*** of the executive in question, as Lucasfilm suggests, Opp. at 13; what matters is that Anderman was also "dispensing non-legal directives at the time of the communications." *Genentech*, No. C 10-2037 PSG, 2011 WL 7074211, at *1 (N.D. Cal. Oct. 18, 2011). Nor is *Genentech* distinguishable because, ***following in camera review,*** this Court's suspicions of business, not legal, advice were confirmed "in part because in one of the disputed email threads, the lawyer in question went 'so far as to announce that he was 'speaking as CEO'' about the events at issue." Opp. at 13. Plaintiffs, of course, cannot yet quote from the disputed documents. And if anything, the second *Genentech* holding reinforces Plaintiffs' position: even though the privilege holder insisted that the documents were privileged, *in camera* review of the documents permitted this Court to "'make a more exacting assessment" of the claims, Mot. at 10, which turned out to be demonstrably false. Plaintiffs submit that the same will be revealed here.

Indeed, although Lucasfilm never mentions the controlling standard, "'[t]o empower the district court to review the disputed documents *in camera*,'" Plaintiffs need only show "'a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged.'" Mot. at 9. And here, beyond showing Anderman's dual role, Plaintiffs put forth "many other factors" (and backed them up with authority) to support their well-founded belief that the Anderman documents are not privileged. Mot. at 11-12. Although Lucasfilm insists its claims are not "boilerplate," Opp. at n. 6, the rest of these factors and cases go ***unrebutted***. Plaintiffs have carried their burden to trigger *in camera* review, if not outright production, of the Anderman documents. *See* Mot. at 12.

4

### D. **The Palmer Advantage documents are not privileged**

Lucasfilm's opposition is also inadequate to salvage its privilege claims over the Palmer Advantage documents. *See* Mot. at 13-15. Plaintiffs have confirmed that in-house counsel Cardoza was listed as a "cc" recipient on 12 of the 50 withheld documents. *See* Opp. at 15. But even assuming the privilege can attach through mere copying of counsel (it can't), that leaves 38 documents that evidence ***no attorney involvement***. *See* Mot. at 14. Lucasfilm again chose not to submit a declaration in support of its claim that these documents are privileged. Nor does Lucasfilm even attempt to reconcile those claims with the directly on-point caselaw from this Circuit, which rejects the suggestion that a business report from a non-lawyer, third-party company can be withheld as privileged merely because it, allegedly, later assisted the legal department in assessing legal issues. *See* Mot. at 14-15. It instead opts to stake its claim on a twenty-year-old case from the Eastern District of North Carolina, which held, unremarkably, that the retransmission of a document "subject to the privilege" may also be withheld as privileged, Opp. at 16. The question here, of course, is whether the Palmer Advantage documents were subject to the privilege—and to that question, Lucasfilm has provided no real answer.

Although Lucasfilm's inability to show that the documents were created primarily to facilitate legal advice and would not have been created otherwise renders its "functional employee" argument irrelevant, Lucasfilm's opposition still fails to make the "'detailed factual showing'" "'Federal courts have held . . . is needed to show that a third party is a representative of the client, or functionally equivalent to the corporation's employee,'" Mot. at 15. Indeed, it does not even name the Palmer Advantage employees who allegedly so qualify. It is simply not enough to claim that Palmer Advantage's "work in this 'environment dense in regulations' falls within the ambit of the attorney-client privilege and work product doctrine," Opp. at 15. As such, even if the Palmer Advantage documents were privileged based on their content, their transfer to and from non-lawyer, third parties waived Lucasfilm's right to claim privilege over them.

## II. **Pixar Has Failed to Prove its Privilege Claims Over the Scali Documents**

Pixar's opposition does not even attempt to carry Pixar's burden "to make a clear showing that its withheld communications regarding 'recruiting,' 'recruitment,' 'hiring,' and

employee 'offer' and 'transfer' matters involving Lois Scali were made for the purpose of obtaining or providing legal advice." Mot. at 16-17. In fact, despite labeling those communications "routine business communications," Opp. at n. 11, Pixar contends this Court "should disregard" its failure to substantiate its privilege claims because Plaintiffs allegedly failed to meet and confer, and because Plaintiffs draw "no distinction" between the documents they challenge under the crime-fraud exception and those that lack legal advice. *Id.* at n. 9.

But the parties met and conferred telephonically about the documents sought by Plaintiffs on two separate occasions, including one call dedicated solely to discussing the disputed Scali documents. *See* Ex. 28 ("We would like to schedule a meet and confer regarding Pixar's privilege assertions based on purported legal advice being offered by former Vice President and General Counsel, Lois Scali during the conspiracy alleged in plaintiffs' complaint."). While that call focused on crime-fraud issues, Plaintiffs gave Pixar fair notice of the types of documents it would be challenging as non-privileged. The end result was Pixar informing Plaintiffs, "we would oppose any motion to compel the documents or to review them in camera to further plaintiffs' eventual goal of compelling their production." *Id.* Plaintiffs' motion does not challenge any additional documents. Plaintiffs thus believe they satisfied their meet-and-confer obligations, but even if they did not, Pixar has not identified any prejudice.[3] In fact, Pixar had the opportunity to submit a declaration from Scali in support of its claims, but it chose not to do so.

This Court should not "disregard" Pixar's failure to establish the privileged nature of the Scali communications. *See United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009) ("By approaching the exclusion question with a presumption that the privilege attached, the district court inverted the burden of proof, improperly placing the onus on the government to show what information was not privileged."). Indeed, as this Court has held many times, because "[t]he

---

[3] *Cf., e.g.*, *Yue v. Storage Tech. Corp.*, No. C 07-05850 JW, 2008 WL 4185835, at *7 (N.D. Cal. Sept. 5, 2008) ("Where parties have failed to comply with a requirement to meet and confer pursuant to other local rules, courts have held that this failure should not serve as a basis to deny a motion and have considered whether resolution is possible in determining whether to order the parties to meet and confer."); *Feldman v. PokerTek,* No. 2:09-CV-01598-JCM, 2011 WL 4543990, at *3 (D. Nev. Sept. 29, 2011) ("[I]t is clear from defendant's behavioral pattern thus far, that it is highly doubtful that a meet and confer would have led to a resolution of the issue.").

party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications," *Genentech*, 2011 WL 7074211 at *1, "a party cannot withhold documents as privileged if it fails to substantiate its privilege assertions." *Apple*, 306 F.R.D. at 239. Nor is Pixar's log sufficient to substantiate those assertions over Plaintiffs' challenges thereto, *see* Mot. at 16-17. Communications with in-house counsel are not presumed to be made for the purpose of legal advice and are thus subject to a "heightened" clear showing standard. *Id.* at 9-10. If the disputed documents were truly privileged, Pixar could and would have substantiated those claims through a declaration or by submitting them for *in camera* review. *See Apple*, 306 F.R.D. at 239. Pixar's failure to do so compels their production.

### III. The Crime-Fraud Exception Vitiates Any Privilege Attached to the Scali Documents

But even if the Scali documents were privileged, Plaintiffs have proved that the crime-fraud exception applies to those communications. *See* Mot. at 17-25. Pixar's arguments to the contrary should be rejected for the reasons that follow.

#### A. Pixar's attempts to heighten Plaintiffs' burden must be rejected

Pixar opens its crime-fraud defense by asserting, without citation, that "Plaintiffs bear a heavy burden of establishing that the crime-fraud exception applies." Opp. at 17. But Plaintiffs seek *in camera* review, not outright disclosure, of the Scali documents, and therefore need only make "'a factual showing sufficient to support a reasonable, good-faith belief that review of the privileged documents *may reveal evidence* to establish the claim that the crime-fraud exception applies.'" Mot. at 18 (emphasis added). This showing "need not be a stringent one." *U.S. v. Zolin*, 491 U.S. 554, 572 (1989)). Indeed, what Pixar labels a "heavy burden," the Ninth Circuit has labeled, "relatively minimal" and "sufficiently low." Mot. at 18 (quoting *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 (9th Cir. 1992)).[4]

While this Court must ultimately decide whether the exception applies by a preponderance standard, that is not a "heavy burden" either. It is the same test that governs "any

---

[4] Although Pixar claims "[t]here is no point in undertaking *in camera* review," Opp. at 23, it never mentions the controlling standard, and makes no attempt to parse the *Zolin* factors or distinguish cases like *Roe v. White*. *See* Mot. at 21.

preliminary question about whether a witness is qualified, a privileged exists, or evidence is admissible," under Federal Rule of Evidence 104(a). *In re Napster Copyright Litig.*, 479 F.3d 1078, 1095 (9th Cir. 2007). The question is just whether "it is more likely than not that the party resisting the disclosures sought or used legal advice to commit or to try to commit a crime or fraud." *Laser Indus. v. Reliant Techs.*, 167 F.R.D. 417, 441 (N.D. Cal. 1996) ("I hasten to point out that use of this standard is not tantamount to requiring Reliant to 'actually prove' the alleged fraud."). Pixar's repeated insistence that only "competent" evidence can support such a finding is an equally meritless attempt to move the goalposts. Whatever "competent" means, it ***cannot*** mean "admissible" because courts are "not bound by evidence Rules" when determining whether the crime-fraud exception applies. Fed. R. Evid. 104(a). In fact, the Supreme Court has held that the exception can be established "using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged," including the disputed documents. *Zolin*, 491 U.S. at 575.

### B. Pixar's conduct is not beyond crime-fraud scrutiny

Pixar also contends that, no matter what the evidence shows, its illegal conduct "is utterly insufficient as a foundation for Plaintiffs' crime-fraud argument." Opp. at 18. As Pixar would have it, seeking the advice of counsel to further an illegal conspiracy to restrain competition for labor would simply be above crime-fraud reproach. But again, that is not the law. *See* Mot. at 24.

Plaintiffs have consistently asserted that the crime-fraud exception applies here because "Scali's legal services were utilized by Pixar in furtherance of its ongoing illegal conspiracy to suppress the compensation of its employees." Ex. 28; *accord* Mot. at 18 ("Pixar was engaged in a criminal or fraudulent scheme—namely, an illegal conspiracy to restrain competition for labor—when it sought the advice of Scali to further that illegal scheme."). Whether Pixar's conspiratorial conduct is labeled a "crime," because it is a felony under Section 1 of the Sherman Act; a "fraud," because it secretly depressed Plaintiffs' compensation; or a "civil wrong," in violation of Section 1 of the Sherman Act—***when, in fact, it is all three***—is irrelevant to determining whether the exception applies because all three wrongs can trigger the exception. The exception "'is not strictly limited to cases alleging criminal violations or common law fraud.'" Mot. at 24 (quoting *Lewis v. Delta Air Lines*, No. 2:14-cv-01683-RFB-GWF, 2015 WL

8

9460124, at *3 (D. Nev. Dec 23, 2015)); *accord, e.g.*, *Coleman v. Am. Broad. Companies,* 106 F.R.D. 201, 208 (D.D.C. 1985) ("Often these expansions of the 'crime-fraud' exception have occurred in business-related areas such as patent, antitrust or securities litigation.").

Pixar responds that this Court cannot apply that principle here because neither the Ninth Circuit nor Supreme Court has explicitly "sanctioned an application of the crime-fraud exception in a civil antitrust case." Opp. at 18. The argument is meritless. What goes unstated, of course, is that there are no Ninth Circuit or Supreme Court cases holding that the exception cannot apply here. And district courts routinely decide issues without the guidance of "binding legal precedent," *id.* at 19, including by looking to other persuasive authority. Here, that authority overwhelmingly supports applying the exception to Scali's furthering Pixar's illegal conspiracy.

Indeed, while Pixar suggests that "Plaintiffs are asking this Court to enter uncharted legal waters and make new law regarding the attorney client-privilege," Opp. at 19, Pixar itself cites two cases where the crime-fraud exception was assumed to apply to civil antitrust violations, but was held not to, ***following in camera review***, based on the particular facts presented. *See* Opp. at 22. Other courts agree that the crime-fraud exception can apply to civil antitrust violations. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 714 & n.9 (5th Cir. 2001) ("It is possible that the disclosures were made to facilitate future price fixing in violation of the antitrust laws, as the plaintiffs contend. If so, they would fall outside the scope of any attorney-client privilege as communications made for criminal or fraudulent purposes."); *In re Richard Roe,* 168 F.3d 69, 72 (2d Cir. 1999) ("[O]ne may violate the antitrust laws by bringing baseless litigation intended to delay entry into a market by a competitor. If the litigation objectively lacked a factual or legal basis, some communications or work product generated in the course of such litigation might . . . fall within the crime-fraud exception."); *In re Burlington Northern, Inc.*, 822 F.2d 518, 524 (5th Cir. 1987) ("The parties also do not challenge the district court's conclusion that a civil violation of the antitrust laws is a 'crime' or 'fraud' for purposes of abrogating the attorney/client privilege. *See Pfizer v. Lord*, 456 F.2d 545 (8th Cir. 1972).").[5]

---

[5] *See also, e.g., Parkway Gallery Furniture v. Kittinger/Pennsylvania House Grp.*, 116 F.R.D. 46, 52 (M.D.N.C. 1987) ("Courts have extended coverage of this exception . . . beyond instances

While Plaintiffs therefore reiterate that the crime-fraud exception does and should apply to Pixar's underlying conspiracy, the Court need not extend the exception to civil cases to reach Pixar's conduct because, again, "***it is a crime to conspire in restraint of trade in violation of Section 1 of the Sherman Act***." Mot. at 24. Pixar claims that Plaintiffs "make no attempt to explain what is required in order to prove a criminal antitrust violation," but when, like here, *per se* conduct is alleged, "[t]he requirements for a civil conspiracy are the same as for a criminal conspiracy," *In re Citric Acid Litig.*, 996 F. Supp. 951, 955 (N.D. Cal. 1998) *aff'd*, 191 F.3d 1090 (9th Cir. 1999). *United States v. Hsuan Bin Chen*, No. CR 09-110 SI, 2011 WL 332713, at *4 (N.D. Cal. Jan. 29, 2011) ("[I]ntent need not be shown to prosecute criminally conduct regarded as *per se* illegal because of its unquestionably anticompetitive effects. This means, of course, that defendants can be convicted of participation in price-fixing conspiracies without any demonstration of a specific criminal intent to violate the antitrust laws." (citation and quotation omitted)). Because "both criminal and civil violations may be made out under the same substantive provisions of the Sherman Act," *United States v. A. Lanoy Alston,* 974 F.2d 1206, 1214 (9th Cir. 1992), Plaintiffs ***have*** "submit[ted] evidence that if believed by the jury would establish the elements of an ongoing [criminal] violation," Opp. at 19.

### C. <u>Plaintiffs have more than carried their crime-fraud burden</u>

Pixar next contends that, even if the crime-fraud exception can theoretically apply to the circumstances presented here, Plaintiffs "have still failed to present any competent evidence that Pixar was, in fact, engaged in any criminal activity." Opp. at 20. But that is simply not true.

Although Pixar makes almost no mention of it, the evidence showing Scali's involvement in Pixar's conspiracy itself supports finding that Pixar was engaged in or planning a criminal or

---

(… cont'd)
of fraudulent or illegal conduct and have applied it to business litigation such as patent, antitrust, or securities matters."); *Leybold-Heraeus Techs. v. Midwest Instrument Co.*, 118 F.R.D. 609, 615 (E.D. Wis. 1987) ("[The crime-fraud exception] also applies when alleged attorney communications are made in furtherance of a business tort such as an antitrust violation."); *Portland Wire & Iron Works v. Barrier Corp.*, Civ. No. 75–1083 (D. Or. May 20, 1980) (Burns, J.), op. at 10–11 ("Communications made to further a business tort such as an antitrust violation may also vitiate the attorney-client privilege."); *Duplan Corp. v. Deering Milliken*, 397 F. Supp. 1146, 1197 (D.S.C. 1974) ("[T]his prima facie showing of an antitrust violation establishes the tort exception to the attorney-client privilege.").

fraudulent scheme when it sought Scali's advice to further that scheme. *See, e.g.*, Mot. at 19-21; Ex 11 (McAdams testifying that she learned about Pixar's "still in place" "gentleman's agreement" with Lucasfilm from Scali); Ex. 14 ("we should call Ed in Hawaii and have him call the Sony women . . . and remind them of our gentleman's agreement not to raid each other and to let us know when we are talking with key employees"); Ex. 15 ("I've spoken to [Imageworks] in the past about our non poaching practices, but I'll make sure they're still honoring it"); Ex. 16 ("I've spoken to [Blue Sky] Director of HR to assure her that we are not making calls to their people or trying to poach them in any way"); Ex. 17 ("Subject: Disney trying to hire Pixar employees"); Ex. 19 ("I will reiterate to our team that Pixar employees are off limits"); Ex. 20 ("we'd just like to make sure we're not overstepping the spirit of our relationship" with Lucasfilm); Ex. 21 ("spoke with Ed and he would like me to meet with [Lucasfilm president] and confirm our current arrangements"); Ex. 22 (Scali: "we will observe our usual protocol of talking to appropriate folks at Lucas before officially moving forward"); Ex. 23 (Scali: "JUST SO YOU KNOW THAT GEORGE LUCAS IS OKAY WITH THIS MOVE"); Ex. 26 ("Sounds like [Pixar recruiter] might not be up on the details of our restrictions with Disney").

Pixar does not dispute the content of these communications, does not argue that Plaintiffs are drawing improper inferences therefrom, does not submit any counter evidence thereto, and does not explain why those communications do not evidence a conspiracy in restraint of trade in violation of the Sherman Act. Indeed, despite submitting a declaration of counsel in support of its opposition, that declaration contains no facts and attaches no documentary evidence countering the existence of Pixar's unlawful conspiracy. And Pixar's opposition cites no cases calling into question that its illegal recruiting conspiracy *per se* violated the Sherman Act.

Pixar instead takes issue with Plaintiffs' reliance on the Department of Justice's investigation into Pixar's conspiracy, asserting that "[t]he DOJ's conclusions are irrelevant to this motion." Opp. at 20. But the DOJ's competitive impact statements and complaints are highly relevant here: Pixar and Lucasfilm "stipulated to proposed final judgments in which they agreed that the DOJ's complaints had stated claims under federal antitrust law and agreed to be

PLAINTIFFS' REPLY ISO MOTION TO COMPEL
Master Docket No. 14-CV-4062-LHK

'enjoined from'" the conduct giving rise to those complaints. *In re Animation Workers Antitrust Litig.*, No. 14-CV-04062-LHK, 2015 WL 4974343, at *2 (N.D. Cal. Aug. 20, 2015); *accord United States v. Lucasfilm*, No 10-02220 (RBW), 2011 WL 2636850, at *3 (D.D.C. June 3, 2011) (finding final judgment "in the public interest" because it "unambiguously terminate[s] the anticompetitive behavior that gave rise to the Complaint" and "prohibits the nonsolicitation agreements that resulted in economic and employment-based injuries to the defendant's digital animators"). Plaintiffs base their crime-fraud argument on the same and similar conduct that the DOJ's impact statement not only already determined was *per se* illegal, but also determined was ongoing during the disputed communications. The DOJ investigation thus plainly supports finding that it is more likely than not that Pixar was engaged in illegal conduct when it sought Scali's advice to further that conduct. That Pixar allegedly refused to admit "wrongdoing" does not render that investigation "not probative." Pixar agreed that the facts underlying the DOJ's complaint stated a claim against it under the antitrust laws. Requiring a more explicit admission of guilt to trigger the crime-fraud exception would render that exception a dead letter.

Pixar also takes issue with Plaintiffs' reliance on Judge Koh's order holding "'that Plaintiffs have sufficiently alleged facts showing that Defendants reached an agreement to conspire,'" Mot. at 19. Although Pixar submits that Plaintiffs cannot here rely "on their own unproven allegations," Opp. at 21 (emphasis omitted), Pixar omits that those "allegations" were largely direct quotes from Defendants' own internal documents and testimony, *see* ECF #121, and that Pixar did not even "mov[e] to dismiss the allegations of a 'no-poaching' conspiracy against them." ECF #126 at n.1. Indeed, when Pixar answered Plaintiffs' Complaint, Pixar admitted "that it had an understanding with Lucasfilm that the companies' recruiters would not cold call employees of the other company, that if Lucasfilm extended an offer of employment to a current employee of Pixar, Lucasfilm would not counter-offer if that candidate received a different offer from Pixar (and vice-versa), and that Pixar and Lucasfilm would notify each other after making an offer to an employee of the other company." ECF. #157 at ¶ 48. This is the exact conduct that the DOJ's competitive impact statement found anticompetitive and *per se* unlawful.

In sum, while Pixar asserts that it "vehemently . . . dispute[s] that an unlawful conspiracy occurred in this case," Opp at 20, it offers *no facts, arguments, or authority* to support that position. Pixar likewise offers no facts, arguments, or authority to support its assertion that the disputed communications were not "related to" or "made in furtherance of" its illegal scheme, despite two pages of contrary argument and evidence from Plaintiffs. *See* Mot. at 21-23. Pixar instead simply asserts that it "in no way concede[s] the point." Opp. at n. 11. But failing to put forth argument or evidence *does concede the point*. Indeed, having failed to take the opportunity to do so, Pixar waived its "right to introduce countervailing evidence" to preserve its privilege claim, *In re Napster*, 479 F.3d at 1093. *See Ward v. Pickett*, No. C-13-01735 DMR, 2013 WL 5496549, at *5 (N.D. Cal. Oct. 3, 2013). Although Pixar attempts to disparage Plaintiffs' evidence as "not competent" or "not probative," the evidence discussed in and attached to their motion is sufficient to carry their burden and is actually *the only evidence in the record*. That evidence is more than sufficient to trigger *in camera* review and, ultimately, to show the crime-fraud exception applies. *See In re Terazosin Hydrochloride*, No. 99-MDL-1317-SEITZ, 2001 WL 34050474 at *2 (S.D. Fla. Dec. 19, 2001) (ordering *in camera* review where plaintiffs alleged "Defendant used its attorneys to negotiate and carry out" agreements that "constituted *per se* violations of the antitrust laws").

**D.** **The question is not whether Plaintiffs win on the merits, but whether the privilege exists**

Pixar's final argument is that "Plaintiffs are using this discovery dispute to seek a premature merits determination about the central disputed issue in this case." Opp. at 21. In fact, the exact opposite is true: It is Pixar who wants to turn this discovery dispute into a trial on the merits, in hopes of inciting fear of prejudging the case, usurping the jury's role, or somehow "crippl[ing]" the attorney-client privilege.

But none of those fears is based in fact. The assertion that Plaintiffs are seeking "a premature merits determination" simply ignores the authority cited by Plaintiffs that recognizes that piercing the privilege neither requires nor reflects a merits decision. *See, e.g.*, Mot. at n. 12 ("*United States v. Schussel*, 291 F. App'x 336, 346 (1st Cir. 2008) ('The crime-fraud exception

13

may apply, however, even if the client is ultimately found not to be guilty. By necessity, the assessment of documents during a legal proceeding is generally preliminary and does not reflect a finding that a client acted wrongfully.') . . ."); *accord, e.g.*, *Oasis Research v. Carbonite,* No. 4:10-CV-435, 2015 WL 5317600, at *4 (E.D. Tex. Sept. 11, 2015) ("Defendants are confusing their substantive argument regarding the RICO allegations with the Court's limited piercing of the attorney-client privilege for discovery purposes."). "Indeed to require otherwise would seem to obviate the benefit to be gained by access to the privileged communications since the party would already have substantiated the alleged fraud or illegal act without the evidence excluded by the privilege." *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, No. 4-71 CIV. 435, 1971 WL 601, at *4 (D. Minn. Oct. 1, 1971) (ordering documents produced upon "prima facie showing of [civil] violation of the Sherman Act").

Nor would piercing the privilege somehow usurp the ultimate merits decision from the trier of fact, as Pixar suggests. Here, *Bourjaily v. United States*, 483 U.S. 171 (1987) and its interpretation of Federal Rule of Evidence 801(d)(2)(E) is directly on-point. In that case, the Supreme Court held that, under Rules 801(d)(2)(E) and 104(a), a court could not admit a co-conspirator's statement over a hearsay objection unless it was satisfied by a preponderance of the evidence "that there was a conspiracy involving the declarant" and "that the statement was made 'during the course and in furtherance of the conspiracy.'" *Bourjaily*, 483 U.S. at 175. Recognizing that "the existence of a conspiracy and petitioner's involvement in it are preliminary questions of fact that, under Rule 104, must be resolved by the court," the Court stressed that "***[t]he inquiry made by a court concerned with these matters is not whether the proponent of the evidence wins or loses his case on the merits, but whether the evidentiary Rules have been satisfied***." *Id.* (emphasis added). The same is true here, as triggering the crime-fraud exception requires meeting essentially identical elements, *see* Mot. at 17, under the same evidentiary standard, *see supra* at 8. This Court can and should decide if the privilege applies.[6]

---

[6] *Bourjaily* also supports that the Scali documents themselves can uphold a finding that crime-fraud applies: "there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." *Id.* at 180.

14

The two cases that Pixar relies on are distinguishable. Unlike here, there were substantial questions in those cases whether the alleged crime-fraud was even illegal. *See Barba v. Shire US*, No. 13-21158-CIV-LENARD/GOODMAN, 2015 WL 7015324, at *3 (S.D. Fla. Nov. 12, 2015) ("*even* if the Court were to accept all of Plaintiffs' factual allegations as true, it is uncertain that the complained-of conduct was *even potentially illegal* at the time it occurred."); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 422 (N.D. Ill. 2006) (noting that alleged crime-fraud "'sometimes creates problems under antitrust or regulatory law—but only when the supplier or distributor has monopoly or market power'"). And such questions existed because, unlike here, defendants there submitted contrary evidence to preserve their privilege claims. Pixar's claim that this dispute has morphed into a "trial on the papers" ignores that Pixar has not submitted ***any evidence*** to support its claim that it was not engaged in an illegal scheme when it sought Scali's counsel. Reliance on those out-of-Circuit cases also ignores that the Ninth Circuit has held, "the court may decide the matter on the papers." *In re Napster*, 479 F.3d at 1093.

Pixar's suggestion that piercing the privilege here would somehow cripple the attorney-client privilege again simply ignores that the crime-fraud exception exists for good reason. Mot. at 24-25; *accord In re Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71, 76 (1st Cir. 1999) ("[T]he crime-fraud exception reflects a policy judgment that this potential discouragement does not justify the costs of shielding highly probative evidence of antisocial conduct from the factfinders' eyes.").

## IV. Conclusion

Communications with in-house counsel are not presumed to be made for the purpose of legal advice and are thus subject to a "heightened" clear showing standard. Yet Defendants submitted no declarations with facts to satisfy that burden. Because their privilege logs are deficient, the Court should order Defendants to produce the disputed documents. In addition, to the extent they are not ordered produced for failure to establish the privilege, the Scali documents should be reviewed *in camera*, and ultimately ordered produced, because the crime-fraud exception applies. Plaintiffs' motion should be granted.

15

DATED:  March 2, 2016                    By___/s/ John E. Schiltz_____
                                              John E. Schiltz

                                         Marc M. Seltzer (54534)
                                         Steven G. Sklaver (237612)
                                         SUSMAN GODFREY, L.L.P.
                                         1901 Avenue of the Stars, Suite 950
                                         Los Angeles, CA 90067-6029
                                         Telephone: (310) 789-3100
                                         Facsimile: (310) 789-3150
                                         mseltzer@susmangodfrey.com
                                         ssklaver@susmangodfrey.com

                                         Matthew R. Berry (pro hac vice)
                                         Jordan Talge (pro hac vice)
                                         John E. Schiltz (pro hac vice)
                                         SUSMAN GODFREY, L.L.P.
                                         1201 Third Avenue, Suite 3800
                                         Seattle, WA, 98101-3000
                                         Telephone: (206) 516-3880
                                         Facsimile: (206) 516-3883
                                         mberry@susmangodfrey.com
                                         jtalge@susmangodfrey.com
                                         jschiltz@susmangodfrey.com

                                         Daniel A. Small (pro hac vice)
                                         Brent W. Johnson  (pro hac vice)
                                         Jeffrey B. Dubner (pro hac vice)
                                         COHEN MILSTEIN SELLERS & TOLL PLLC
                                         1100 New York Ave. NW, Suite 500
                                         Washington, DC 20005
                                         Telephone: (202) 408-4600
                                         Facsimile: (202) 408-4699
                                         dsmall@cohenmilstein.com
                                         bjohnson@cohenmilstein.com
                                         jdubner@cohenmilstein.com

                                         Jeff D. Friedman (173886)
                                         Shana E. Scarlett (217895)
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         715 Hearst Avenue, Suite 202
                                         Berkeley, CA 94710
                                         Telephone: (510) 725-3000
                                         Facsimile: (510) 725-3001
                                         jefff@hbsslaw.com
                                         shanas@hbsslaw.com

                                         Steve W. Berman (pro hac vice)
                                         Jerrod C. Patterson (pro hac vice)
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         1918 Eighth Avenue, Suite 3300
                                         Seattle, WA 98101
                                         Telephone: (206) 623-7292
                                         Facsimile: (206) 623-0594

16

steve@hbsslaw.com
jerrodp@hbsslaw.com

***Interim Co-Lead Plaintiffs' Counsel***