UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ANIMATION WORKERS ANTITRUST LITIGATION | Case No. 5:14-cv-04062-LHK <br><br> **ORDER GRANTING-IN-PART MOTION TO COMPEL** <br><br> **(Re: Docket No. 213)** |

This consolidated class action alleges that animation and visual effects companies Pixar, Lucasfilm, DreamWorks, Walt Disney, Sony Pictures Animation, Sony Pictures Imageworks, Blue Sky Studios and ImageMovers Digital conspired in violation of antitrust laws to restrain competition for labor and reduce compensation class-wide.[1] Plaintiffs allege that in order to accomplish their anticompetitive goals, these companies agreed not to solicit each other's employees, to take special procedures when contacted by each other's employees and to coordinate compensation policies through direct, collusive communications.[2]

Yesterday, the court heard argument on Plaintiffs' motion to compel various documents from Defendants.[3] During that hearing, the court resolved the parties' disputes regarding all but two categories of documents, to which the court now turns.

The first outstanding category concerns 50 documents claimed as privileged and/or work product that were sent to or received by the Palmer Advantage, a third-party consultant to

---

[1] *See* Docket No. 121.

[2] *See id.* at ¶ 1.

[3] *See* Docket No. 233.

Case No. 5:14-cv-04062-LHK
ORDER GRANTING-IN-PART MOTION TO COMPEL

1

Lucasfilm. "[W]here a consultant performs work that is substantially intertwined with the subject matter of a corporation's legal concerns and the consultant provides information to the corporation's attorney to aid the attorney in advising the corporate client, the privilege extends to the consultant as the corporation's functional employee."[4] Plaintiffs' primary challenge to Lucasfilm's claim is that, at least as to 38 of the documents, Lucasfilm has not established that any attorney was involved in either their creation or dissemination. But the record suggests that the Palmer Advantage was retained by Lucasfilm to help its legal department figure out how best to comply with various wage and hour laws.[5] Working at the direction of in-house attorney Christina Cordoza and retained counsel Judith Keyes,[6] the Palmer Advantage prepared the disputed documents for Cordoza and Keyes to navigate "an environment dense in regulations."[7] And this information appears relevant to these attorneys' responsibility to "render sound legal advice."[8]

Plaintiffs nevertheless are right to insist that these suggestions be backed up by firm evidence. To that end, no later than April 12, 2016, Lucasfilm shall serve a sworn declaration from Cordoza or Keyes confirming its representations. Alternatively, by that same date Lucasfilm shall produce the 38 documents.

The second outstanding category concerns Pixar's privilege claims over documents involving Pixar Executive Vice President and General Counsel Lois Scali. While Plaintiffs dispute whether Pixar has met its burden of clearly showing that Scali was obtaining or providing legal advice, there is no real question that it has. Scali was the senior attorney at the company

---

[4] *Schaeffer v. Gregory Vill. Partners, L.P.*, Case No. 13-4358, 2015 WL 166860, at *4 (N.D. Cal. Jan. 12, 2015); *see also* McCaugherty v. Sifferman, 132 F.R.D. 234, 239 (N.D. Cal. 1990).

[5] *See* Docket No. 213-4 at 6.

[6] *See id.*

[7] *McCaugherty v. Sifferman*, 132 F.R.D. 234, 239 (N.D. Cal. 1990).

[8] *Memry Corp. v. Kentucky Oil Tech., N.V.*, Case No. 04-3843, 2007 WL 39373, at *2 (N.D. Cal. Jan. 4, 2007).

2
Case No. 5:14-cv-04062-LHK
ORDER GRANTING-IN-PART MOTION TO COMPEL

during this time, and her "dual-role" status does nothing to deprive the disputed documents of their privileged status. "Where legal advice of any kind, is sought from a professional legal advisor in his capacity as such, the communication relating to that purpose, made in confidence, by the client, are at his instance permanently protected from disclosure by himself or by the legal advisor, unless the protection is waived."[9] Unlike in *Genentech, Inc. v. Trustees of University of Pennsylvania*,[10] nothing suggests that Scali was acting in any capacity other than as General Counsel at the time the documents were exchanged.

The real issue is whether the documents might nevertheless fall within the well-recognized "crime-fraud" exception to the privilege.[11] Pixar is right that, at least as far as this court can tell, the Ninth Circuit has yet to recognize the crime-fraud exception in the context of a civil antitrust case. But every other circuit to consider the question has.[12]

---

[9] *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).

[10] Case No. 10-2037, 2011 WL 7074211, at *3 (N.D. Cal. Oct. 18, 2011).

[11] *See In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) ("First, the party must show that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme. Second, it must demonstrate that the attorney-client communications for which production is sought are sufficient related to and were made in furtherance of the intended, or present, continuing illegality.") (internal quotation marks and brackets omitted).

[12] *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 714 & n.9 (5th Cir. 2001) ("It is possible that the disclosures were made to facilitate future price fixing in violation of the antitrust laws, as the plaintiffs contend. If so, they would fall outside the scope of any attorney-client privilege as communications made for criminal or fraudulent purposes."); *In re Richard Roe*, 168 F.3d 69, 72 (2d Cir. 1999) ("[O]ne may violate the antitrust laws by bringing baseless litigation intended to delay entry into a market by a competitor. If the litigation objectively lacked a factual or legal basis, some communications or work product generated in the course of such litigation might . . . fall within the crime-fraud exception."); *In re Burlington Northern, Inc.*, 822 F.2d 518, 524 (5th Cir. 1987) ("The parties also do not challenge the district court's conclusion that a civil violation of the antitrust laws is a 'crime' or 'fraud' for purposes of abrogating the attorney/client privilege. See Pfizer v. Lord, 456 F.2d 545 (8th Cir. 1972)."); *see also, e.g.*, *Parkway Gallery Furniture v. Kittinger/Pennsylvania House Grp.*, 116 F.R.D. 46, 52 (M.D.N.C. 1987) ("Courts have extended coverage of this exception . . . beyond instances of fraudulent or illegal conduct and have applied it to business litigation such as patent, antitrust, or securities matters."); *Leybold-Heraeus Techs. v. Midwest Instrument Co.*, 118 F.R.D. 609, 615 (E.D. Wis. 1987) ("[The crime-fraud exception] also applies when alleged attorney communications are made in furtherance of a business tort such as an antitrust violation."); *Portland Wire & Iron Works v. Barrier Corp.*, Case Civ. No. 75–1083 (D. Or. May 20, 1980) (Burns, J.), op. at 10–11 ("Communications made to further a business tort

3
Case No. 5:14-cv-04062-LHK
ORDER GRANTING-IN-PART MOTION TO COMPEL

Nor can the court ignore that what Plaintiffs seek at this point is not production but rather in camera review by the court. The Ninth Circuit has long recognized that "in camera review of privileged information may be used to establish whether the crime-fraud exception applies."[13] There is "a considerably lower threshold for conducting in camera review than for fully disclosing documents": it "requires only a factual showing sufficient to support a reasonable, good-faith belief that review of the privileged documents 'may reveal evidence to establish the claim that the crime fraud exception applies.'"[14] This threshold "is set sufficiently low to discourage abuse of privilege and to ensure that mere assertions of the attorney-client privilege will not become sacrosanct,"[15] and to mitigate "the problem of limited access to proof by the party seeking to vitiate the attorney-client privilege."[16]

---

such as an antitrust violation may also vitiate the attorney-client privilege."); *Duplan Corp. v. Deering Milliken*, 397 F. Supp. 1146, 1197 (D.S.C. 1974) ("[T]his prima facie showing of an antitrust violation establishes the tort exception to the attorney-client privilege.").

[13] *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). In fact, the Ninth Circuit recently held that "district courts must review documents *in camera* before deciding whether they should be produced under the crime-fraud exception":

> While in camera review is not necessary during step one to establish a prima facie case that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme," a district court must examine the individual documents themselves to determine that the specific attorney-client communications for which production is sought are "sufficiently related to" and were made "in furtherance of the intended, or present, continuing illegality."

*In re Grand Jury Investigation*, 810 F.3d at 1114 (quoting *In re Grand Jury Proceedings*, 87 F.3d 377, 381-83 (9th Cir. 1996)).

[14] *In re Grand Jury Investigation*, 974 F.2d at 1073 (quoting *U.S. v. Zolin*, 491 U.S. 554, 572 (1989)).

[15] *In re Grand Jury Investigation*, 974 F.2d at 1072.

[16] *In re Napster*, 479 F.3d 1078, 1096 (9th Cir. 2007), *abrogated on other grounds by Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009) (recognizing that "the best evidence is likely to be in the hands of the party invoking the privilege").

4
Case No. 5:14-cv-04062-LHK
ORDER GRANTING-IN-PART MOTION TO COMPEL

The evidence showing Scali's involvement in Pixar's alleged conspiracy suggests that Plaintiffs are reasonable and in good faith in believing that Pixar was engaged in or planning a criminal or fraudulent scheme when it sought Scali's advice to further that scheme.[17]

A final point. Pixar's assertion that Plaintiffs are seeking "a premature merits determination" simply ignores the authority that recognizes that piercing the privilege, let alone merely conducting an in camera review, does not require or reflect a merits decision.[18] "Indeed to require otherwise would seem to obviate the benefit to be gained by access to the privileged communications since the party would already have substantiated the alleged fraud or illegal act without the evidence excluded by the privilege."[19]

---

[17] *See, e.g.*, Docket No. 213 at 19-21; Docket No. 213-13 at PIXAR_AWAL_00101123 (Scali colleague McAdams testifying that she learned about Pixar's "still in place" "gentleman's agreement" with Lucasfilm from Scali); Docket No. 213-16 at PIXAR_AWAL_00004725 ("we should call Ed in Hawaii and have him call the Sony women . . . and remind them of our gentleman's agreement not to raid each other and to let us know when we are talking with key employees"); Docket No. 213-17 at PIXAR_AWAL_00097937 ("I've spoken to [Imageworks] in the past about our non poaching practices, but I'll make sure they're still honoring it"); Docket No. 213-18 at PIXAR_AWAL_00003777 ("I've spoken to [Blue Sky] Director of HR to assure her that we are not making calls to their people or trying to poach them in any way"); Docket No. 213-19 at PIXAR_AWAL_00063109 ("Subject: Disney trying to hire Pixar employees"); Docket No. 213-21 at DISNEY_AWAL_00000524 ("I will reiterate to our team that Pixar employees are off limits"); Docket No. 213-22 at PIXAR_AWAL_00003701 ("we'd just like to make sure we're not overstepping the spirit of our relationship" with Lucasfilm); Docket No. 213-23 at LUCAS_AWAL_00215280 ("spoke with Ed and he would like me to meet with [Lucasfilm president] and confirm our current arrangements"); Docket No. 213-24 at PIXAR_AWAL_00000027 (Scali: "we will observe our usual protocol of talking to appropriate folks at Lucas before officially moving forward"); Docket No. 213-25 at LUCAS_AWAL_00214389 (Scali: "JUST SO YOU KNOW THAT GEORGE LUCAS IS OKAY WITH THIS MOVE"); Docket No. 213-28 at PIXAR_AWAL_00000272 ("Sounds like [Pixar recruiter] might not be up on the details of our restrictions with Disney").

[18] *See, e.g.*, *United States v. Schussel*, 291 F. App'x 336, 346 (1st Cir. 2008) ("The crime-fraud exception may apply, however, even if the client is ultimately found not to be guilty. By necessity, the assessment of documents during a legal proceeding is generally preliminary and does not reflect a finding that a client acted wrongfully."); *accord, e.g., Oasis Research v. Carbonite*, Case No. 4:10-CV-435, 2015 WL 5317600, at *4 (E.D. Tex. Sept. 11, 2015) ("Defendants are confusing their substantive argument regarding the RICO allegations with the Court's limited piercing of the attorney-client privilege for discovery purposes.").

[19] *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, Case No. 4-71 CIV. 435,

5
Case No. 5:14-cv-04062-LHK
ORDER GRANTING-IN-PART MOTION TO COMPEL

1    Pixar shall submit the Scali documents for the court's in camera review no later than
2 March 25, 2017.
3 **SO ORDERED.**
4 Dated: March 23, 2016

_____
PAUL S. GREWAL
United States Magistrate Judge

---

1971 WL 601, at *4 (D. Minn. Oct. 1, 1971) (ordering documents produced upon "prima facie showing of [civil] violation of the Sherman Act").

6
Case No. 5:14-cv-04062-LHK
ORDER GRANTING-IN-PART MOTION TO COMPEL