UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| IN RE ANIMATION WORKERS ANTITRUST LITIGATION | Master Docket No. 14-CV-4062-LHK<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS FOR SETTLEMENTS WITH SONY PICTURES IMAGEWORKS INC., SONY PICTURES ANIMATION INC., AND BLUE SKY STUDIOS INC.**<br><br>ECF No. 331 |
|---|---|

1    Before the Court is Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards
2    arising out of a settlement between individual and representative plaintiffs Robert Nitsch, David
3    Wentworth, and Georgia Cano, and the Class they represent (collectively, "Plaintiffs"), and Sony
4    Pictures Imageworks Inc. and Sony Pictures Animation Inc. (collectively, "Sony Pictures"), and
5    Blue Sky Studios, Inc. ("Blue Sky").
6    Having considered the submissions of the parties, the arguments made at the November 10,
7    2016 final approval hearing, the relevant law, and the record in this case, the Court hereby
8    GRANTS Plaintiffs' motion.

## I. BACKGROUND

### A. Initial Motions to Dismiss

On December 2, 2014, Plaintiffs filed their Consolidated Amended Class Action Complaint against DreamWorks Animation SKG, Inc., ImageMovers Digital LLC, Lucasfilm Ltd., LLC, Pixar, Sony Pictures Animation, Inc., Sony Pictures Imageworks, Inc., The Walt Disney Company, and Blue Sky Studios, Inc. ECF No. 63. On January 9, 2015, defendants filed a motion to dismiss. ECF No. 75. The motion raised a host of issues, including statute of limitations, fraudulent concealment, wage-fixing allegations, standing, and specific allegations against three of the defendants. *Id.*

Also on January 9, 2015, defendants filed a motion to compel arbitration and stay proceedings as to plaintiff Nitsch. ECF No. 71. The motion sought an order compelling Nitsch to arbitrate his claims against DreamWorks, his former employer; compelling Nitsch to arbitrate his claims against the other defendants based on an equitable estoppel theory; and staying the proceedings of Nitsch's claim pending the arbitration. *Id.* On April 24, 2015, this Court ruled that the arbitrator should decide whether he/she has jurisdiction over Nitsch's claims against DreamWorks, and stayed Nitsch's claims against DreamWorks pending that decision. The Court denied the motion to compel Nitsch to arbitrate his claims against the other defendants. ECF No. 116.

In addition, on April 17, 2015, this Court granted defendants' motion to dismiss without prejudice. ECF No. 105. The Court held that Plaintiffs had not sufficiently alleged acts of fraudulent concealment by defendants such that the four-year statute of limitations should be tolled.

On May 15, 2015, Plaintiffs filed a Second Consolidated Amended Class Action Complaint ("SAC"), alleging additional and more detailed acts of fraudulent concealment by defendants. ECF No. 121. Defendants promptly filed a motion to dismiss the SAC, arguing in part that Plaintiffs' new allegations regarding fraudulent concealment were deficient. ECF No. 126. Following briefing by the parties, the Court denied defendants' second motion to dismiss on August 20, 2015. ECF No. 147.

**B.    The Discovery Process**

Plaintiffs have engaged in extensive discovery in this case: conducting an intensive pre-complaint investigation, drafting and responding to requests for production and interrogatories, reviewing thousands of Plaintiffs' documents for responsiveness and privilege, reviewing defendants' voluminous document productions, preparing for and taking over 20 depositions, defending five additional depositions, obtaining relevant employment data and working with Plaintiffs' expert to evaluate that data and calculate damages on a class-wide basis.[1]

The parties also had several discovery disputes during this litigation. Plaintiffs filed a motion to compel Pixar and Lucasfilm to produce unredacted copies of expert and class certification materials from *High-Tech*. ECF No. 171.[2] Plaintiffs filed an additional motion to compel documents that Pixar and Lucasfilm were withholding on the basis of attorney-client privilege. ECF No. 213.

In addition, Plaintiffs are involved in a dispute with The Croner Company, which administered the industry-wide salary studies. These studies are part of Plaintiffs' claims that defendants conspired to keep compensation relatively uniform across companies, in part by sharing compensation information. Croner filed an opposed motion seeking reimbursement of attorneys'

---

[1] *See* Declaration of Jeff D. Friedman in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Friedman Decl."), ¶ 3.

[2] This dispute was resolved by the parties without Court intervention. *See* ECF No. 180.

1  fees. ECF No. 285. Finally, on August 29, 2016, the parties filed a joint letter brief regarding

2  defendants' request to obtain discovery from 500 absent class members. ECF No. 321. Both of

3  these matters are currently pending before Magistrate Judge Howard R. Lloyd.

**C.  Class Certification**

On February 1, 2016, Plaintiffs filed their motion for class certification (ECF No. 203), and about ten weeks later filed their reply brief in support of their motion (ECF No. 262). On May 6, 2016, the Court held a hearing on Plaintiffs' class certification motion. ECF No. 276. On May 25, 2016, the Court granted in part and denied in part the motion. *See Nitsch v. DreamWorks Animation SKG Inc.*, 315 F.R.D. 270 (N.D. Cal. 2016). The Court certified the following class (*id.* at 317):

> All animation and visual effects employees employed by defendants in the United States who held any of the jobs listed in Ashenfelter Reply Report Amended Appendix C during the following time periods: Pixar (2004-2010), Lucasfilm Ltd., LLC (2004-2010), DreamWorks Animation SKG, Inc. (2004-2010), The Walt Disney Company (2004-2010), Sony Pictures Animation, Inc. and Sony Pictures Imageworks, Inc. (2004-2010), Blue Sky Studios, Inc. (2005-2010) and Two Pic MC LLC f/k/a ImageMovers Digital LLC (2007-2010). Excluded from the Class are senior executives, members of the board of directors, and persons employed to perform office operations or administrative tasks.

The Court denied the motion without prejudice as to class members who worked at Pixar and Lucasfilm from 2001-2003, and who worked at DreamWorks in 2003. *See id.* The Court ruled that the SAC did not sufficiently allege acts of fraudulent concealment during those years. *See id.*

The filings in support of and in opposition to Plaintiffs' motion for class certification have been extensive and voluminous. Plaintiffs' motion for class certification was supported by 139 exhibits and a 70-page expert report from Dr. Ashenfelter. ECF No. 205-210. Defendants' opposition included 67 exhibits and a 161-page expert report from Dr. Keeley. ECF Nos. 240-241. Plaintiffs responded with a 93-page reply report from Dr. Ashenfelter. ECF No. 265.

This Court, in granting in part and denying in part Plaintiffs' class certification motion, issued an 80-page opinion in which it noted the "extensive documentary evidence, economic theory, data, and expert statistical modeling" that Plaintiffs had assembled. *Nitsch*, 315 F.R.D. at 292.

**D.      Defendants Petitioned the Ninth Circuit for Interlocutory Appeal**

On June 8, 2016, defendants filed a Rule 23(f) petition with the Ninth Circuit.[3] The petition contended that "[t]his closely watched case raises an important question on a recurring issue impacting a wide range of class actions: Under what circumstances is class certification appropriate where, as here, all class members' claims are time-barred unless they can establish tolling through fraudulent concealment?" *Id.* at 1.The petition argued that the Ninth Circuit had not yet addressed the question, and the other circuits had reached "conflicting results." *Id.* Defendants also claimed that individualized issues could not be managed at a class trial, citing in support *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). *See* Appeal at 2;18.

After Plaintiffs filed their opposition,[4] defendants filed a reply.[5] Plaintiffs filed a response in opposition to defendants' motion for leave to file reply on the ground that defendants' proposed reply improperly raised two new arguments. ECF No. 6 at 1. On August 29, 2016, the Ninth Circuit granted defendants' motion for leave to file a reply, but denied their Rule 23(f) petition in a summary order. ECF No. 7 at 1.

## II.      FEE PETITION

**A.      Plaintiffs Have Requested a Reasonable Amount of Attorneys' Fees and Expenses**

Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." "[A]wards of attorneys' fees serve the dual purpose of encouraging persons to seek redress for damages caused to an entire class of persons and discouraging future misconduct." *In re Apollo Group Inc. Secs. Litig.*, No. CV 04-2147, 2012 U.S. Dist. LEXIS 55622, at *19 (D. Ariz. Apr. 20, 2012). In "common fund" cases, such as this one, the

---

[3] *See* Petition for Permission to Appeal from the United States District Court for the Northern District of California, *Nitsch v. DreamWorks Animation SKG, Inc.*, No. 16-80077 (9th Cir. June 8, 2016) ("*Nitsch I*" or "petition").

[4] *See* Answering Brief in Opposition to Petition for Permission to Appeal Pursuant to Rule 23(f), *Nitsch I*, June 20, 2016, ECF No.3.

[5] *See* Reply in Support of Petition for Permission to Appeal Pursuant to Rule 23(f), *Nitsch I*, June 30, 2016, ECF No. 5. Parties must petition the Ninth Circuit to file a reply in support of a Rule 23(f) petition, which the defendants did here. *See Nitsch I*, Motion for Leave to File Reply in Support of Petition for Permission to Appeal Pursuant to Rule 23 (f), June 30, 2016, ECF No. 4.

Court has the discretion to award attorneys' fees as either a percentage of the common fund, or by using the lodestar method.[6]

In the Ninth Circuit, the "benchmark" award in common fund cases is 25 percent of the recovery obtained. *See High Tech Fees Order*, 2015 WL 5158730, at *6 (citing cases). The court may also apply the lodestar method to determine a reasonable attorney's fee by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See In re Bluetooth*, 654 F.3d at 944. The lodestar figure is "'presumptively reasonable,'" although "'the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors.'" *High-Tech Fees Order*, 2015 WL 5158730, at *9 (quoting *In re Bluetooth*, 654 F.3d at 941). In common fund cases, the lodestar method may also be used as a cross-check of the percentage-of-fund method. *See In re Bluetooth*, 654 F.3d at 944; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (applying a lodestar cross-check to ensure the percentage-of-recovery method yielded a reasonable result).

Class Counsel here seek an award of $4,737,500 for attorneys' fees. Plaintiffs' fee request represents 25 percent of the $18.95 million settlement fund and is well within the range approved by the Ninth Circuit. Further, the reasonableness of Plaintiffs' fee request is confirmed when cross-checked against their lodestar, which through April 14, 2016 is $7,036,482, resulting in a multiplier of .67. Accordingly, under either the percentage of the common fund or lodestar approach, Plaintiffs' requested fee award is reasonable.

### 1. Plaintiffs' Fee Request Is Reasonable under the "Common Fund" Percentage of Recovery Analysis.

Plaintiffs seek an award of 25 percent of the settlement fund, squarely in line with the Ninth Circuit's benchmark. A 25 percent fee award is "presumptively reasonable," although this depends in part on the size of the fund itself. *See High-Tech Fees Order*, 2015 WL 5158730, at *6, *11.

---

[6] *See In re High-Tech Emp. Litig.*, Case No. 11-cv-02509 LHK, 2015 WL 5158730, at *6 (N.D. Cal. Sept. 2, 2015) ("*High-Tech Fees Order*") (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)); *see also In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig. ("Wachovia")*, No. 5:09- md-02105, 2011 U.S. Dist. LEXIS 55351, at *23-*24 (N.D. Cal. May 17, 2011).

Plaintiffs' fee request is fully supported by the particular circumstances of this case. In *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934 (9th Cir. 2015), the Ninth Circuit outlined a number of factors that courts may consider in setting an appropriate fee, including:

> [1] The extent to which Class Counsel "achieved exceptional results for the class," [2] whether the case was risky for Class Counsel, [3] whether counsel's performance "generated benefits beyond the cash settlement fund," [4] the market rate for the particular field of law (in some circumstances), [5] the burdens Class Counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and [6] whether the case was handled on a contingency basis.

*Id.* at 954-55 (citing *Vizcaino*, 290 F.3d at 1048-50). Taking all the relevant circumstances into account, Plaintiffs' requested fees in the amount of 25 percent of the $18.95 million common fund is reasonable here.

*First*, the result that Class Counsel obtained on behalf of the Plaintiffs and the class supports the reasonableness of the requested fees. The settlement negotiated by Class Counsel provides valuable financial relief to workers who allegedly had their wages suppressed as a result of the defendants' conspiracy. Pursuant to the settlement, Blue Sky, the smallest defendant in this case, and the first defendant to settle, agreed to a $5.95 million payment. Blue Sky's payment is approximately 25 percent of Plaintiffs' expert's calculation of the damages attributable to Blue Sky employees in the class (as calculated based on Dr. Ashenfelter's original expert report in support of class certification). The Sony Agreement provides for a thirteen million dollar payment to the settlement fund, which represents approximately 16.7 percent of the damages attributable to Sony Pictures employees during the relevant time period.

*Second*, the risk that Class Counsel took in bringing and pursuing this action to a successful conclusion supports the reasonableness of the requested fees. As recounted above, the Court initially granted defendants' motion to dismiss based on the statute of limitations issue. Plaintiffs filed an amended complaint, which included further allegations of fraudulent concealment by the defendants. Defendants opposed this as well, and claimed that the fraudulent concealment allegations were insufficient. Although the Court ultimately denied the second motion to dismiss,

this outcome was far from certain as the Plaintiffs drafted the SAC and the opposition to the motion to dismiss.

In addition, in opposition to Plaintiffs' motion to certify the class, defendants attempted to undermine Plaintiffs' factual claims about the conspiracy, including submitting declarations in an attempt to persuade the Court that knowledge of the conspiracy was widespread. Defendants also opposed certification by arguing that evidence of fraudulent concealment is not subject to common proof.

*Third*, the burden that Class Counsel assumed in pursuing this case supports the reasonableness of the requested fees. As noted above, Class Counsel's lodestar through April 14, 2016 is $7,036,482. This estimate includes all billed hours until class certification briefing was complete, but does not include any work that Class Counsel spent on tasks related to the actions against Blue Sky and Sony after April 14, 2016. Additionally, Class Counsel have incurred $1,561,700.47 in unreimbursed expenses. Class Counsel have incurred this expense without any guarantee of being compensated for these expenses. In these circumstances, the Court finds that the burden assumed by Class Counsel was significant and weighs in favor of approving their award.

*Fourth*, Class Counsel took on this matter on a purely contingent basis, with uncertain prospects of being able to recover funds absent a settlement or judgment from this Court. This, too, cuts in favor of approval.

    **2.**    **Plaintiffs' Fee Request Is Reasonable Under the Lodestar Cross-Check Method.**

        **a.**    **The Number of Hours that Plaintiffs' Counsel Devoted to This Litigation Is Reasonable.**

Under the lodestar method, courts first look at the number of hours spent by counsel on the case. Here, in support of the lodestar determination, Plaintiffs have submitted the declarations of Class Counsel attesting to their total hours, hourly rates, experience, and efforts to prosecute this action.[7] The Court ordered supplemental evidence justifying the hourly rates, ECF No. 343, and a

---

[7] *See* Friedman Decl., ¶¶ 5-15; Declaration of Daniel A. Small in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Small Decl."), ¶¶ 2-13; Declaration of Marc M. Seltzer in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Seltzer Decl."), ¶¶ 3-15.

1   revised calculation of total hours. Plaintiffs provided the requested justifications and revised
2   calculations. ECF No. 345.[8]

3   As set forth in the supporting declarations, as of April 14, 2016 Plaintiffs' counsel had collectively spent 14,748.45 hours of attorney and litigation support time on this action. *See* Small Supplemental Decl. ¶ 4 (reporting 6,423.75 billed hours as of April 14, 2016); Friedman Supplemental Decl. ¶ 13 (reporting 3,626.70 billed hours as of April 14, 2016); Seltzer Supplemental Decl. ¶ 7 (reporting 4,698 billed hours as of April 14, 2016). The number of hours that Plaintiffs' counsel has devoted to pursuing this litigation is appropriate and reasonable, given: (1) the extensive pre-complaint investigation; (2) the large number of documents produced by the defendants, and the review of documents from Plaintiffs' files in response to defendants' discovery requests; (3) the extensive factual and legal research and analysis involved in filing an amended complaint, an opposition to a motion to dismiss, a second amended complaint, and a second opposition to a motion to dismiss, as well as an opposition to a motion to compel arbitration and stay proceedings; (4) briefing at the class certification stage; (5) the number and breadth of expert reports; and (6) the depositions of over twenty witnesses, and defending an additional five depositions. In addition, Class Counsel have spent numerous hours working with the notice and claims administrator to answer the questions of class members, launch the settlement website, address issues regarding notice and identify class members. Furthermore, Class Counsel will continue to assist class members with inquiries and continue to work with the notice and claims administrator and defendants on any issues that may arise with respect to the settlement administration. Class Counsel may also expend further time and effort to resolve any objections that are lodged, and litigate any appeals that result therefrom.

### b.   Plaintiffs' Counsel's Hourly Rates Are Reasonable.

The hourly rates of Class Counsel, as detailed in their declarations, are also fair and reasonable. Under the lodestar method, reasonable hourly rates are determined by the "prevailing

---

[8] *See* Friedman Supplemental Decl., ECF No. 345-2 (providing justification for hourly rates of one associate, one contract attorney, and four paralegals); Small Supplemental Decl., ECF No. 345-1 (providing and justifying hourly rates and job titles for all billers); Seltzer Supplemental Decl., ECF No. 345-3 (providing justification for hourly rates of five paralegals).

1  market rates in the relevant community," which are the rates a lawyer of comparable skill,
2  experience and reputation could command in the relevant community.[9] An attorney's actual billing
3  rate is presumptively appropriate to use as the lodestar market rate. *See People Who Care v.*
4  *Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). "Affidavits of the plaintiffs' attorney
5  and other attorneys regarding prevailing fees in the community, and rate determinations in other
6  cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the
7  prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407
8  (9th Cir. 1990).

9  Declarations from Class Counsel establish that the hourly rates are fair, reasonable, and
10 market-based, particularly for the "relevant community" in which counsel work. *See* Friedman
11 Decl., ¶ 11; Small Decl., ¶ 9; Seltzer Decl., ¶ 10; Small Supplemental Decl., ¶¶ 6-24; Friedman
12 Supplemental Decl., ¶¶ 3–5; Seltzer Supplemental Decl., ¶ 3. Class Counsel are respected
13 members of the bar with extensive experience in prosecuting high-stakes complex litigation,
14 including consumer class actions. *See* Friedman Decl., ¶¶ 5-10; Small Decl., ¶¶ 2-8; Seltzer Decl.,
15 ¶¶ 3-9. With three exceptions, counsel's hourly rates in this action range from $275 to $735, with
16 rates varying based on experience. *See* Friedman Decl., ¶ 12; Small Decl., ¶ 10; Seltzer Decl., ¶ 11.
17 The three most senior attorneys on the case, who serve as the lead attorney for each respective law
18 firm, charge between $845 and $1,200 per hour. *See* Friedman Decl., ¶ 12; Small Decl., ¶ 10;
19 Seltzer Decl., ¶ 11. Mr. Seltzer's $1,200 hourly rate is the same rate that he charges clients,
20 including corporations that are billed hourly, which provides a market-based cross-check. *See*
21 Seltzer Decl., ¶ 10. Hourly rates for paralegals are $290 or lower. *See* Friedman Decl., ¶ 12; Small
22 Decl., ¶ 10; Seltzer Decl., ¶ 11. Overall, the Court finds the requested hourly rates fair and
23 reasonable.

---

[9] *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011), *aff'd*, 2012 U.S. App. LEXIS 10539 (9th Cir. May 24, 2012) ("A reasonable hourly rate is determined pursuant to the prevailing market rates in the relevant community."); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (holding that in granting attorney's fees, courts should "compensate counsel at the prevailing rate in the community for similar work; no more, no less").

### c. Plaintiffs' Requested Fee Is Reasonable Considering the Time and Labor Required, Novelty and Complexity of the Litigation, Counsel's Skill and Experience and the Results Obtained.

Multiplying the hours spent by Plaintiffs' counsel on the litigation by their respective hourly rates yields a lodestar calculation of $7,036,482. The requested $4,737,500 is substantially below the lodestar and results in a multiplier of .67. This is markedly lower than the range of multipliers accepted by the Ninth Circuit and district courts throughout the country.[10]

In deciding an appropriate fee under the lodestar method, district courts may consider a number of factors, including the time and labor required, novelty and complexity of the litigation, skill and experience of counsel, contingent nature of the case, and the results obtained. *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). All of these factors weigh heavily in favor of granting the requested $4,737,500 in fees here.

#### (1) Plaintiffs' Counsel Invested a Significant Amount of Time and Resources into This Case.

As of April 14, 2016, Plaintiffs' counsel expended 14,748.45 hours, totaling $7,036,482 million in lodestar.[11] Class Counsel also have incurred more than $1,561,700.47 in out-of-pocket expenses in prosecuting this action for the benefit of the class. Friedman Decl., ¶ 14 ($473,182.85 in expenses); Small Decl., ¶ 12 ($575,743.16 in expenses); Seltzer Decl., ¶ 14 ($602,373.15 in

---

[10] *See id.*, at *10–*11; *see also Vizcaino*, 290 F.3d at 1051 n.6 (surveying class actions settlements nationwide, and noting 54 percent of lodestar multipliers fell within the 1.5 to 3.0 range, and that 83 percent of multipliers fell within the 1.0 to 4.0 range); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (3.97 multiplier: "In recent years multipliers of between 3 and 4.5 have become common."); *In re RJR Nabisco Sec. Litig.*, MDL No. 818, 1992 U.S. Dist. LEXIS 12702, at *15-*23, (S.D.N.Y. Aug. 24, 1992) (6.0 multiplier); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (2.5 multiplier); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (3.0 multiplier); *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (3.6 multiplier); *Rabin v. Concord Assets Group*, No. 89 Civ 6130, 1991 U.S. Dist. LEXIS 18273, at *2, (S.D.N.Y. Dec. 19, 1991) (4.4 multiplier: "multipliers of between 3 and 4.5 have been common"); *Behrens v. Wometco Enters. Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988) ("[T]he range of lodestar multipliers in large and complicated class actions runs from a low of 2.26 to a high of 4.5."); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322, 327 (N.D. Ill. 1981) (4.0 multiplier); *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1359 (N.D. Ill. 1974) (4.0 multiplier).

[11] *See* Small Supplemental Decl. ¶ 4 (reporting 6,423.75 billed hours as of April 14, 2016); Friedman Supplemental Decl. ¶ 13 (reporting 3,626.70 billed hours as of April 14, 2016); Seltzer Supplemental Decl. ¶ 7 (reporting 4,698 billed hours as of April 14, 2016).

expenses); *Id.* (less $89,598.69 in unspent funds).  Class Counsel vigorously litigated this action and were challenged by aggressive, skilled and well-funded defense counsel every step of the way.

To effectively prosecute this large and complex class action, Class Counsel had to commit a significant amount of time, personnel and expenses to this litigation purely on a contingency basis with no guarantee of being compensated in the end. Such efforts included, but were not limited to: (1) investigating the factual and legal claims and filing this action; (2) amending the complaint and litigating two motions to dismiss; (3) litigating a motion to compel arbitration and stay proceedings (4) filing a motion for class certification and reply in support of the same; (5) engaging in discovery, including the taking and defending of depositions, written discovery, reviewing documents from both the defendants and third parties; (6) retaining and working with an expert economist to develop a damages model and explain the impact of defendants' conspiracy to suppress wages on class members; (7) disseminating notice after class certification to over 10,000 class members; (8) answering inquiries from class members regarding the litigation, settlement, claim forms and other matters concerning their claims; and (9) assisting the claims administrator with the settlement website, electronic claim form and notice issues.

### (2) The Litigation Featured Complex Legal and Factual Issues.

Plaintiffs faced complex legal and factual issues in this litigation, including overcoming defendants' argument that Plaintiffs could not demonstrate fraudulent concealment on a class-wide basis, and that the fraudulent concealment issue defeated class certification. *See supra* section II.A.1.

The Court also finds that Class Counsel's efforts resulted in substantial and meaningful settlement for the class. Class Counsel have negotiated and achieved meaningful settlements that provide direct payments to class members on a *pro rata* basis. Because Plaintiffs have defendants' employment data, class members will not have to submit a claim, or follow any other procedural steps, to receive their share of the settlement fund. This result supports the reasonableness of the requested fees.

### (3) Plaintiffs' Counsel Are Highly Skilled and Experienced.

The Court may also consider the experience, skill and reputation of plaintiffs' counsel. *See Kerr*, 526 F.2d at 70; *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13627, at *38 (C.D. Cal. June 10, 2005); *Crommie v. Pub. Utils. Comm'n*, 840 F. Supp. 719, 725 (N.D. Cal. 1994). Here, Class Counsel are experienced and respected in the fields of consumer, antitrust and class action litigation, as detailed in the submitted declarations. *See* Friedman Decl., ¶¶ 5, 7; Small Decl., ¶¶ 2-3; Seltzer Decl., ¶¶ 3, 5. The Court finds that the reputation, experience, and skill of Class Counsel contributed to the success of this litigation.

The quality of opposing counsel should also be considered. *See, e.g.*, *In re Equity Funding Corp. of Am. Secs. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). Here, counsel for defendants are all nationally recognized firms in the defense of antitrust class actions. Class Counsel vigorously litigated, and defense counsel vigorously defended against, the class-wide claims asserted by Plaintiffs throughout this proceeding.

### d. Plaintiffs' Fee Request Is Reasonable in Light of the Contingent Nature of the Fee and Class Counsel's Ongoing Work

Class Counsel's fee request is reasonable in light of the future work and expenses that will be incurred by Class Counsel to implement the settlements, which is not included in the current lodestar. This includes all pre- and post-approval work such as overseeing claims administration, communications with class members, disputes over claims, appeals, and any other issues that may arise under the settlements. This future work is substantial and could last for many months. This additional future work underscores the reasonableness of Plaintiffs' fees request.

## B. Plaintiffs' Expenses Are Reasonable and Were Necessarily Incurred

In addition to the $4,737,500 sought by Plaintiffs to be awarded to Class Counsel, Plaintiffs seek an award of $1,561,700.47 in expenses necessarily incurred in connection with the prosecution of this action. The Ninth Circuit allows recovery of pre-settlement litigation costs in the context of class action settlements. *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). All expenses that are typically billed by attorneys to paying clients in the marketplace are compensable. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). With their motion, plaintiffs

1  provide an accounting of the expenses incurred by Plaintiffs' counsel. *See* Friedman Decl., ¶¶ 14-
2  15; Small Decl. ¶¶ 12-13; Seltzer Decl. ¶¶ 13; 15. Several categories account for the bulk of these
3  expenses: fees paid to experts, filing fees, travel expenses, costs of court and deposition transcripts,
4  and computer research expenses. All of these costs were reasonably incurred to bring this case to a
5  successful conclusion, and they appear to reflect market rates for the various categories of expenses
6  incurred. Further, Plaintiffs' counsel advanced these necessary expenses without assurance that
7  they would even be recouped. Plaintiffs' request for fees is reasonable.

8  In addition, the Court finds reasonable the costs incurred by the settlement administrator,
9  Kurtzman Carson Consultants ("KCC"), for notice and claims administration, which currently total
10 $36,062.92. *See* Declaration of Kenneth Jue Regarding Administration Costs, ¶ 2.  KCC also
11 estimates that it will incur an additional $59,432.17, and the Court finds that these projected costs
12 are reasonable as well. *Id.* Thus, the Court finds that KCC will reasonably incur a total of
13 $95,495.09. *Id.*

14 **C.     Plaintiffs' Request for Service Awards**

15 Plaintiffs also request that the Court approve the service awards in the amount of $10,000
16 for the three named plaintiffs, to be deducted from the settlement fund. Service awards for class
17 representatives are routinely provided to encourage individuals to undertake the responsibilities
18 and risks of representing the class and recognize the time and effort spent in the case. In the Ninth
19 Circuit, service awards "compensate class representatives for work done on behalf of the class, to
20 make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to
21 recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*,
22 563 F.3d 948, 958-59 (9th Cir. 2009). Courts have discretion to approve service awards based on,
23 *inter alia*, the amount of time and effort spent, the duration of the litigation, and the personal
24 benefit (or lack thereof) as a result of the litigation. *See High Tech Fees Order*, 2015 WL
25 5158730, at *16.

26 Here, the three named representatives, Robert Nitsch, David Wentworth, and Georgia Cano,
27 have spent a significant amount of time assisting in the litigation of this case. Each plaintiff
28 responded to written discovery and produced documents relating to their claims; they were each

deposed by defense counsel all day regarding their claims in this case; they reviewed the SAC and other substantive pleadings; and they reviewed and approved the settlements.[12]

The service awards of $10,000 are consistent with service awards in other cases.[13] Based on the foregoing, the Court accordingly concludes that the request for a $10,000 service award for each named plaintiff is reasonable.

### III.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards. The Court awards as follows:

- $4,737,5000 in attorneys' fees to Class Counsel;
- $1,561,700.47 in unreimbursed expenses to Class Counsel;
- $95,495.09 in expenses to KCC, the Claims Administrator; and
- $10,000 service awards each to named plaintiffs Robert Nitsch, David Wentworth, and Georgia Cano.

IT IS SO ORDERED.

DATED:  November 11, 2016

*Lucy H. Koh*
_____
HONORABLE LUCY H. KOH
UNITED STATES DISTRICT COURT JUDGE

---

[12] *See* Declaration of Robert Nitsch in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, ¶¶ 8-12; Declaration of David Wentworth in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, ¶¶ 8-12; Declaration of Georgia Cano in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, ¶¶ 8-12.

[13] *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 253 (3d Cir. 2009) (approving service award of $10,000).