Daniel A. Small (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699
dsmall@cohenmilstein.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Marc M. Seltzer (54534)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com

[Additional Counsel on Sig. Page]

*Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE ANIMATION WORKERS ANTITRUST LITIGATION | Master Docket No. 14-CV-4062-LHK |
| | NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH THE WALT DISNEY COMPANY, PIXAR, LUCASFILM LTD., LLC, AND TWO PIC MC LLC |
| | Date:  March 9, 2017<br>Time: 1:30 p.m.<br>Courtroom:  8, 4th Floor<br>Judge:  The Honorable Lucy H. Koh |
| THIS DOCUMENT RELATES TO:<br><u>ALL ACTIONS</u> | |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on March 9, 2017 at 1:30 pm or as soon thereafter as the matter may be heard by the Honorable Lucy H. Koh of the United States District Court of the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, plaintiffs will and hereby do move the Court pursuant to Federal Rules of Civil Procedure 23 for an order:

      1)      Preliminarily approving a proposed class action settlement with The Walt Disney Company, Pixar, Lucasfilm Ltd., LLC, and Two Pic MC LLC;

      2)      Approving the manner and form of Notice and proposed Plan of Allocation to class members.

This motion is based on this Notice of Motion and Motion for Preliminary Approval of Settlement with The Walt Disney Company, Pixar, Lucasfilm Ltd., LLC, and Two Pic MC LLC, the following memorandum of points and authorities, the Settlement Agreement filed herewith, the pleadings and papers on file in this action, and such other matters as the Court may consider.

1

2

**TABLE OF CONTENTS**

3

I.      INTRODUCTION ...................................................................................................1

II.     PROCEDURAL HISTORY .......................................................................................2

III.    SUMMARY OF SETTLEMENT TERMS ..................................................................5

        A.      The Settlement Consideration ......................................................................5

                1.      Monetary Settlement Fund ................................................................5

        B.      Release of Claims .........................................................................................5

        C.      Notice and Implementation of the Settlement ..............................................6

        D.      Plan of Distribution .....................................................................................6

IV.     ARGUMENT ...........................................................................................................7

        A.      The Settlement Agreement Satisfies Rule 23(e) ..........................................7

                1.      The Settlement Is the Product of Informed, Arm's Length Negotiations .......8

                2.      The Proposed Settlement Has No Obvious Deficiencies ................................9

                3.      The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class ...................12

                4.      The Settlement Falls Well Within the Range of Possible Approval ............13

        B.      The Proposed Notice and Plan of Dissemination Meets the Strictures of Rule 23 ...13

        C.      Proposed Schedule for Final Approval and Dissemination of Notice ......................15

V.      CONCLUSION .....................................................................................................16

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### FEDERAL CASES

*Collins v. Cargill Meat Solutions Corp.*,
274 F.R.D. 294 (E.D. Cal. 2011) .................................................................................. 6

*In re High-Tech Emp. Litig.*,
2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) ...................................................... 10, 12

*In re High-Tech Emp. Litig.*,
2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ............................................... passim

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ...................................................................................... 12

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 6, 7, 11

*Linney v. Cellular Alaska P'ship*,
1997 WL 450064 (N.D. Cal. July 18, 1997) ............................................................. 7

*Monterrubio v. Best Buy Stores, L.P.*,
291 F.R.D. 443 (E.D. Cal. 2013) .............................................................................. 12

*Rodriguez v. W. Pub. Corp.*,
563 F.3d 948 (9th Cir.2009) ...................................................................................... 12

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ............................................................................... 6, 11

*Ward v. Apple Inc.*,
791 F.3d 1041 (9th Cir. 2015) .................................................................................... 9

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ...................................................................................... 6

*Zepeda v. Paypal, Inc.*,
2015 WL 6746913 (N.D. Cal. Nov. 5, 2015) ..................................................... 7, 11

### FEDERAL RULES

Federal Rule of Civil Procedure 23 .................................................................... passim

### SECONDARY AUTHORITIES

Manual for Complex Litigation (Fourth) § 21.632 (2015)........................................ 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, plaintiffs Robert Nitsch, David Wentworth, and Georgia Cano respectfully seek preliminary approval of a Settlement Agreement with the remaining defendants in the case: The Walt Disney Company, Pixar, Lucasfilm Ltd., LLC, and Two Pic MC LLC (collectively, "Disney Defendants"). The Court should preliminarily approve the proposed settlement as fair, reasonable, and adequate because it provides for the class a cash payment of $100,000,000. That amount is approximately 33.5 percent of plaintiffs' expert's calculation of the damages attributable to Disney Defendant employees in the certified class based on plaintiffs' November 16, 2016 merits expert report on damages.

The settlement was reached after arm's length negotiations—including with an experienced mediator—drawing on the expertise of informed, experienced counsel who have been deeply involved in this litigation since its inception, and it reflects the risks associated with both parties continuing to litigate this case. In particular, counsel have been informed and guided by the rulings and settlement valuations deemed fair and reasonable in both this action and the *High-Tech* litigation.

At this stage in the litigation, plaintiffs are quite familiar with the strengths of this case, as well as the challenges plaintiffs face as this case proceeds to trial. Counsel for plaintiffs have analyzed and catalogued approximately 350,000 documents produced from defendants' custodians, deposed nearly thirty witnesses, including two third-party witnesses and defendants' expert, defended the deposition of each of the named plaintiffs, defended two depositions of plaintiffs' expert Dr. Orley Ashenfelter, one of the world's leading labor economists, filed a successful class certification motion and reply supported by Dr. Ashenfelter's expert reports, defeated multiple attempts by defendants to obtain absent class member discovery, and have served two merits expert reports: one from Dr. Ashenfelter and one from Dr. Barry Gerhart, a preeminent scholar in the fields of compensation design and human resources management.[1] The settlement reached with the Disney Defendants is fair and appropriate based on the risks and rewards of litigating this case.

---

[1] *See* Declaration of John E. Schiltz in Support of Motion for Preliminary Approval of Settlement with Disney Defendants ("Schiltz Decl."), ¶ 3, filed concurrently herewith.

Further, plaintiffs propose a comprehensive notice program designed to effectively provide direct and actual notice of the settlement to all class members. The manner and form of notice is modeled after the manner and form of notice this Court finally approved with respect to the Blue Sky and Sony Pictures settlements. As with those settlements, to promote efficiency and save the Class money, plaintiffs propose providing one comprehensive notice for both the DreamWorks Settlement[2] and the Disney Defendant Settlement.[3]

Plaintiffs respectfully request an order providing: (1) preliminary approval of the proposed Settlement Agreement with the Disney Defendants; and (2) approval of the manner and form of notice and proposed Plan of Allocation[4] to class members.

## II.     PROCEDURAL HISTORY

Named plaintiffs are former animation and visual effects employees of defendants. Each named plaintiff worked for at least one of the defendants during the period when plaintiffs allege defendants were engaged in an illegal agreement to suppress compensation paid to class members.

Plaintiffs allege that defendants' conspiracy worked to restrain competition in several respects. Defendants entered into a "gentlemen's agreement" not to actively solicit each other's employees.[5] Among the manner and means of the alleged anti-solicitation conspiracy were (a) defendants would not "cold–call" each other's employees; (b) they would notify the other company when making an offer to an employee of the other company, if that employee had applied for a job; and (c) the company making such an offer would not increase the compensation offered to the prospective employee in its offer if the company currently employing the employee made a counteroffer.[6] In addition, plaintiffs allege that defendants' employees who were responsible for monitoring and enforcing the recruiting restraints engaged in direct collusive discussions to

---

[2] *See* ECF No. 353.

[3] *See* Schiltz Decl., Ex. A, Attachment 1.

[4] *See* Schiltz Decl., Ex. A, Attachment 2.

[5] *See* Second Consolidated Amended Class Action Complaint (SAC) ¶ 43, ECF No. 117.

[6] *See id.*, ¶ 2.

1   coordinate compensation across defendant firms.[7]

2       On December 2, 2014, plaintiffs filed their Consolidated Amended Class Action Complaint

3   (CAC) against DreamWorks Animation, ImageMovers Digital, Lucasfilm, Pixar, Sony Pictures

4   Animation, Sony Pictures Imageworks, The Walt Disney Company, and Blue Sky.[8] On January 9,

5   2015, defendants filed a motion to dismiss.[9] This Court granted defendants' motion without

6   prejudice on April 17, 2015.[10] The Court held that plaintiffs had not sufficiently alleged acts of

7   fraudulent concealment by defendants such that the four-year statute of limitations should be tolled.

8   On May 15, 2015, plaintiffs filed the SAC, alleging additional and more detailed acts of fraudulent

9   concealment by defendants.[11] The Court denied defendants' second motion to dismiss on August 20,

10  2015.[12]

11      Following the denial of defendants' second motion to dismiss, plaintiffs engaged in extensive

12  discovery: drafting and responding to requests for production and deposition notices, reviewing

13  thousands of plaintiffs' documents for responsiveness and privilege, reviewing defendants'

14  voluminous document productions, responding to defendants' written discovery, engaging in

15  discovery motion practice, preparing for and taking depositions, obtaining relevant employment data

16  and working with plaintiffs' expert to evaluate that data and calculate damages on a class-wide basis

17  – all in anticipation of their motion for class certification and trial.

18      Plaintiffs filed their motion for class certification on February 1, 2016. Plaintiffs' motion was

19  supported by 139 exhibits and a 70-page expert report from Dr. Ashenfelter. Defendants' opposition

20  included 67 exhibits and a 161-page expert report from Dr. Michael C. Keeley. Plaintiffs responded

21  with a 93-page reply report from Dr. Ashenfelter. On May 25, 2016, the Court granted in part and

22  denied in part plaintiffs' motion for class certification, and certified the following class:

23      All animation and visual effects employees employed by one or more of the Defendants in

24      [7] *See id.*, ¶¶ 13-15.

25      [8] ECF No. 63.

26      [9] Motion to Dismiss the CAC, ECF No. 75.

        [10] Order Granting Motion to Dismiss, ECF No. 105.

27      [11] ECF No. 121.

28      [12] Order Denying Motion to Dismiss, ECF No. 147.

1
2
3
4
5

    the United States who held any of the jobs listed in Ashenfelter Reply Report Amended Appendix C during the following time periods: Pixar (2004 - 2010), Lucasfilm Ltd., LLC (2004 - 2010), DreamWorks Animation SKG, Inc. (from 2004 - 2010), The Walt Disney Company (2004 - 2010), Sony Pictures Animation Inc. and Sony Pictures Imageworks Inc. (2004 - 2010), Blue Sky Studios, Inc. (2005 - 2010) and Two Pic MC LLC f/k/a ImageMovers Digital LLC (2007 - 2010).  Excluded from the Class are senior executives, members of the board of directors, and persons employed to perform office operations or administrative tasks.[13]

6

7

8

9

10

11

As relevant here, the Court denied the motion without prejudice as to class members who worked at Pixar and Lucasfilm from 2001-2003 and at DreamWorks in 2003, holding that the SAC did not sufficiently allege acts of fraudulent concealment during the 2001-03 period. Defendants petitioned for interlocutory appeal of that order under Federal Rule of Civil Procedure 23(f), plaintiffs responded, and on August 29, 2016, the Court of Appeals for the Ninth Circuit denied defendants' Rule 23(f) petition.

12

13

14

15

16

17

18

19

20

21

22

23

24

       Plaintiffs filed Motions for Preliminary Approval of Settlements with Blue Sky Studios on March 31, 2016, and with Sony Pictures Imageworks Inc. and Sony Pictures Animation Inc. (collectively, "Sony Pictures") on May 3, 2016.[14]  Following instructions from the Court, on May 11, 2016 plaintiffs filed an amended motion with respect to the Blue Sky settlement to reflect the fact that plaintiffs had proposed sending one notice for both settlements.[15] The Settlement Agreement with Blue Sky provides for a $5.95 million settlement fund, which was over 25 percent of plaintiffs' expert's calculation of the damages attributable to Blue Sky employees. The Settlement Agreement with Sony Pictures provides for a $13 million settlement fund, which was approximately 16.7 percent of plaintiffs' expert's calculations of the damages attributable to Sony Pictures employees. The Court preliminarily approved the Settlements with Blue Sky Studios and Sony Pictures on July 6, 2016.[16] The Court finally approved those Settlements on November 11, 2016, entering final judgment against Blue Sky and Sony and dismissing them from the case.[17]

25

26

27

28

---

[13] ECF No. 289, at 79.

[14] ECF Nos. 249, 273.

[15] ECF No. 282.

[16] *See* ECF No. 305.

[17] *See* ECF Nos. 346, 348.

Plaintiffs filed a Motion for Preliminary Approval of Settlement with DreamWorks on October 17, 2016.[18] The Settlement Agreement with DreamWorks provides for a $50 million settlement fund, which was approximately 39.3 percent of plaintiffs' expert's calculations of the damages attributable to DreamWorks employees. Plaintiffs filed a stipulation and order on January 13, 2017 in which all remaining parties stipulated that the preliminary-approval hearing for the DreamWorks settlement be rescheduled for February 2, 2017, so that the Court could hear both motions for preliminary approval concurrently. The Court denied that stipulation on January 16, 2017,[19] and held a preliminary approval hearing for the DreamWorks settlement on January 19, 2017, as originally scheduled. Preliminarily finding the settlement "fair, reasonable, and adequate," the Court preliminarily approved the DreamWorks settlement the same day.[20]

### III.   SUMMARY OF SETTLEMENT TERMS

**A.   The Settlement Consideration**

#### 1.   Monetary Settlement Fund

The Disney Defendants have agreed to a lump-sum payment of $100,000,000 to the Settlement Fund. This payment is the full amount owed under the Settlement Agreement, and is inclusive of any attorneys' fees, expenses, and service awards that might be ordered by this Court.[21]

**B.   Release of Claims**

Once the Settlement Agreement is final and effective, the named plaintiffs and the class shall release, as to the Disney Defendants and any of their related entities as defined by the Settlement Agreement, any and all state and federal claims, either known or unknown, arising from or relating to the factual allegations in plaintiffs' SAC, or any purported restriction on competition for employment or compensation of named plaintiffs or Class Members, up to the date of the Settlement.

The Disney Defendants have agreed not to solicit or encourage any class members to exclude themselves from the Settlement Agreement.[22]

---

[18] ECF No. 338.

[19] *See* ECF No. 351.

[20] *See* ECF No. 353.

[21] *See* Schiltz Decl., Ex. A § III(A), ¶ 1.

1

**C.**     **Notice and Implementation of the Settlement**

2

    The Settlement Agreement provides for actual notice to Class Members, as described below.

3
In connection with the other settlement agreements reached to date, defendants have already

4
provided to the notice administrator contact information in defendants' human resources and payroll

5
databases for all potential Class Members. The Disney Defendants have again agreed as part of the

6
Settlement Agreement to provide such contact information as they have available in their human

7
resources and payroll databases for all potential Class Members.[23] Plaintiffs have submitted with this

8
Motion a notice of settlements with the Disney Defendants and with DreamWorks that will be sent

9
within 7 days of preliminary approval of the Disney Settlement Agreement. This notice is intended to

10
supersede and replace the Amended Notice of the DreamWorks Settlement approved by the Court on

11
January 19, 2017.[24] Submitting a combined notice of both Settlements, as was done with the Blue

12
Sky and Sony settlements, will be more efficient and will save the class administrative expenses that

13
would otherwise be incurred by submitting separate notices of each settlement.

14

**D.**     **Plan of Distribution**

15

    Within ten days of preliminary approval, the Disney Defendants will wire (or cause to be

16
wired) $100,000 to the Class escrow agent, and within twenty days of final approval of the

17
Settlement Agreement, the Disney Defendants will wire (or cause to be wired) $99,900,000 to the

18
Disney escrow agent.[25] Within one business day after the Effective Date, the Disney escrow agent

19
will transfer the $99,900,000 plus accrued interest into an interest-bearing escrow account at the

20
Class escrow agent.  This escrow account will be construed to be a "Qualified Settlement Fund"

21
pursuant to applicable IRS regulations.[26] The Claims Administrator will be responsible for

22
determining the monetary award that shall be awarded to class members from the Settlement Fund

23

---

[22] *Id.*, § V(A), ¶ 3.

24

[23] *Id.*, § II(B), ¶¶ 4, 5.

25

[24] *See* ECF No. 353. The Court's redlines to that notice have been incorporated into the comprehensive notice submitted herewith.

26

[25] *Id.*, § III(A), ¶1(a). If the Court preliminarily approves the Settlement Agreement, the Disney

27
Defendants will already have provided $100,000 to the settlement fund within 10 days of the Court's order.

28

[26] *Id.*, § III(A), ¶1(c).

1 | based on their pro-rata share, which is calculated based on their total compensation compared to the

2 | total compensation of all class members throughout the class period, as described in the Plan of

3 | Allocation. The Claims Administrator's decision shall be final and unreviewable.[27] Class Counsels'

4 | attorneys' fees and cost payments and the Named Plaintiffs' service awards are subject to court

5 | approval.[28]

## IV.   ARGUMENT

### A.   The Settlement Agreement Satisfies Rule 23(e)

Federal Rule of Civil Procedure 23(e) provides that a proposed settlement in a class action case must be approved by the Court. The Court is to determine whether the proposed settlement is "fair, reasonable, and adequate."[29] As a first step, plaintiffs must seek preliminary approval of the proposed settlement, which is an "initial evaluation" of the fairness of a proposed settlement.[30] In determining whether the proposed settlement is "fundamentally fair, adequate, and reasonable" the court makes a preliminary determination of whether to give notice of the proposed settlement to the class members and an opportunity to voice approval or disapproval of the settlement.[31] Preliminary approval is not a dispositive assessment of the fairness of the proposed settlement, but rather determines whether it falls within the "range of reasonableness."[32] Preliminary approval establishes an "initial presumption" of fairness,[33] such that notice may be given to the class and the class may have a "full and fair opportunity to consider the proposed [settlement] and develop a response."[34]

Preliminary approval of a settlement and notice to the proposed class is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed, non-collusive

---

[27] *Id.*, § IV(B), ¶¶ 3, 4.

[28] *See id.*, § VI(A), ¶ 1.

[29] Fed. R. Civ. P. 23(e)(2).

[30] Manual for Complex Litigation (Fourth) § 21.632 (2015).

[31] *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see* Manual for Complex Litigation (Fourth) § 21.631 (2015).

[32] *In re High-Tech Emp. Litig.*, No. 11-cv-2509, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) ("*High-Tech I*") (citation omitted); *see also Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 301-302 (E.D. Cal. 2011).

[33] *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

[34] *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval."[35] It is within the "sound discretion of the trial judge" to approve or reject the settlement.[36] In instances where a settlement results from arm's length negotiations with involvement of experienced counsel and relevant discovery has been provided, there is a "presumption that the agreement is fair."[37]

### 1.    The Settlement Is the Product of Informed, Arm's Length Negotiations

The Settlement was reached after informed, arm's length negotiations between the parties.[38] The parties reached this settlement after the Court certified the class, after the Ninth Circuit denied defendants' Rule 23(f) motion, and after Plaintiffs served their merits expert reports. In the months leading up to the class certification decision, plaintiffs served and reviewed detailed written discovery, reviewed hundreds of thousands of documents, took and defended more than twenty fact and expert depositions, and briefed and argued their motion for class certification. Plaintiffs then conducted additional, informative discovery after the Court certified the class, including by deposing key current and former Disney Defendant employees, including Walt Disney Studios President Alan Bergman, Pixar President Ed Catmull, former Lucasfilm CEO George Lucas, and ImageMovers Digital co-founder Steve Starkey, in addition to a variety of other executives and human resources professionals from the Disney Defendant companies.[39] The settlement was only reached after months of negotiations between the parties, and following a mediation with the Honorable Judge Layn Phillips (ret.).[40]

The settlement also reflects non-collusive negotiations. Courts weigh three factors when considering collusion: (1) a disproportionate distribution of the settlement fund to counsel; (2) a negotiation of a "clear sailing provision," which allows for the payment of attorneys' fees

---

[35] *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

[36] *Zepeda v. Paypal, Inc.*, No. C 10-2500, 2015 WL 6746913, at *4 (N.D. Cal. Nov. 5, 2015).

[37] *Linney v. Cellular Alaska P'ship,* No. C-96-3008, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997).

[38] *See* Schiltz Decl., Ex. A, § III(B), ¶ 1.

[39] *See id.* ¶ 3

[40] *See id.* ¶ 4.

independent of payments to the class; and (3) an arrangement for funds not awarded to revert to defendants rather than to be added to the settlement fund.[41] None of those factors is present here.

*First*, the settlement requires payment of attorneys' fees solely out of the Settlement Fund. Payment to the named plaintiffs and class members is distributed based on the distribution plan specified in the Settlement Agreement, and class counsels' fees and payments to Named Plaintiffs must be approved by this Court.[42] *Second*, there is no clear sailing provision. To the contrary, the settlement stipulates that the parties have no agreement on any applications for Attorney's Fees and Expenses by Class Counsel.[43] *Third*, the settlement allows a pro rata reduction of the Settlement Fund if three percent or more of Class Members opt out, and termination if more than an agreed percentage of Class Members opt out, but other than that provision, the Settlement Agreement does not allow any reversion of settlement funds to the defendants.[44] This provision is common, a similar provision was included in the finally-approved settlements with Blue Sky and Sony Pictures (as well as in the preliminarily-approved DreamWorks Settlement), and it is no way reflective of any collusion; its threshold is unlikely to be met.  After the distribution, to the extent that any monies remain in the settlement fund, plaintiffs will move the Court to order distribution of such funds either for additional distribution to eligible claimants and/or *cy pres* distribution as approved by the Court.[45]

### 2. The Proposed Settlement Has No Obvious Deficiencies

The Proposed Settlement Agreement was the product of a thorough assessment of the strengths and weaknesses of plaintiffs' case. It reflects more than two years of discovery, uncovering the intricacies of a multi-faceted conspiracy. This settlement follows the Court's certification of the class and the Ninth Circuit's denial of defendants' Rule 23(f) petition, and allows the Disney

---

[41] *See In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (citation omitted).

[42] *See* Schiltz Decl., Ex. A, § VI(A).

[43] *See id.*, § III(B), ¶ 1.

[44] *See id.*, § VII(S).

[45] *See id.*, § IV(B), ¶ 6.

1   Defendants to settle and obtain a release of all claims against them before the Disney Defendants

2   would be required to engage in expert discovery and any briefing of dispositive motions.

3          The Settlement also provides meaningful and certain monetary recovery. In making this

4   assessment, plaintiffs are guided by this Court's decisions in *High-Tech* and in approving the Blue

5   Sky and Sony Pictures settlements.

6          Initially, *High-Tech* plaintiffs sought approval of a $20 million settlement with Intuit,

7   Lucasfilm, and Pixar—$9 million of which was paid by Lucasfilm and Pixar. The Court approved

8   this amount, based on (1) an "initial presumption of fairness" that adheres to arm's length

9   negotiations involving experienced counsel; (2) the amount of consideration – $20 million – was

10  "substantial," based on the number of injured plaintiffs and total compensation paid by defendants;

11  (3) the non-settling defendants remained jointly and severally liable for all damages caused by the

12  conspiracy, including the damage caused by the defendants who settled; and (4) the defendants'

13  agreement to cooperate with authenticating documents and locating witnesses.[46]

14         Similarly, in preliminarily approving the $18.95 million combined settlements with

15  defendants Blue Sky and Sony Pictures, the Court held that the following factors weighed in favor of

16  that preliminary approval: (1) the settlement was the result of "arm's length negotiations among

17  experienced counsel following extensive discovery on both sides"; (2) the combined consideration of

18  $18.95 million was "fair and reasonable based on the circumstances, risks involved, and significant

19  recovery from two of the companies whose share of employee-years comprise 20.3% of the class";

20  (3) the remaining defendants remained jointly and severally liable for all damages caused by the

21  conspiracy; and (4) and the settling defendants had independently agreed to cooperate with plaintiffs

22  in authenticating documents and to not assist the remaining defendants with the litigation.[47]

23         As detailed above, the proposed settlement here was the result of arm's length negotiations

24  with experienced counsel, following extensive discovery on both sides. And although the Disney

25  Defendants are "last out"—rendering further cooperation and joint-and-several liability irrelevant—

26

27         [46] *See High-Tech I*, 2013 WL 6328811, at *1.

28         [47] ECF No. 305 at 3-4.

1   assuming all settlements to date are given final approval, the common settlement fund will be

2   $168.95 million, or nearly one-third of Plaintiffs' total single damages estimate of $553,425,117.

3       The remaining issue, then, is the fairness of the consideration paid by the Disney Defendants

4   at this stage of the litigation. Here again, this Court's reasoning in rejecting a proposed *High-Tech*

5   settlement of $324.5 million with Adobe, Apple, Google, and Intel,[48] and in preliminarily approving

6   the $18.95 million combined Blue Sky and Sony Pictures settlements is instructive.[49]

7       In *High-Tech*, the Court noted that the total proposed settlement of $344.5 million was 11.29

8   percent of the expert's calculation,[50] but the "procedural posture of the case swung dramatically in

9   Plaintiffs' favor after the initial settlements were reached," and the parties were a month from trial.[51]

10   The Court ultimately approved a settlement at that late posture in the case representing 14.26 percent

11   of the total single damages calculated by plaintiffs' expert.

12       Here, the proposed Disney Defendant settlement provides for a one hundred million dollar

13   payment to the settlement fund, which represents approximately 33.5 percent of the total single

14   damages attributable to Disney Defendant employees as calculated by plaintiffs' expert.  This

15   compares favorably to the Blue Sky, Sony Pictures, DreamWorks, and *High-Tech* settlements, which

16   this Court deemed "fair and reasonable."

17       The Settlement also reflects the risks plaintiffs must consider in reaching a successful

18   outcome for class members through expert discovery, dispositive motions, trial, and appeal. For

19   example, although plaintiffs believe the class members have meritorious claims, juries can be

20   difficult to predict. And defendants would almost certainly appeal any adverse finding from the jury.

21   In particular, as this Court is aware, the statute of limitations has been a hotly-contested issue in this

22   case; the Court initially dismissed plaintiffs' first Complaint based on insufficient allegations of

23   fraudulent concealment. Although the Court ruled that plaintiffs have now sufficiently pled

---

24   [48] *See In re High-Tech Emp. Litig.*, No.11-cv-02509, 2014 WL 3917126, at *5 (N.D. Cal. Aug. 8,
25   2014) ("*High-Tech II*").

26   [49] *See* ECF No. 305.

27   [50] *See High-Tech II*, 2014 WL 3917126 at *5. The total settlement figure included the previously
    approved $20 million settlement with Intuit, Lucasfilm, and Pixar.

28   [51] *Id.*

fraudulent concealment, and plaintiffs have continued to obtain evidence to support their fraudulent concealment allegations, that issue undoubtedly injects uncertainty into the ultimate outcome in this case. Indeed, defendants have pursued discovery on this issue vigorously with the named Plaintiffs and third parties, including through document requests and deposition testimony, and by requesting leave to serve absent class member discovery on 500 absent class members (which the Court denied). Moreover, although defendants' Rule 23(f) petition was unsuccessful, defendants have shown a willingness to hire prominent appellate counsel to challenge the trial court outcomes in this case; an approach which they have made clear will continue post-trial on a number of issues, including class certification and fraudulent concealment. Overall, the risks plaintiffs face here remain significant.

Plaintiffs also face defendants' claim that their conduct should not be treated as a *per se* antitrust violation, but instead should be judged under the rule of reason framework – an issue plaintiffs faced in *High-Tech I*. Defendants have also challenged plaintiffs' impact and damages theories, as well as their expert's damages calculations. These issues also raise uncertainty for plaintiffs in obtaining a favorable verdict in this case. Accordingly, this settlement reflects the careful balance struck between each parties' position at this stage in the litigation.

### 3. The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class

The third factor the court must consider in granting preliminary approval is whether the settlement improperly grants preferential treatment to class representatives or segments of the class.[52] The proposed Settlement Agreement does not. It provides a reasonable and fair manner to compensate named plaintiffs and class members based on their salary and injury. Pursuant to the Proposed Settlement Agreement, Plaintiffs' counsel would seek (and the Disney Defendants would take no position on) a service award for the Named Plaintiffs, each of whom has been deposed, has reviewed and produced thousands of pages of documents, has had their personnel work files produced, has continued to provide valuable assistance to counsel as they pursue the class's claims, and whom could very well face workplace retaliation and be labeled a "troublemaker" within the animation and visual effects industry.

---

[52] *Zepeda*, 2015 WL 6746913, at *4.

1      Plaintiffs previously sought $10,000 in service awards for the Named Plaintiffs in connection

2    with the Blue Sky settlement, which the Court approved, and an additional $10,000 in service awards

3    for the Named Plaintiffs in connection with the DreamWorks settlement. Though the amount is not

4    specified in the Settlement Agreement, Plaintiffs anticipate seeking an additional $80,000 in service

5    awards, for a total of $100,000 for each Named Plaintiff.  This total would be on par with the named

6    plaintiffs in *High-Tech*, most of whom received $100,000 in total service awards, even though the

7    results obtained here are proportionally better than the results obtained in *High-Tech*.

8           **4.      The Settlement Falls Well Within the Range of Possible Approval**

9           The court must also determine whether a settlement "falls within the range of possible

10   approval." To make a determination, the Court must focus on "substantive fairness and adequacy."[53]

11          This settlement certainly falls within the range of possible approval. As detailed above, the

12   $100 million settlement represents about 33.5 percent of the damages that Dr. Ashenfelter estimated

13   the Disney Defendants caused their employees in the certified class based on his November 16, 2016

14   merits expert report. This is in excess of both the 25 percent and the 16.7 percent approved by the

15   Court in the Blue Sky and Sony Pictures settlements, respectively, and in excess of the 14.26 percent

16   approved by the Court in *High-Tech II*.

17   **B.      The Proposed Notice and Plan of Dissemination Meets the Strictures of Rule 23**

18          Rule 23(c)(2)(B) provides that class members must receive the "best notice that

19   is practicable under the circumstances, including individual notice to all members who can be

20   identified through reasonable efforts." Moreover, Rule 23(e)(1) requires a court to "direct notice in a

21   reasonable manner to all class members who would be bound by the propos[ed] [settlement]."

22   Plaintiffs propose the same notice here that this Court already approved for the prior settlements.

23          A class action settlement notice "is satisfactory if it 'generally describes the terms of the

24   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

25   forward and be heard.'"[54] Rule 23(c)(2)(B) contains specific requirements for the notice, namely,

---

[53] *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

[54] *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 962 (9th Cir.2009) (*quoting Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

that the notice state in clear, concise, plain, and easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; [and] (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

"Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is 'reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[55] Notice by email is routinely accepted as well.[56] As in *High-Tech*,[57] and with the Blue Sky and Sony Pictures settlements, to discourage potentially frivolous objections, an objector must not only sign his or her objection under penalty of perjury, but must also list any other objections by the Objector, or the Objector's attorney, to any class action settlements submitted to any court in the United States in the previous five years.

The Proposed Notice[58] here meets those requirements, and is modelled on the notices approved by the Court for the Blue Sky and Sony Pictures settlements and in *High-Tech*. The parties' intent is to have the Claims Administrator provide actual notice to each Class Member by email and/or mail to the extent practicable. Pursuant to the agreement between the parties, the Disney Defendants are obligated to provide plaintiffs with the full name, social security number, all known email addresses, last known physical address, dates and location of employment, and all known compensation information by date, job title, and type of compensation at Pixar, Lucasfilm, Disney, and Two Pic during the defined class period (to the extent that information exists in the Disney Defendants' human resources databases). If the Disney Defendants are unable to determine an employee's job title during the class period, they are obligated to provide in an electronic database format all known dates of employment at any Disney Defendant and all known associated

---

[55] *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 452 (E.D. Cal. 2013) (*quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

[56] *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ("The notice provided in this settlement, in both mail and email form, was sufficient under the Constitution and Rule 23(e)").

[57] *See High-Tech I*, 2013 WL 6328811, at *6.

[58] *See* Schiltz Decl., Ex. A, Attachment 1.

compensation by date and type of compensation. Defendants, including the Disney Defendants, have already provided such information to the notice administrator pursuant to the Court's order that they do so in connection with the Blue Sky and Sony Pictures settlements.

The Claims Administrator, Kurtzman Carson Consultants ("KCC"),[59] will be responsible for providing notice to potential class members consistent with Rule 23(c)(2)(B). The Court previously appointed KCC the Notice and Claims Administrator in its order preliminarily approving the Blue Sky, Sony Pictures, and DreamWorks Settlements.[60] The Claims Administrator will email notice to settlement class members where possible, and send mailed notice if email notification is not possible. Finally, the detailed notice will be available on the website www.animationlawsuit.com, along with relevant case documents such as the complaint and settlement agreement itself. With this motion, plaintiffs provide proposed forms for email notice, mailed notice, and a proposed plan of distribution.

## C.      Proposed Schedule for Final Approval and Dissemination of Notice

Below is a proposed schedule for providing notice, filing objections, and holding a fairness hearing:

| Event | Due Date |
| --- | --- |
| Notice mailed and posted on internet | 7 days from Order preliminarily approving Settlement. |
| Deadline for motion for attorneys' fees, costs, and service awards | 31 days after Notice mailed. |
| Objections deadline | 45 days after Notice mailed. |
| Exclusions deadline/end of opt-out period | 45 days after Notice mailed. |
| Administrator files Affidavit of Compliance with Court regarding notice requirements | 14 days after opt-out deadline. |

---

[59] KCC acquired Gilardi LLC in August 2015.  Gilardi previously served as Claims Administrator in the *High-Tech* litigation.

[60] *See* ECF No. 305 at ¶ 19; ECF No. 353 at ¶ 7.

| Event | Due Date |
|---|---|
| Motion for final approval deadline | 14 days after opt-out deadline. |
| Final Fairness Hearing | May 18, 2017 |

## V.    CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement Agreement, and approve the notice plan.


DATED: January 31, 2017                     HAGENS BERMAN SOBOL SHAPIRO LLP

                                        By     *s/ Jeff D. Friedman*
                                            JEFF D. FRIEDMAN

                                        Shana E. Scarlett (217895)
                                        715 Hearst Avenue, Suite 202
                                        Berkeley, CA 94710
                                        Telephone: (510) 725-3000
                                        Facsimile: (510) 725-3001
                                        jefff@hbsslaw.com
                                        shanas@hbsslaw.com

                                        Steve W. Berman *(Pro Hac Vice)*
                                        Jerrod C. Patterson *(Pro Hac Vice)*
                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                        1918 Eighth Avenue, Suite 3300
                                        Seattle, WA 98101
                                        Telephone: (206) 623-7292
                                        Facsimile: (206) 623-0594
                                        steve@hbsslaw.com
                                        jerrodp@hbsslaw.com

DATED: January 31, 2017                     SUSMAN GODFREY L.L.P.

                                        By     *s/ Steven G. Sklaver*
                                            STEVEN G. SKLAVER

                                        Marc M. Seltzer (54534)
                                        Steven G. Sklaver (237612)
                                        1901 Avenue of the Stars, Suite 950
                                        Los Angeles, CA 90067-6029
                                        Telephone: (310) 789-3100
                                        Facsimile: (310) 789-3150
                                        mseltzer@susmangodfrey.com
                                        ssklaver@susmangodfrey.com

1

2                                Matthew R. Berry (*pro hac vice*)

3                                John E. Schiltz (*pro hac vice*)
SUSMAN GODFREY LLP

4                                1201 Third Avenue, Suite 3800
Seattle, WA, 98101-3000

5                                Telephone: (206) 516-3880
Facsimile: (206) 516-3883

6                                mberry@susmangodfrey.com
jschiltz@susmangodfrey.com

7                                Elisha Barron (*pro hac vice*)
SUSMAN GODFREY L.L.P.

8                                1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023

9                                Telephone: (212) 336-8330
Facsimile: (212) 336-8340

10                             ebarron@susmangodfrey.com

11

12  DATED: January 31, 2017                COHEN MILSTEIN SELLERS & TOLL PLLC

13

14                             By _____*s/ Daniel A. Small*_____
                                  DANIEL A. SMALL

15                                Brent W. Johnson
Jeffrey B. Dubner

16                                Daniel H. Silverman
1100 New York Ave. NW, Suite 500

17                                Washington, DC 20005
Telephone: (202) 408-4600

18                                Facsimile: (202) 408-4699
dsmall@cohenmilstein.com

19                                bjohnson@cohenmilstein.com
dsilverman@cohenmilstein.com

20

21                                ***Co-Lead Class Counsel***

22                      **E-FILING ATTESTATION**

23       I, John E. Schiltz, am the ECF User whose ID and password are being used to file this

24  document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories

25  identified above has concurred in this filing.

26

27                                _____*s/ John E. Schiltz*_____

28                                JOHN E. SCHILTZ