UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT A. NITSCH, et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>DREAMWORKS ANIMATION SKG INC., et al.,<br><br>            Defendants. | Case No. 5:14-cv-04062-LHK (SVK)<br><br>**ORDER GRANTING NON-PARTY MOTION FOR REIMBURSEMENT; GRANTING MOTION TO SEAL DOCUMENTS**<br><br>Re: Dkt. No. 285, 307 |

Non-party Croner Company (Croner) moves for reimbursement of costs it says it incurred in responding to the second of two subpoenas served by plaintiffs.[1] Croner is a consulting company that conducts annual compensation benchmarking studies in a variety of creative industries. Briefly stated, the subpoena contained two document requests asking for survey data Croner obtained from companies in the animation and visual effects industry. (Dkt. 285-2, Brownstein Decl. ¶ 3, Ex. 2). Croner says that the responsive documents pertained to 17 non-defendant companies and spanned a 7-year period, from 2008 and forward.

Before Croner formally responded to the subpoena, its counsel met-and-conferred with

---

[1] Croner does not seek its costs incurred in responding to plaintiffs' first subpoena, which sought documents and a deposition and which (by stipulation) was limited to information pertaining to defendants.

plaintiffs' counsel. Croner advised that it would seek reimbursement of its costs, and it later said the same in its formal written objections. (*Id*. ¶ 5, Ex. 3; Dkt. 304-1 Schiltz Decl. ¶ 2). Although Croner initially estimated that its expenses would probably not amount to much more than "a couple thousand dollars," (Dkt. 304-1, Schiltz Decl. ¶ 2), as will be discussed, its endeavors ended up being more costly.

Because its surveys are subject to confidentiality provisions, Croner says it felt obliged to notify affected clients about the subpoena and to devise a form of production that would provide plaintiffs with discovery, while preserving the anonymity of the survey participants. Croner now seeks reimbursement of $67,787.55 in costs, including its outside counsel's fees, for those efforts. Pointing out that Croner's production comprised 16 documents, plaintiffs contend that the requested sum is grossly overinflated and unreasonable. They further contend that Croner actually incurred document processing and production costs of only $143.55, which plaintiffs argue is not a significant expense that warrants cost-shifting.

Upon consideration of the moving and responding papers, as well as the oral arguments presented, this court[2] rules as follows:

Fed. R. Civ. P. 45(d)(2)(B)(ii) provides that when a court orders compliance with a subpoena over an objection, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."[3] That rule "requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant." *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013). The rule is mandatory; and "when discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party." *Id.* "If so,

---

[2] Following Judge Grewal's resignation, the present motion was transferred to the undersigned magistrate. And, this court kept this particular discovery motion, notwithstanding the subsequent reassignment of this case, for discovery purposes, to Judge van Keulen.

[3] Under the particular circumstances presented here, the fact that Croner's production was made without the necessity of a court order compelling compliance does not foreclose its ability to seek reimbursement of its costs. Costs may be shifted if the requesting party is on notice that the non-party will seek reimbursement. *Spears v. First Am. Eappraiseit*, No. 5:08-cv-00868-RMW, 2014 WL 6901808, at *3 (N.D. Cal., Dec. 8, 2014). As discussed above, Croner clearly gave plaintiffs prior notice of its intent to seek reimbursement.

the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'" *Id.* (citation omitted).

"The shifting of significant expenses is mandatory, but the analysis is not mechanical; neither the Federal Rules nor the Ninth Circuit has defined 'significant expenses,' which is a term that readily lends itself to myriad interpretations depending on the circumstances of a particular case." *United States v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014) (citing *Legal Voice*, 738 F.3d at 1184). "In making this determination, a court may 'take into account the financial ability of the non-party to bear some costs' for purposes of establishing whether expenses are 'significant.'" *Cornell v. Columbus McKinnon Corp.*, No. 13-cv-02188-SI, 2015 WL 4747260 at *2 (N.D. Cal., Aug. 11, 2015) (quoting *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)).

Croner's requested expenses are as follows:  (1) $14,700 in legal fees paid to its outside counsel; (2) approximately $53,000 for time spent by Croner employees; and (3) $143.55 for document and data processing costs.  (Dkt. 285-1 Croner Decl., ¶¶ 21-22; Dkt. 285-2 Brownstein Decl. ¶¶ 10-11).  The key issue in dispute is whether costs tied to Croner's confidentiality concerns are compensable expenses "resulting from compliance" with a subpoena.

"Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties." *United States v. Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982).  "Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *Id.* Reimbursable expenses under Rule 45 may include some attorney's fees.  However, "[t]he rule does not establish a blanket requirement that all of a nonparty's legal fees are reimbursable so long as they are somehow related to its efforts in responding to a subpoena." *In re American Housing Found.*, No. 09-20232-RLJ-11, 2013 WL 2422706, at *2 (N.D. Tex., June 4, 2013).  Rather, "[r]eimbursable fees are those that are necessary to the third party's compliance and thus benefit the requesting party or are of assistance to the court." *Id.*

For example, courts have found that reimbursable fees include those "incurred in

1    connection with legal hurdles or impediments to the production," such as ensuring that production
2    does not violate federal law or foreign legal impediments. *Id.* (citing cases). Conversely, fees
3    incurred for services "for the non-party's sole benefit and peace of mind" have been denied. *Id.* at
4    *3; *see alsoMcGraw-Hill Companies, Inc.*, 302 F.R.D. at 536 (same). Other courts have
5    concluded that fees incurred in "production-related tasks like document review, creating a
6    privilege log, and drafting protective orders" are compensable expenses resulting from subpoena
7    compliance, whereas "fees incurred litigating a subpoena" are not. *Storman's Inc. v. Selecky*, No.
8    C07-5374 RBL, 2015 WL 224914, at *5 (W.D. Wa., Jan. 15, 2015).

9        Plaintiffs argue that Croner's efforts to protect client confidentiality were purely business
10   interests that inured solely to Croner's benefit and peace of mind and therefore are not
11   compensable. They point out that there is a protective order in place (Dkt. 48) that is sufficient to
12   address confidentiality issues, making Croner's effort re those issues entirely unnecessary.
13   Croner, on the other hand, says it did precisely what one should do when asked to produce
14   information subject to a confidentiality agreement. At oral argument, Croner's counsel stated that
15   at least several of the affected clients indicated that they would, in fact, move to quash plaintiffs'
16   subpoena, unless the subject documents were produced in redacted form. So, Croner says it did
17   what it did, not to prolong the litigation or increase costs, but rather, to attempt to craft an
18   agreeable format for production while timely giving plaintiffs requested discovery---without
19   resorting to time-consuming, and possibly even more expensive, motions practice over the
20   subpoena.

21       This court finds *G&E Real Estate, Inc. v. Avison Young-Washington D.C., LLC*, 317
22   F.R.D. 313 (D.D.C. 2016) instructive. There, the subpoenaed entity and its counsel "decided to
23   litigate issues related to the subpoena zealously. And they appear to have done so with no eye
24   towards minimizing their expenses or towards working cooperatively with Plaintiff's counsel to
25   resolve the disputed issues." *Id.* at 318. Motions practice over discovery ensued. However,
26   during a subsequent meeting, the parties agreed on a document review process in which plaintiff's
27   counsel was permitted to review the disputed documents. *Id.* at 319. That agreed-upon review led
28   to the resolution of their discovery disputes. *Id.* On a subsequent motion for reimbursement of

costs, the court declined to order reimbursement of fees generated by what it found to be an "overall strategic approach to the subpoena issue---fierce litigation and expensive document review---rather than a creative and collaborative approach to resolving the issues at hand." *Id*. Nevertheless, it concluded that certain activities were compensable, "such as the hours expended by [the subpoenaed entity's counsel] to enable Plaintiff's counsel to sit down and review the contested documents." *Id.*

Under the particular circumstances presented here, this court concludes that Croner's efforts to address confidentiality issues are reasonable and compensable. Plaintiffs are correct that such concerns generally do not preclude discovery when there is a protective order in place. *See, e.g., Realtek Semiconductor Corp. v. LSI Corp.*, No. 5:14-mc-80197-BLF-PSG, 2014 WL 4365114 at *3 (N.D. Cal., Sept. 3, 2014) (concluding, on a motion to compel compliance with a subpoena, that confidentiality concerns did not warrant modification of the subpoena).[4] Plaintiffs and Croner each claim that they would have prevailed on a motion to quash. This court can only speculate as to what the result would have been had any such motion been filed. What has been demonstrated to this court's satisfaction on the record presented is that Croner's efforts to protect client confidentiality were not made to be obstreperous, but were the result of compliance with the subpoena. Indeed, if any of the parties in this case were asked to produce a non-party's confidential information, the stipulated protective order requires them to do what Croner did---give notice to the affected non-party of the discovery request and the information at issue. (Dkt. 48 ¶ 9.2). And, before entertaining any motion to quash or for protective order, this court certainly would require the parties and affected entities to first make an effort to resolve their concerns between themselves.

Here, Croner and its counsel appear to have worked collaboratively as "go-betweens" with clients and with plaintiffs' counsel to resolve confidentiality concerns and get plaintiffs the

---

[4] Plaintiffs' reliance on the undersigned's ruling in *Spears v. First American Eappraiseit* is misplaced. No. 5:08-cv-00868-RMW (HRL), 2014 WL 11369809 (N.D. Cal., July 3, 2014). There, this court was not persuaded that a substantial privilege review would need to be undertaken simply to extract a HUD-1 statement from a file. Also, the subpoenaed party had already produced a sampling of those statements to the requesting party. *Id.* at *3.

5

1  discovery they wanted, without resorting to motions practice. In the end, Croner's clients were
2  appeased; plaintiffs timely got the discovery; and no one required the court's intervention. Thus,
3  Croner's efforts did not inure solely to Croner's benefit.
4        Plaintiffs insist that Croner is not entitled to reimbursement, asserting that Croner is only
5  nominally a "non-party." Pointing to a single line in the presiding judge's class certification order,
6  plaintiffs contend that Croner was entangled in the underlying alleged conspiracy. (*See* Dkt. 289
7  at 55:9-10) ("Further, the evidence suggests that Defendants engaged in collusive communications
8  directly and through the Croner Survey to benchmark their compensation structures against each
9  other."). This court does not find that argument persuasive.
10       Plaintiffs nevertheless balk at compensating Hali and Mel Croner at their hourly consulting
11 rates ($475/hour and $450/hour, respectively), because plaintiffs say they were not paying for the
12 Croners' consulting services. The Croners' hourly rates, however, are a reasonable measure of the
13 loss to Croner of time that otherwise would have been spent on the company's actual business.
14 While the $100/hour estimate for Croner's non-billing employees necessarily is an estimate, this
15 court also finds it to be reasonable inasmuch as Croner lost the normal services of those
16 employees as a result of compliance with the subpoena. (Dkt. 285-1, Croner Decl. ¶ 18; Dkt. 308-
17 1, Brownstein Decl. ¶ 5). *Cf. In re Propulsid Products Liability Litig.*, MDL No. 1355, 2003 WL
18 22341310 at *3 (E.D. La., Sept. 3, 2003) (rejecting, without explanation, a request for
19 reimbursement at $400/hour as excessive and unwarranted).
20       As for the claimed number of hours spent by Croner employees, plaintiffs argue that it
21 could not possibly have taken as long as Croner claims to produce the information, which
22 apparently is kept in a database. Croner says that producing the data was not simply a matter of
23 finding documents and printing them. Rather, Hali Croner avers that production required
24 employees to extract the pertinent data for each year of the survey; assemble the data into separate
25 spreadsheets for each of the affected companies; proof the data; and then send the information to
26 each affected client so they would know what data was subject to production. (Dkt. 308-3, Suppl.
27 Croner Decl. ¶ 3; Dkt. 285-1 Croner Decl., ¶ 21). Then, once counsel agreed upon redactions, the
28 redactions had to be made, proofed, and produced in a format acceptable to plaintiffs. (Dkt. 308-

3, Suppl. Croner Decl. ¶ 3; Dkt. 285-1 Croner Decl., ¶ 22). Croner states that while the hours claimed are estimates, the estimates are conservative, as the effort required several weeks of work. (Dkt. 285-1 Croner Decl. ¶ 21). Inasmuch this court concludes that costs incurred for these types of activities are compensable under the circumstances presented, this court finds them sufficiently specific. *Cf.Western Convenience Stores, Inc. v. Suncor Energy (U.S.A.), Inc.*, No. 11-cv-01611-MSK-CBS, 2014 WL 1257762 at *24 (D. Colo., Mar. 27, 2014) (declining to shift costs where the non-party provided total hours attributed to each of its employees without identifying specific tasks performed, and then later gave only vague task descriptions such as "time coordinating," "prep meetings," "phone conversations," and "'taking data' to outside counsel," which did not aid the court's decision as to the reasonableness of the costs incurred).

Based on supporting documentation, it appears that Croner spent 182.75 hours at a cost of $52,943.75, plus 24.5 hours at a cost of $14,700 in outside counsel fees, and $143.55 for processing documents and data that was produced. (Dkt. 285-1 Croner Decl. ¶¶ 21-22; Dkt. 285-2, Brownstein Decl. ¶¶ 10-11). The grand total: $67,787.30.[5] Having reviewed Croner's financial information (Dkt. 307-4),[6] this court finds that this sum is significant. This court also takes into account that this is the second subpoena served by plaintiffs on Croner and that Croner apparently bore all of its costs incurred in responding to the first one. Accordingly, $66,787.30 in Croner's costs is shifted to the plaintiffs.

SO ORDERED.

Dated: March 9, 2017

HOWARD R. LLOYD
United States Magistrate Judge

---

[5] This is 25 cents lower than the amount sought by Croner.

[6] Croner's motion to seal that information is granted.

7